1    JEFFER MANGELS BUTLER & MITCHELL LLP
     ROBERT B. KAPLAN, P.C. (Bar No. 76950)
2    *rbk@jmbm.com*
     Two Embarcadero Center, 5th Floor
3    San Francisco, California 94111-3813
     Telephone:    (415) 398-8080
4    Facsimile:    (415) 398-5584

5    JEFFER MANGELS BUTLER & MITCHELL LLP
     THOMAS M. GEHER (Bar No. 130588)
6    *tmg@jmbm.com*
     1900 Avenue of the Stars, 7th Floor
7    Los Angeles, California 90067-4308
     Telephone:    (310) 203-8080
8    Facsimile:    (310) 203-0567

9    Attorneys for UMPQUA BANK

10

11

12                  UNITED STATES BANKRUPTCY COURT

13                  CENTRAL DISTRICT OF CALIFORNIA

14                       LOS ANGELES DIVISION

15

16   In re                              Case No. 2:19-bk-14626-NB

17   XELAN PROP 1, LLC,                 Chapter 11

18            Debtors.                  **DECLARATION OF ROBERT B.
                                        KAPLAN IN SUPPORT OF MOTION TO
19                                      DISMISS CHAPTER 11 CASE WITH
                                        PREJUDICE [11 U.S.C. SECTION 1112(b)]**

20
                                        **VOLUME ONE**
21
                                        **EXHIBITS 1 - 6**
22
                                        Date:          April 30, 2019
23
                                        Time:          2:00 p.m.
24
                                        Place:         Courtroom 1545
25                                                     255 East Temple Street
                                                       Los Angeles, CA
26

27

28

JMBM | Jeffer Mangels Butler & Mitchell LLP

**EXHIBIT 1**

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Northern _____ District of California
                                    (State)

Case number (If known): _____ Chapter 11

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy    04/16

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

1. **Debtor's name**

   XELAN Prop 1, LLC

2. **All other names debtor used in the last 8 years**

   Include any assumed names, trade names, and *doing business as* names

   Same

3. **Debtor's federal Employer Identification Number (EIN)**

   46-288-2425 __ __ __ __ __

4. **Debtor's address**

   **Principal place of business**

   458 Doheny Drive, #1889
   Number    Street

   Los Angeles, CA 90069
   City                State    ZIP Code

   Los Angeles
   County

   **Mailing address, if different from principal place of business**

   _____
   Number    Street

   _____
   P.O. Box

   _____
   City                State    ZIP Code

   **Location of principal assets, if different from principal place of business**

   1000 Filbert Street
   Number    Street

   San Francisco, CA 94133
   City                State    ZIP Code

5. **Debtor's website (URL)**

   _____

6. **Type of debtor**

   ☐ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
   ☐ Partnership (excluding LLP)
   ☑ Other. Specify: Lender and various other parties

Official Form 201                Voluntary Petition for Non-Individuals Filing for Bankruptcy                page 1

Debtor   **Xelan Prop 1, LLC**                                   Case number (if known) _____
          Name

**7. Describe debtor's business**

**A.** *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☑ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☐ None of the above

**B.** *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

**C.** NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.naics.com/search/ .

___ ___ ___ ___

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7

☐ Chapter 9

☑ Chapter 11. *Check all that apply:*

    ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,566,050 (amount subject to adjustment on 4/01/19 and every 3 years after that).

    ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☐ A plan is being filed with this petition.

    ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

    ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

    ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☑ No

☐ Yes.   District _____   When _____   Case number _____
                            MM / DD / YYYY

          District _____   When _____   Case number _____
                            MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☑ No

☐ Yes.   Debtor _____   Relationship _____

          District _____   When _____
                                  MM / DD / YYYY

          Case number, if known _____

Debtor   Xelan Prop 1, LLC                                    Case number (if known)_____
         Name

**11. Why is the case filed in** ***this***    Check all that apply:
**district?**

  ☑ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days
    immediately preceding the date of this petition or for a longer part of such 180 days than in any other
    district.

  ☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have**    ☑ No
**possession of any real**
**property or personal property**    ☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.
**that needs immediate**
**attention?**

    Why does the property need immediate attention? (Check all that apply.)

    ☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

      What is the hazard? _____

    ☐ It needs to be physically secured or protected from the weather.

    ☐ It includes perishable goods or assets that could quickly deteriorate or lose value without
      attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related
      assets or other options).

    ☐ Other _____

    Where is the property?_____
                    Number     Street

                    City                      State   ZIP Code

    Is the property insured?

    ☐ No

    ☐ Yes. Insurance agency _____

           Contact name   _____

           Phone       _____

| **Statistical and administrative information** |

**13. Debtor's estimation of**    Check one:
**available funds**
  ☐ Funds will be available for distribution to unsecured creditors.
  ☑ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of**
**creditors**

| ☑ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
|---|---|---|
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

**15. Estimated assets**

| ☐ $0-$50,000 | ☑ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

Official Form 201                     Voluntary Petition for Non-Individuals Filing for Bankruptcy                     page 3
    Case: 17-31302    Doc# 1    Filed: 12/29/17    Entered: 12/29/17 16:33:48    Page 3 of 5

5

Debtor   Xelan Prop 1 LLC _____     Case number (if known) _____
           Name

**16. Estimated liabilities**

- ☐ $0-$50,000
- ☐ $50,001-$100,000
- ☐ $100,001-$500,000
- ☐ $500,001-$1 million

- ☐ $1,000,001-$10 million
- ☐ $10,000,001-$50 million
- ☐ $50,000,001-$100 million
- ☐ $100,000,001-$500 million

- ☐ $500,000,001-$1 billion
- ☐ $1,000,000,001-$10 billion
- ☐ $10,000,000,001-$50 billion
- ☐ More than $50 billion

---

## Request for Relief, Declaration, and Signatures

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

☐ The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

☐ I have been authorized to file this petition on behalf of the debtor.

☐ I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   12/27/2017
              MM / DD /YYYY

X _____         A Kihagi
Signature of authorized representative of debtor      Printed name

Title  Manager

**18. Signature of attorney**

X _____         Date _____
Signature of attorney for debtor               MM  / DD /YYYY

Printed name _____

Firm name _____

Number     Street _____

City _____     State _____  ZIP Code _____

Contact phone _____     Email address _____

Bar number _____     State _____

---

Official Form 201          Voluntary Petition for Non-Individuals Filing for Bankruptcy          page 4
Case: 17-31302   Doc# 1   Filed: 12/29/17   Entered: 12/29/17 16:33:48   Page 4 of 5

6

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br>Xelan Prop 1, LLC<br>458 Doheny Drive, #1889<br>Los Angeles, CA 90069<br>(415)691-1264 | FOR COURT USE ONLY |
|---|---|

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - **SELECT DIVISION****

| In re: | CASE NO.:<br><br>CHAPTER: 11 |
|---|---|
| | **ATTACHMENT TO VOLUNTARY PETITION FOR NON-INDIVIDUAL FILING FOR BANKRUPTCY UNDER CHAPTER 11**<br><br>*[If debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11 of the Bankruptcy Code, this form shall be completed and attached to the petition.]* |
| Debtor(s). | |

1. If any of the Debtor's securities are registered under Section 12 of the Securities Exchange Act of 1934, the SEC file number is _____ .

2. The following financial data is the latest available information and refers to the debtor's condition on _____ .
   a.   Total assets                                                                  $ 10,000,000
   b.   Total debts (including debts listed in 2.c., below)        $ 12,900,000
   c.   Debt securities held by more than 500 holders

| | | Approximate number of holders: |
|---|---|---|
| ☒ secured ☐ unsecured ☐ subordinated | $ 6,000,000 | 3 |
| ☐ secured ☒ unsecured ☐ subordinated | $ 6,900,000 | 3 |
| ☐ secured ☐ unsecured ☐ subordinated | $ | |
| ☐ secured ☐ unsecured ☐ subordinated | $ | |
| ☐ secured ☐ unsecured ☐ subordinated | $ | |

   d.   Number of shares of preferred stock  0
   e.   Number of shares of common stock  0
   Comments, if any:

3. Brief description of the Debtor's business:  Real Estate

4. List the names of any persons who directly or indirectly owns, controls, or holds, with power to vote, 5% or more of the voting securities of the Debtor:
   A. Idaegi

# Exhibit 2

**Fill in this information to identify the case:**

Debtor name  Xelan Prop 1 LLC

United States Bankruptcy Court for the:  Northern District    District of _____
(State)

Case number (if known): _____

# 17 31302

**FILED**

DEC 29 2017

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

☐ Check if this is an amended filing

Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider*, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | **Total claim, if partially secured** | **Deduction for value of collateral or setoff** | **Unsecured claim** |
| 1 | Umpqua Bank PO Box 2216 Spokane1,3, WA 99210 | | Secured loan | | 6,000,000 | 0 | 0 |
| 2 | CCSF Office of the City Attorney 1390 Market Street, 6th Floor San Francisco, CA 94102 | | Judgment | | 5,500,000 | 0 | 5,500,000 |
| 3 | Construction Loan | | Unsecured | | 1,400,000 | | 1,400,000 |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |

Debtor    __Xelan Prop 1, LLC_____    Case number (if known)_____
                  Name

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |
| 13 | | | | | | | |
| 14 | | | | | | | |
| 15 | | | | | | | |
| 16 | | | | | | | |
| 17 | | | | | | | |
| 18 | | | | | | | |
| 19 | | | | | | | |
| 20 | | | | | | | |

# Exhibit 3

Entered on Docket
**January 02, 2018**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1

2

3
**Signed and Filed: January 2, 2018**

4

5

6
**HANNAH L. BLUMENSTIEL**
**U.S. Bankruptcy Judge**

7
**UNITED STATES BANKRUPTCY COURT**

8
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

9
In re:                                    ) Case No. 17-31302 HLB
                                          )
10
XELAN PROP 1, LLC,                        ) Chapter 11
                                          )
11
                     Debtor.              )
                                          )
12

13
**ORDER TO SHOW CAUSE RE DISMISSAL FOR LACK OF COUNSEL**

14
     On December 29, 2017, Debtor XELAN Prop 1, LLC filed a

15
voluntary Chapter 11 petition.  The petition does not indicate

16
that the Debtor is represented by counsel.  Pursuant to B.L.R.

17
9010-1(a), an entity that is not a natural person may not

18
appear as a debtor in a bankruptcy case except through counsel.

19
     Accordingly, Debtor is hereby **ORDERED** to appear and show

20
cause as to why the court should not dismiss this case.  The

21
court shall hold a show cause hearing on **January 18, 2018 10:00**

22
**a.m.** at 450 Golden Gate Avenue, 16th Floor, Courtroom 19, San

23
Francisco, California 94102.  Debtor's representative is

24
required to attend unless counsel for Debtor has entered an

25
appearance in the case.  If counsel enters an appearance prior

26
to the hearing, the hearing shall be vacated and this order to

27
show cause discharged.

28
**\*\*END OF ORDER\*\***

## Court Service List

**XELAN Prop 1, LLC**
458 Doheny Dr. #1889
Los Angeles, CA 90069

## Notice Recipients

| | | |
|---|---|---|
| District/Off: 0971−3 | User: bgapuz | Date Created: 1/2/2018 |
| Case: 17−31302 | Form ID: pdfeoc | Total: 1 |

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

db          XELAN Prop 1, LLC          458 Doheny Dr. #1889          Los Angeles, CA 90069

TOTAL: 1

# Exhibit 4

1

1        UNITED STATES BANKRUPTCY COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3           (SAN FRANCISCO DIVISION)

4   In re:                        Case No. 17-31299

5   ZORIALL LLC,                  Chapter 11

6                                 San Francisco, California
                                  June 22, 2017
7                                 10:05 a.m.
            Debtor.
8   _____/

9   NOZARI 2, LLC,                Case No. 17-31300

10                                Chapter 11

11          Debtor.
                                  /
12  _____
    RENKA PROP LLC,               Case No. 17-31301

13                                Chapter 11

14          Debtor.
15  _____/

16  XELAN PROP 1, LLC,            Case No. 17-31302

17                                Chapter 11

18          Debtor.
                                  /
19  _____

20            TRANSCRIPT OF PROCEEDINGS
    ORDER TO SHOW CAUSE RE DISMISSAL FOR LACK OF COUNSEL

21
    BEFORE THE HONORABLE HANNAH L. BLUMENSTIEL
22         UNITED STATES BANKRUPTCY JUDGE

23

24

25

2

```
 1   APPEARANCES:

 2   For the City and County    DAVID J. COOK, ESQ.
     of San Francisco and       165 Fell Street
 3   the People of the State    San Francisco, California 94102
     of California:
 4                                          -and-

 5                              PETER KEITH
                                Deputy City Attorney
 6                              San Francisco City Attorney's
                                Office
 7                              1390 Market Street, Sixth Floor
                                San Francisco, California 94102
 8

 9   Potential Counsel:         PAUL MANASIAN

10

11   For Umpqua Bank:           JEFFER MANGELS BUTLER & MITCHELL
                                BY: ROBERT B. KAPLAN, ESQ.
                                Two Embarcadero Center, 5ᵗʰ Floor
12                              San Francisco, California 94111

13

14   For the U.S. Trustee:      OFFICE OF THE U.S. TRUSTEE
                                BY: MAGGIE McGEE, ESQ.
                                450 Golden Gate Avenue
15                              San Francisco, California 94102

16

17   Also Present:             ANNA KIHAGI, Managing Member for
                                The LLC's

18

19   Court Recorder:            JOHN BOLTS
                                UNITED STATES BANKRUPTCY COURT
                                450 Golden Gate Avenue
20                              San Francisco, California 94102

21

22   Transcription Service:     Jo McCall
                                Electronic Court
                                Recording/Transcribing
23                              2868 E. Clifton Court
                                Gilbert, Arizona 85295
24                              Telephone: (480)361-3790

25
```

3

```
 1              P R O C E E D I N G S
 2   January 18, 2018                    10:05 a.m.
 3                    ---oOo---
 4              COURTROOM DEPUTY: Moving on to Line Items 6, 7,
 5   8, and 9.  That's Zoriall LLC, Nozari 2, LLC, Renka Prop
 6   LLC, and Xelan Prop I, LLC.
 7              MR. COOK: Good morning, Your Honor, David Cook on
 8   behalf of the City and County of San Francisco and the
 9   People of the State of California.
10              THE COURT: Good morning.
11              MR. COOK: Good morning.
12              MR. KEITH: Your Honor, Peter Keith, Deputy City
13   Attorney with the San Francisco City Attorney's Office on
14   behalf of the same creditors.
15              THE COURT: Good morning.
16              MR. MANASIAN: Good morning, Your Honor, Paul
17   Manasian.  I'm potentially going to represent the Debtors
18   in these four cases, and I am here on that.  I haven't yet
19   been retained, and the Debtor's principal is here as well
20   for each of them.
21              THE COURT: All right.
22              MS. KIHAGI: Good morning, Your Honor, Anna
23   Kihagi, managing member for the LLC's.
24              THE COURT: Good morning.
25              MS. KIHAGI: Good morning.
```

4

1          MR. KAPLAN: Good morning, Your Honor, Robert

2   Kaplan of Jeffer Mangels Butler & Mitchell for Umpqua Bank

3   in Line Items 8 and 9, secured creditor.

4          THE COURT: Thank you.

5          MS. McGEE: Good morning, Your Honor, Maggie McGee

6   for the U.S. Trustee.

7          THE COURT: Okay.  One second.  All right.  We're

8   here in these four cases that were filed under Chapter 11

9   of the Bankruptcy Code on my order to show case re

10  dismissal for lack of counsel.  The Debtors in each of the

11  four cases before me today are corporate entities.  All are

12  limited liability companies and therefore they are not

13  permitted to appear in these cases pro se without counsel.

14  These cases were filed pro se.

15          The City and County of San Francisco has filed

16  motions for relief from stay in each of the four cases.

17  Counsel has not yet been retained by the Debtors in each of

18  the four cases.  Required documents were due yesterday or

19  on January 16.  They have not been filed, and what I got in

20  each of the four cases yesterday were pro se requests for

21  continuance of the hearing on this order to show cause as

22  well as the court-ordered deadlines to file the required

23  documents.  Those requests for continuance were docketed

24  yesterday between 5:16 and 5:26 p.m., and they simply say

25  that the Debtors have narrowed the field of potential

5

1 | attorneys and they just want more time.

2 |       This is Federal Court, not a parking garage, and

3 | when you seek relief in the Bankruptcy Court, you get

4 | significant protections as a result of that.  The price for

5 | that protection is transparency.  And when I don't have

6 | schedules or other required documents -- do I have creditor

7 | matrixes in these cases?   Can anybody tell me that?

8 |       MS. KIHAGI: Yes.

9 |       THE COURT: Okay.  Are they complete?

10 |       MS. KIHAGI: Yes, Your Honor, to the best of my

11 | knowledge, yes.

12 |       THE COURT: Well, at least creditors know about

13 | the cases, but, you know, the problem is that creditors

14 | need to be able to -- when is the 341 meeting scheduled?

15 | All right.  Nobody knows.

16 |       MR. COOK: The 23rd, I believe, Your Honor.

17 |       THE COURT: In all cases, the 23rd?

18 |       MR. COOK: That I don't know.  They should be on

19 | all of them, just for convenience sake.

20 |       THE COURT: There was recently a snafu with the

21 | U.S. Trustee's Office where we didn't get a sufficient

22 | number of dates for 341 meetings in Chapter 11 cases, and I

23 | think these cases were sort of -- we had enough dates for

24 | maybe two of the four cases, and then we got later dates.

25 | Ms. McGee, can you help here?

6

1          MS. McGEE: Sorry, Your Honor, I'm not aware of

2     that.  I am not aware of that situation.

3          THE COURT: All right.  My Courtroom Deputy who

4     knows more than anybody apparently about everything

5          (Laughter.)

6     has confirmed that all 341 meetings are set for January

7     23rd.  So, you know, what creditors and the United States

8     Trustee's Office are entitled to before that 341 meeting is

9     detailed information about the Debtors' assets, the

10    Debtors' liabilities, why the Debtors came into this mess

11    in the first place.  We don't have that, and Mr. Manasian,

12    you know, you're a very fine lawyer, but what you didn't

13    tell me today is that you have been retained.

14          MR. MANASIAN: No, I understand, Your Honor.

15          THE COURT: Can you tell me anything more about

16    that?

17          MR. MANASIAN: Yeah, actually I just met with the

18    Debtors' principal for all four cases yesterday for the

19    first time, and it's a very large series of cases because

20    of the litigation that's involved as well, and the relief

21    from stay motion lays some of that out.  So I'm just

22    getting up to speed in the last 48 hours, and I just met

23    with them for the first time yesterday.  We haven't

24    finalized an arrangement.  We also, frankly, haven't

25    figured out can one lawyer represent all four or would it

7

1  be appropriate to substantively consolidate these cases

2  because there is a major overlap between creditors and

3  equity holders, and/or would it be appropriate for some of

4  these cases not to go forward as Chapter 11's, so just

5  analyzing that is where we are right now.  So I can't

6  definitively say that I will be representing any of these

7  Debtors, but I think that's where we are right now is in

8  the middle of that process.

9        THE COURT: All right.  And Mr. Cook, can you give

10 me the rundown of where things stand from your clients'

11 perspective, what was the pre-petition litigation?  I

12 assume it involves your clients and --

13        MR. COOK: It does, Your Honor.  The headline is

14 that the Debtor entities and the three individuals who are

15 judgment debtors in the State Court action have filed an

16 appeal.  They were required to -- when was the brief due --

17 January 10th, they had a due date for the brief which they

18 filed and the four entities filed their brief in violation

19 of the automatic stay.  So that's the first problem where

20 the Court of Appeal now has received the appellant's

21 opening brief filed by four of these judgment -- four of

22 these Chapter 11 Debtors in violation of the automatic

23 stay, so we're getting push back from the Court of Appeal

24 in a minute order a couple of days ago saying, are you

25 folks really in bankruptcy?  What are we doing here, you

8

1   know, essentially inquiring of the intention of the

2   Debtors.  So the status of the Court of Appeal is in flux.

3   How's that?  Just to be as polite as possible here.

4         THE COURT: But what's the underlying nature of

5   the litigation?  I haven't read the motions for relief from

6   stay.  They're not set for hearing until February 1st.

7         MR. KEITH: Yes.  Your Honor, Peter Keith for the

8   City and County.  Our office brought a suit against --

9   arising from seven residential rental properties.  The

10  primary claims were tenant harassment claims and Municipal

11  Code violations, Building Code, Unpermitted Construction,

12  State Housing Law.  After trial, we secured a judgment of

13  about two and a half million dollars as well as a permanent

14  injunction.  There's been some litigation to date about the

15  extent to which that injunction is enforceable.  We filed a

16  motion with the Court of Appeal for calendar preference

17  because there's been a determination in the trial court

18  that the entire injunction is not currently enforceable and

19  won't be until the appeal is resolved.  It's a Health and

20  Safety injunction requiring the Debtors to retain an

21  independent property manager to essentially conduct their

22  residential rental business, and the trial court has

23  determined that that provision is not enforceable until the

24  appeal is resolved.

25         So from the standpoint of the City and County and

9

1  The People, we want to get this appeal resolved so that we

2  can put forth the full remedies that are stated in the

3  injunction that we secured after trial.  In addition to the

4  two and a half million dollar underlying judgment, we

5  recently received a fee award, for, again, in the same

6  neighborhood, two and a half million dollars.  So the total

7  amount owed I think is about 5.4 million plus interest.

8          THE COURT: Okay.

9          MR. KEITH: And, Your Honor, I should say, it's

10 not a single lump sum as to each of the Debtors.  There's

11 overlapping -- there's some overlapping liability.  The fee

12 liability is completely joint and several among all the

13 Debtors.

14         THE COURT: Right.

15         MR. KEITH: As far as the other ones, the

16 judgments range from anywhere between 250,000 to a little

17 over a million.

18         THE COURT: Okay.  Mr. Kaplan, what are your

19 client's interests here?

20         MR. KAPLAN: Your Honor, between Line Items 8 and

21 9, my clients hold roughly deeds of trust on properties

22 securing about 4.6 million dollars.

23         THE COURT: And which entities are your debt

24 borrowers, please?

25         MR. KAPLAN: No. 8, it's called Renka.  We have a

10

1  deed of trust on property on Eureka Street, San Francisco.

2  The amount of that debt is 1.2 or 1 or something.  And then

3  on -- I'll mispronounce it perhaps -- Xelan, that's Line

4  No. 9, we have two loans.  We have a deed of trust on the

5  Filbert street property.  The note was originally 1.96

6  million, and we also have a separate deed of trust on

7  property on 4018-18th Street.  The original deed of trust

8  and note on that was 1.7.  All these loans are in default

9  for the January payment, and we have no ability to deal

10  with cash collateral issues, which are important to us,

11  obviously.

12           THE COURT: You bet.

13           MR. KAPLAN: As far as we know, we have a first-

14  party lien on all the rents.  We don't know what's

15  happening to those.  So that's our concern about letting

16  this go on much longer.

17           THE COURT: Okay.  Mr. Manasian, Ms. Kihagi, is

18  there anything else you want me to consider before I enter

19  a ruling?

20           MS. KIHAGI: Yes.

21           MR. MANASIAN: I simply point out that -- she can

22  certainly speak -- that in terms of the appeal, I think

23  these Debtors want it to go forward.  There's nothing here

24  we're seeking to delay by the bankruptcy or anything like

25  that.  In fact, I guess it was stayed because it is in fact

11

1  originally an action against the Debtor that's been

2  appealed by the Debtor.  So technically, it might have been

3  stayed, but I don't think there's any question that the

4  Debtors want the appeal heard.  I think it's got merit.  So

5  they want it heard.  And so they're not seeking to delay

6  that.

7          With respect to the other items, I can't speak to

8  the underlying litigation because I've just begun to review

9  it.

10         THE COURT: M-hm.

11         MR. MANASIAN: And so I hear that there are

12  judgments in different amounts, but that's about all I know

13  really at this point.

14         THE COURT: Okay.  Ms. Kihagi?

15         MS. KIHAGI: Thank you, Your Honor.  First off, I

16  think the information that you've just gotten on the appeal

17  was not complete in regards to the response.  The Court of

18  Appeal came out and asked for clarification in regards to

19  what effect this has on the appeal, and I think both

20  parties quickly responded.  And the response was due on the

21  16th and clarified.  The appeal goes forward -- we

22  absolutely want that appeal to go forward.  So that was

23  quickly responded to.

24         Number two, the challenge we've had is -- the

25  understanding from the first counsel that we had which is a

12

1   Southern California firm, say, we cannot have the same

2   attorney representing, so we already have one attorney

3   that's looking into the matter, that has been at least

4   working on it for about -- more than at least two days,

5   and --

6           THE COURT: And who's that?  And on behalf of

7   whom?  What entities?

8           MS. KIHAGI: Well, he's concerned about the fact

9   that he cannot represent four entities.

10          THE COURT: Are you referring to Mr. Manasian?

11          MS. KIHAGI: Mr. Manasian is one, but there's also

12  another counsel that we've been talking to.  We don't know

13  whether we're going to be allowed to actually have one

14  attorney or whether we actually have to have separate

15  attorneys for the four.  And I think, as Mr. Manasian

16  properly alludes, in analyzing the entities, which is as he

17  said extremely detailed in terms of what he has to do, the

18  same thing that the other party is dealing with, and he

19  started looking at the work last week on Friday.

20          What he's concerned with is, just a ton of stuff,

21  and what he might actually at the end of it look through

22  and say, maybe these entities don't really have any basis

23  to be here.  And then thirdly, I think I heard Umpqua Bank

24  speak, Umpqua Bank is actually current on almost every one

25  of the loans.  They have chosen not to cash the payments.

13

1   There is no default.  The payments automatically are

2   actually taken by the institutions, and when we notice they

3   actually hadn't taken them, we immediately actually Fed

4   Ex'd payments to them so that there was not any issue about

5   having made their payments -- so they're holding on to them

6   waiting to understand what happens in regards to whether

7   they can negotiate the payments, but they actually have

8   automatic payments, and when they didn't take it, we

9   immediately sent it to them by Fed Ex to make sure they are

10  in possession of them.

11          So the goal is not to really ask or inconvenience

12  anyone.  I think you can see the amount of transparency.

13  They were asking, please, can you look and help analyze

14  what's really going on here.  There's a lot of

15  complexity --

16          THE COURT: Why were these cases filed?  What was

17  the urgency about them?

18          MS. KIHAGI: We had a number of attorneys that

19  were not around in December, and I think as we were looking

20  through, we didn't have enough information.  We had started

21  off with one attorney in Southern California that said he's

22  very concerned about what's going on.  And in one of the

23  entities, we had a recent litigation where there was a

24  judgment that's on appeal that through the total debt

25  amount or the total judgment potential, significantly had

14

1   and what's even in the building, we thought really kind of

2   analyzing it.

3         So they had started doing it, and they had

4   started proposing it, and then he went on vacation for --

5   he went out of the country to Toronto for two weeks during

6   the holiday period.  So for two weeks, we really didn't

7   have anything going on, and we were very concerned based on

8   some of the things that he had told us.  So I thought, go

9   ahead and file it, and then I was pretty concerned that he

10  would have started and not seen it through.  So I

11  interviewed and I spoke to more locals.  Mr. Manasian's

12  name came up, and I officially came in and met with him,

13  spoke to him for the last three or four days.

14        So we started off with one attorney asking to

15  advise on the issue; didn't feel like we were getting the

16  right advice, and then we got two people that I feel pretty

17  confident would actually handle the matter.  He's one of

18  them.  And the other one is a gentleman based in Southern

19  California.

20        MR. KEITH: Your Honor, if I may, Peter Keith for

21  the City and County.

22        THE COURT: Let me just -- I'm going to ask some

23  questions first.  Thank you, Mr. Keith.

24        So usually when people or entities file for

25  bankruptcy, they want to prevent something bad from

15

1  happening.  What was it that you wanted to prevent, if

2  anything, by filing these cases?

3          MS. KIHAGI: The first thing was, the case that's

4  going -- that's not even represented here -- that has

5  happened, and I understood there were some issues that were

6  coming up very quickly there, and that's --

7          THE COURT: What is that -- which entity --

8          MS. KIHAGI: Zoriall.

9          THE COURT: Okay.

10         MS. KIHAGI: Yes.  So that was the entity.

11         THE COURT: And what is the litigation?

12         MS. KIHAGI: It's a tenant litigation that had

13  occurred and there had been a judgment rendered, and there

14  were some proceedings that were going on.

15         THE COURT: Uh-huh.

16         MS. KIHAGI: So in the effort of settling it, some

17  of the issues came up and we have been able to settle the

18  other cases, so whereas we were making progress and had had

19  settlement discussion and mediation, and some resolution

20  that was coming up, we couldn't move forward until we

21  resolved that other case.  So it's literally that one case,

22  you know, has put a strong neck hold on settling some of

23  the cases, not even related, and we needed to figure out,

24  do we get protection to say what do we do here because

25  there's a case out there that could be settled and should

16

1  be settled and should be done with, and we've got a

2  mediator that's actually making a good recommendation, but

3  we can't see it through until we figure out what's going on

4  with that particular individual.

5           So that's what was going on, and that was the

6  catalyst, and that happened in December, and more is going

7  in that.

8           THE COURT: All right.  Any other reason?

9           MR. MANASIAN: Your Honor, I asked that question

10  obviously, was there a foreclosure; was there a

11  precipitating event?  And I'm not sure there really was, so

12  that's why we come back to what's the purpose here.  There

13  may be a purpose in these bankruptcies; there may not be,

14  and that's kind of what I've been looking at is, would I

15  have told you to do this to begin with?

16           THE COURT: Right.  Mr. Keith, what were you going

17  to say?

18           MR. KEITH: Your Honor, on December 26th, the

19  Superior Court issued an order to the four Debtor LLC's

20  assigning their rents to the City and County of San

21  Francisco, beginning with a turnover order for the January

22  rents and then essentially an assignment of rents

23  thereafter, in the amount of, I'm going to say, over a

24  hundred thousand dollars per month if we add everybody up.

25  And then these petitions were filed on the 29th.

17

1        THE COURT: Okay.

2        MS. KIHAGI: There was one other factor, Your

3    Honor.  There was a ruling regarding the bond.  We have a

4    bond that we almost secured, and the bond amount that the

5    Court ruled on is one number.  And then the number that we

6    got was the underlying court or the lower court saying we

7    need a bond of 4.1 million.  No problem with that.  We're

8    close.  And then before it could be issued, the attorneys

9    are all on vacation.  Nobody is around.  And they sent e-

10   mails saying, well, we're being told we need a bond for

11   double that amount.  We're being asked that we need to sign

12   for an ex parte hearing, and I think the ex parte hearing

13   was going to be happening in the first week of January,

14   saying we want that bond that you're about to get to

15   actually not go through; we need it to be this other

16   number, and we need an immediate ruling, an ex parte

17   ruling.

18        So those are some of the things that were going

19   on.  And the worst part is none of these attorneys were all

20   around, so I'm being told I have an ex parte hearing coming

21   up where to secure the property is a one million bond.

22   That's not going to be good enough.

23        So those are the issues and the noise that's

24   going on, and we haven't even had a chance to even move

25   beyond that because I haven't been able to get

1   clarification.  I've been focused mostly on talking to the

2   bankruptcy attorneys.  I haven't even done much to resolve,

3   what does this mean in regards to the bond that we secured.

4   So there are a lot of noise and issues, and I'm just asking

5   I think to give the attorneys that extra week or two that

6   they need for them to tell us.  I have good counsel, very

7   intelligent people now looking at it.  They've gotten the

8   files, and we will continue picking out the files within my

9   home office yesterday.  Everything that I've got, I'm

10  happy to turn over to give them at least enough time to

11  make very good advice.

12          THE COURT: All right, thank you.

13          MS. KIHAGI: And if at the end of the time --

14          THE COURT: Thank you.

15          MS. KIHAGI: Thank you.

16          MR. KAPLAN: Your Honor, could I --

17          THE COURT: Sure.

18          MR. KAPLAN:  -- just for Umpqua, the auto debit

19  features on the loan were turned off because the auto debit

20  account post-bankruptcy would clearly violate the stay

21  here, and I don't have any knowledge about these checks.

22          THE COURT: Yeah, I get it.

23          MR. KAPLAN: I spoke to my client yesterday, and

24  maybe they were sent and maybe they weren't, but as far as

25  we know, the loans are in default.

19

1          THE COURT: All right.

2          MR. MANASIAN: Obviously, Your Honor, if we stay

3   in bankruptcy, there would be a cash collateral -- there

4   would be some need to address that.  I didn't know about

5   that.

6          THE COURT: Yeah.  Okay.  I am going to dismiss

7   these cases.  I am not hearing enough justification for

8   continuing the significant protections the Debtor has

9   gotten so far without paying the price, which is, as I said

10  at the outset of these hearings, transparency.

11          And it's not clear to me that these Debtors have

12  a significant need for the automatic stay at this point,

13  and I'm not willing to delay the cases any further without

14  any real confirmation that progress will be made in that

15  period of time.  So I will enter orders dismissing these

16  cases due to the Debtors' failure to have counsel and to

17  comply with court-ordered deadlines.

18          MR. MANASIAN: Your Honor, if I could just point

19  out, there is one case in which she's mentioned there was a

20  judgment against one of these Debtors.  That judgment was

21  within the 90 days --

22          THE COURT: Mr. Manasian, I've ruled.  Thank you

23  very much.  I'll enter the orders.

24          ALL COUNSEL: Thank you, Your Honor.

25  (Whereupon, the proceedings are concluded at 10:25 a.m.)

20

1

2

3

4                    CERTIFICATE OF TRANSCRIBER

5

6         I certify that the foregoing is a correct

7   transcript from the digital sound recording of the

8   proceedings in the above-entitled matter.

9

10  DATED: January 24, 2018

11

12                        By:___/s/ Jo McCall_____

13

14

15

16

17

18

19

20

21

22

23

24

25

# Exhibit 5

Entered on Docket
January 18, 2018
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: January 18, 2018

HANNAH L. BLUMENSTIEL
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re: | ) | Case No. 17-31302 HLB |
| | ) | |
| XELAN PROP 1 LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

### ORDER DISMISSING CASE

On January 18, 2018, the court held a hearing on the court's Order to Show Cause re Dismissal for Lack of Counsel (the "OSC").  Appearances were as noted on the record.  Upon due consideration of the pleadings and argument of the parties, and for the reasons stated on the record, the court **ORDERS** that the above-captioned case is hereby **DISMISSED** due to Debtor's failure to employ counsel and failure to file required documents.

**\*\*END OF ORDER\*\***

-1-

37

## Court Service List

XELAN Prop 1, LLC
458 Doheny Dr. #1889
Los Angeles, CA 90069

Form DOC

# UNITED STATES BANKRUPTCY COURT
## Northern District of California

| | | | |
|---|---|---|---|
| In Re: | XELAN Prop 1, LLC | Case No.: 17−31302 HLB 11 | |
| | Debtor(s) | Chapter: 11 | |

## NOTICE OF DISMISSAL OF CASE

**Notice is given** that an order was filed on 1/18/18 dismissing the above−captioned case.

Dated: <u>1/18/18</u>

For the Court:

Edward J. Emmons
Clerk of Court
United States Bankruptcy Court

Doc # 22

# Notice Recipients

District/Off: 0971−3                    User: bgapuz                    Date Created: 1/18/2018
Case: 17−31302                         Form ID: DOC                    Total: 23

**Recipients submitted to the BNC (Bankruptcy Noticing Center) without an address:**
14689980    Construction Loan

TOTAL: 1

**Recipients of Notice of Electronic Filing:**
ust    Office of the U.S. Trustee / SF    USTPRegion17.SF.ECF@usdoj.gov
aty    David J. Cook    cook@squeezebloodfromturnip.com
aty    Lynette C. Kelly    lynette.c.kelly@usdoj.gov
aty    Robert B. Kaplan    rbk@jmbm.com

TOTAL: 4

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db      XELAN Prop 1, LLC        458 Doheny Dr. #1889        Los Angeles, CA 90069
cr      CITY AND COUNTY OF SAN FRANCISCO        c/o DAVID J. COOK, ESQ.        COOK COLLECTION
        ATTORNEYS, PLC        P.O. Box 270        San Francisco, CA 94104−0270
intp    Peter Keith, Esq.        Neighborhood/Residential Safety Division        Office of the City Attorney        1390
        Market St. 7th Fl.        San Francisco, CA 94102−5408
intp    Victoria L. Weatherford        Deputy District Attorney        Office of the City Attorney        1390 Market St. 7th
        Fl.        San Francisco, CA 94102−5408
intp    Michael Weiss        Deputy District Attorney        Office of the City Attorney        1390 Market St. 7th
        Fl.        San Francisco, CA 94102−5408
intp    Carolina Reyes−Ouk, Esq.        Office of the City Attorney        1390 Market St. 7th Fl.        San Francisco, CA
        94102−5408
intp    Morris Allen        Office of the City Attorney        1390 Market St. 7th Fl.        San Francisco, CA 94102−5408
intp    Sandra Yan        Office of the City Attorney        1390 Market St. 7th Fl.        San Francisco, CA 94102−5408
cr      Umpqua Bank        c/o Jeffer Mangels Butler & Mitchell LLP        Robert B. Kaplan, Esq.        Two Embarcadero
        Center, 5th Floor        San Francisco, CA 94111
aty     Robert B Kaplan        Jeffer Mangels Butler & Mitchell LLP        Two Embarcadero Center, 5th Floor        San
        Francisco, CA 94111
smg     Chief Tax Collection Section        Employment Development Section        P.O. Box 826203        Sacrament, CA
        94230
smg     IRS        P.O. Box 7346        Philadelphia, PA 19101−7346
smg     CA Employment Development Dept.        Bankruptcy Group MIC 92E        P.O. Box 826880        Sacramento,
        CA 94280−0001
smg     CA Franchise Tax Board        Special Procedures Bankruptcy Unit        P.O. Box 2952        Sacramento, CA
        95812−2952
14689978    Chase Bank        PO Box 9176        Coppell, TX 75019
14689979    City and County of San Francisco        Office of the City Attorney        1390 Market Street, 6th Flr.        San
        Francisco, CA 94102
14689981    Opus Bank        200 W. Commonwealth Ave.        Fullerton, CA 92832
14689982    Umpqua Bank        PO BOX 2216        Spokane 1,3, WA 99210

TOTAL: 18

# Notice Recipients

District/Off: 0971−3            User: bgapuz              Date Created: 1/18/2018
Case: 17−31302                 Form ID: pdfeo            Total: 3

**Recipients of Notice of Electronic Filing:**
ust        Office of the U.S. Trustee / SF        USTPRegion17.SF.ECF@usdoj.gov
aty        Lynette C. Kelly        lynette.c.kelly@usdoj.gov

                                                                            TOTAL: 2

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db         XELAN Prop 1, LLC        458 Doheny Dr. #1889        Los Angeles, CA 90069

                                                                            TOTAL: 1

# Exhibit 6

1  JEFFER MANGELS BUTLER & MITCHELL LLP
   ROBERT B. KAPLAN, P.C. (Bar No. 76950)
2  *rbk@jmbm.com*
   Two Embarcadero Center, 5th Floor
3  San Francisco, California 94111-3813
   Telephone:    (415) 398-8080
4  Facsimile:    (415) 398-5584

5  Attorneys for Plaintiff UMPQUA BANK

**ENDORSED**
**F I L E D**
*San Francisco County Superior Court*

MAR 1 2 2018

CLERK OF THE COURT
BY: _____ NEYL WEBB
                    Deputy Clerk

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    COUNTY OF SAN FRANCISCO

10

11  UMPQUA BANK, a state chartered bank,          Case No.  **CGC-18-564941**

12              Plaintiff,                        **VERIFIED COMPLAINT FOR:**
                                                  **(1) SPECIFIC PERFORMANCE AND**
13      v.                                        **APPOINTMENT OF RECEIVER; AND**
                                                  **(2) SPECIFIC PERFORMANCE AND**
14  XELAN PROP 1, LLC, a California limited       **APPOINTMENT OF RECEIVER.**
    liability company; and DOES 1-30, inclusive,
15                                                **UNLIMITED JURISDICTION**
                Defendants.
16

17

18      Plaintiff Umpqua Bank (the "Plaintiff" or "Bank") complains and alleges against XELAN

19  Prop 1, LLC ("XELAN" or "Borrower"), and Does 1 through 30, inclusive (collectively,

20  "Defendants"), and each of them, as follows:

21                         <u>GENERAL ALLEGATIONS</u>

22      1.      Bank is a state chartered bank duly authorized and existing under the laws of the

23  State of Oregon and is authorized to do business in the State of California and is the successor-in-

24  interest by merger to Sterling Savings Bank.

25      2.      The Bank is informed and believes and thereon alleges that the principal place of

26  business of XELAN is in the City and County of San Francisco. Pursuant to Section 10.6 of the

27  Note (as that term is hereinafter defined), XELAN agreed that "it irrevocably submits to the

28  jurisdiction of . . . (c) any state court sitting in the county of the state where the Property is located

61780754v3                                    1
VERIFIED COMPLAINT FOR SPECIFIC PERFORMANCE AND APPOINTMENT OF RECEIVER [XELAN]

61817238v1



43

1    over . . . any action brought by the Lender to enforce its rights with respect to the Collateral."

2         3.    Bank is informed and believes and thereon alleges that Borrower is a limited

3    liability company authorized and existing under the laws of the State of California.

4         4.    The true names and capacities, whether individual, corporate, associate, or

5    otherwise, of defendants Does 1 through 30, inclusive, are unknown to Bank at this time, and

6    Bank thereon sues said defendants by such fictitious names.  Bank is informed and believes, and

7    thereon alleges, that each of the defendants designated herein as a fictitiously named defendant is,

8    in some manner, responsible for the events and happenings referred to herein, either contractually

9    or tortiously, or claims an interest in one or more of the real property or personal property which

10   are, in part, the subject matter of this action, and caused the damage to Bank as herein alleged.

11   Bank will amend this complaint to show their true names and capacities when the same have been

12   ascertained pursuant to Section 474 of the California Code of Civil Procedure.

13        5.    Bank is informed and believes, and thereon alleges, that the Defendants were at all

14   times pertinent hereto, and are, the agents, servants, employees, joint venturers and partners of

15   each of the other co-defendants, and were acting within the scope of their authority as such agents,

16   servants, employees, joint venturers and partners, with the permission and consent of said co-

17   defendants.

18        6.    The within action is not subject to the provisions of Sections 2981, et seq., or 1801,

19   et seq. of the Civil Code of California.

20                           **FIRST CAUSE OF ACTION**

21            **(Specific Performance and Appointment of Receiver –
     Against Defendants Borrower and Does 1-15)**

22

23        7.    Bank realleges and incorporates herein by reference each and every allegation set

24   forth in paragraphs 1 through 6, inclusive, as if fully set forth herein.

25        8.    On or about July 31, 2013, XELAN executed that certain Promissory Note Secured

26   by Deed of Trust in the principal amount of $1,960,000, having a final payment maturity date of

27   September 1, 2043 ("XELAN Note No. 1"), a true and correct copy of which is attached hereto

28   and incorporated herein by this reference as though set forth in full as <u>Exhibit 1</u> .

JMBM | Jeffer Mangels
Butler & Mitchell LLP

9.      Repayment of the outstanding obligations owed by XELAN to the Bank evidenced by the XELAN Note No. 1 are secured by, inter alia, that certain Deed of Trust and Absolute Assignment of Rents and Leases and Security Agreement (and Fixture Filing) dated as of July 31, 2013 (the "XELAN Deed of Trust No. 1"), executed by XELAN in favor of UPF Incorporated, as trustee, for the benefit of Bank, as beneficiary, with respect to the real property commonly known as 1000-1022 Filbert Street, San Francisco, California ("Filbert Street Property"), a true and correct copy of which is attached hereto and incorporated herein by this reference as though set forth in full as Exhibit 2. The XELAN Deed of Trust No. 1 was recorded on August 14, 2013 in the Official Records of the San Francisco County Recorder's Office

10.      On or about July 31, 2013, XELAN executed that certain Assignment of Agreements, Permits, Licenses and Approvals ("XELAN Assignment Agreement No. 1"), a true and correct copy of which is attached hereto and incorporated herein by this reference as though set forth in full as Exhibit 3.

11.      The XELAN Note No. 1, Deed of Trust No. 1 and XELAN Assignment Agreement No. 1 are hereinafter collectively referred as the "XELAN Secured Loan Documents No. 1." All capitalized terms not otherwise defined in this Complaint shall have the meanings ascribed to them in the XELAN Secured Loan Documents No. 1.

12.      On January 26, 2018, the Bank declared an Optional Default under the XELAN Note No. 1 and XELAN Deed of Trust No. 1 because of the failure of XELAN to provide financial statements to the Bank required by Exhibit A to the XELAN Note No. 1 (the "First Event of Default"), and thereafter, on January 29, 2018, revoked XELAN's rights to collect and retain the Payments and demanded in writing that XELAN pay to the Bank the Payments (as that term is defined in the XELAN Deed of Trust No. 1).

13.      Thereafter, on February 27, 2018, the Bank declared another Optional Default under the XELAN Note No. 1 and XELAN Deed of Trust No. 1 because of the failure of XELAN to cure certain breaches which occurred under Section 6.14 of the XELAN Deed of Trust No. 1 which arose as (i) a result of the filing of multiple Personal Property Judgment Liens by the City and County of San Francisco and the People of the State of California arising out of the action

61817238v1                ... COMPLAINT FOR SPECIFIC PERFORMANCE AND APPOINTMENT OF RECEIVER [XELAN]

1  entitled <u>City and County of San Francisco, etc. v. Anne Kihagi, etc., et al.</u>, San Francisco County

2  Superior Court Case No. CGC-15-546152 (the "San Francisco Action"), and (ii) as a result of the

3  entry of that certain Order Granting the City and County of San Francisco's and the People of the

4  State of California's Renoticed Motion for Assignment Order of Rights, Restraining Order and

5  Turnover Order Pursuant to Code of Civil Procedure § 708.510 et seq. filed in the San Francisco

6  Action on December 26, 2017 (the "Second Event of Default").  As a result of the occurrence of

7  the First Event of Default and the Second Event of Default, on February 27, 2018, the Bank

8  accelerated all unpaid obligations owed by XELAN to the Bank pursuant to the XELAN Secured

9  Loan Documents No. 1 and demanded repayment thereof on or before March 9, 2018.

10      14.      Borrower failed to satisfy the demand for payment in full made by the Bank on

11  February 27, 2018 and has wholly failed, refused and neglected to pay the entire outstanding

12  obligations due and owing to the Bank pursuant to the XELAN Secured Loan Documents No. 1.

13      15.      There now remains due, owing and payable to Bank pursuant to the XELAN

14  Secured Loan Documents No. 1, as of March 2, 2018, the principal sum of $1,794,338.36 plus

15  accrued and unpaid interest, attorneys' fees and costs and other amounts which are due and owing

16  with respect to the XELAN Secured Loan Documents No. 1, according to proof to be presented at

17  the time of trial or date of entry of judgment.

18      16.      Bank has duly performed all of the conditions precedent that are required to be

19  performed on its part under the terms of the XELAN Secured Loan Documents No. 1.

20      17.      The XELAN Deed of Trust No. 1 provides in Section 3.1 as follows:

21  3.1  <u>Assignment</u>.  Trustor **irrevocably assigns** to Lender all of Trustor's right, title
    and interest in, to and under:

22

23  (a)      **all present and future leases of the Property** . . . and all other agreements
    of any kind relating to the use or occupancy of the Property or any portion thereof,
    whether such leases, licenses and agreements are now existing or entered into after

24  the date hereof ("Leases"); and

25  (b)      **the rents, issues, deposits and profits of the Property**, including, without
    limitation, all amounts payable and all rights and benefits accruing to Trustor under

26  the Leases ("**Payments**"). . . .

27  **This is a present and absolute assignment**, not an assignment for security
    purposes only, and Lender's right to the Leases and Payments is not contingent

28  upon, and may be exercised without possession of, the Property.

61817238v1

JMBM | Jeffer Mangels Butler & Mitchell LLP

3.2 <u>Grant of License</u>. Lender confers upon Trustor a revocable license ("**License**") to collect and retain the Payments as they become due and payable, until the occurrence of a "**Default**" (as hereinafter defined). **Upon a Default, the License shall be automatically revoked and Lender may collect and apply the Payments pursuant to the terms hereof without notice and without taking possession of the Property.** All Payments thereafter collected by Trustor shall be held by Trustor as trustee under a constructive trust for the benefit of Lender. Trustor hereby irrevocably authorizes and directs the tenants under the Leases to rely upon and comply with any notice or demand by Lender for the payment to Lender of any rental or other sums which may at any time become due under the Leases, or for the performance of any of the tenants' undertakings under the Leases, and the tenants shall have no right or duty to inquire as to whether any Default has actually occurred or is then exiting. Trustor hereby relieves the tenants from any liability to Trustor by reason of relying upon and complying with any such notice demand by Lender. (Emphasis added.)

18.    The XELAN Deed of Trust No. 1, in Section 7.3 provides that if Default occurs thereunder, Bank shall have the following rights:

**7.3    <u>Rights and Remedies</u>**. In addition to the rights and remedies in Section 7.2 above, at any time after a Default, Lender and Trustee shall each have all of the following rights and remedies.

. . .

(b)    <u>Appointment of Receiver</u>. **To apply for and obtain, without regard to the adequacy of any security for the Obligations or the solvency of the Borrower or any other person or entity, a receiver by any court of competent jurisdiction to take charge of all the Property, to manage, operate and carry on any business then being conducted** or that could be conducted on the Property, to carry on, protect, preserve, replace and repair the Property, and receive and collect all rents and revenues and to apply the same to pay the receiver's expenses for the operation of the Trust Property and then payment of

(i)    all taxes and assessments levied against the Property,

(ii)    all amounts due and owing under the Obligations, and

(iii)    current operating costs and expenses, in the order set forth herein.

Upon appointment of said receiver, Trustor shall immediately deliver possession of all of the Property to such receiver. Neither the appointment of a receiver for the Property by any court at the request of Lender or by agreement with Trustor nor the entering into possession of all or any part of the Property by such receiver shall constitute Lender a "mortgagee in possession" or otherwise make Lender responsible or liable in any manner with respect to the Property or the occupancy, operation or use thereof. Trustor agrees that Lender shall have the absolute and unconditional right to the appointment of a receiver in any independent and/or separate action brought by Lender regardless of whether Lender seeks any relief in such action other than the appointment of a receiver. In that respect, Trustor waives any express or implied requirement under applicable law that a receiver may be appointed only ancillary to other judicial or non-judicial relief. Trustor expressly waives any rights it may otherwise have under applicable law to require Lender to make any showing or establish any fact prior to the appointment of a

VERIFIED COMPLAINT FOR SPECIFIC PERFORMANCE AND APPOINTMENT OF RECEIVER [XELAN]

1    receiver. (Emphasis added.)

2        19.    As a result of the occurrence of the Events of Default under the XELAN Secured

3    Loan Documents No. 1, Bank is entitled to enter upon and take possession of the Filbert Street

4    Property through a receiver and to collect the Payments, as provided for in the XELAN Secured

5    Loan Documents No. 1.

6        20.    There is no adequate remedy at law to enforce the provisions of the XELAN

7    Secured Loan Documents No. 1 and it is necessary that a receiver be appointed to take possession

8    and charge of the Filbert Street Property, to conserve and manage the same, and to collect any and

9    all Payments and to protect the Filbert Street Property.

10        21.    Unless a receiver is appointed by this Court to take possession of, care for, manage

11    and operate the Filbert Street Property, Bank's interest in the Filbert Street Property and the

12    Payments, as provided for by the XELAN Secured Loan Documents No. 1, will be lost and

13    materially prejudiced.

14        22.    By reason of said facts, Bank prays that this Court appoint a receiver in accordance

15    with the law to take control of and manage the Filbert Street Property and collect the Payments

16    and protect the Filbert Street Property.

17        23.    For the foregoing reasons, and in aid of the receiver, Bank seeks a temporary

18    restraining order and preliminary and permanent injunctions, restraining and enjoining Defendants

19    and their agents, servants and employees, and all those acting in concert with them, and each of

20    them, from engaging or performing, directly or indirectly, any of the following acts:

21        a.    Demanding, collecting, receiving, or in any other way diverting or using

22    any of the proceeds of the Filbert Street Property and the Payments, including, without limitation,

23    any and all rents or lease payments due or hereafter to become due under any rental or lease

24    agreements;

25        b.    Interfering with or hindering, in any way whatsoever, the receiver in the

26    performance of the receiver's duties herein described and in the performance of any duties incident

27    thereto;

28    / / /

JMBM | Jeffer Mangels
Butler & Mitchell LLP

61780754v3

6

61817238v1

VERIFIED COMPLAINT FOR SPECIFIC PERFORMANCE AND APPOINTMENT OF RECEIVER [XELAN]

1    c.    Interfering in any manner with the Filbert Street Property and the Payments,

2    including their possession;

3    d.    Transferring, concealing, destroying, defacing, or altering any of the

4    instruments, documents, ledger cards, books, records, printouts, or other writings relating to the

5    Filbert Street Property and the Payments, or any portion thereof; and

6    e.    Transferring, conveying, assigning, pledging, deeding, selling, renting,

7    leasing, encumbering, changing ownership, vesting or title to, or otherwise disposing of, the

8    Filbert Street Property and the Payments.

9    **SECOND CAUSE OF ACTION**

10    **(Specific Performance and Appointment of Receiver –
Against Defendants Borrower and Does 16-30)**

11

12    24.    Bank realleges and incorporates herein by reference each and every allegation set

13    forth in paragraphs 1 through 6, inclusive, as if fully set forth herein.

14    25.    On or about June 13, 2013, XELAN executed that certain Promissory Note Secured

15    by Deed of Trust in the principal amount of $1,700,000, having a final payment maturity date of

16    July 1, 2043 ("XELAN Note No. 2"), a true and correct copy of which is attached hereto and

17    incorporated herein by this reference as though set forth in full as Exhibit 4.

18    26.    Repayment of the outstanding obligations owed by XELAN to the Bank evidenced

19    by the XELAN Note No. 2 are secured by, inter alia, that certain Deed of Trust and Absolute

20    Assignment of Rents and Leases and Security Agreement (and Fixture Filing) dated as of June 13,

21    2013 (the "XELAN Deed of Trust No. 2"), executed by XELAN in favor of UPF Incorporated, as

22    trustee, for the benefit of Bank, as beneficiary, with respect to the real property commonly known

23    as 4018-4022 19th Street, San Francisco, California ("19th Street Property"), a true and correct

24    copy of which is attached hereto and incorporated herein by this reference as though set forth in

25    full as Exhibit 5. The XELAN Deed of Trust No. 2 was recorded on June 28, 2013 in the Official

26    Records of the San Francisco County Recorder's Office.

27    27.    On or about June 13, 2013, XELAN executed that certain Assignment of

28    Agreements, Permits, Licenses and Approvals ("XELAN Assignment Agreement No. 3"), a true

VERIFIED COMPLAINT FOR SPECIFIC PERFORMANCE AND APPOINTMENT OF RECEIVER [XELAN]

JMBM    Jeffer Mangels
Butler & Mitchell LLP

1  and correct copy of which is attached hereto and incorporated herein by this reference as though

2  set forth in full as <u>Exhibit 6</u> and incorporated herein by this reference as though set forth in full.

3      28.    The XELAN Note No. 2, Deed of Trust No. 2 and XELAN Assignment Agreement

4  No. 2 are hereinafter collectively referred as the "XELAN Secured Loan Documents No. 2." All

5  capitalized terms not otherwise defined in this Complaint shall have the meanings ascribed to

6  them in the XELAN Secured Loan Documents No. 2.

7      29.    On January 26, 2018, the Bank declared an Optional Default under the XELAN

8  Note No. 2 and XELAN Deed of Trust No. 2 because of the failure of XELAN to provide

9  financial statements to the Bank required by Exhibit A to the XELAN Note (the "First Event of

10  Default"), and thereafter, on January 29, 2018, revoked XELAN's rights to collect and retain the

11  Payments and demanded in writing that XELAN pay to the Bank the Payments (as that term is

12  defined in the XELAN Deed of Trust No. 2).

13      30.    Thereafter, on February 27, 2018, the Bank declared another Optional Default

14  under the XELAN Note No. 2 and XELAN Deed of Trust No. 2 because of the failure of XELAN

15  to cure certain breaches which occurred under Section 6.14 of the XELAN Deed of Trust No. 2

16  which arose as (i) a result of the filing of multiple Personal Property Judgment Liens by the City

17  and County of San Francisco and the People of the State of California arising out of the San

18  Francisco Action, and (ii) as a result of the entry of that certain Order Granting the City and

19  County of San Francisco's and the People of the State of California's Renoticed Motion for

20  Assignment Order of Rights, Restraining Order and Turnover Order Pursuant to Code of Civil

21  Procedure § 708.510 <u>et seq.</u> filed in the San Francisco Action on December 26, 2017 (the "Second

22  Event of Default"). As a result of the occurrence of the First Event of Default and the Second

23  Event of Default, on February 27, 2018, the Bank accelerated all unpaid obligations owed by

24  XELAN to the Bank pursuant to the XELAN Secured Loan Documents No. 2 and demanded

25  repayment thereof on or before March 9, 2018.

26      31.    Borrower failed to satisfy the demand for payment in full made by the Bank on

27  February 27, 2018 and has wholly failed, refused and neglected to pay the entire outstanding

28  obligations due and owing to the Bank pursuant to the XELAN Secured Loan Documents No. 2.

JMBM | Jeffer Mangels
Butler & Mitchell LLP

32.    There now remains due, owing and payable to Bank pursuant to the XELAN Secured Loan Documents No. 2, as of March 2, 2018, the principal sum of $1,548,063.70 plus accrued and unpaid interest, attorneys' fees and costs and other amounts which are due and owing with respect to the XELAN Secured Loan Documents No. 2, according to proof to be presented at the time of trial or date of entry of judgment.

33.    Bank has duly performed all of the conditions precedent that are required to be performed on its part under the terms of the XELAN Secured Loan Documents No. 2.

34.    The XELAN Deed of Trust No. 2 provides in Section 3.1 as follows:

3.1 <u>Assignment</u>. Trustor **irrevocably assigns** to Lender all of Trustor's right, title and interest in, to and under:

(a)    **all present and future leases of the Property** . . . and all other agreements of any kind relating to the use or occupancy of the Property or any portion thereof, whether such leases, licenses and agreements are now existing or entered into after the date hereof ("Leases"); and

(b)    **the rents, issues, deposits and profits of the Property**, including, without limitation, all amounts payable and all rights and benefits accruing to Trustor under the Leases ("**Payments**"). . . .

**This is a present and absolute assignment**, not an assignment for security purposes only, and Lender's right to the Leases and Payments is not contingent upon, and may be exercised without possession of, the Property.

3.2 <u>Grant of License</u>. Lender confers upon Trustor a revocable license ("**License**") to collect and retain the Payments as they become due and payable, until the occurrence of a "**Default**" (as hereinafter defined). **Upon a Default, the License shall be automatically revoked and Lender may collect and apply the Payments pursuant to the terms hereof without notice and without taking possession of the Property**. All Payments thereafter collected by Trustor shall be held by Trustor as trustee under a constructive trust for the benefit of Lender. Trustor hereby irrevocably authorizes and directs the tenants under the Leases to rely upon and comply with any notice or demand by Lender for the payment to Lender of any rental or other sums which may at any time become due under the Leases, or for the performance of any of the tenants' undertakings under the Leases, and the tenants shall have no right or duty to inquire as to whether any Default has actually occurred or is then exiting.  Trustor hereby relieves the tenants from any liability to Trustor by reason of relying upon and complying with any such notice demand by Lender. (Emphasis added.)

35.    The XELAN Deed of Trust No. 2, in Section 7.3 provides that if Default occurs thereunder, Bank shall have the following rights:

7.3    **Rights and Remedies**. In addition to the rights and remedies in Section 7.2 above, at any time after a Default, Lender and Trustee shall each have all of the

JMBM | Jeffer Mangels Butler & Mitchell LLP

following rights and remedies.

. . .

**(b)    Appointment of Receiver.    To apply for and obtain, without regard to the adequacy of any security for the Obligations or the solvency of the Borrower or any other person or entity, a receiver by any court of competent jurisdiction to take charge of all the Property, to manage, operate and carry on any business then being conducted** or that could be conducted on the Property, to carry on, protect, preserve, replace and repair the Property, and receive and collect all rents and revenues and to apply the same to pay the receiver's expenses for the operation of the Trust Property and then payment of

(i)     all taxes and assessments levied against the Property,

(ii)    all amounts due and owing under the Obligations, and

(iii)   current operating costs and expenses, in the order set forth herein.

Upon appointment of said receiver, Trustor shall immediately deliver possession of all of the Property to such receiver.  Neither the appointment of a receiver for the Property by any court at the request of Lender or by agreement with Trustor nor the entering into possession of all or any part of the Property by such receiver shall constitute Lender a "mortgagee in possession" or otherwise make Lender responsible or liable in any manner with respect to the Property or the occupancy, operation or use thereof.  Trustor agrees that Lender shall have the absolute and unconditional right to the appointment of a receiver in any independent and/or separate action brought by Lender regardless of whether Lender seeks any relief in such action other than the appointment of a receiver.  In that respect, Trustor waives any express or implied requirement under applicable law that a receiver may be appointed only ancillary to other judicial or non-judicial relief.  Trustor expressly waives any rights it may otherwise have under applicable law to require Lender to make any showing or establish any fact prior to the appointment of a receiver. (Emphasis added.)

36.    As a result of the occurrence of the Events of Default under the XELAN Secured Loan Documents No. 2, Bank is entitled to enter upon and take possession of the 19th Street Property through a receiver and to collect the Payments, as provided for in the XELAN Secured Loan Documents No. 2.

37.    There is no adequate remedy at law to enforce the provisions of the XELAN Secured Loan Documents No. 2 and it is necessary that a receiver be appointed to take possession and charge of the 19th Street Property, to conserve and manage the same, and to collect any and all Payments and to protect the 19th Street Property.

38.    Unless a receiver is appointed by this Court to take possession of, care for, manage and operate the 19th Street Property, Bank's interest in the 19th Street Property and the Payments,

as provided for by the XELAN Secured Loan Documents No. 2, will be lost and materially prejudiced.

39.    By reason of said facts, Bank prays that this Court appoint a receiver in accordance with the law to take control of and manage the 19th Street Property and collect the Payments and protect the 19th Street Property.

40.    For the foregoing reasons, and in aid of the receiver, Bank seeks a temporary restraining order and preliminary and permanent injunctions, restraining and enjoining Defendants and their agents, servants and employees, and all those acting in concert with them, and each of them, from engaging or performing, directly or indirectly, any of the following acts:

a.    Demanding, collecting, receiving, or in any other way diverting or using any of the proceeds of the 19th Street Property and the Payments, including, without limitation, any and all rents or lease payments due or hereafter to become due under any rental or lease agreements;

b.    Interfering with or hindering, in any way whatsoever, the receiver in the performance of the receiver's duties herein described and in the performance of any duties incident thereto;

c.    Interfering in any manner with the 19th Street Property and the Payments, including their possession;

d.    Transferring, concealing, destroying, defacing, or altering any of the instruments, documents, ledger cards, books, records, printouts, or other writings relating to the 19th Street Property and the Payments, or any portion thereof; and

e.    Transferring, conveying, assigning, pledging, deeding, selling, renting, leasing, encumbering, changing ownership, vesting or title to, or otherwise disposing of, the 19th Street Property and the Payments.

**PRAYER**

WHEREFORE, Bank prays for judgment against the Defendants, and each of them, as to all causes of action as follows:

///

61817238v1        RIFIED COMPLAINT FOR SPECIFIC PERFORMANCE AND APPOINTMENT OF RECEIVER [XELAN]

**A.     AS TO XELAN AND DOES 1 THROUGH 15, INCLUSIVE AS TO THE FIRST CAUSE OF ACTION:**

1.     That a receiver (in such capacity, the "Receiver") be appointed to take possession and charge of the Filbert Street Property to conserve and manage the same, to collect any and all Payments and to protect the Filbert Street Property;

2.     That the Defendants, and anyone holding under said Defendants, be ordered to deliver possession of the Filbert Street Property and the Payments to the Receiver forthwith;

3.     That the Receiver, after taking possession of the Filbert Street Property, be permitted to, among other things, do the following:

a.     To enter, gain access to and take possession of the Filbert Street Property, and the Payments; to exclude Borrower or anyone claiming under or through Borrower therefrom who are not under valid leases or rental agreements; to use, operate, manage and control the Filbert Street Property; to care for, preserve, protect, secure and maintain the Filbert Street Property; and to do all things to incur the risks and obligations ordinarily incurred by owners, managers and operators of similar businesses and properties, as such receiver, and not risks or obligations so incurred shall be at the personal risk or obligation of the Receiver, but shall be at the risk or obligation of the receivership estate; to receive the Payments and to protect the Filbert Street Property;

b.     To demand, collect, and receive the proceeds of the Payments in possession of Borrower, its agents, servants, employees or representatives, and all persons or entities acting under or in concert with Borrower, or the proceeds of the Payments that are now due and hereafter due from the tenants or lessees of any portion of the Filbert Street Property;

c.     To rent or lease from time to time any part of the Filbert Street Property and to keep the buildings thereon insured and in good repair;

d.     To take possession of and receive from any and all banks, savings and loan associations and/or any financial institutions any monies and funds on deposit in said banks, savings and loan associations and/or any financial institutions in the name of the Defendants, to the extent that said accounts contain the Payments, the issues and profits of the

1  Filbert Street Property, and the Receiver's receipt of said monies and funds shall discharge said

2  banks, savings and loan associations and/or any financial institutions from further responsibility

3  for accounting to said account holder for monies and funds for which the Receiver shall give his or

4  her receipt;

5          e.      To take possession of all the books and records pertaining to the

6  Filbert Street Property and the Payments, wherever located, as the Receiver deems necessary for

7  the proper administration, management and/or control of the receivership estate, but said books

8  and records shall be made available to Borrower, its agents, servants, employees or

9  representatives, and all persons or entities acting under or in concert with Borrower as is

10  reasonably necessary;

11          f.      To execute and prepare all documents and to perform all acts, either

12  in the name of the Defendants or in the Receiver's own name, which are necessary or incidental to

13  preserving, protecting, managing and/or controlling the property of the receivership estate;

14          g.      To employ agents, servants, employees, guards, clerks, accountants,

15  on-site managers and management consultants to administer the receivership estate and to collect

16  the proceeds of the Payments, manage the Filbert Street Property, and to keep the same and in

17  good repair, if the Receiver shall deem necessary, and to pay the reasonable value of said services

18  out of the Payments received;

19          h.      To require Defendants to notify the Receiver upon the Receiver's

20  taking possession of the Filbert Street Property whether or not there is sufficient insurance

21  coverage on the Filbert Street Property.  If sufficient insurance coverage does exist, Defendants

22  shall be responsible for naming, and is hereby ordered to name, the Receiver as an additional

23  insured on the insurance policy(ies) for the period that the Receiver shall be in possession of the

24  Filbert Street Property.  If there is insufficient insurance coverage, it is hereby ordered that the

25  Receiver shall have thirty (30) working days to procure said insurance on the Filbert Street

26  Property, provided that the Receiver has the funds available to do so, and during said period the

27  Receiver shall not be personally responsible for claims arising from or out of the procurement of

28  insurance;

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1            i.    To hold the monies coming into possession of the Receiver pursuant

2    to his or her operation of the business thereto, and not expended for any of the purposes herein

3    authorized, for the payment of Borrower's obligation to Bank sued upon in their Complaint,

4    subject to such orders as this Court may hereinafter issue as to their disposition;

5            j.    To establish bank accounts for the deposit of monies and funds

6    collected and received in connection with the Receiver's administration of the receivership estate,

7    at any institution the Receiver deems appropriate, provided that any funds on deposit at said

8    financial institution are fully insured by an agency of the United States government;

9            k.    To institute ancillary proceedings in this state or in other states and

10    countries as are necessary to preserve and protect the receivership estate, and the Receiver may

11    engage the services of legal counsel, if necessary, without further application to the Court.  The

12    Receiver may pay for such services from the funds of the receivership estate;

13            l.    To prepare periodic interim statements reflecting the Receiver's fees

14    and administrative costs and expenses incurred for the period of the Receiver's operation and

15    administration of the receivership estate;

16            m.    To have the authority to engage the services of one or more

17    environmental consultants to perform environmental reviews as necessary, including a Phase I, II

18    or III Environmental Audits at the Filbert Street Property.  The Receiver may pay for such services

19    from the funds of the receivership estate;

20            n.    To obtain a temporary restraining order and preliminary and

21    permanent injunctions restraining and enjoining the Defendants, their servants, agents and

22    employees, and all those acting in concert with them, and each of them, from engaging in, or

23    performing, directly or indirectly, any or all of the following acts:

24            (1)    Demanding, collecting, receiving or in any way diverting or

25    using any of the Filbert Street Property, or the Payments, including, without limitation, the rents or

26    lease payments from any of the guests, tenants or lessees of the Filbert Street Property;

27            (2)    Interfering with or hindering in any way whatsoever the

28    Receiver in the performance of the Receiver's duties herein described and in the performance of

JMBM | Jeffer Mangels Butler & Mitchell LLP

61817238v1

COMPLAINT FOR SPECIFIC PERFORMANCE AND APPOINTMENT OF RECEIVER [XELAN]

1  any duties incident thereto;

2              (3)      Interfering in any manner with the Filbert Street Property or

3  the Payments including their possession;

4              (4)      Transferring, conveying, assigning, pledging, deeding,

5  selling, renting, leasing, encumbering, changing ownership of, vesting of title to, or otherwise

6  disposing of the Filbert Street Property, and the Payments; and

7              (5)      Terminating or otherwise affecting any of the utilities which

8  service the Filbert Street Property.

9  **B.**      **AS TO XELAN AND DOES 16 THROUGH 30, INCLUSIVE AS TO THE**
10        **SECOND CAUSE OF ACTION:**

11        4.      That a Receiver be appointed to take possession and charge of the 19th

12  Street Property to conserve and manage the same, to collect any and all Payments and to protect

13  the 19th Street Property;

14        5.      That the Defendants, and anyone holding under said Defendants, be ordered

15  to deliver possession of the 19th Street Property and the Payments to the Receiver forthwith;

16        6.      That the Receiver, after taking possession of the 19th Street Property, be

17  permitted to, among other things, do the following:

18        a.      To enter, gain access to and take possession of the 19th Street

19  Property, and the Payments; to exclude Borrower or anyone claiming under or through Borrower

20  therefrom who are not under valid leases or rental agreements; to use, operate, manage and control

21  the 19th Street Property; to care for, preserve, protect, secure and maintain the 19th Street

22  Property; and to do all things to incur the risks and obligations ordinarily incurred by owners,

23  managers and operators of similar businesses and properties, as such receiver, and not risks or

24  obligations so incurred shall be at the personal risk or obligation of the Receiver, but shall be at

25  the risk or obligation of the receivership estate; to receive the Payments and to protect the 19th

26  Street Property;

27        b.      To demand, collect, and receive the proceeds of the Payments in

28  possession of Borrower, its agents, servants, employees or representatives, and all persons or

JMBM | Jeffer Mangels Butler & Mitchell LLP

61780754v3

15

[FOR] SPECIFIC PERFORMANCE AND APPOINTMENT OF RECEIVER [XELAN]

1  entities acting under or in concert with Borrower, or the proceeds of the Payments that are now

2  due and hereafter due from the tenants or lessees of any portion of the 19th Street Property;

3          c.      To rent or lease from time to time any part of the 19th Street

4  Property and to keep the buildings thereon insured and in good repair;

5          d.      To take possession of and receive from any and all banks, savings

6  and loan associations and/or any financial institutions any monies and funds on deposit in said

7  banks, savings and loan associations and/or any financial institutions in the name of the

8  Defendants, to the extent that said accounts contain the Payments, the issues and profits of the

9  19th Street Property, and the Receiver's receipt of said monies and funds shall discharge said

10  banks, savings and loan associations and/or any financial institutions from further responsibility

11  for accounting to said account holder for monies and funds for which the Receiver shall give his or

12  her receipt;

13          e.      To take possession of all the books and records pertaining to the

14  19th Street Property and the Payments, wherever located, as the Receiver deems necessary for the

15  proper administration, management and/or control of the receivership estate, but said books and

16  records shall be made available to Borrower, its agents, servants, employees or representatives,

17  and all persons or entities acting under or in concert with Borrower as is reasonably necessary;

18          f.      To execute and prepare all documents and to perform all acts, either

19  in the name of the Defendants or in the Receiver's own name, which are necessary or incidental to

20  preserving, protecting, managing and/or controlling the property of the receivership estate;

21          g.      To employ agents, servants, employees, guards, clerks, accountants,

22  on-site managers and management consultants to administer the receivership estate and to collect

23  the proceeds of the Payments, manage the 19th Street Property, and to keep the same and in good

24  repair, if the Receiver shall deem necessary, and to pay the reasonable value of said services out of

25  the Payments received;

26          h.      To require Defendants to notify the Receiver upon the Receiver's

27  taking possession of the 19th Street Property whether or not there is sufficient insurance coverage

28  on the 19th Street Property. If sufficient insurance coverage does exist, Defendants shall be

JMBM | Jeffer Mangels Butler & Mitchell LLP

1 responsible for naming, and is hereby ordered to name, the Receiver as an additional insured on

2 the insurance policy(ies) for the period that the Receiver shall be in possession of the 19th Street

3 Property. If there is insufficient insurance coverage, it is hereby ordered that the Receiver shall

4 have thirty (30) working days to procure said insurance on the 19th Street Property, provided that

5 the Receiver has the funds available to do so, and during said period the Receiver shall not be

6 personally responsible for claims arising from or out of the procurement of insurance;

7           i.      To hold the monies coming into possession of the Receiver pursuant

8 to his or her operation of the business thereto, and not expended for any of the purposes herein

9 authorized, for the payment of Borrower's obligation to Bank sued upon in their Complaint,

10 subject to such orders as this Court may hereinafter issue as to their disposition;

11           j.      To establish bank accounts for the deposit of monies and funds

12 collected and received in connection with the Receiver's administration of the receivership estate,

13 at any institution the Receiver deems appropriate, provided that any funds on deposit at said

14 financial institution are fully insured by an agency of the United States government;

15           k.      To institute ancillary proceedings in this state or in other states and

16 countries as are necessary to preserve and protect the receivership estate, and the Receiver may

17 engage the services of legal counsel, if necessary, without further application to the Court. The

18 Receiver may pay for such services from the funds of the receivership estate;

19           l.      To prepare periodic interim statements reflecting the Receiver's fees

20 and administrative costs and expenses incurred for the period of the Receiver's operation and

21 administration of the receivership estate;

22           m.      To have the authority to engage the services of one or more

23 environmental consultants to perform environmental reviews as necessary, including a Phase I, II

24 or III Environmental Audits at the 19th Street Property. The Receiver may pay for such services

25 from the funds of the receivership estate;

26           n.      To obtain a temporary restraining order and preliminary and

27 permanent injunctions restraining and enjoining the Defendants, their servants, agents and

28 employees, and all those acting in concert with them, and each of them, from engaging in, or

JMBM | Jeffer Mangels Butler & Mitchell LLP

1    performing, directly or indirectly, any or all of the following acts:

2                    (1)    Demanding, collecting, receiving or in any way diverting or

3    using any of the 19th Street Property, or the Payments, including, without limitation, the rents or

4    lease payments from any of the guests, tenants or lessees of the 19th Street Property;

5                    (2)    Interfering with or hindering in any way whatsoever the

6    Receiver in the performance of the Receiver's duties herein described and in the performance of

7    any duties incident thereto;

8                    (3)    Interfering in any manner with the 19th Street Property or

9    the Payments including their possession;

10                   (4)    Transferring, conveying, assigning, pledging, deeding,

11   selling, renting, leasing, encumbering, changing ownership of, vesting of title to, or otherwise

12   disposing of the 19th Street Property, and the Payments; and

13                   (5)    Terminating or otherwise affecting any of the utilities which

14   service the 19th Street Property.

15   **C.    AS TO ALL DEFENDANTS AND ALL CAUSES OF ACTION:**

16        1.    For costs of suit herein incurred;

17        2.    For such other and further relief as the Court may deem just and proper.

18

19   DATED: March 12, 2018            JEFFER MANGELS BUTLER & MITCHELL LLP

20

21                                By:  _____

22                                     ROBERT B. KAPLAN, ESQ.
                                       Attorneys for Plaintiff UMPQUA BANK

23

24

25

26

27

28

JMBM | Jeffer Mangels Butler & Mitchell LLP

61817238v1            0754v3            18            60

1                                **VERIFICATION**

2         I, Beverly Tengco, am a Vice President of Umpqua Bank, an Oregon corporation.  I am

3 duly authorized to verify this Complaint on behalf of Plaintiff Umpqua Bank.  I verify this

4 Complaint based upon, in part, my own personal knowledge, and in part, information gathered for

5 me by employees of Umpqua Bank who have a business duty to accurately record such

6 information.  I am informed and believe that no one person has personal knowledge of all the

7 matters set forth in the attached Complaint.  Based upon the above, I verify that the facts set forth

8 in the attached Complaint are truthful and accurate.

9         I declare under penalty of perjury under the laws of the State of California that the

10 foregoing is true and correct.

11

12 DATED: March 9, 2018                                       
                                    BEVERLY TENGCO

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JMBM | Jeffer Mangels Butler & Mitchell LLP