1  JEFFER MANGELS BUTLER & MITCHELL LLP
   ROBERT B. KAPLAN, P.C. (Bar No. 76950)
2  *rbk@jmbm.com*
   Two Embarcadero Center, 5th Floor
3  San Francisco, California 94111-3813
   Telephone:    (415) 398-8080
4  Facsimile:    (415) 398-5584

5  JEFFER MANGELS BUTLER & MITCHELL LLP
   THOMAS M. GEHER (Bar No. 130588)
6  *tmg@jmbm.com*
   1900 Avenue of the Stars, 7th Floor
7  Los Angeles, California 90067-4308
   Telephone:    (310) 203-8080
8  Facsimile:    (310) 203-0567

9  Attorneys for UMPQUA BANK

10

11

12                 UNITED STATES BANKRUPTCY COURT

13                 CENTRAL DISTRICT OF CALIFORNIA

14                     LOS ANGELES DIVISION

15

16  In re                                Case No. 2:19-bk-14626-NB

17  XELAN PROP 1, LLC,                    Chapter 11

18         Debtors.                       **DECLARATION OF ROBERT B.
                                          KAPLAN IN SUPPORT OF MOTION TO
19                                        DISMISS CHAPTER 11 CASE WITH
                                          PREJUDICE [11 U.S.C. SECTION 1112(b)]**

20
                                          **VOLUME TWO**
21
                                          **EXHIBIT 7, PART 1**
22
                                          Date:          April 30, 2019
23
                                          Time:          2:00 p.m.
24
                                          Place:         Courtroom 1545
25                                                       255 East Temple Street
                                                         Los Angeles, CA
26

27

28

JMBM | Jeffer Mangels Butler & Mitchell LLP

# Exhibit 7

1  JEFFER MANGELS BUTLER & MITCHELL LLP
   ROBERT B. KAPLAN, P.C. (Bar No. 76950)
2  *rbk@jmbm.com*
   Two Embarcadero Center, 5th Floor
3  San Francisco, California 94111-3813
   Telephone:    (415) 398-8080
4  Facsimile:    (415) 398-5584

5  Attorneys for Plaintiff UMPQUA BANK

ENDORSED
FILED
Superior Court of California
County of San Francisco

MAR 13 2018

CLERK OF THE COURT
VANESSA WU
BY:
Deputy Clerk

6

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF SAN FRANCISCO – UNLIMITED JURISDICTION

10

11  UMPQUA BANK, a state chartered bank,         Case No. CGC-18-564941

12              Plaintiff,                        **DECLARATION OF BEVERLY TENGCO
                                                  IN SUPPORT OF EX PARTE**
13       v.                                       **APPLICATION FOR IMMEDIATE
                                                  APPOINTMENT OF RECEIVER AND**
14  XELAN PROP 1, LLC, a California limited       **PRELIMINARY INJUNCTION IN AID OF**
    liability company; and DOES 1-30, inclusive, **RECEIVER**
15
                Defendants.                       By Fax
16
                                                  Date:         March 14, 2018
17                                                Time:         11:00 a.m.
                                                  Dept.:        501
18
                                                  Action Filed: March 12. 2018
19                                                Trial Date:   None Set

20       I, Beverly Tengco, declare:

21       1.      I am employed by Umpqua Bank ("Bank") in the capacity of Vice

22  President/Special Assets Officer at its offices located in Elk Grove, California.  The Bank is the

23  successor in interest by merger to Sterling Savings Bank.  If called upon to testify as to the facts

24  set forth in this declaration, I could and would competently testify thereto since the facts set forth

25  herein are personally known to me to be true, except as to those matters which I state on

26  information and belief and as to those matters, I believe them to be true.

27       2.      I am one of the custodians of the books, records, files and credit records of the

28  Bank as those books, records, files and credit records pertain to loans or extensions of credit made

61786794v3

1

DECLARATION OF BEVERLY TENGCO IMMEDIATE APPOINTMENT OF RECEIVER, ETC.; [XELAN]

1  by Bank to XELAN Prop 1, LLC ("XELAN" or "Borrower").  I have personally worked on said

2  books, records, files and credit records and, as to the following facts, I know them to be true of my

3  own knowledge or have gained knowledge of them from the business records of the Bank, which

4  records are maintained in the ordinary course of the Bank's business.

5      3.    The records of the Bank as they pertain to the loans and extensions of credit which

6  are the subject matter of this action are kept in the regular course of the Bank's business.  The

7  records are carefully prepared to reflect all acts, conditions and events at or near the time said acts,

8  conditions or events occurred and the entries made therein are made by persons who have

9  knowledge of the facts or have a business duty to maintain those records.  Based on my personal

10  knowledge and experience, I know that these records are accurate and trustworthy.

11  **GENERAL BACKGROUND AND EXECUTION OF**
**THE XELAN SECURED LOAN DOCUMENTS NO. 1**

12

13      4.    The first real property which is the subject of the Bank's Ex Parte Application for

14  Immediate Appointment of Receiver, etc. is commonly known as 1000-1022 Filbert Street, San

15  Francisco, California ("Filbert Street Property") which consists of seven residential units.  The last

16  information provided by the Borrower to the Bank's appraiser was that the Filbert Street Property

17  generated gross monthly rental income of approximately $1,543. Subsequently, the City of San

18  Francisco provided a redacted tenant list in February 2018 which reflected monthly rents of

19  $23,152.

20      5.    The individual responsible for the operation of the Filbert Street Property is Anna

21  Kihagi, the Manager of the Borrower, email address: anna d <94147a@gmail.com, phone number:

22  (323) 244-9178.

23      6.    On or about July 31, 2013, XELAN executed that certain Promissory Note Secured

24  by Deed of Trust in the principal amount of $1,960,000, having a final payment maturity date of

25  September 1, 2043 ("XELAN Note No. 1"), a true and correct copy of which is attached hereto

26  Exhibit 1.

27      7.    Repayment of the outstanding obligations owed by XELAN to the Bank evidenced

28  by the XELAN Note No. 1 are secured by, inter alia, that certain Deed of Trust and Absolute

61786794v3

2

DECLARATION OF BEVERLY TENGCO IMMEDIATE APPOINTMENT OF RECEIVER, ETC.; [XELAN]

JMBM | Jeffer Mangels Butler & Mitchell LLP

1  Assignment of Rents and Leases and Security Agreement (and Fixture Filing) dated as of July 31,

2  2013 (the "XELAN Deed of Trust No. 1"), executed by XELAN in favor of UPF Incorporated, as

3  trustee, for the benefit of Bank, as beneficiary, with respect to the Filbert Street Property, a true

4  and correct copy of which is attached hereto as Exhibit 2.  The XELAN Deed of Trust No. 1 was

5  recorded on August 14, 2013 in the Official Records of the San Francisco County Recorder's

6  Office.

7          8.      On or about July 31, 2013, XELAN executed that certain Assignment of

8  Agreements, Permits, Licenses and Approvals ("XELAN Assignment Agreement No. 1"), a true

9  and correct copy of which is attached hereto as Exhibit 3.

10         9.      The XELAN Note No. 1, XELAN Deed of Trust No. 1 and XELAN Assignment

11  Agreement No. 1 are hereinafter collectively referred as the "XELAN Secured Loan Documents

12  No. 1." All capitalized terms not otherwise defined in this Declaration shall have the meanings

13  ascribed to them in the XELAN Secured Loan Documents No. 1.

14  **DEFAULTS UNDER THE XELAN SECURED LOAN DOCUMENTS NO. 1 AND
    AMOUNTS DUE THEREUNDER**

15

16         10.     On January 26, 2018, the Bank declared an Optional Default under the XELAN

17  Note No. 1 and XELAN Deed of Trust No. 1 because of the failure of XELAN to provide

18  financial statements to the Bank required by Exhibit A to the XELAN Note No. 1 (the "First Event

19  of Default") as set forth in the letter sent by the Bank to the Borrower, a true and correct copy of

20  which is attached hereto as Exhibit 4, and revoked the license granted to XELAN to retain the

21  Payments (as that term is defined in the XELAN Deed of Trust No. 1 and includes rents generated

22  from the Filbert Street Property).  Thereafter, on January 29, 2018, the Bank revoked XELAN's

23  rights to collect and retain the Payments and demanded in writing that XELAN pay to the Bank

24  the Payments as set forth in the Bank's letter to the Borrower dated January 29, 2018, a true and

25  correct copy of which is attached hereto as Exhibit 5.

26         11.     Thereafter, on February 27, 2018, the Bank declared another Optional Default

27  under the XELAN Note No. 1 and XELAN Deed of Trust No. 1 because of the failure of XELAN

28  to cure certain breaches which occurred under Section 6.14 of the XELAN Deed of Trust No. 1

61786794v3

1  which arose as (i) a result of the filing of multiple Personal Property Judgment Liens by the City

2  and County of San Francisco and the People of the State of California (the "City") arising out of

3  the action entitled <u>City and County of San Francisco, etc. v. Anne Kihagi, etc., et al.</u>, San

4  Francisco County Superior Court Case No. CGC-15-546152 (the "San Francisco Action"), and (ii)

5  as a result of the entry of that certain Order Granting the City and County of San Francisco's and

6  the People of the State of California's Renoticed Motion for Assignment Order of Rights,

7  Restraining Order and Turnover Order Pursuant to Code of Civil Procedure § 708.510 et seq. filed

8  in the San Francisco Action on December 26, 2017 (the "Second Event of Default"), as more

9  specifically set forth in the Bank's letter to the Borrower dated February 27, 2018, a true and

10 correct copy of which is attached hereto as <u>Exhibit 6</u>.  As a result of the occurrence of the First

11 Event of Default and the Second Event of Default, on February 27, 2018, the Bank also

12 accelerated all unpaid obligations owed by XELAN to the Bank pursuant to the Secured Loan

13 Documents and demanded repayment thereof on or before March 9, 2018, as set forth in the

14 Bank's letter to the Borrower dated February 27, 2018, <u>Exhibit 6</u> hereto.

15      12.     Borrower failed to satisfy the demand for payment in full made by the Bank on

16 February 27, 2018 and has wholly failed, refused and neglected to pay the entire outstanding

17 obligations due and owing to the Bank pursuant to the XELAN Secured Loan Documents No. 1.

18      13.     There now remains due, owing and payable to Bank pursuant to the XELAN

19 Secured Loan Documents No. 1, as of March 2, 2018, the principal sum of $1,794,338.36 plus

20 accrued and unpaid interest, attorneys' fees and costs and other amounts which are due and owing

21 with respect to the XELAN Secured Loan Documents No. 1, according to proof to be presented at

22 the time of trial or date of entry of judgment.

23      14.     Bank has duly performed all of the conditions precedent that are required to be

24 performed on its part under the terms of the XELAN Secured Loan Documents No. 1.

25           **GENERAL BACKGROUND AND EXECUTION OF SECURED**
             **LOAN DOCUMENTS NO. 2**
26

27      15.     The second real property which is the subject of the Bank's Ex Parte Application

28 for Immediate Appointment of Receiver, etc. is commonly known as 4018-4022 19th Street, San

61786794v3

4

DECLARATION OF BEVERLY TENGCO IMMEDIATE APPOINTMENT OF RECEIVER, ETC.; [XELAN]

JMBM | Jeffer Mangels Butler & Mitchell LLP

1    Francisco, California ("19th Street Property") consisting of six residential units. The last

2    information provided by the Borrower to the Bank's appraiser was that the 19th Street Property

3    generated gross monthly rental income of $14,605. In February 2018, a redacted tenant list

4    provided to the Bank by the City of San Francisco reflected gross monthly rental income of

5    $24,375.

6        16.      The individual responsible for the operation of the 19th Street Property is Anna

7    Kihagi, the Manager of the Borrower, email address: anna d <94147a@gmail.com, phone number:

8    (323) 244-9178.

9        17.      On or about June 13, 2013, XELAN executed that certain Promissory Note Secured

10    by Deed of Trust in the principal amount of $1,700,000, having a final payment maturity date of

11    July 1, 2043 ("XELAN Note No. 2"), a true and correct copy of which is attached hereto as

12    Exhibit 7.

13        18.      Repayment of the outstanding obligations owed by XELAN to the Bank evidenced

14    by the XELAN Note No. 2 are secured by, inter alia, that certain Deed of Trust and Absolute

15    Assignment of Rents and Leases and Security Agreement (and Fixture Filing) dated as of June 13,

16    2013 (the "XELAN Deed of Trust No. 2"), executed by XELAN in favor of UPF Incorporated, as

17    trustee, for the benefit of Bank, as beneficiary, with respect to the 19th Street Property, a true and

18    correct copy of which is attached hereto as Exhibit 8. The XELAN Deed of Trust No. 2 was

19    recorded on June 28, 2013 in the Official Records of the San Francisco County Recorder's Office

20        19.      On or about June 13, 2013, XELAN executed that certain Assignment of

21    Agreements, Permits, Licenses and Approvals ("XELAN Assignment Agreement No. 3"), a true

22    and correct copy of which is attached hereto as Exhibit 9.

23        20.      The XELAN Note No. 2, XELAN Deed of Trust No. 2 and XELAN Assignment

24    Agreement No. 2 are hereinafter collectively referred as the "XELAN Secured Loan Documents

25    No. 2." All capitalized terms not otherwise defined in this Declaration shall have the meanings

26    ascribed to them in the XELAN Secured Loan Documents No. 2.

27

28

JMBM | Jeffer Mangels Butler & Mitchell LLP

## DEFAULTS UNDER THE XELAN LOAN DOCUMENTS NO. 2 AND AMOUNTS DUE THEREUNDER

21.    On January 26, 2018, the Bank declared an Optional Default under the XELAN Note No. 2 and XELAN Deed of Trust No. 2 because of the failure of XELAN to provide financial statements to the Bank required by Exhibit A to the XELAN Note No. 2 (the "First Event of Default") as set forth in the letter sent by the Bank to the Borrower, a true and correct copy of which is attached hereto as Exhibit 4, and revoked the license granted to XELAN to retain the Payments (as that term is defined in the XELAN Deed of Trust No. 2 and includes rents generated from the 19th Street Property).  Thereafter, on January 29, 2018, the Bank revoked XELAN's rights to collect and retain the Payments and demanded in writing that XELAN pay to the Bank the Payments as set forth in the Bank's letter to the Borrower dated January 29, 2018, a true and correct copy of which is attached hereto as Exhibit 5.

22.    Thereafter, on February 27, 2018, the Bank declared another Optional Default under the XELAN Note No. 2 and XELAN Deed of Trust No. 2 because of the failure of XELAN to cure certain breaches which occurred under Section 6.14 of the XELAN Deed of Trust No. 2 which arose as (i) a result of the filing of multiple Personal Property Judgment Liens by the City arising out of the San Francisco Action, and (ii) as a result of the entry of that certain Order Granting the City and County of San Francisco's and the People of the State of California's Renoticed Motion for Assignment Order of Rights, Restraining Order and Turnover Order Pursuant to Code of Civil Procedure § 708.510 et seq. filed in the San Francisco Action on December 26, 2017 (the "Second Event of Default"), as more specifically set forth in the Bank's letter to the Borrower dated February 27, 2018, a true and correct copy of which is attached hereto as Exhibit 6.  As a result of the occurrence of the First Event of Default and the Second Event of Default, on February 27, 2018, the Bank also accelerated all unpaid obligations owed by XELAN to the Bank pursuant to the XELAN Secured Loan Documents No. 2 and demanded repayment thereof on or before March 9, 2018, as set forth in the Bank's letter to the Borrower dated February 27, 2018, Exhibit 6 hereto.

23.    Borrower failed to satisfy the demand for payment in full made by the Bank on

61786794v3

DECLARATION OF BEVERLY TENGCO IMMEDIATE APPOINTMENT OF RECEIVER, ETC.;  [XELAN]

1  February 27, 2018 and has wholly failed, refused and neglected to pay the entire outstanding

2  obligations due and owing to the Bank pursuant to the XELAN Secured Loan Documents No. 2.

3      24.    There now remains due, owing and payable to Bank pursuant to the XELAN

4  Secured Loan Documents No. 2, as of March 2, 2018, the principal sum of $1,548,063.70 plus

5  accrued and unpaid interest, attorneys' fees and costs and other amounts which are due and owing

6  with respect to the XELAN Secured Loan Documents No. 2, according to proof to be presented at

7  the time of trial or date of entry of judgment.

8      25.    Bank has duly performed all of the conditions precedent that are required to be

9  performed on its part under the terms of the XELAN Secured Loan Documents No. 2.

10  **FACTS JUSTIFYING THE APPOINTMENT OF A RECEIVER**

11      26.    The XELAN Deed of Trust No. 1 and the XELAN Deed of Trust No. 2

12  (collectively, the "Deeds of Trust") provide in Section 3.1 as follows:

13  3.1  Assignment.  Trustor **irrevocably assigns** to Lender all of Trustor's right, title
and interest in, to and under:

14

15  (a)    **all present and future leases of the Property** . . . and all other agreements
of any kind relating to the use or occupancy of the Property or any portion thereof,
whether such leases, licenses and agreements are now existing or entered into after

16  the date hereof ("Leases"); and

17  (b)    **the rents, issues, deposits and profits of the Property**, including, without
limitation, all amounts payable and all rights and benefits accruing to Trustor under

18  the Leases ("**Payments**"). . . .

19  **This is a present and absolute assignment**, not an assignment for security
purposes only, and Lender's right to the Leases and Payments is not contingent

20  upon, and may be exercised without possession of, the Property.

21  3.2  Grant of License.  Lender confers upon Trustor a revocable license ("**License**")
to collect and retain the Payments as they become due and payable, until the

22  occurrence of a "**Default**" (as hereinafter defined).  **Upon a Default, the License
shall be automatically revoked and Lender may collect and apply the
Payments pursuant to the terms hereof without notice and without taking**

23  **possession of the Property.**  All Payments thereafter collected by Trustor shall be
held by Trustor as trustee under a constructive trust for the benefit of Lender.

24  Trustor hereby irrevocably authorizes and directs the tenants under the Leases to
rely upon and comply with any notice or demand by Lender for the payment to

25  Lender of any rental or other sums which may at any time become due under the
Leases, or for the performance of any of the tenants' undertakings under the Leases,

26  and the tenants shall have no right or duty to inquire as to whether any Default has
actually occurred or is then existing.  Trustor hereby relieves the tenants from any

27  liability to Trustor by reason of relying upon and complying with any such notice

28  demand by Lender.  (Emphasis added.)

61786794v3

JMBM | Jeffer Mangels Butler & Mitchell LLP

27.    The Deeds of Trust, in Section 7.3, provide that if Default occurs thereunder, Bank shall have the following rights:

**7.3    Rights and Remedies**. In addition to the rights and remedies in Section 7.2 above, at any time after a Default, Lender and Trustee shall each have all of the following rights and remedies.

. . .

(b)    **Appointment of Receiver**.  **To apply for and obtain, without regard to the adequacy of any security for the Obligations or the solvency of the Borrower or any other person or entity, a receiver by any court of competent jurisdiction to take charge of all the Property, to manage, operate and carry on any business then being conducted** or that could be conducted on the Property, to carry on, protect, preserve, replace and repair the Property, and receive and collect all rents and revenues and to apply the same to pay the receiver's expenses for the operation of the Trust Property and then payment of

(i)    all taxes and assessments levied against the Property,

(ii)    all amounts due and owing under the Obligations, and

(iii)    current operating costs and expenses, in the order set forth herein.

Upon appointment of said receiver, Trustor shall immediately deliver possession of all of the Property to such receiver.  Neither the appointment of a receiver for the Property by any court at the request of Lender or by agreement with Trustor nor the entering into possession of all or any part of the Property by such receiver shall constitute Lender a "mortgagee in possession" or otherwise make Lender responsible or liable in any manner with respect to the Property or the occupancy, operation or use thereof.  Trustor agrees that Lender shall have the absolute and unconditional right to the appointment of a receiver in any independent and/or separate action brought by Lender regardless of whether Lender seeks any relief in such action other than the appointment of a receiver.  In that respect, Trustor waives any express or implied requirement under applicable law that a receiver may be appointed only ancillary to other judicial or non-judicial relief.  Trustor expressly waives any rights it may otherwise have under applicable law to require Lender to make any showing or establish any fact prior to the appointment of a receiver. (Emphasis added.)

28.    On June 4, 2015, the City filed a Complaint for Injunctive and Other Relief against multiple Defendants including Defendant XELAN in the San Francisco Action, a true and correct copy of which is attached hereto as Exhibit 10.  Thereafter, on October 26, 2017, an Amended Judgment, a true and corrected copy of which is attached hereto as Exhibit 11, was entered in the San Francisco Action against Defendants XELAN, et al.

29.    On December 26, 2017, the City's Notice of Motion and Motion for Assignment of Rents, Restraining Order and Turnover Order Pursuant to C.C.P. § 708.510(a), C.C.P.

61786794v3

8

1  § 708.520(a) and C.C.P. § 699.040 [Rents and Lease Payments owed to XELAN Prop 1, LLC,

2  Renka Prop LLC, Nozari 2, LLC and Zoriall, LLC] was heard and granted in the San Francisco

3  Action. Attached hereto as <u>Exhibit 12</u> is a true and correct copy of the Order Granting Renoticed

4  Motion for Assignment of Rights, Restraining Order and Turnover Order Pursuant to C.C.P.

5  § 708.510(a), C.C.P. § 708.520(a) and C.C.P. § 699.040 [Rents and Lease Payments owed to

6  XELAN Prop 1, LLC, Renka Prop LLC, Nozari 2, LLC and Zoriall, LLC] filed in the San

7  Francisco Action on December 26, 2017 (the "Assignment Order").

8      30.·    Attached hereto collectively as <u>Exhibit 13</u> are true and correct copies of the

9  Personal Property Judgment Liens which are referred to in the Bank's letter to the Borrower dated

10  January 26, 2018 (<u>Exhibit 7</u> hereto), and which were filed by the City with the California

11  Secretary of State's Office arising out of the Amended Judgment entered in the San Francisco

12  Action attached hereto as <u>Exhibit 11</u>.

13     31.    Because of various disputes which developed between the Bank and the City

14  regarding the priority of Payments, i.e., rents generated from the 19th Street Property and the

15  Filbert Street Property (collectively, the "Subject Properties"), on January 29, 2018, the Bank filed

16  a Notice of Motion and Motion to Determine Lien Priority ("Lien Priority Motion") in the San

17  Francisco Action, a true and correct copy of which is attached hereto as <u>Exhibit 14</u>, along with the

18  accompanying Memorandum of Points and Authorities in support thereof.

19     32.    On February 28, 2018, an Order granting the Lien Priority Motion was filed in the

20  San Francisco Action, a true and correct copy of which is attached hereto as <u>Exhibit 15</u> ("Lien

21  Priority Order") which stated in part in paragraphs 7 and 8 as follows:

22      7. Subject to further Order of this Court, **all Rents paid by tenants of the Subject
        Properties on or after January 29, 2018 shall be paid to the Bank** at the
23      following address, with a reference to the Special Assets Department on each check
        for Rents sent to the Bank:
24
25      Umpqua Bank
        Special Assets OR 0050
        P.O. Box 1820
26      Roseburg, OR  97470

27      **8. All Rents paid by tenants of the Subject Properties to the Bank on or after
        January 29, 2018 shall not be paid by the Bank to the Borrowers, or any of
28      them.** (Emphasis added.)

61786794v3

9

DECLARATION OF BEVERLY TENGCO IMMEDIATE APPOINTMENT OF RECEIVER, ETC.;  [XELAN]

JMBM | Jeffer Mangels Butler & Mitchell LLP

33.    It is essential that a Receiver be appointed immediately to protect and preserve the Subject Properties and to collect the rents for the following reasons:

a.    Numerous Events of Default have occurred under the terms of the XELAN Secured Loan Documents No. 1 and the XELAN Secured Loan Documents No. 2 and the Borrower is obligated to the Bank in an amount in excess of $3,342,402.06;

b.    As a result of the entry of the Lien Priority Order in the San Francisco Action, the Borrower is prohibited from collecting any rents generated from the Subject Properties and **all such rents must be paid to the Bank**. The Bank is a lender and is not in the business of property management and therefore a receiver should be appointed to determine what expenses need to be paid in order to protect and preserve the Subject Properties and to deal with the myriad of issues that exist in connection with the operation of the five residential units and one commercial unit located at the Subject Properties;

c.    It is essential that a receiver be appointed over the Subject Properties so that the rents which the Lien Priority Order have been ordered to be paid to the Bank can be paid to the proposed Receiver for the operation and preservation of the Subject Properties and to protect and preserve the tenants located in the 13 residential units located at the Subject Properties. The Receiver, and not the Bank, has the experience necessary to operate, protect and preserve the Subject Property; and

d.    The Deeds of Trust specifically provides that the Bank is entitled to the appointment of a Receiver if an Event of Default occurs under the XELAN Secured Loan Documents No. 1 and the XELAN Secured Loan Documents No. 2.

///
///
///
///
///
///
///

61786794v3

10

DECLARATION OF BEVERLY TENGCO IMMEDIATE APPOINTMENT OF RECEIVER, ETC.; [XELAN]

1    DATED: March _12_, 2018

BEVERLY TENGCO, Declarant

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

617B6794v3

11

DECLARATION OF BEVERLY TENGCO IMMEDIATE APPOINTMENT OF RECEIVER, ETC.; [XELAN]

JMBM | Jeffer Mangels
Butler & Mitchell LLP

# EXHIBIT 1

## PROMISSORY NOTE SECURED BY DEED OF TRUST

$1,960,000.00                          SAN FRANCISCO, California                          July 31, 2013

**1.**     **Promise To Pay.** For value received, the undersigned XELAN PROP 1, LLC, a California limited liability company ("Borrower"), promises to pay to the order of STERLING SAVINGS BANK, a Washington banking corporation, d/b/a Sterling Bank ("Lender"), at Spokane, Washington, or at such other place as may be designated in writing by Lender, the principal sum of One Million Nine Hundred Sixty Thousand Dollars and No Cents ($1,960,000.00) ("Loan"), with interest thereon as specified herein. All sums owing hereunder are payable in lawful money of the United States of America, in immediately available funds, without offset, deduction or counterclaim of any kind.

**2.**     **Secured by Deed of Trust.** This Note is secured by, among other things, that Deed of Trust and Absolute Assignment of Rents and Leases and Security Agreement (and Fixture Filing) (as the same may hereinafter be amended, modified, restated, reviewed or extended from time to time, "Deed of Trust") of even date herewith, encumbering certain real property described therein ("Property").

**3.**     **Definitions.** For the purposes of this Note, the following terms shall have the following meanings:

"**Business Day**" shall mean any day other than a Saturday, Sunday, legal holiday or other day on which commercial banks in Washington are authorized or required by law to close. All references in this Note to a "day" or a "date" shall be to a calendar day unless specifically referenced as a Business Day.

"**Closing Date**" shall mean the date the Deed of Trust is recorded in the Office of the County Recorder of the county where the Property is located and Lender authorizes the Loan proceeds to be released to Borrower.

"**Default**" shall have the meaning set forth in the Deed of Trust.

"**Loan Documents**" shall mean the documents listed in Exhibit "B" attached hereto and incorporated herein by this reference, as the same may hereinafter be amended, modified, restated, reviewed or extended from time to time.

"**Maturity Date**" shall mean September 1, 2043.

**4.**     **Interest; Payments.**

**4.1**     **Payment.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph:

**(a)**     Sixty (60) monthly consecutive principal and interest payments in the initial amount of Nine Thousand Two Hundred Fifty-Five Dollars and Ninety-Three Cents ($9,255.93) each, beginning October 1, 2013, with interest calculated on the unpaid principal balances using an interest rate of three and ninety-one/one-hundredths percent (3.91%);

**(b)**     Three Hundred (300) monthly consecutive principal and interest payments to be calculated as follows:

**(i)**     The amount of each monthly installment payment of principal and interest from and after the initial 60-month period described in Section 4.1(a) above shall be calculated on September 1, 2018 ("Initial Rate Adjustment Date"), and shall be recalculated on

---

Note - ALL                          1          1000-1022 FILBERT STREET 2013 (Loan No. 3720003948)
4-77042 (rev 03/13/13)

the same day of each six (6)-month period thereafter (each of which is a "Rate Adjustment Date"); and

(II)    on each of the Initial Rate Adjustment Date and each succeeding Rate Adjustment Date, the monthly installment payment shall be recalculated based on the "Applicable Interest Rate" (as defined below) and a 360-month amortization schedule, less the number of months that have elapsed between the Closing Date and the Initial Rate Adjustment Date and/or each succeeding Rate Adjustment Date.

As used herein, the following terms shall have the meanings set forth below:

(x)    The term "Applicable Interest Rate" shall mean the then-applicable interest rate based on the "Index" plus the "Margin" (both as defined hereinbelow), adjusted if necessary for the minimum and maximum rate limitations for this loan as set forth in Section 4.2 below).

(y)    The term "Index" shall mean an interest rate based on the rate of interest at which banks borrow funds from other banks, in marketable size, in the London Interbank market (which rate is generally known as the "SIX (6) MONTH LIBOR," which stands for the "London Interbank Offering Rate." Information on this Index as used herein for the calculation of the Applicable Interest Rate is the rate published by the Wall Street Journal, Western Edition (currently 0.395%) as of the Wednesday prior to the applicable Rate Adjustment Date.

(z)    The term "Margin" shall mean 2.25%, adjusted if necessary for the minimum and maximum rate limitations for this loan as set forth in Section 4.2 below).

(c)    The final principal and interest payment on September 1, 2043, will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note.

4.2    Variable Interest Rate. The Applicable Interest Rate on this Note is subject to change from time to time based on changes in the Index. The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute Index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each six (6) months. Borrower understands that Lender may make loans based on other rates as well. The interest rate or rates to be applied to the unpaid principal balance during this Note will be the rate of rates set forth herein. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream.

NOTICE: Under no circumstances will the interest rate on this Note be less than 3.91% per annum or more than (except for any higher default rate shown below) the lesser of 9.5% per annum or the maximum rate allowed by applicable law; provided, however, that AFTER the adjustment of the Applicable Interest Rate on the Initial Rate Adjustment Date, each recalculation of the Applicable Interest Rate on each succeeding Rate Adjustment Date shall not exceed one percent (1%) ("Rate Change Cap") in excess of the Applicable Interest Rate for the preceding six (6)-month period. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will payoff by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

4.3    Interest Calculation Method. Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days during the first full payment cycle, monthly interest is calculated by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days before the first full month is

calculated on the basis of the actual days and a 360-day year. All interest payable under this Note is computed using this method.

**4.4    Application of Payments.** In the absence of a specific determination by Lender to the contrary, all payments paid by Borrower to Lender in connection with the obligations of Borrower under this Note and under the other Loan Documents shall be applied in the following order of priority: (a) to amounts, other than principal and interest, due to Lender pursuant to this Note or the other Loan Documents; (b) to accrued but unpaid interest on this Note; and (c) to the unpaid principal balance of this Note. Borrower irrevocably waives the right to direct the application of any and all payments at any time hereafter received by Lender from or on behalf of Borrower, and Borrower irrevocably agrees that Lender shall have the continuing exclusive right to apply any and all such payments against the then due and owing obligations of Borrower in such order of priority as Lender may deem advisable.

**5.    Late Charge; Default Rate.**

**5.1    Late Charge.** If Borrower shall fail to make any payment of interest or principal, (excluding the final combined principal and interest installment due at the Maturity Date), within ten (10) days after the date the same is due and payable, a late charge by way of damages shall be immediately due and payable. Borrower recognizes that default by Borrower in making the payments herein agreed to be paid when due will result in Lender incurring additional expense in servicing the loan, in loss to Lender of the use of the money due and in frustration to Lender in meeting its other financial and loan commitments. Borrower agrees that, if for any reason Borrower fails to pay the amounts due under this Note when due, Lender shall be entitled to damages for the detriment caused thereby, but that it is extremely difficult and impractical to ascertain the extent of such damages. Borrower therefore agrees that a sum equal to five percent (5.00%) of each payment which becomes delinquent is a reasonable estimate of said damages to Lender, which sum Borrower agrees to pay on demand. Borrower acknowledges and agrees that by its execution of this Note, it has received prior notice of Lender's right to collect any late charge payable hereunder in full compliance with the provisions of applicable law, and that no further or additional notice shall be required by Borrower as a condition to Lender's right to collect any such charge in the event Borrower fails to make a timely payment hereunder.

**5.2    Default Rate.** During the period commencing with any Default hereunder and continuing until such Default is cured, Lender, at its option and if permitted under applicable law, shall do one or both of the following: (a) increase the interest chargeable under this Note to the Default Rate; and/or (b) add the unpaid principal balance, all accrued and unpaid interest and all other amounts payable under the Note, with the resulting sum to bear interest at the Default Rate. The "Default Rate" shall be the rate which is five percent (5.00%) above the rate that would otherwise be payable under the terms of this Note. In no event shall the interest rate charged hereunder exceed the maximum rate permitted under applicable law.

**6.    Maximum Rate Permitted By Law.** Neither this Note nor any of the other Loan Documents shall require the payment or permit the collection of any interest or any late payment charge in excess of the maximum rate permitted by law to be charged to Borrower. If any such excess interest or late payment charge is provided for under this Note or any of the other Loan Documents or if this Note or any of the other Loan Documents shall be adjudicated to provide for such excess, neither Borrower nor Borrower's successors or assigns shall be obligated to pay such excess, and the right to demand the payment of any such excess shall be and hereby is waived, and this provision shall control any other provision of this Note or any of the other Loan Documents. If Lender shall collect amounts which are deemed to constitute interest and which would increase the effective interest rate to a rate in excess of the maximum rate permitted by law to be charged to Borrower, all such amounts deemed to constitute interest in excess of the maximum legal rate shall, upon such determination, at the option of Lender, be returned to Borrower or credited against the outstanding principal balance of this Note.

**7.    Acceleration.** If (a) Borrower shall fail to pay when due any sums payable under this Note; (b) any other Default shall occur; or (c) any other event or condition shall occur which, under the terms of the Deed of Trust or any other Loan Document, gives rise to a right of acceleration of sums owing under

Note – ALL                                                              3      1000-1022 FILBERT STREET 2013 (Loan No. 3720003948)
477042 (rev 03/13/13)

this Note, then Lender, at its sole option, shall have the right to declare all sums owing under this Note immediately due and payable; provided, however, that if the Deed of Trust or any other Loan Document provides for the automatic acceleration of payment of sums owing under this Note, all sums owing under this Note shall be automatically due and payable in accordance with the terms of the Deed of Trust or such other Loan Document.

8.    **Borrower's Liability.**

8.1.    **Full Recourse.**  All of the terms and provisions of this Note are recourse obligations of Borrower and not restricted by any limitation on personal liability provided in any of the other Loan Documents or limited to any collateral securing any of the obligations under this Note, it being the intent of Lender to create recourse obligations of Borrower hereunder which can be enforced against Borrower without regard to the existence of the other Loan Documents.

8.2    **Specific Additional Recourse Obligations.**  Notwithstanding anything to the contrary contained in Section 8.1 or elsewhere in this Note or the other Loan Documents, Borrower shall be personally liable to Lender:

(a)    for any liabilities, costs, expenses (including reasonable attorneys' fees and expenses), claims, losses or damages incurred by Lender (including, without limitation, any impairment of Lender's security for the Loan) with respect to any of the following matters:

(i)    fraud, material misrepresentation or failure to disclose a material fact by Borrower or any of its principals, officers, general partners or members, any guarantor, any indemnitor, or any agent, employee or other person authorized or apparently authorized to make statements, representations or disclosures on behalf of such persons;

(ii)    waste committed on the Property by, or damage to the Property as a result of the intentional misconduct or gross negligence of, Borrower or any of its principals, officers, general partners or members, any guarantor, any indemnitor, or any agent or employee of such persons, or any removal of the Property in violation of the terms of the Loan Documents, to the full extent of the losses or damages incurred by Lender on account of such occurrence;

(iii)    failure to pay property or other taxes, assessments or charges and/or failure to procure and maintain the insurance policies for the Property required by the Loan Documents (other than amounts paid to Lender for taxes, assessments or charges and/or insurance premiums pursuant to an impound account and where Lender elects not to apply such funds toward payment of the taxes, assessments or charges and/or insurance premiums owed) which may create liens senior to the lien of the Deed of Trust on all or any portion of the Property;

(iv)    failure to deliver any insurance or condemnation proceeds or awards or any security deposits received by Borrower to Lender or to otherwise apply such sums as required under the terms of the Loan Documents or any other instrument now or hereafter securing this Note;

(v)    gross negligence, willful misconduct or criminal acts perpetrated by Borrower resulting in the forfeiture, seizure, loss or diminution in value of all or any portion of the Collateral; or

(vi)    failure to apply any rents (including without limitation any rents and other lease payments received more than one (1) month in advance), royalties, accounts, revenues, income, issues, profits, sums received in consideration of any surrender or termination of any lease (or the release or discharge of any tenant thereunder) or material modification of any lease on the Property, and other benefits from the Property which are collected or received by Borrower (A) as required under the terms of the Loan Documents or any other instrument now or hereafter

securing the Note for the payment of the ordinary and necessary expenses of owning and operating the Property or paid to Lender, or (B) either during the period of any "Default" (as defined in the Note), or after the occurrence of any event which with the giving of notice or the passage of time, or both, would constitute a Default, or after acceleration of the indebtedness and other sums owing under the Loan Documents, only to the payment of either such indebtedness or other sums, or the normal and necessary operating expenses of the Property.

(b)    for the performance and payment of all of its obligations under the Environmental Indemnity Agreement of even date herewith made by Borrower in favor of Lender.

(c)    for all fees and other collection costs (including without limitation attorneys' fees and/or expert witness fees) reasonably incurred by Lender in any legal or equitable, judicial or non-judicial, action or proceeding (including without limitation any arbitration, mediation, and/or any other alternative dispute resolution proceeding to enforce or defend any provisions of this Section 8.2 (including without limitation attorneys' fees and costs reasonably incurred in any appeal proceedings or in any bankruptcy proceedings involving Borrower and/or any indemnitor or guarantor under any indemnity or guaranty to enforce the provisions of this Section 8.2), together with interest thereon from the date of such demand until paid at the rate of interest applicable to the principal balance of the Note as specified herein.

8.3    Additionally, notwithstanding anything to the contrary contained in Section 8.1 of this Note or the other Loan Documents, if (x) Borrower shall voluntarily file or commence a petition, case or application for any bankruptcy, reorganization, dissolution or other relief for Borrower under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, or if any such petition, case or application shall be filed or commenced against Borrower and Borrower shall consent to such petition, case or application, (y) any "Transfer" of the Property or any part thereof, within the meaning of Section 6.44 of the Deed of Trust, shall occur without the prior written consent of Lender, or (z) Borrower shall (1) incur any debt, secured or unsecured, direct or indirect, absolute or contingent (including guaranteeing any obligation) related to or secured by the Property, other than the Loan or trade debt incurred in the ordinary course of Borrower's business which shall be paid in accordance with terms of the Loan Documents, or (2) permit the encumbrance, hypothecation or pledge of any of the membership interests of Borrower, in violation of Section 6.7 of the Deed of Trust, then Lender shall have the right to seek a personal judgment against Borrower on this Note and under any other Loan Document with respect to any and all indebtedness secured thereby.

8.4    No Release or Impairment.  Nothing contained in Section 8.1 shall be deemed to release, affect or impair the indebtedness evidenced by this Note or the obligations of Borrower under, or the liens and security interests created by the Loan Documents, or Lender's rights to enforce its remedies under this Note and the other Loan Documents, including, without limitation, the right to pursue any remedy for injunctive or other equitable relief, or any suit or action in connection with the preservation, enforcement or foreclosure of the liens, mortgages, assignments and security interests which are now or at any time hereafter security for the payment and performance of any of the obligations under this Note or the other Loan Documents, or Lender's rights to recover any sums under Section 10.12 in connection with any such suit or action.

8.5    Prevail and Control.  The provisions of this Section 8 shall prevail and control over any contrary provisions elsewhere in this Note or the other Loan Documents.

9.    Reserved.

10.    Miscellaneous.

10.1    Joint and Several Liability.  If this Note is executed by more than one person or entity as Borrower, the obligations of each such person or entity shall be joint and several. No person or entity shall be a mere accommodation maker, but each shall be primarily and directly liable hereunder.

10.2    Waiver of Presentment.    Except as otherwise provided in any other Loan Document, Borrower hereby waives presentment, demand, notice of dishonor, notice of default or delinquency, notice of acceleration, notice of nonpayment, notice of costs, expenses or losses and interest thereon, and notice of interest on interest and late charges.

10.3    Delay in Enforcement.    No previous waiver or failure or delay by Lender in acting with respect to the terms of this Note or the Deed of Trust shall constitute a waiver of any breach, default or failure of condition under this Note, the Deed of Trust or the obligations evidenced or secured thereby. A waiver of any term of this Note, the Deed of Trust or of any of the obligations evidenced or secured thereby must be made in writing signed by Lender, shall be limited to the express terms of such waiver, and shall not constitute a waiver of any subsequent obligation of Borrower. The acceptance at any time by Lender of any past due amount shall not be deemed to be a waiver of the right to require prompt payment when due of any other amounts then or thereafter due and payable.

10.4    Time of the Essence.    Time is of the essence with respect to every provision hereof.

10.5    Governing Law.    This Note shall be deemed to have been applied for, considered, approved, negotiated, executed, made and shall be performed in and shall be governed by the laws of the state in which the collateral property and/or pledged assets are located (without regard to conflicts of laws principles), except to the extent the laws of the state in which the collateral property and/or pledged assets are located affect enforceability of the liens granted in the Loan Documents, all as expressly set forth in the Governing Law provisions of Section 8.17 of the Deed of Trust executed in connection with this Note. Borrower irrevocably agrees that subject to Lender's sole and absolute election, Lender may bring suit, action, or other legal proceedings arising out of the Loan Documents in courts located in the state in which the collateral property and/or pledged assets are located, whether local, state, or federal.

10.6    Consent to Jurisdiction.    Borrower irrevocably submits to the jurisdiction of: (a) any state or federal court sitting in the state of Washington over any suit, action, or proceeding, brought by Borrower against Lender, arising out of or relating to this Note or the Loan evidenced hereby; (b) any state or federal court sitting in the state where the Property is located or the state in which Borrower's principal place of business is located over any suit, action or proceeding, brought by Lender against Borrower, arising out of or relating to this Note or the Loan evidenced hereby; and (c) any state court sitting in the county of the state where the Property is located over any suit, action, or proceeding, brought by Lender to exercise its STATUTORY POWER OF SALE under the Deed of Trust or any action brought by the Lender to enforce its rights with respect to the Collateral. Borrower irrevocably waives, to the fullest extent permitted by law, any objection that Borrower may now or hereafter have to the laying of venue of any such suit, action, or proceeding brought in any such court and any claim that any such suit, action, or proceeding brought in any such court has been brought in an inconvenient forum.

10.7    Counterparts.    This Note may be executed in any number of counterparts, each of which when executed and delivered shall be deemed an original and all of which taken together shall be deemed to be one and the same Note.

10.8    Heirs, Successors and Assigns.    All of the terms, covenants, conditions and indemnities contained in this Note and the other Loan Documents shall be binding upon the heirs, successors and assigns of Borrower and shall inure to the benefit of the successors and assigns of Lender. The foregoing sentence shall not be construed to permit Borrower to assign the Loan except as otherwise permitted in this Note or the other Loan Documents.

10.9    Severability.    If any term of this Note, or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Note, or the application of such term to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term of this Note shall be valid and enforceable to the fullest extent permitted by law.

**10.10    Consents and Approvals.** Wherever Lender's consent, approval, acceptance or satisfaction is required under any provision of this Note or any of the other Loan Documents, such consent, approval, acceptance or satisfaction shall not be unreasonably withheld, conditioned or delayed by Lender unless such provision expressly so provides.

**10.11    Further Assurances.** Borrower shall, upon demand by Lender, execute, acknowledge (if appropriate) and deliver any and all documents and instruments and do or cause to be done all further acts reasonably necessary or appropriate to effectuate the provisions hereof.

**10.12    Attorneys' Fees.** In the event it is necessary for Lender to retain the services of an attorney or any other party to enforce or to commence any legal or equitable action or any alternative dispute resolution proceeding (including without limitation arbitration and/or mediation proceedings) to enforce the terms of this Note and/or Deed of Trust, or any of the other Loan Documents, or any portion hereof or thereof, Borrower agrees to pay to Lender (in addition to any sums payable under Section 8.2 above and not subject to the recourse limitation in Section 8.1 above), in addition to any damages or other relief otherwise recoverable under this Note, any and all costs and expenses, including without limitation expert witness fees and reasonable attorneys' fees, incurred by Lender as a result thereof (including without limitation attorneys' fees and costs reasonably incurred in any appeal proceedings or in any bankruptcy proceedings involving Borrower).

**10.13    Disclaimers.**

(a)    **Relationship.** The relationship of Borrower and Lender under this Note and the other Loan Documents is, and shall at all times remain, solely that of borrower and lender; and Lender neither undertakes nor assumes any responsibility or duty to Borrower or to any third party with respect to the Property. Notwithstanding any other provisions of this Note and the other Loan Documents:

(i)    Lender is not, and shall not be construed to be, a partner, joint venturer, member, alter ego, manager, controlling person or other business associate or participant of any kind of Borrower, and Lender does not intend to ever assume such status;

(ii)    Lender does not intend to ever assume any responsibility to any person for the quality, suitability, safety or condition of the Property; and

(iii)    Lender shall not be deemed responsible for or a participant in any acts, omissions or decisions of Borrower.

(b).    **No Liability.** Lender shall not be directly or indirectly liable or responsible for any loss, claim, cause of action, liability, indebtedness, damage or injury of any kind or character to any person or property arising from any construction on, or occupancy or use of, the Property, whether caused by or arising from:

(i)    any defect in any building, structure, grading, fill, landscaping or other improvements thereon or in any on-site or off-site improvement or other facility therein or thereon;

(ii)    any act or omission of Borrower or any of Borrower's agents, employees, independent contractors, licensees or invitees;

(iii)    any accident in or on the Property or any fire, flood or other casualty or hazard thereon;

(iv)    the failure of Borrower or any of Borrower's licensees, employees, invitees, agents, independent contractors or other representatives to maintain the Property in a safe condition; or

(v)     any nuisance made or suffered on any part of the Property.

10.14  Separate and Community Property.  Any married person who executes this Note or any other Loan Document as a Borrower agrees that any money judgment which Lender obtains pursuant to the terms of this Note or any other Loan Document may be collected by execution upon any separate property or community property (as applicable) of that person.

10.15  Integration; Interpretation.  The Loan Documents contain or expressly incorporate by reference the entire agreement of the parties with respect to the matters contemplated therein and supersede all prior negotiations or agreements, written or oral.  The Loan Documents shall not be modified except by written instrument executed by all parties.  Any reference in any of the Loan Documents to the Property or Collateral shall include all or any part of the Property or Collateral.  Any reference to the Loan Documents includes any amendments, renewals or extensions now or hereafter approved by Lender in writing.  When the identity of the parties or other circumstances make it appropriate, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

11.     Notices.  All notices and other communications that are required or permitted to be given to a party under this Note shall be in writing and shall be sent to such party, either by personal delivery, by overnight delivery service, or by certified first-class mail, return receipt requested transmission to the address below. Any party shall have the right to change its address for notice hereunder to any other location within the continental United States by giving thirty (30) days' notice to the other parties in the manner set forth above.  All notices and communications shall be effective upon receipt of such delivery or facsimile transmission.  The addresses and facsimile numbers of the parties shall be:

    Lender:     STERLING BANK
                P.O. Box 2131
                Spokane, Washington 99201
                Attention:  Commercial Loan Support

    With a copy to:  STERLING BANK
                111 N. Wall Street
                Spokane, Washington 99201
                Attention:  Legal Department

    Borrower:   At the address set forth following the Borrower's signature on the signature
                pages of this Note.

12.     Additional Terms and Conditions.  The additional terms and conditions set forth in Exhibit "A" attached hereto are incorporated herein by this reference.

13.     Prepayment.  Borrower acknowledges that any prepayment of this Note will cause Lender to lose its interest rate yield on this Note and will possibly require that Lender reinvest any such prepayment amount in loans of a lesser interest rate yield (including, without limitation, in debt obligations other than first deed of trust loans on commercial properties).  As a consequence, Lender and Borrower agree, as an integral part of the consideration for Lender's making the Loan, that:

    13.1    Voluntary Prepayment.

            (a)     Prepayment Fee.  If this Note is prepaid in full at any time, whether such prepayment is voluntarily made, is involuntary, is made as a requirement of Section 5 of Exhibit "A" or is made following a Default upon full acceleration of the principal amount of this Note by Lender, or in connection with or pursuant to any statutory reinstatement or right of redemption exercised by Borrower or by any other party having such statutory right, or any sale in any judicial or non-judicial foreclosure (including pursuant to a credit bid made by Lender in connection with any such sale), or pursuant to any

other collection action by Lender, Borrower shall pay to Lender on the date of any such prepayment ("Prepayment Date"), Borrower shall pay a prepayment fee in connection with any such prepayment to be calculated as follows:

| Prepayment period | Prepayment fee |
|---|---|
| MONTHS 1 THROUGH 12 | 2% of the Prepayment Amount |
| MONTHS 13 THROUGH 24 | 1% of the Prepayment Amount |
| MONTHS 25 THROUGH 36 | 1% of the Prepayment Amount |
| MONTHS 37 THROUGH 360 | No Prepayment Fee |

(b)    Partial Prepayment. Except as provided in Section 13.1(c) or 13.1(d) below, if this Note is prepaid in part following a Default (it being acknowledged that Borrower has no right to voluntarily prepay this Note in part or during the Prohibited Prepayment Period), whether such prepayment is involuntary, is made upon full acceleration of the principal amount of this Note by Lender following a Default, or is made in connection with or pursuant to any statutory reinstatement or right of redemption exercised by Borrower or by any other party having such a statutory right, any sale in any judicial or non-judicial foreclosure (including pursuant to a credit bid made by Lender in connection with any such sale), or pursuant to any other collection action by Lender, Borrower shall pay to Lender on the prepayment date (in addition to all other sums then due and owing to Lender under this Note and the other Loan Documents) a prepayment charge equal to (i) the prepayment charge determined in accordance with Section 13.1(a) above multiplied by (ii) a fraction whose numerator is the amount of the partial prepayment and whose denominator is the outstanding principal balance of the Loan as of the prepayment date.

(c)    Insurance or Condemnation Proceeds. No prepayment charge shall apply in respect to any insurance or condemnation proceeds received by Lender and applied by Lender to the outstanding principal balance of the Loan.

(d)    Cure Payment. No prepayment charge shall apply in respect to any payment received by Lender and applied by Lender to cure any Default within any cure period provided herein.

13.2    Prepayment Waiver. Borrower waives any right to prepay this Note except under the terms and conditions set forth in this section and agrees that if this Note is prepaid, Borrower will pay the prepayment charge set forth above. Borrower hereby acknowledges that:

(a)    the inclusion of this waiver of prepayment rights and agreement to pay the prepayment charge for the right to prepay this Note was separately negotiated with Lender;

(b)    the economic value of the various elements of this waiver and agreement was discussed;

(c)    the consideration given by Borrower for the Loan was adjusted to reflect the specific waiver and agreement negotiated between Borrower and Lender and contained herein; and

(d)    this waiver is intended to comply with applicable state law.

Borrower's Initials:    _____

14.    DISPUTE RESOLUTION.  THIS SECTION CONTAINS A JURY WAIVER, ARBITRATION CLAUSE, AND A CLASS ACTION WAIVER.  READ IT CAREFULLY.

(a)    Jury Trial Waiver. As permitted by applicable law, each party waives their respective rights to a trial before a jury in connection with any "Dispute" (as defined below), and Disputes shall be

resolved by a judge sitting without a jury. If a court determines that this provision is not enforceable for any reason and at any time prior to trial of the Dispute, but not later than thirty (30) days after entry of the order determining this provision is unenforceable, any party shall be entitled to move the court for an order compelling arbitration and staying or dismissing such litigation pending arbitration ("**Arbitration Order**").

(b)  **Arbitration.** If a claim, dispute, or controversy arises between us with respect to this Note, any Loan Document, related agreements, or any other agreement or business relationship between any of us whether or not related to the subject matter of this Note (all of the foregoing, a "**Dispute**"), and only if a jury trial waiver is not permitted by applicable law or ruling by a court, any of us may require that the Dispute be resolved by binding arbitration before a single arbitrator at the request of any party. By agreeing to arbitrate a Dispute, each party gives up any right that party may have to a jury trial, as well as other rights that party would have in court that are not available or are more limited in arbitration, such as the rights to discovery and to appeal.

Arbitration shall be commenced by filing a petition with, and in accordance with the applicable arbitration rules of, JAMS or National Arbitration Forum ("**Administrator**") as selected by the initiating party. If the parties agree, arbitration may be commenced by appointment of a licensed attorney who is selected by the parties and who agrees to conduct the arbitration without an Administrator. Disputes include matters (i) relating to a deposit account, application for or denial of credit, enforcement of any of the obligations we have to each other, compliance with applicable laws and/or regulations, performance or services provided under any agreement by any party, (ii) based on or arising from an alleged tort, or (iii) involving either of our employees, agents, affiliates, or assigns of a party. However, Disputes do not include the validity, enforceability, meaning, or scope of this arbitration provision and such matters may be determined by a court. If a third party is a party to a Dispute, we each will consent to including the third party in the arbitration proceeding for resolving the Dispute with the third party. Venue for the arbitration proceeding shall be at a location determined by mutual agreement of the parties or, if no agreement, in the city and state where lender or bank is headquartered.

After entry of an Arbitration Order, the non-moving party shall commence arbitration. The moving party shall, at its discretion, also be entitled to commence arbitration but is under no obligation to do so, and the moving party shall not in any way be adversely prejudiced by electing not to commence arbitration. The arbitrator: (i) will hear and rule on appropriate dispositive motions for judgment on the pleadings, for failure to state a claim, or for full or partial summary judgment; (ii) will render a decision and any award applying applicable law; (iii) will give effect to any limitations period in determining any Dispute or defense; (iv) shall enforce the doctrines of compulsory counterclaim, res judicata, and collateral estoppel, if applicable; (v) with regard to motions and the arbitration hearing, shall apply rules of evidence governing civil cases; and (vi) will apply the law of the state specified in the agreement giving rise to the Dispute. Filing of a petition for arbitration shall not prevent any party from (i) seeking and obtaining from a court of competent jurisdiction (notwithstanding ongoing arbitration) provisional or ancillary remedies including but not limited to injunctive relief, property preservation orders, foreclosure, eviction, attachment, replevin, garnishment, and/or the appointment of a receiver, (ii) pursuing non-judicial foreclosure, or (iii) availing itself of any self-help remedies such as setoff and repossession. The exercise of such rights shall not constitute a waiver of the right to submit any Dispute to arbitration.

Judgment upon an arbitration award may be entered in any court having jurisdiction except that, if the arbitration award exceeds $4,000,000, any party shall be entitled to a de novo appeal of the award before a panel of three arbitrators. To allow for such appeal, if the award (including Administrator, arbitrator, and attorney's fees and costs) exceeds $4,000,000, the arbitrator will issue a written, reasoned decision supporting the award, including a statement of authority and its application to the Dispute. A request for de novo appeal must be filed with the arbitrator within 30 days following the date of the arbitration award; if such a request is not made within that time period, the arbitration decision shall become final and binding. On appeal, the arbitrators shall review the award de novo, meaning that they shall reach their own findings of fact and conclusions of law rather than deferring in any manner to the original arbitrator. Appeal of an arbitration award shall be pursuant to the rules of the Administrator or, if the Administrator has no such rules, then the JAMS arbitration appellate rules shall apply.

Arbitration under this provision concerns a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. This arbitration provision shall survive any termination, amendment, or expiration of this Agreement. If the terms of this provision vary from the Administrator's rules, this arbitration provision shall control.

(c)     CLASS ACTION WAIVER.   EACH PARTY WAIVES THE RIGHT TO LITIGATE IN COURT OR ARBITRATE ANY CLAIM OR DISPUTE AS A CLASS ACTION, EITHER AS A MEMBER OF A CLASS OR AS A REPRESENTATIVE, OR TO ACT AS A PRIVATE ATTORNEY GENERAL.

(d).    Reliance. Each party (i) certifies that no one has represented to such party that the other party would not seek to enforce jury and class action waivers in the event of suit, and (ii) acknowledges that it and the other party have been induced to enter into this Note by, among other things, the mutual waivers, agreements, and certifications in this section.

15.    USA Patriot Act Notification.  Borrower agrees to provide evidence of the identity of Borrower that Lender may request from time to time to permit Lender to verify the identity of Borrower or to otherwise comply with applicable governmental laws and regulations, including without limitation Section 326 of the USA Patriot Act of 2001, 31 U.S.C. 5318.

16.    ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

[The balance of this page is intentionally left blank.]

IN WITNESS WHEREOF, Borrower has executed this Note as of the date first above written.

BORROWER:

XELAN PROP 1, LLC, a California limited liability company

By: _____

ANNE KIHAGI, its manager

Address:   P.O. BOX 691889
           LOS ANGELES, California 90069
Phone:     (323) 244-9178

Note – ALL                              12     1000-1022 FILBERT STREET 2013 (Loan No. 3720003948)
477042 (rev 03/13/13)

## EXHIBIT "A"
## ADDITIONAL TERMS AND CONDITIONS

This Exhibit "A" is attached to and forms a part of that Promissory Note ("Note") executed by XELAN PROP 1, LLC, a California limited liability company ("Borrower") in favor of STERLING SAVINGS BANK, a Washington banking corporation, d/b/a Sterling Bank ("Lender").

1.    **Disbursement of Loan Proceeds; Limitation of Liability.**  Borrower hereby authorizes Lender to disburse the proceeds of the Loan, after deducting any and all fees owed by Borrower to Lender in connection with the Loan. With respect to such disbursement, Borrower understands and agrees that Lender does not accept responsibility for errors, acts or omissions of others, including, without limitation, the escrow company, other banks, communications carriers or clearinghouses through which the transfer of Loan proceeds may be made or through which Lender receives or transmits information, and no such entity shall be deemed Lender's agent. As a consequence, Lender shall not be liable to Borrower for any actual (whether direct or indirect), consequential or punitive damages, whether or not (a) any claim for such damages is based on tort or contract, or (b) either Lender or Borrower knew or should have known of the likelihood of such damages in any situation.

2.    **Financial Statements.**

    2.1    **Statements Required.**  During the term of the Loan or while any liabilities of Borrower to Lender under any of the Loan Documents remain outstanding and unless Lender otherwise consents in writing, Borrower shall provide to Lender, each in a form acceptable to Lender, the following:

        (a)    Rent Roll.  An annual "Rent Roll" (as defined below) not later than thirty (30) days after and as of the end of each fiscal year. For purposes of this provision, a "Rent Roll" shall mean a schedule which shall include without limitation the following lease information with regard to each tenant: The name of the tenant, unit number and unit-type, any other income or reimbursement amounts, a description of the demised premises, occupancy percentage, monthly or other periodic rental amount, dates of commencement and expiration of the lease, and payment status – and which shall be certified by a principal, managing member or general partner of Borrower as being true, correct and complete.

        (b)    Property Operating Statement.  An annual "Property Operating Statement" (as defined below) not later than thirty (30) days after and as of the end of each fiscal year. For purposes of this provision, a "Property Operating Statement" shall mean an unaudited operating statement for the Property, which statement shall include a schedule showing all revenues and expenses relating to the Property during the period in question and for the year-to-date and shall be certified by a principal, managing member or general partner of Borrower as being true, correct and complete.

        (c)    **Annual Financial Statement of Borrower and Guarantor(s).**  Not later than thirty (30) days after and as of the end of each fiscal year, the following:

            (i)    For Borrower — an annual balance sheet showing all assets and liabilities of Borrower, which shall be certified by a principal, managing member or general partner of Borrower as being true, correct and complete or, upon the reasonable request of Lender, audited by an independent certified public accountant (which audited statement shall be provided to Lender within ninety (90) days following such request by Lender).

            (ii)    For Guarantor — an annual balance sheet showing all assets and liabilities (including a schedule of real estate owned) of each indemnitor and guarantor under any indemnity or guaranty which shall be certified by a principal, managing member or general partner of such indemnitor or guarantor as being true, correct and complete or, upon the reasonable request of Lender, audited by an independent certified public accountant (which audited statement shall be provided to Lender within ninety (90) days following such request by Lender).

---

Note – ALL
477042 (rev 03/13/13)

EXHIBIT "A" – Page 1 1000-1022 FILBERT STREET 2013 (Loan No. 3720008948)

(d)   **Tax Return.** Not later than fifteen (15) days after the date of filing, copies of all tax returns filed by Borrower and any guarantor (provided, however, that in the event that Borrower and/or guarantor has filed a request for extension in connection with the filing of any tax return, Borrower and/or guarantor shall provide Lender with a copy of said extension no later than fifteen (15) days following the filing of said extension, with copies of said tax return to be provided to Lender within (15) days after the date of said extended filing);

(e)   **Other Information.** Upon the occurrence of a Default, such other information with regard to Borrower, principals of Borrower, guarantors or the Property in such form and within such time period(s) as Lender may reasonably request in writing; and

(f)   **Monthly Reporting.** Upon the occurrence of a Default, Lender may request monthly reporting of the Financial Statements described in this paragraph 2.1 on an as needed basis.

(g)   **Failure to Timely Deliver Financial Statements.** Borrower and guarantor each acknowledge the importance to Lender of the timely delivery of each of the items required by Sections 2.1(a)(b)(c)(d) (each, a "Required Financial Item" and collectively, the "Required Financial Items"). In the event any reporting party fails to deliver to Lender any of the Required Financial Items within the time frame specified herein (each such event, a "Reporting Failure"), shall constitute a Default under the Loan Documents.

2.2   **Form; Warranty.** Borrower agrees that all financial statements to be delivered to Lender pursuant to the immediately preceding section shall: (a) be complete and correct; (b) present fairly the financial condition of the party; (c) disclose all liabilities that are required to be reflected or reserved against; and (d) be prepared in accordance with the same accounting standard used by Borrower to prepare the financial statements delivered to and approved by Lender in connection with the making of the Loan or other accounting standards acceptable to Lender. By delivering any such financial statement, Borrower shall be deemed to warrant and represent that, as of the date of delivery of any such financial statement, there has been no material adverse change in financial condition, nor have any assets or properties been sold, transferred, assigned, mortgaged, pledged or encumbered since the date of such financial statement except as disclosed by Borrower in a writing delivered to Lender. Borrower agrees that all leasing schedules and other information to be delivered to, Lender pursuant to the immediately preceding section shall not contain any misrepresentation or omission of a material fact.

3.   **Impounds.** As required under Exhibit "C" attached hereto and incorporated herein by reference, Borrower shall provide those certain impounds and/or reserves in connection with the making and closing of the Loan.

4.   **Application of Payments from Rents and Leases.** All "Payments", as defined in the Deed of Trust, will be applied first to the Obligations and then to the payment of maintenance (including deferred maintenance), operating expenses, taxes, assessments, disbursements, and any other charges or expenses incurred in connection with the ownership, operation and maintenance of the Property.

5.   **Permitted Transfers.**

5.1   **Right of Transfer of Property.** Notwithstanding anything to the contrary contained in Section 6.14 of the Deed of Trust, Lender shall consent to the voluntary sale or exchange of all of the "Property" by "Trustor" (as defined in the Deed of Trust) to a *bona fide* third-party purchaser, without any modification of the terms of this Note or the other Loan Documents, upon satisfaction of all of the following conditions precedent prior to any permitted transfer:

(a)   Lender's reasonable determination that each proposed purchaser, each proposed guarantor, if any, and the Property all satisfy Lender's then applicable credit review and underwriting standards;

(b)    Lender's reasonable determination that each proposed purchaser possesses satisfactory recent experience in the ownership and operation of properties comparable to the Property;

(c)    the execution and delivery to Lender of such documents and instruments as Lender shall reasonably require, in form and content reasonably satisfactory to Lender, including, without limitation, (i) an assumption agreement under which the purchaser assumes all obligations and liabilities of Borrower under this Note and the other Loan Documents and agrees to periodically pay such new or additional impounds to Lender as Lender may reasonably require, and (ii) a consent to the transfer by any existing guarantor and a reaffirmation of such guarantor's obligations and liabilities under any guaranty made in connection with the Loan or a new guaranty executed by a new guarantor reasonably satisfactory to Lender;

(d)    if required by Lender, delivery to Lender of evidence of title insurance reasonably satisfactory to Lender insuring Lender that the lien of the Deed of Trust and the priority thereof will not be impaired or affected by reason of such transfer or exchange of the Property;

(e)    payment to Lender of an assumption fee equal to one percent (1%) of the then outstanding principal balance of this Note;

(f)    if required by Lender, deposit with Lender of any new or additional impounds;

(g)    reimbursement to Lender of any and all costs and expenses paid or incurred by Lender in connection with such transfer or exchange, including, without limitation, all in-house or outside counsel attorneys' fees, title insurance fees, appraisal fees, inspection fees and environmental consultant's fees; and

(h)    delivery to Lender of such other information, certificates, documents or instruments as Lender may reasonably require to effectuate said assumption (including without limitation any items required to satisfy any rating agency requirements imposed as a condition to said assumption, an updated appraisal or other evidence in form and substance satisfactory to Lender relating to the Property, and/or any opinion of counsel for Borrower in form and substance and delivered by counsel satisfactory to Lender relating to the effect of said assumption on the status of any "real estate mortgage investment conduit" (within the meaning of Section 860D of the Code) which holds the Loan).

Lender shall fully release Borrower (and each successor borrower approved under this Section 5.1) and any existing guarantor (and each successor guarantor approved under this Section 5.1) from any further obligation or liability to Lender under this Note and the other Loan Documents upon the assumption by the purchaser and any new guarantor of all such obligations and liabilities and the satisfaction of all other conditions precedent to each transfer or exchange in accordance with the provisions of this section.

5.2    Other Permitted Transfers:  Notwithstanding the foregoing, however, the following transfers shall be permitted (with, in the case of the transfers described in clauses (a) and (c), the prior written consent of Lender, such consent not be unreasonably withheld, conditioned or delayed):

(a)    the transfer of not more than 25% of the (i) limited partnership interests in any Borrower which is a limited partnership, (ii) membership interests in any Borrower which is a limited liability company (other than the membership interests in or of a member which is the manager or managing member of such Borrower, which shall not be transferable without the prior written consent of Lender, which may be withheld, conditioned or delayed by Lender in its sole and absolute discretion) or (iii) voting stock in any Borrower which is a corporation;

(b)    any involuntary transfer caused by the death of any general partner, shareholder, joint venturer or member of Borrower or any general partner or member of Borrower or beneficial owner of a trust; and

(c)    gifts for estate planning purposes of any individual's interests in Borrower or in any of Borrower's general partners, members or joint venturers to the spouse or any lineal descendant of such individual, or to a trust for the benefit of any one or more of such individual, spouse or lineal descendant; provided, however, that in each case described in clauses (a), (b) or (c) above, such transfer shall be permitted only so long as Borrower is reconstituted, if required, following such transfer and so long as those persons responsible for the management of the Property and Borrower remain unchanged following such gift or any replacement management is approved by Lender.

5.3    **Sale or Participation of Loan.** In addition to Lender's rights set forth in Section 6.21 of the Deed of Trust, following the Closing Date, Lender may sell, transfer or assign the Loan, interests in the Loan, issue securities backed by or evidencing ownership of the Loan and/or further tranche the Loan, bifurcate the Loan into two (2) or more components and/or separate notes and/or create a senior/subordinate note structure at anytime without Borrower's written consent. Borrower and any guarantor (if applicable) will cooperate with any such transaction as may be reasonably requested by Lender.

6.    **Additional Loan Covenants.** Borrower shall be in compliance with the following covenants:

6.1    As of the Closing Date, the fair market value of the Property, as determined by an appraisal acceptable to Lender in its reasonable discretion, shall not exceed a "Loan-to-Value Ratio" (as defined below) of sixty-four and seventy-nine/one-hundredths percent (64.79%). For purposes of this provision, "Loan-to-Value Ratio" shall mean the outstanding principal balance of this Note divided by the then-current fair market value of the Property.

## EXHIBIT "B"
## LOAN DOCUMENTS AND OTHER RELATED DOCUMENTS

This Exhibit "B" is attached to and forms a part of that Promissory Note ("Note") executed by XELAN PROP 1, LLC, a California limited liability company ("Borrower") in favor of STERLING SAVINGS BANK, a Washington banking corporation, d/b/a Sterling Bank ("Lender").

1.    **Loan Documents.** The documents checked below of even date herewith (unless otherwise specified) and any amendments, modifications and supplements thereto which have received the prior written approval of Lender and any documents executed in the future that are approved by Lender and that recite that they are "Loan Documents" for purposes of this Note are collectively referred to as the "Loan Documents".

[X]    This Note;
[X]    Deed of Trust;
[X]    Continuing Guaranty Agreement;
[ ]    Limited Recourse Carve-Out Guaranty;
[X]    Environmental Indemnity Agreement;
[X]    State(s) of CALIFORNIA Uniform Commercial Code(s) - Financing Statement - Form UCC-1;
[X]    Assignment of Agreements, Permits, Licenses and Approvals;
[ ]    Manager's Consent and Subordination of Management Agreement;
[X]    Limited Liability Company Borrowing Authorization;
[ ]    Partnership Borrowing Authorization;
[ ]    Corporate Borrowing Resolution;
[ ]    Limited Liability Company Guaranty Authorization;
[ ]    Partnership Guaranty Authorization;
[ ]    Corporate Guaranty Resolution;
[ ]    Trustee Certification;
[X]    Incumbency Certificate;
[X]    Closing Certificate;
[X]    Agreement to Disburse Prior to Recording;
[X]    Deposit Account and Security Agreement;
[ ]    Borrower's Counsel Opinion Letter;
[ ]    Tenant Estoppel Certificate(s) of various date(s);
[ ]    Subordination, Non-Disturbance and Attornment Agreement(s) of various date(s);
[ ]    Ground Lessor Consent and Estoppel;
[ ]    Flood Hazard Notice;
[ ]    Conditional Waiver and Release on Progress Payment;
[ ]    Unconditional Waiver and Release on Progress Payment;
[ ]    Conditional Waiver and Release on Final Payment;
[ ]    Unconditional Waiver and Release on Final Payment;
[X]    Verification of Customer Identity;
[X]    Service Contract for Real Property Taxes; and
[X]    Form W-9 (Request for Taxpayer Identification Number and Certification).
[ ]    N/A
[ ]    N/A
[ ]    N/A

EXHIBIT "C"
IMPOUND AND RESERVE PROVISIONS

This Exhibit "C" is attached to and forms a part of that Promissory Note ("Note") executed by XELAN PROP 1, LLC, a California limited liability company ("Borrower") in favor of STERLING SAVINGS BANK, a Washington banking corporation, d/b/a Sterling Bank ("Lender").

1.    Impound and Reserve Provisions.

    1.1    Amounts.  Borrower shall deposit with Lender the amounts ("Impounds") stated below on the dates stated below, for the purpose of paying the costs stated below:

        (a)    Taxes – Initial and Monthly Impounds.  Intentionally Omitted.

        (b)    Insurance.  Intentionally Omitted.

        (c)    Tenant Improvements; Leasing Commissions – Closing Deposit.  Intentionally Omitted.

        (d)    Tenant Improvements; Leasing Commissions – Monthly Impounds.  Intentionally Omitted.

        (e)    Repairs – Closing Deposit.  $30,200.00 on the Closing Date for any and all "Repair Work" (as defined in Exhibit "D" attached hereto).

        (f)    Capital Improvements – Closing Deposit.  Intentionally Omitted.

        (g)    Capital Improvements – Monthly Impounds.  Intentionally Omitted.

    1.2    Application.

        (a)    Repair Work.  If no Default or event which, with the giving of notice or the passage of time, or both, would constitute a Default exists, Lender shall release the funds held by Lender as provided in Exhibit "D" attached hereto.

    1.3    General.

        (a)    Excess or Insufficient Impounds.  Any portion of the Impounds that exceeds the amount required for payment of the foregoing costs shall be repaid to Borrower upon Borrower's compliance with the foregoing.  Reference is made to Section 6.11(b) of the Deed of Trust for a description of the account into which the Impounds shall be deposited and for a description of certain rights and remedies of Lender with respect to amounts in such account.  If, however, any Impounds shall not contain sufficient funds to pay the sums required when the same shall become due and payable, Borrower shall promptly deposit with Lender the full amount of any such deficiency.

        (b)    Deposit of Impound Funds.  Any Impounds paid by Borrower hereunder shall not, unless otherwise explicitly required by applicable law, be or be deemed to be escrow or trust funds, but, at Lender's option and in Lender's discretion, may either be held in a separate account or be commingled by Lender with the general funds of Lender.  No interest on funds contained in any Impound shall be paid by Lender to Borrower.  The Impounds are solely for the protection of Lender and entail no responsibility on Lender's part beyond the application of said Impounds in accordance with the provisions of Section 1.2 above and beyond the allowing of due credit for the sums actually received.

(c)   **Assignment of Loan.**  Upon assignment of the Deed of Trust by Lender, any Impounds shall be turned over to the assignee and any responsibility of Lender, as assignor, with respect thereto shall terminate.

(d)   **No Cure; Application of Impounds After Default.**  No application of any Impound funds shall be deemed to cure any Default hereunder.  Following any Default under this Note, Lender may in its sole and absolute discretion, but shall not be obligated to, apply at any time the balance then remaining in the Impounds against the principal and interest or any other amounts due under the Loan Documents in whatever order Lender shall subjectively determine.

**1.4**   **Maintenance and Construction.**

(a)   **Repair Work.**  Borrower shall complete the lien-free performance of the Repair Work on or before ninety (90) days after the Closing Date.  Borrower shall perform the Repair Work in a workmanlike manner and in accordance with all applicable laws, ordinances, rules and regulations.

(b)   **Right of Inspection.**  Lender shall have the right to enter upon the Property at all reasonable times to inspect all work for the purpose of verifying information disclosed or required pursuant to this Note.  Notwithstanding the foregoing, Lender shall not be obligated to supervise or inspect any work or to inform Borrower or any third party regarding any aspect of any work.

# EXHIBIT "D"
## POST CLOSING REPAIR WORK

This Exhibit "D" is attached to and forms a part of that Promissory Note ("Note") executed by XELAN PROP 1, LLC, a California limited liability company ("Borrower") in favor of STERLING SAVINGS BANK, a Washington banking corporation, d/b/a Sterling Bank ("Lender").

1.    Repair Work Impound and Reserve Provisions.

    1.1    Amounts. Borrower shall deposit with Lender the amounts ("Impounds") stated below on the dates stated below, for the purpose of paying the costs stated below:

        (a)    Repairs – Closing Deposit. All "Repair Work" (as defined below).

    1.2    Application.

        (a)    Repair Work. If no Default or event which, with the giving of notice or the passage of time, or both, would constitute a Default exists, Lender shall release the Impounds to Borrower once a calendar quarter to reimburse Borrower for the Repair Work stated above; provided, however, that Lender shall have received and approved each of the following: (i) Borrower's written request for such release, describing the Repair Work and a cost breakdown therein in reasonable detail, and certifying that all such Repair Work has been completed lien-free and in a workmanlike manner, and (ii) an inspection report signed by an inspector selected by Lender, whose fees and expenses shall be paid by Borrower, and such other evidence as Lender shall require, confirming Borrower's certification.

    1.3    General.

        (a)    Excess or Insufficient Impounds. Any portion of the Impounds that exceeds the amount required for payment of the foregoing costs shall be repaid to Borrower upon Borrower's compliance with the foregoing. Reference is made to Section 6.11(b) of the Deed of Trust for a description of the account into which the Impounds shall be deposited and for a description of certain rights and remedies of Lender with respect to amounts in such account. If, however, any Impounds shall not contain sufficient funds to pay the sums required when the same shall become due and payable, Borrower shall promptly deposit with Lender the full amount of any such deficiency.

        (b)    Deposit of Impound Funds. Any Impounds paid by Borrower hereunder shall not, unless otherwise explicitly required by applicable law, be or be deemed to be escrow or trust funds, but, at Lender's option and in Lender's discretion, may either be held in a separate account or be commingled by Lender with the general funds of Lender. No interest on funds contained in any Impound shall be paid by Lender to Borrower. The Impounds are solely for the protection of Lender and entail no responsibility on Lender's part beyond the application of said Impounds in accordance with the provisions of Section 1.2 above and beyond the allowing of due credit for the sums actually received.

        (c)    Assignment of Loan. Upon assignment of the Deed of Trust by Lender, any Impounds shall be turned over to the assignee and any responsibility of Lender, as assignor, with respect thereto shall terminate.

        (d)    No Cure; Application of Impounds After Default. No application of any Impound funds shall be deemed to cure any Default hereunder. Following any Default under this Note, Lender may in its sole and absolute discretion, but shall not be obligated to, apply at any time the balance then remaining in the Impounds against the principal and interest or any other amounts due under the Loan Documents in whatever order Lender shall subjectively determine.

1.4    Maintenance and Construction.

    (a)    Repair Work. Borrower shall complete the lien-free performance of the Repair Work on or before ninety (90) days after the Closing Date. Borrower shall perform the Repair Work in a workmanlike manner and in accordance with all applicable laws, ordinances, rules and regulations.

2.    Post-Closing Repair Work.

The Property Condition Report received by Lender disclosed the following necessary repair ("Immediate Repair Work"):

    1.    RENOVATION OF UNIT 1900

Lender has agreed to close the Loan notwithstanding the fact that the performance of the Repair Work has not been completed as of the date hereof, subject to the following terms and conditions (collectively, "Additional Conditions"):

    (a)    Intentionally Omitted.

    (b)    Borrower shall complete or cause to be completed the lien free performance of the Immediate Repair Work within ninety (90) days of the Closing Date.

    (c)    Intentionally Omitted.

    (d)    Borrower shall perform or cause to be performed any and all Repair Work in a workmanlike manner and in accordance with all applicable laws, ordinances, rules and regulations.

    (e)    Borrower shall promptly provide Lender with: (i) copies of all invoices for costs incurred for the performance of the Repair Work and either evidence that such costs have been paid in full or unconditional lien waivers for all labor performed and/or materials supplied in connection with the performance and completion of the Repair Work; and (ii) a certification from Borrower stating that the Repair Work has been completed lien free and in a workmanlike manner (including, without limitation, pictures of the completed Repair Work); and/or an inspection report signed by an inspector selected by Lender, whose fees and expenses shall be paid by Borrower, and such other evidence as Lender shall require, confirming Borrower's certification.

Lender shall have the right to conduct inspections of such Repair Work as provided herein to verify compliance with any of the Additional Conditions. Borrower's failure to satisfy any one or more of the Additional Conditions set forth herein may, at Lender's election, constitute a Default under the Loan Documents.

3.    Right of Inspection. Lender shall have the right to enter upon the Property at all reasonable times to inspect all work for the purpose of verifying information disclosed or required pursuant to this Note. Notwithstanding the foregoing, Lender shall not be obligated to supervise or inspect any work or to inform Borrower or any third party regarding any aspect of any work.

# EXHIBIT 2

RECORDING REQUESTED BY
AND WHEN RECORDED RETURN TO:

ATTN: COMMERCIAL LOAN SUPPORT
STERLING BANK
P.O. BOX 2131
SPOKANE, WASHINGTON 99201

San Francisco Assessor-Recorder
Carmen Chu, Assessor-Recorder
DOC- 2013-J729297-00
Acct 1-CHICAGO Title Company
Wednesday, AUG 14, 2013 08:00:00
Ttl Pd $171.00    Rcpt # 0004764669
REEL K960 IMAGE 0086
oar/MA/4-37

1000-1022 Filbert St. 001 0085
Escrow No. 3551 5156

(SPACE ABOVE THIS LINE FOR RECORDER'S USE)

## DEED OF TRUST AND ABSOLUTE ASSIGNMENT OF RENTS AND LEASES
## AND SECURITY AGREEMENT (AND FIXTURE FILING)

The parties to this DEED OF TRUST AND ABSOLUTE ASSIGNMENT OF RENTS AND LEASES AND SECURITY AGREEMENT (AND FIXTURE FILING) ("Deed of Trust"), dated as of July 31, 2013 are XELAN PROP 1, LLC, a California limited liability company ("Trustor"), with a mailing address at P.O. BOX 691889, LOS ANGELES, California 90069, UPF INCORPORATED, a Washington corporation ("Trustee"), with a mailing address at 910 West Boone Avenue, Spokane, Washington 99201, and STERLING SAVINGS BANK, a Washington banking corporation, d/b/a Sterling Bank ("Beneficiary" or "Lender"), with a mailing address at 111 N. Wall Street, Spokane, Washington 99201.

### RECITALS

A.    Trustor proposes to borrow from Beneficiary, and Beneficiary proposes to lend to Trustor the principal sum of One Million Nine Hundred Sixty Thousand Dollars and No Cents ($1,960,000.00) ("Loan"). The Loan is evidenced by a promissory note ("Note") executed by Trustor, dated the date of this Deed of Trust, payable to the order of Beneficiary in the principal amount of the Loan.

B.    The loan documents include this Deed of Trust, the Note and the other documents described in the Note as Loan Documents ("Loan Documents").

C.    Trustor is sometimes referred to herein as "Borrower" and all references herein to Borrower or Trustor shall be deemed to be references to Trustor, and Beneficiary is sometimes referred to herein as "Lender" and all references herein to Lender or Trustee shall be deemed to be references to Beneficiary.

### ARTICLE 1
### DEED OF TRUST

1.1    **Grant.**    For the purposes of and upon the terms and conditions of this Deed of Trust, Trustor irrevocably grants, conveys and assigns to Trustee, in trust for the benefit of Lender, with power of sale and right of entry and possession, all estate, right, title and interest which Trustor now has or may hereafter acquire in, to, under or derived from any or all of the following:

(a)    That real property ("Land") located in San Francisco County, California, and more particularly described on Exhibit "A" attached hereto and, also commonly known as 1000-1022 FILBERT STREET, SAN FRANCISCO, CALIFORNIA, with the following assessor's parcel number(s): LOT 1D, BLOCK 93;

DOT (CA)                                                1    1000-1022 FILBERT STREET 2013 (Loan No. 3720003948)
477049 (rev 03/27/13)

98

(b)     All appurtenances, easements, rights of way, water and water rights, pumps, pipes, flumes and ditches and ditch rights, water stock, ditch and/or reservoir stock or interests, royalties, development rights and credits, air rights, minerals, oil rights, and gas rights, now or later used or useful in connection with, appurtenant to or related to the Land;

(c)     All buildings, structures, facilities, other improvements and fixtures now or hereafter located on the Land;

(d)     All apparatus, equipment, machinery and appliances and all accessions thereto and renewals and replacements thereof and substitutions therefor used in the operation or occupancy of the Land, it being intended by the parties that all such items shall be conclusively considered to be a part of the Land, whether or not attached or affixed to the Land;

(e)     All land lying in the right-of-way of any street, road, avenue, alley or right-of-way opened, proposed or vacated, and all sidewalks, strips and gores of land adjacent to or used in connection with the Land;

(f)     All additions and accretions to the property described above;

(g)     All licenses, authorizations, certificates, variances, consents, approvals and other permits now or hereafter pertaining to the Land and all estate, right, title and interest of Trustor in, to, under or derived from all trade names or business names relating to the Land or the present or future development, construction, operation or use of the Land; and

(h)     All proceeds of any of the foregoing.

All of the property described above is hereinafter collectively defined as the "Property". The listing of specific rights or property shall not be interpreted as a limitation of general terms. The Property is not used primarily or principally for agricultural purposes.

## ARTICLE 2.
## OBLIGATIONS SECURED

**2.1     Obligations Secured.**  Trustor makes the foregoing grant and assignment for the purpose of securing the following obligations ("**Secured Obligations**"):

(a)     Full and punctual payment to Lender of all sums at any time owing under the Note;

(b)     Payment and performance of all covenants and obligations of Borrower under this Deed of Trust including, without limitation, indemnification obligations and advances made to protect the Property;

(c)     Payment and performance of all additional covenants and obligations of Borrower under the Loan Documents;

(d)     Payment and performance of all covenants and obligations, if any, which any rider attached as an exhibit to this Deed of Trust recites are secured hereby;

(e)     Payment and performance of all future advances and other obligations that the then record owner of all or part of the Property may agree to pay and/or perform (whether as principal, surety or guarantor) for the benefit of Lender, when the obligation is evidenced by a writing which recites that it is secured by this Deed of Trust;

(f)     All interest and charges on all obligations secured hereby including, without limitation, prepayment charges, late charges and loan fees; and

DOT (CA)                                                    2     1000-1022 FILBERT STREET 2013 (Loan No. 3720003948)
477049 (rev 03/27/13)

(g)    All modifications, extensions and renewals of any of the obligations secured hereby, however evidenced, including, without limitation: (i) modifications of the required principal payment dates or interest payment dates or both, as the case may be, deferring or accelerating payment dates wholly or partly; and (ii) modifications, extensions or renewals at a different rate of interest whether or not any such modification, extension or renewal is evidenced by a new or additional promissory note or notes.

However, the Secured Obligations shall not include the payment and performance of the covenants and obligations of Borrower under the Environmental Indemnity Agreement of even date herewith, which obligations and covenants are not, notwithstanding anything to the contrary contained herein, secured by this Deed of Trust.

2.2    **Obligations.**  The term "obligations" is used herein in its broadest and most comprehensive sense and shall be deemed to include, without limitation, all interest and charges, prepayment charges, late charges and loan fees at any time accruing or assessed on any of the Secured Obligations.

2.3    **Incorporation.**  All terms and conditions of the documents which evidence any of the Secured Obligations are incorporated herein by this reference. All persons who may have or acquire an interest in the Property shall be deemed to have notice of the terms of the Secured Obligations and to have notice that the rate of interest on one or more Secured Obligation may vary from time to time.

## ARTICLE 3
## ABSOLUTE ASSIGNMENT OF RENTS AND LEASES

3.1    **Assignment.**  Trustor irrevocably assigns to Lender all of Trustor's right, title and interest in, to and under:

(a)    all present and future leases of the Property or any portion thereof, all licenses and agreements relating to the management, leasing or operation of the Property or any portion thereof, and all other agreements of any kind relating to the use or occupancy of the Property or any portion thereof, whether such leases, licenses and agreements are now existing or entered into after the date hereof ("Leases"); and

(b)    the rents, issues, deposits and profits of the Property, including, without limitation, all amounts payable and all rights and benefits accruing to Trustor under the Leases ("Payments").  The term "Leases" shall also include all Guaranties of and security for the tenants' performance thereunder, and all amendments, extensions, renewals or modifications thereto which are permitted hereunder.

This is a present and absolute assignment, not an assignment for security purposes only, and Lender's right to the Leases and Payments is not contingent upon, and may be exercised without possession of, the Property.

3.2    **Grant of License.**  Lender confers upon Trustor a revocable license ("License") to collect and retain the Payments as they become due and payable, until the occurrence of a "Default" (as hereinafter defined). Upon a Default, the License shall be automatically revoked and Lender may collect and apply the Payments pursuant to the terms hereof without notice and without taking possession of the Property. All Payments thereafter collected by Trustor shall be held by Trustor as trustee under a constructive trust for the benefit of Lender. Trustor hereby irrevocably authorizes and directs the tenants under the Leases to rely upon and comply with any notice or demand by Lender for the payment to Lender of any rental or other sums which may at any time become due under the Leases, or for the performance of any of the tenants' undertakings under the Leases, and the tenants shall have no right or duty to inquire as to whether any Default has actually occurred or is then existing. Trustor hereby relieves the tenants from any liability to Trustor by reason of relying upon and complying with any such notice or

demand by Lender.  Lender may apply, in its sole discretion, any Payments so collected by Lender against any Secured Obligation or any other obligation of Borrower, Trustor or any other person or entity, under any document or instrument related to or executed in connection with the Loan Documents, whether existing on the date hereof or hereafter arising.  Collection of any Payments by Lender shall not cure or waive any Default or notice of Default or invalidate any acts done pursuant to such notice.

3.3  **Effect of Assignment.**  The foregoing irrevocable assignment shall not cause Lender to be:

(a)  a mortgagee in possession;

(b)  responsible or liable for the control, care, management or repair of the Property or for performing any of the terms, agreements, undertakings, obligations, representations, warranties, covenants and conditions of the Leases;

(c)  responsible or liable for any waste committed on the Property by the tenants under any of the Leases or by any other parties for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee, invitee or other person; or

(d)  responsible for or impose upon Lender any duty to produce rents or profits.  Lender shall not directly or indirectly be liable to Trustor or any other person as a consequence of:

(i)  the exercise or failure to exercise any of the rights, remedies or powers granted to Lender hereunder; or

(ii)  the failure or refusal of Lender to perform or discharge any obligation, duty or liability of Trustor arising under the Leases.

3.4  **Covenants.**  Trustor shall, at Trustor's sole cost and expense:

(a)  perform all obligations of the landlord under the Leases and use reasonable efforts to enforce performance by the tenants of all obligations of the tenants under the Leases;

(b)  use reasonable efforts to keep the Property leased at all times to tenants which Trustor in good faith believes are creditworthy, at rents not less than the fair market rental value (including, but not limited to, free or discounted rents to the extent the market so requires);

(c)  promptly upon Lender's request, deliver to Lender a copy of each requested Lease and all amendments thereto and waivers thereof;

(d)  promptly upon Lender's request, execute and record any additional assignments of landlord's interest under any Lease to Lender and specific subordinations of any Lease to this Deed of Trust, in form and substance satisfactory to Lender; and

(e)  [Reserved].

Unless consented to in writing by Lender or otherwise permitted under any other provision of the Loan Documents, Trustor shall not:

(f)  grant any tenant under any Lease any option, right of first refusal or other right to purchase all or any portion of the Property under any circumstances;

(g)  grant any tenant under any Lease any right to prepay rent more than one (1) month in advance;

DOT (CA)
477049 (rev 03/27/13)                         4        1000-1022 FILBERT STREET 2013 (Loan No. 3720003948)

(h)     except upon Lender's request, execute any assignment of landlord's interest in any Lease;

(i)     collect rent or other sums due under any Lease in advance, other than to collect rent one (1) month in advance of the time when it becomes due; or

(j)     execute any lease which materially modifies the terms of any Lease or which deviates materially from the standard form Lease approved by Lender in writing.

Any such attempted action in violation of the provisions of this section shall be null and void.

Lender's failure to deny any written request by Trustor for consent under this section within ten (10) "Business Days" (as defined in the Note) after Lender's receipt of such request (and all documents and information reasonably related thereto) shall be deemed to constitute Lender's consent to such request.

3.5     **Estoppel Certificates for Commercial Tenants.**  Within thirty (30) days after request by Lender, if Trustor shall enter into any commercial Lease with a commercial tenant for space within the Property, Trustor shall deliver to Lender and to any party designated by Lender, estoppel certificates relating to any such commercial Lease(s) executed by Trustor and by each of the commercial tenants, in form and substance acceptable to Lender; provided, however, if any said commercial tenant shall fail or refuse to so execute and deliver any such estoppel certificate upon request, Trustor shall use reasonable efforts to cause such commercial tenant to execute and deliver such estoppel certificate but such commercial tenant's continued failure or refusal to do so, despite Trustor's reasonable efforts, shall not constitute a default by Trustor under this section.

3.6     **Right of Subordination.**  Lender may at any time and from time to time by specific written instrument intended for the purpose unilaterally subordinate the lien of this Deed of Trust to any Lease, without joinder or consent of, or notice to, Trustor, any tenant or any other person. Notice is hereby given to each tenant under a Lease of such right to subordinate. No subordination referred to in this section shall constitute a subordination to any lien or other encumbrance, whenever arising, or improve the right of any junior lien holder. Nothing herein shall be construed as subordinating this Deed of Trust to any Lease.

3.7     **Owner Occupied Provisions.**  In the event Borrower, or any affiliate owned or controlled by Borrower ("Affiliate"), rents, uses, occupies or otherwise possesses for its own residential use ("Owner Occupied Use") all or any portion of any residential portion of the Property ("Subject Premises"), then Trustor agrees as follows:  (a) Borrower and/or Affiliate, as tenant, shall execute a written lease agreement relating to the Owner Occupied Use of the Subject Premises, which lease shall provide for a term of no less than a one year, which may be renewable annually, at a market rate of rent ("Owner Lease"); (b) the Owner Lease, and any tenant rights in, to and under the Owner Lease, are hereby subjected and subordinated to the lien of this Deed of Trust, it being understood and agreed that the foregoing subordination shall apply to any and all increases, renewals, modifications, extensions, substitutions, replacements and/or consolidations of this Deed of Trust; (c) Trustor shall give notice to Lender of the termination, surrender or other release of the Owner Lease within 30 days of the date of such event, and Trustor shall promptly use its best efforts to lease all or any portion of the Subject Premises to a third party in an arm's length transaction for the then market rate of rent; (d) if Lender shall become the owner of the Property by reason of foreclosure or other proceedings brought to enforce the Deed of Trust or the Property shall be conveyed to Lender by deed-in-lieu of foreclosure (each, a "Remedies Event"), the Owner Lease shall, only at Lender's election in its sole discretion, continue in full force and effect as a direct lease between Lender and Trustor or Affiliate, and said attornment shall be effective and self-operative upon written notice by Lender to Trustor or Affiliate without the execution of any further instruments; and (e) if Lender shall become the owner of the Property by reason of a Remedies Event and Lender elects to continue the Owner Lease as provided in subsection (d) above, Trustor or Affiliate agrees that after such Remedies Event, Lender shall have no personal liability to tenant under the Owner Lease and Lender shall only be liable for the obligations of the landlord under the Owner Lease accruing during the period of time that Lender is the owner of the Property.

## ARTICLE 4
## SECURITY AGREEMENT AND FIXTURE FILING

**4.1    Security Interest.** Trustor grants and assigns to Lender a security interest to secure payment and performance of all of the Secured Obligations, in all of the following described personal property in which Trustor now or at any time hereafter has any interest ("Collateral"):

(a)    All goods, building and other materials, supplies, work in process, equipment, machinery, fixtures, furniture, furnishings, signs and other personal property, wherever situated, which are or are to be incorporated into, used in connection with or appropriated for use on the Property;

(b)    all rents, issues, deposits and profits of the Property (to the extent, if any, they are not subject to the Absolute Assignment of Rents and Leases);

(c)    all inventory, accounts, cash receipts, deposit accounts, impounds, accounts receivable, contract rights, general intangibles, chattel paper, instruments, documents, notes, drafts, letters of credit, insurance policies, insurance and condemnation awards and proceeds, any other rights to the payment of money, trade names, trademarks and service marks arising from or related to the Property or any business now or hereafter conducted thereon by Trustor;

(d)    all permits, consents, approvals, licenses, authorizations and other rights granted by, given by or obtained from, any governmental entity with respect to the Property;

(e)    all deposits or other security now or hereafter made with or given to utility companies by Borrower with respect to the Property;

(f)    all advance payments of insurance premiums made by Borrower with respect to the Property;

(g)    all plans, drawings and specifications relating to the Property;

(h)    all loan funds held by Lender, whether or not disbursed;

(i)    all funds deposited with Lender pursuant to any Loan Document, including, without limitation, all "Restoration Funds" as defined herein;

(j)    all reserves, deferred payments, deposits, accounts, refunds, cost savings and payments of any kind related to the Property or any portion thereof, including, without limitation, (i) all "Impounds" as defined herein together with all replacements and proceeds of, and additions and accessions to, any of the foregoing, and (ii) all books, records and files relating to any of the foregoing. As to all of the above-described personal property which is or which hereafter becomes a "fixture" under applicable law, this Deed of Trust constitutes a fixture filing under the California Uniform Commercial Code, as amended or recodified from time to time ("UCC").

**4.2    Rights of Lender.** In addition to Lender's rights as a "secured party" under the UCC, Lender may, but shall not be obligated to, at any time without notice and at the expense of Borrower:

(a)    give notice to any person of Lender's rights hereunder and enforce such rights at law or in equity;

(b)    insure, protect, defend and preserve the Collateral or any rights or interests of Lender therein;

(c)    inspect the Collateral; and

(d)   endorse, collect and receive any right to payment of money owing to Borrower under or from the Collateral.

Notwithstanding the above, in no event shall Lender be deemed to have accepted any property other than cash in satisfaction of any obligation of Borrower to Lender unless Lender shall make an express written election of said remedy under the UCC or other applicable law.

4.3   **Additional Rights of Lender Upon Default.**   Upon the occurrence of a Default hereunder, then in addition to all of Lender's rights as a "secured party" under the UCC or otherwise at law:

(a)   **Sale of Collateral.**  Lender may:

(i)   upon written notice, require Trustor to assemble any or all of the Collateral and make it available to Lender at a place designated by Lender;

(ii)   without prior notice, enter upon the Property or other place where any of the Collateral may be located and take possession of, collect, sell and dispose of any or all of the Collateral, and store the same at locations acceptable to Lender at Trustor's expense; or

(iii)   sell, assign and deliver at any place or in any lawful manner all or any part of the Collateral and bid and become purchaser at any such sales; and

(b)   **Other Rights.**  Lender may, for the account of Trustor and at Trustor's expense:

(i)   operate, use, consume, sell or dispose of the Collateral as Lender deems appropriate for the purpose of performing any or all of the Secured Obligations;

(ii)   enter into any agreement, compromise or settlement including insurance claims, which Lender may deem desirable or proper with respect to any of the Collateral; and

(iii)   endorse and deliver evidences of title for, and receive, enforce and collect by legal action or otherwise, all indebtedness and obligations now or hereafter owing to Trustor in connection with or on account of any or all of the Collateral.

Trustor acknowledges and agrees that a disposition of the Collateral in accordance with Lender's rights and remedies as heretofore provided is a disposition thereof in a commercially reasonable manner and that five (5) days' prior notice of such disposition is commercially reasonable notice. Trustor further agrees that any sale or other disposition of all or any portion of the Collateral may be applied by Lender first to the reasonable expenses in connection therewith, including reasonable attorneys' fees and disbursements, and then to the payment of the Secured Obligations.

4.4   **Power of Attorney.**  Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact (such power of attorney being coupled with an interest), and as such attorney-in-fact, Lender may, without the obligation to do so, in Lender's name or in the name of Trustor, prepare, execute, file and record financing statements, continuation statements, applications for registration and like papers necessary to create, perfect or preserve any of Lender's security interests and rights in or to any of the Collateral, and upon a Default hereunder, take any other action required of Trustor; provided, however, that Lender as such attorney-in-fact shall be accountable only for such funds as are actually received by Lender.

## ARTICLE 5
## REPRESENTATIONS AND WARRANTIES

5.1   **Representations and Warranties.** Trustor represents and warrants to Lender that, to Trustor's current actual knowledge after reasonable investigation and inquiry, the following statements are true and correct as of the "Closing Date" (as defined in the Note):

(a)   **Legal Status.** Trustor is duly organized and existing and in good standing under the laws of the states in which Trustor is organized. Trustor is qualified or licensed to do business in all jurisdictions in which such qualification or licensing is required.

(b)   **Permits.** Trustor possesses all permits, franchises and licenses and all rights to all trademarks, trade names, patents and fictitious names, if any, necessary to enable Trustor to conduct the business(es) in which Trustor is now engaged in compliance with applicable law.

(c)   **Authorization and Validity.** The execution and delivery of the Loan Documents have been duly authorized and the Loan Documents constitute valid and binding obligations of Trustor, Trustor or the party which executed the same, enforceable in accordance with their respective terms, except as such enforcement may be limited by bankruptcy, insolvency, moratorium or other laws affecting the enforcement of creditors' rights, or by the application of rules of equity.

(d)   **Violations.** The execution, delivery and performance by Trustor of each of the Loan Documents do not violate any provision of any law or regulation, or result in any breach or default under any contract, obligation, indenture or other instrument to which Trustor is a party or by which Trustor is bound.

(e)   **Litigation.** There are no pending or threatened actions, claims, investigations, suits or proceedings before any governmental authority, court or administrative agency which may adversely affect the financial condition or operations of Trustor other than those previously disclosed in writing by Trustor to Lender.

(f)   **Financial Statements.** The financial statements of Trustor and of each general partner (if Trustor is a partnership), of each managing member (if Trustor is a limited liability company) and of each guarantor, if any, previously delivered by Trustor to Lender:

(i)   are materially complete and correct;

(ii)   present fairly the financial condition of such party; and

(iii)   have been prepared in accordance with the same accounting standard used by Trustor to prepare the financial statements delivered to and approved by Lender in connection with the making of the Loan, or other accounting standards approved by Lender.

Since the date of such financial statements, there has been no material adverse change in such financial condition, nor have any assets or properties reflected on such financial statements been sold, transferred, assigned, mortgaged, pledged or encumbered except as previously disclosed in writing by Trustor to Lender and approved in writing by Lender.

(g)   **Reports.** All reports, documents, instruments and information delivered to Lender in connection with the Loan:

(i)   are correct and sufficiently complete to give Lender accurate knowledge of their subject matter; and

(ii)   do not contain any misrepresentation of a material fact or omission of a material fact which omission makes the provided information misleading.

(h)   **Income Taxes.** There are no pending assessments or adjustments of Trustor's or Trustor's income tax payable with respect to any year.

(i)   **Subordination.** There is no agreement or instrument to which Trustor is a party or by which Trustor is bound that would require the subordination in right of payment of any of Trustor's obligations under the Note to an obligation owed to another party.

(j)   **Title.** Trustor lawfully holds and possesses fee simple title to the Property, without limitation on the right to encumber same. This Deed of Trust is a first lien on the Property prior and superior to all other liens and encumbrances on the Property except:

(i)   liens for real estate taxes and assessments not yet due and payable;

(ii)   senior exceptions previously approved by Lender and shown in the title insurance policy insuring the lien of this Deed of Trust; and

(iii)   other matters, if any, previously disclosed to Lender by Trustor in a writing specifically referring to this representation and warranty.

(k)   **Mechanics' Liens.** There are no mechanics' or similar liens or claims which have been filed for work, labor or material (and no rights are outstanding that under law could give rise to any such liens) affecting the Property which are or may be prior to or equal to the lien of this Deed of Trust.

(l)   **Encroachments.** Except as shown in the survey, if any, previously delivered to Lender, none of the buildings or other improvements which were included for the purpose of determining the appraised value of the Property lies outside of the boundaries or building restriction lines of the Property and no buildings or other improvements located on adjoining properties encroach upon the Property.

(m)   **Leases.** All existing Leases are in full force and effect and are enforceable in accordance with their respective terms. No material breach or default by any party, or event which would constitute a material breach or default by any party after notice or the passage of time, or both, exists under any existing Lease. None of the landlord's interests under any of the Leases, including, but not limited to, rents, additional rents, charges, issues or profits, has been transferred or assigned. No rent or other payment under any existing Lease has been paid by any tenant for more than one (1) month in advance.

(n)   **Collateral.** Trustor has good title to the existing Collateral. Trustor has not previously assigned or encumbered Trustor's interest in any of the Collateral. No financing statement covering any of the Collateral has been delivered to any other person or entity. Trustor's principal place of business is located at the address shown in this Deed of Trust.

(o)   **Condition of Property.** Except as shown in the property condition survey or other engineering reports, if any, previously delivered to or obtained by Lender, the Property is in good condition and repair and is free from any damage, waste or defect that would materially and adversely affect the value of the Property as security for the Loan or the intended use of the Property, and is not being owned, occupied and/or otherwise used in a manner which does not conform to all required building and occupancy laws, codes and regulations and all zoning and other entitlements applicable to the Property.

(p)   **Wetlands.** No part of the Property consists of or is classified as wetlands, tidelands or swamp and overflow lands.

(q)    **Compliance With Laws; ERISA.**

(i)    All federal, state and local laws, rules and regulations applicable to the Property, including, without limitation, all zoning and building requirements and all requirements of the Americans With Disabilities Act of 1990, as amended from time to time (42 U.S.C. Section 12101 et seq.) have been satisfied or complied with.  Trustor is in possession of all certificates of occupancy and all other licenses, permits and other authorizations required by applicable law for the existing use of the Property.  All such certificates of occupancy and other licenses, permits and authorizations are valid and in full force and effect;

(ii)    Trustor shall not engage in any transaction which would cause any obligation, or action taken or to be taken, hereunder (or the exercise by Lender of any of its rights under the Note, this Deed of Trust and the other Loan Documents) to be a non-exempt (under a statutory or administrative class exemption) prohibited transaction under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"); and

(iii)    Trustor shall deliver to Lender such certifications or other evidence from time to time throughout the term of this Deed of Trust, as requested by Lender in its sole discretion, that Trustor is not:

(A)    an "employee benefit plan" as defined in Section 3(32) of ERISA, which is subject to Title I of ERISA, or a "governmental plan" within the meaning of Section 3(32) of ERISA, and

(B)    subject to state statutes regulating investments and fiduciary obligations with respect to governmental plans.

(r)    **Property Taxes and Other Liabilities.**  All taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, and ground rents, if any, which previously became due and owing in respect of the Property have been paid.

(s)    **Condemnation.**  There is no proceeding pending or threatened for the total or partial condemnation of the Property.

(t)    **Homestead.**  There is no homestead or other exemption available to Trustor which would materially interfere with the right to sell the Property at a trustee's sale or the right to foreclose this Deed of Trust.

(u)    **Business Purposes.**  The proceeds of the Loan shall be used exclusively for business purposes.

(v)    **Not Residential.**  No portion of the Property is or will be occupied by Borrower as its principal residence.

## ARTICLE 6
### RIGHTS AND DUTIES OF THE PARTIES

6.1    **Maintenance and Preservation of the Property.**  Trustor shall:

(a)    keep the Property in good condition and repair;

(b)    complete or restore promptly and in workmanlike manner the Property or any part thereof which may be damaged or destroyed (unless, if and to the extent permitted under Section 6.10, Lender elects to require that insurance proceeds be used to reduce the Secured Obligations and after such repayment the ratio of Secured Obligations to the value of the Property, as

reasonably determined by Lender is the same as or lower than it was immediately before the loss or taking occurred);

(c)    comply and cause the Property to comply with (i) all laws, ordinances, regulations and standards, (ii) all covenants, conditions, restrictions and equitable servitudes, whether public or private, of every kind and character and (iii) all requirements of insurance companies and any bureau or agency which establishes standards of insurability, which laws, covenants or requirements affect the Property and pertain to acts committed or conditions existing thereon, including, without limitation, any work of alteration, improvement or demolition as such laws, covenants or requirements mandate;

(d)    operate and manage the Property at all times in a professional manner and do all other acts which from the character or use of the Property may be reasonably necessary to maintain and preserve its value;

(e)    promptly after execution, deliver to Lender a copy of any management agreement concerning the Property and all amendments thereto and waivers thereof; and

(f)    execute and acknowledge all further documents, instruments and other papers as Lender or Trustee deems necessary or appropriate to preserve, continue, perfect and enjoy the benefits of this Deed of Trust and perform Trustor's obligations, including, without limitation, statements of the amount secured hereby then owing and statements of no offset.

Trustor shall not:

(g)    remove or demolish all or any material part of the Property;

(h)    alter either (i) the exterior of the Property in a manner which materially and adversely affects the value of the Property or (ii) the roof or other structural elements of the Property in a manner which requires a building permit;

(i)    initiate or acquiesce in any change in any zoning or other land classification which affects the Property;

(j)    materially alter the type of occupancy or use of all or any part of the Property; or

(k)    commit or permit waste of the Property.

Notwithstanding any other provision of this Deed of Trust or any other Loan Document to the contrary, Trustor covenants and agrees to apply any Rents (including without limitation any Rents and other lease payments received more than one (1) month in advance), royalties, accounts, revenues, income, issues, profits, sums received in consideration of any surrender or termination of any lease (or the release or discharge of any tenant thereunder) or material modification of any lease on the Property, and other benefits from the Property which are collected or received by Trustor (A) prior to the period of any Default, or prior to the occurrence of any event which with the giving of notice or the passage of time, or both, first for the payment of the ordinary and necessary expenses of owning and operating the Property, next to Lender for repayment of the Obligations, and finally, any remaining sums to Trustor, or (B) either during the period of any Default, or after the occurrence of any event which with the giving of notice or the passage of time, or both, would constitute a Default, or after acceleration of the indebtedness and other sums owing under the Loan Documents, only to the payment of either such Obligations or other sums, or the normal and necessary operating expenses of the Property.

6.2    **Compliance With Laws; ERISA.**

(a)    Trustor shall comply with all federal, state and local laws, rules and regulations applicable to the Property, including, without limitation, all zoning and building requirements and all

requirements of the Americans With Disabilities Act of 1990 (42 U.S.C. Section 12101 et seq.), as amended from time to time;

(b)    Trustor shall possess and maintain or cause Trustor to possess and maintain in full force and effect at all times:

(i)    all certificates of occupancy and other licenses, permits and authorizations required by applicable law for the existing use of the Property; and

(ii)    all permits, franchises and licenses and all rights to all trademarks, trade names, patents and fictitious names, if any, required by applicable law for Trustor to conduct the business(es) in which Trustor is now engaged;

(c)    Trustor is not or will not be an "employee benefit plan" as defined in Section 3(32) of ERISA, which is subject to Title I of ERISA, and the assets of Trustor do not and will not constitute "plan assets" of one or more such plans for purposes of Title I of ERISA; and

(d)    Trustor is not or will not be a "governmental plan" within the meaning of Section 3(32) of ERISA, and transactions by or with Trustor are not and will not be subject to state statutes applicable to Trustor regulating investments of and fiduciary obligations with respect to governmental plans.

6.3    **Litigation.**  Trustor shall promptly notify Lender in writing of any litigation pending or threatened against Trustor claiming damages in excess of $50,000 and of all pending or threatened litigation against Trustor if the aggregate damage claims against Trustor exceed $100,000.

6.4    Merger, Consolidation, Transfer of Assets.  Trustor shall not:

(a)    merge or consolidate with any other entity or permit Trustor to merge or consolidate with any other entity;

(b)    make any substantial change in the nature of Trustor's business or structure or permit Trustor to make any substantial change in the nature of Trustor's business or structure;

(c)    acquire all or substantially all of the assets of any other entity or permit Trustor to acquire all or substantially all of the assets of any other entity; or

(d)    sell, lease, assign, transfer or otherwise dispose of a material part of Trustor's assets except in the ordinary course of Trustor's business.

6.5    **Accounting Records.**  Trustor shall maintain adequate books and records in accordance with the same accounting standard used by Trustor to prepare the financial statements delivered to and approved by Lender in connection with the making of the Loan or other accounting standards approved by Lender. Trustor shall permit any representative of Lender, at any reasonable time and from time to time and at Lender's expense, to inspect, audit and examine such books and records and make copies of same.

6.6    **Costs, Expenses and Attorneys' Fees.**  Trustor shall pay to Lender the full amount of all costs and expenses, including, without limitation, reasonable attorneys' fees and expenses of Lender's in-house or outside counsel, incurred by Lender in connection with:

(a)    appraisals and inspections of the Property or Collateral, or inspection of Trustor's books and records, required by Lender as a result of (i) a "Transfer" or proposed "Transfer" (as defined below), (ii) in connection with any sale or securitization of the Loan, or (iii) a Default,

(b)    any acts performed by Lender at Trustor's request or wholly or partially for the benefit of Trustor (including, without limitation, the preparation or review of amendments, assumptions, waivers, releases, reconveyances, estoppel certificates or statements of amounts owing under any Secured Obligation).

Trustor shall pay all costs and expenses arising under this section immediately upon demand by Lender together with interest thereon following notice of such indebtedness at the rate of interest then applicable to the principal balance of the Note as specified therein.

6.7    **No Other Debt; Liens, Encumbrances and Charges.**

(a)    Without obtaining Lender's prior written consent (which consent shall be granted or withheld in Lender's sole and absolute discretion and at Trustor's sole cost and expense), Trustor shall not incur any debt, secured or unsecured, direct or indirect, absolute or contingent (including guaranteeing any obligation) related to and/or secured by the Collateral, other than the Loan and trade debt incurred in the ordinary course of Trustor's business (with any such trade debt to be paid within sixty (60) days of the date such debt was incurred and, in any event, prior to delinquency). In addition, without obtaining Lender's prior written consent (which consent shall be granted or withheld in Lender's sole and absolute discretion and at Trustor's sole cost and expense), Trustor shall not permit the encumbrance, hypothecation or pledge of any of the membership interests of Trustor; and

(b)    Trustor shall immediately discharge by bonding or otherwise any lien, charge or other encumbrance which attaches to the Property in violation of Section 6.14.

Subject to Trustor's right to contest such matters under this Deed of Trust or as expressly permitted in the Loan Documents, Trustor shall pay when due all obligations secured by or reducible to liens and encumbrances which shall now or hereafter encumber or appear to encumber all or any part of the Property or any interest therein, whether senior or subordinate hereto, including, without limitation, all claims for work or labor performed, or materials or supplies furnished, in connection with any work of demolition, alteration, repair, improvement or construction of or upon the Property, except such as Trustor may in good faith contest or as to which a bona fide dispute may arise (provided provision is made to the satisfaction of Lender for eventual payment thereof in the event that Trustor is obligated to make such payment and that any recorded claim of lien, charge or other encumbrance against the Property is immediately discharged by bonding or otherwise).

6.8    **Taxes and Other Liabilities.** Trustor shall pay and discharge when due any and all indebtedness, obligations, assessments and taxes, both real and personal and including federal and state income taxes and state and local property taxes and assessments. Trustor shall promptly provide to Lender copies of all tax and assessment notices pertaining to the Property. Trustor hereby authorizes Lender to obtain, at Trustor's expense, a tax service contract which shall provide tax information on the Property to Lender for the term of the Loan and any extensions or renewals of the Loan.

6.9    **Insurance Coverage.** At all times throughout the term hereof, Trustor shall, at its sole cost and expense, maintain insurance, and shall pay, as the same becomes due and payable, all premiums in respect thereto, including, but not necessarily limited to:

6.9.1    **General Liability Insurance.** Trustor shall, at its expense, obtain and keep in force until full payment of the Loan a policy of commercial general liability insurance in an occurrence form providing for broad form property damage coverage, broad form contractual coverage, personal injury, bodily injury, and products and complete operations coverage, insuring Trustor under such insurance policy arising out of or in connection with the Property. Such insurance policy shall have (a) a combined single limit for both bodily injury or death in an amount not less than Two Million Dollars ($2,000,000.00), (b) a limit for both bodily injury or death in any one accident or occurrence or for property damage in an amount not less than One Million Dollars ($1,000,000.00), which amounts shall be increased from time to time as reasonably required by Lender. Such insurance policy and each portion

DOT (CA)    13    1000-1022 FILBERT STREET 2013 (Loan No. 3720003948)
477049 (rev 03/27/13)

110

thereof shall be in a form acceptable to Lender in its discretion, shall be for an insured period of not less than one calendar year, and shall include a deductible of not more than $10,000.00 per occurrence or claim.

6.9.2   **Fire Insurance.** Trustor shall, at its expense, obtain and keep in force on all of the improvements until full payment of the Loan a policy of standard "all risk" fire and extended coverage insurance, with vandalism and malicious mischief endorsements, to the extent of one hundred percent (100%) of full replacement value against "all risks of physical loss" including without limitation a replacement cost and code compliance coverage endorsement including boiler and machinery insurance coverage, heating, air conditioning equipment, and other equipment of such nature, and insurance against loss or damage to personal property owned by Trustor and located on the Property by fire and other hazards covered by such insurance (without any deductible clause unless in accordance with market terms). All such insurance shall be payable to Lender under an attached Lender's Loss Payable Endorsement (Form 438 BFUNS or equivalent). Such insurance policy and each portion thereof shall be in form acceptable to Lender in its discretion. Such policy shall, if required by Lender, contain an agreed value clause sufficient (as determined by Lender) to eliminate any risk of coinsurance.

6.9.3   **Business Interruption.** Business interruption insurance (extra expense/loss of income insurance) in an amount sufficient to cover any loss of income from the Property in an amount of not less than actual income loss for a period of twelve (12) months.

6.9.4   **Flood.** A policy or policies of flood insurance in the maximum amount of flood insurance available with respect to the Property under the Flood Disaster Protection Act of 1973, as amended. This requirement will be waived upon presentation of evidence satisfactory to Lender that no portion of the site is located within an area identified by the U.S. Department of Housing and Urban Development as having special flood hazards.

6.9.5   **Other.** All insurance required shall be procured and maintained in financially sound and generally recognized responsible insurance companies selected by the Trustor and subject to the approval of Lender. Such companies should be authorized to write such insurance in the State of California. The company issuing the policies shall be rated "B++" Class VII or better by A.M. Best Co., in "Bests". Key guide, or such other rating as may be acceptable to Lender in Lender's sole discretion. All property policies evidencing the insurance required shall name Lender as first mortgagee and all liability policies evidencing the insurance required shall name Lender as an additional insured, shall not be cancelable as to the interests of Lender due to the acts of the Trustor, and shall provide for at least thirty (30) days prior written notice of the cancellation or modification thereof to Lender.

6.9.6   **Evidence.** All such policies of insurance, or certificates of insurance evidencing that such insurance is in full force and effect, shall be delivered to Lender on or before the date hereof (together with proof of the payment of the premiums thereof). At least thirty (30) days prior to the expiration of each such policy, Trustor shall furnish Lender evidence that such policy has been renewed or replaced in the form of a certificate reciting that there is in full force and effect, with a term covering at least the next succeeding calendar year, insurance hereof of the types and in the amounts required.

6.9.7   **Earthquake.** Lender, at Lender's election, may only require earthquake insurance if all or any portion of the Property is or becomes located in an earthquake fault zone.

Neither Lender nor Trustee, by reason of accepting, rejecting, approving or obtaining insurance shall incur any liability for:

(i)   the existence, nonexistence, form or legal sufficiency of any insurance;

(ii)   the solvency of any insurer, or

(iii)    the payment of claims.

If Trustor fails to maintain and deliver to Lender the original policies or certificates of insurance required by this Deed of Trust, upon ten (10) days' prior notice to Trustor, Lender may procure such insurance at Trustor's sole cost and expense upon demand by Lender. Trustor agrees to deliver to Lender promptly upon receipt, but in any event no later than thirty (30) days prior to the termination of any of such insurance policies, a renewal policy (or certificate of insurance evidencing the same) satisfying the requirements of this Deed of Trust.

6.10    Insurance and Condemnation Proceeds.

(a)    Assignment of Claims. Trustor absolutely and irrevocably assigns to Lender all of the following rights, claims and amounts (collectively, "Claims"), all of which shall be paid to Lender:

(i)    all awards of damages and all other compensation payable directly or indirectly by reason of a condemnation or proposed condemnation for public or private use affecting all or any part of, or any interest in, the Property;

(ii)    all other claims and awards for damages to or decrease in value of all or any part of, or any interest in, the Property;

(iii)    all proceeds of any insurance policies payable by reason of loss sustained to all or any part of the Property; and

(iv)    all interest which may accrue on any of the foregoing.

Trustor shall give Lender prompt written notice of the occurrence of any casualty affecting, or the institution of any proceedings for eminent domain or for the condemnation of, the Property or any portion thereof. So long as no Default has occurred and is continuing at the time, Trustor shall have the right to adjust, compromise and settle any Claim of $100,000 or less without the consent of Lender, provided, however, all awards, proceeds and other sums described herein shall continue to be payable to Lender. Lender may commence, appear in, defend or prosecute any Claim exceeding $100,000, and may adjust, compromise and settle all Claims (except for Claims which Trustor may settle as provided herein), but shall not be responsible for any failure to commence, appear in, defend, prosecute or collect any such Claim regardless of the cause of the failure. All awards, proceeds and other sums described herein shall be payable to Lender.

(b)    Application of Proceeds. Lender may, at Lender's absolute discretion and regardless of any impairment of security or lack of impairment of security, but subject to applicable law governing use of the Proceeds, if any, apply all or any of the Proceeds to Lender's expenses in settling, prosecuting or defending the Claims and then apply the balance to the Secured Obligations in any order without suspending, extending or reducing any obligation of Trustor to make installment payments, and may release all or any part of the Proceeds to Trustor upon any conditions Lender chooses.

6.11    Impounds.

(a)    Post-Default Impounds. If required by Lender at any time after a Default occurs (and regardless of whether such Default is thereafter cured), Trustor shall deposit with Lender such amounts ("Post-Default Impounds") on such dates (determined by Lender as provided below) as will be sufficient to pay any or all "Costs" (as defined below) specified by Lender. Lender in its sole discretion shall estimate the amount of such Costs that will be payable or required during any period selected by Lender not exceeding one year and shall determine the fractional portion thereof that Trustor shall deposit with Lender on each date specified by Lender during such period. If the Post-Default Impounds paid by Trustor are not sufficient to pay the related Costs, Trustor shall deposit with Lender upon demand an amount equal to the deficiency. All Post-Default Impounds shall be payable by Trustor in addition to (but without duplication of) any other "Impounds" (as defined below).

(b)    **All Impounds.**  Post-Default Impounds and any other impounds that may be payable by Trustor under the Note are collectively called "impounds". All Impounds shall be deposited into an account maintained by Lender or its servicing agent, which may be a commingled account, and Lender shall not be entitled to interest thereon. Lender shall not be trustees, special depositaries or other fiduciaries for Trustor with respect to such account, and the existence of such account shall not limit Lender's rights under this Deed of Trust, any other agreement or any provision of law. If no Default exists, Lender shall apply all Impounds to the payment of the related Costs, or in Lender's sole discretion may release any or all Impounds to Trustor for application to and payment of such Costs. If a Default exists, Lender may apply any or all Impounds to any Secured Obligation and/or to cure such Default, whereupon Trustor shall restore all Impounds so applied and cure all Defaults not cured by such application. The obligations of Trustor hereunder shall not be diminished by deposits of Impounds made by Trustor, except to the extent that such obligations have actually been met by application of such Impounds. Upon any assignment of this Deed of Trust, Lender may assign all Impounds in its possession to Lender's assignee, whereupon Lender and Trustee shall be released from all liability with respect to such Impounds. Within sixty (60) days following full repayment of the Secured Obligations (other than as a consequence of foreclosure or conveyance in lieu of foreclosure) or at such earlier time as Lender may elect, Lender shall pay to Trustor all Impounds in its possession, and no other party shall have any right or claim thereto. "Costs" means (i) all taxes and other liabilities payable by Trustor under Section 6.8, (ii) all insurance premiums payable by Trustor under Section 6.9, (iii) all other costs and expenses for which impounds are required under the Note, and/or (iv) all other amounts that will be required to preserve the value of the Property. Trustor shall deliver to Lender, promptly upon receipt, all bills for Costs for which Lender has required Post-Default Impounds.

6.12    **Defense and Notice of Losses, Claims and Actions.**  Trustor shall protect, preserve and defend the Property and title to and right of possession of the Property, the security of this Deed of Trust and the rights and powers of Lender and Trustee hereunder at Trustor's sole expense against all adverse claims, whether the claim (a) is against a possessory or non-possessory interest, (b) arose prior or subsequent to the Closing Date, or (c) is senior or junior to Trustor's or Lender's rights. Trustor shall give Lender and Trustee prompt notice in writing of the assertion of any claim, of the filing of any action or proceeding, of the occurrence of any damage to the Property and of any condemnation offer or action.

6.13    **Right of Inspection.**  Lender and its independent contractors, agents and employees may enter the Property from time to time at any reasonable time for the purpose of inspecting the Property and ascertaining Trustor's compliance with the terms of this Deed of Trust. Lender shall use reasonable efforts to assure that Lender's entry upon and inspection of the Property shall not materially and unreasonably interfere with the business or operations of Trustor or Trustor's tenants on the Property.

6.14    **Prohibition of Transfer of Property or Interests in Trustor.**  Trustor acknowledges that Lender has relied upon the principals of Trustor and their experience in owning and operating properties similar to the Property in connection with the closing of the Loan. Accordingly, except with the prior written consent of Lender or as otherwise expressly permitted in the Note, Trustor shall not cause or permit any sale, exchange, mortgage, pledge, hypothecation, assignment, encumbrance or other transfer, conveyance or disposition, whether voluntarily, involuntarily or by operation of law ("Transfer") of all or any part of, or all or any direct or indirect interest in, the Property or the Collateral (except for equipment and inventory in the ordinary course of its business), or cause or permit a Transfer of any direct or indirect interest (whether general or limited partnership interest, stock, limited liability company interest, trust, or otherwise) in Trustor. In the event of any Transfer that is not expressly permitted in the Note and is without the prior written consent of Lender, Lender shall have the absolute right at its option, without prior demand or notice, to declare all of the Secured Obligations immediately due and payable, except to the extent prohibited by law, and pursue its rights and remedies under Section 7.3 herein. Trustor agrees to pay any prepayment fee as set forth in the Note in the event the Secured Obligations are accelerated pursuant to the terms of this Section. Consent to one such Transfer shall not be deemed to be a waiver of the right to require the consent to future or successive Transfers.

6.15    Acceptance of Trust; Powers and Duties of Trustee.  Trustee accepts this trust when this Deed of Trust is recorded.  From time to time upon written request of Lender and presentation of this Deed of Trust, or a certified copy thereof, for endorsement, and without affecting the personal liability of any person for payment of any Indebtedness or performance of any Secured Obligation, Trustee may, without liability therefor and without notice:

(a)    reconvey all or any part of the Property;

(b)    consent to the making of any map or plat of the Property;

(c)    join in granting any easement on the Property;

(d)    join in any declaration of covenants and restrictions; or

(e)    join in any extension agreement or any agreement subordinating the lien or charge of this Deed of Trust.

Nothing contained in the immediately preceding sentence shall be construed to limit, impair or otherwise affect the rights of Trustor in any respect.  Except as may otherwise be required by applicable law, Trustee or Lender as nominee for Lender may from time to time apply to any court of competent jurisdiction for aid and direction in the execution of the trusts hereunder and the enforcement of the rights and remedies available hereunder, and Trustee or Lender as nominee for Lender may obtain orders or decrees directing or confirming or approving acts in the execution of said trusts and the enforcement of said remedies.  Trustee has no obligation to notify any party of any pending sale or any action or proceeding (including, without limitation, actions in which Trustor, Lender or Trustee shall be a party) unless held or commenced and maintained by Trustee under this Deed of Trust.  Trustee shall not be obligated to perform any act required of it hereunder unless the performance of the act is requested in writing and Trustee is reasonably indemnified and held harmless against loss, cost, liability and expense.°

6.16    Compensation of Trustee.  Trustor shall pay to Trustee reasonable compensation and reimbursement for services and expenses in the administration of this trust, including, without limitation, reasonable attorneys' fees and costs.  Trustor shall pay all Indebtedness arising under this section immediately upon demand by Trustee, Lender together with interest thereon from the date the Indebtedness arises at the rate of interest then applicable to the principal balance of the Note as specified therein.

6.17    Exculpation.  Lender shall not directly or indirectly, be liable to Trustor or any other person as a consequence of:

(a)    the exercise of the rights, remedies or powers granted to Lender in this Deed of Trust;

(b)    the failure or refusal of Lender to perform or discharge any obligation or liability of Trustor under any agreement related to the Property or under this Deed of Trust; or

(c)    any loss sustained by Trustor or any third party resulting from Lender's failure to lease the Property after a "Default" (hereafter defined) or from any other act or omission of Lender in managing the Property after a Default unless the loss is caused by the willful misconduct and bad faith of Lender, and no such liability shall be asserted or enforced against Lender, all such liability being expressly waived and released by Trustor.

6.18    Indemnity.  Without in any way limiting any other indemnity contained in this Deed of Trust, Trustor agrees to defend, indemnify and hold harmless Trustee and the "Lender Group" (as defined below) from and against any claim, loss, damage, cost, expense or liability directly or indirectly arising out of:

DOT (CA)                                              17    1000-1022 FILBERT STREET 2013 (Loan No. 3720003948)
477049 (rev 03/27/13)

114

(a)    the making of the Loan, except for violations of banking laws or regulations by the Lender Group;

(b)    this Deed of Trust;

(c)    the execution of this Deed of Trust or the performance of any act required or permitted hereunder or by law;

(d)    any failure of Trustor to perform Trustor's obligations under this Deed of Trust or the other Loan Documents;

(e)    any alleged obligation or undertaking on the Lender Group's part to perform or discharge any of the representations, warranties, conditions, covenants or other obligations contained in any other document related to the Property;

(f)    any act or omission by Trustor or any contractor, agent, employee or representative of Trustor with respect to the Property; or

(g)    any prohibited transaction or in the sale of a prohibited loan, and in obtaining any individual prohibited transaction exemption under ERISA that may be required, in Lender's sole discretion, that Lender may incur, directly or indirectly, as a result of a Default under Sections 5.1(q) or 6.2.

The foregoing to the contrary notwithstanding, this indemnity shall not include any claim, loss, damage, cost, expense or liability directly or indirectly arising out of the gross negligence or willful misconduct of any member of the Lender Group or Trustee, or any claim, loss, damage, cost, expense or liability incurred by the Lender Group or Trustee arising from any act or incident on the Property occurring after the full reconveyance and release of the lien of this Deed of Trust on the Property. This indemnity shall include, without limitation:

(h)    all consequential damages (including, without limitation, any third-party tort claims or governmental claims, fines or penalties against Trustee or the Lender Group); and

(i)    all court costs and reasonable attorneys' fees (including, without limitation, expert witness fees) paid or incurred by Trustee or the Lender Group. "Lender Group", as used herein, shall mean:

(i)    Lender (including, without limitation, Lender and any participant in the Loan),

(ii)    any entity controlling, controlled by or under common control with Lender,

(iii)    the directors, officers, employees and agents of Lender and such other entities, and

(iv)    the successors, heirs and assigns of the entities and persons described in foregoing clauses (i) through (iii).

Trustor shall pay immediately upon Trustee's or Lender's demand any amounts owing under this indemnity together with interest from the date the indebtedness arises until paid at the rate of interest applicable to the principal balance of the Note as specified therein. Trustor agrees to use legal counsel reasonably acceptable to Trustee and the Lender Group in any action or proceeding arising under this indemnity. THE PROVISIONS OF THIS SECTION SHALL SURVIVE THE TERMINATION AND RECONVEYANCE OF THIS DEED OF TRUST, BUT TRUSTOR'S LIABILITY UNDER THIS INDEMNITY

SHALL BE SUBJECT TO THE PROVISIONS OF THE SECTION, IF ANY, IN THE NOTE ENTITLED "BORROWER'S LIABILITY."

**6.19   Substitution of Trustee.**  From time to time, by a writing signed and acknowledged by Lender and recorded in the Office of the Recorder of the County in which the Property is situated, Lender may appoint another trustee to act in the place and stead of Trustee or any successor. Such writing shall set forth any information required by law. The recordation of such instrument of substitution shall discharge Trustee herein named and shall appoint the new trustee as the trustee hereunder with the same effect as if originally named trustee herein. A writing recorded pursuant to the provisions of this section shall be conclusive proof of the proper substitution of such new trustee.

**6.20   Releases, Extensions, Modifications and Additional Security.**  Without notice to or the consent, approval or agreement of any persons or entities having any interest at any time in the Property or in any manner obligated under the Secured Obligations ("Interested Parties"), Lender may, from time to time:

(a)    fully or partially release any person or entity from liability for the payment or performance of any Secured Obligation;

(b)    extend the maturity of any Secured Obligation;

(c)    make any agreement with Trustor increasing the amount or otherwise altering the terms of any Secured Obligation;

(d)    accept additional security for any Secured Obligation; or

(e)    release all or any portion of the Property, Collateral and other security for any Secured Obligation.

None of the foregoing actions shall release or reduce the personal liability of any of said Interested Parties, or release or impair the priority of the lien of this Deed of Trust upon the Property.

**6.21   Sale or Participation of Loan.**  Trustor agrees that Lender may at any time sell, assign, participate or securitize all or any portion of Lender's rights and obligations under the Loan Documents, and that any such sale, assignment, participation or securitization may be to one or more financial institutions or other entities, to private investors, and/or into the public securities market, in Lender's sole discretion. Trustor further agrees that Lender may disseminate to any such actual or potential purchasers, assignees or participants all documents and financial and other information heretofore or hereafter provided to or known to Lender with respect to (a) the Property and its operation; and/or (b) any party connected with the Loan (including, without limitation, Trustor, any partner or member of Trustor, any constituent partner or member of Trustor, any guarantor and any nonborrower Trustor).

In the event of any such sale, assignment, participation or securitization, Lender and the other parties to the same shall share in the rights and obligations of Lender set forth in the Loan Documents as and to the extent they shall agree among themselves. In connection with any such sale, assignment, participation or securitization, Trustor further agrees that the Loan Documents shall be sufficient evidence of the obligations of Trustor to each purchaser, assignee or participant, and Trustor shall, within fifteen (15) days after request by Lender, deliver an estoppel certificate verifying for the benefit of Lender and any other party designated by Lender the status and the terms and provisions of the Loan in form and substance acceptable to Lender, and enter into such amendments or modifications to the Loan Documents as may be reasonably required in order to facilitate any such sale, assignment, participation or securitization without impairing Trustor's rights or increasing Trustor's obligations. The indemnity obligations of Trustor under the Loan Documents shall also apply with respect to any purchaser, assignee or participant.

6.22    Reconveyance.  Upon Lender's written request, and upon surrender of this Deed of Trust or certified copy thereof and any note, instrument or instruments setting forth all obligations secured hereby to Trustee for cancellation, Trustee shall reconvey, without warranty, the Property or that portion thereof then held hereunder.  The recitals of any matters or facts in any reconveyance executed hereunder shall be conclusive proof of the truthfulness thereof.  To the extent permitted by law, the reconveyance may describe the Lender as "the person or persons legally entitled thereto".  Neither Lender nor Trustee shall have any duty to determine the rights of persons claiming to be rightful Lenders of any reconveyance.  When the Property has been fully reconveyed, the last such reconveyance shall operate as a reassignment of all future rents, issues and profits of the Property to the person or persons legally entitled thereto.

6.23    Subrogation.  Lender shall be subrogated to the lien of all encumbrances, whether released of record or not, paid in whole or in part by Lender pursuant to this Deed of Trust or by the proceeds of any loan secured by this Deed of Trust.

6.24    No Residence.  Trustor shall not occupy any portion of the Property as its principal residence and hereby waives the right to claim the Property as its principal residence.

ARTICLE 7
DEFAULT

7.1    Default.  For all purposes hereof, "Default" shall mean either an "Optional Default" (as defined below) or an "Automatic Default" (as defined below).

(a)    Optional Default.  An "Optional Default" shall occur, at Lender's option, upon the occurrence of any of the following events:

(i)    Monetary.  Borrower shall fail to:

(A)    pay when due any sums which by their express terms require immediate payment without any grace period or sums which are payable on the "Maturity Date" (as defined in the Note), or

(B)    pay within five (5) days when due any other sums payable under the Note, this Deed of Trust or any of the other Loan Documents, including, without limitation, any monthly payment due under the Note.

(ii)    Failure To Perform.  Borrower shall fail to observe, perform or discharge any of Borrower's obligations, covenants, conditions or agreements, other than Borrower's payment obligations, under the Note, this Deed of Trust or any of the other Loan Documents, and

(A)    such failure shall remain uncured for thirty (30) days after written notice thereof shall have been given to Borrower, as the case may be, by Lender or

(B)    if such failure is of such a nature that it cannot be cured within such 30-day period, Borrower shall fail to commence to cure such failure within such 30-day period or shall fail to diligently prosecute such curative action thereafter or shall fail to cure such default within ninety (90) days after written notice thereof was first given to Borrower.

(iii)    Representations and Warranties.  Any representation, warranty, certificate or other statement (financial or otherwise) made or furnished by or on behalf of Borrower, Borrower, or a guarantor, if any, to Lender or in connection with any of the Loan Documents, or as an inducement to Lender to make the Loan, shall be false, incorrect, incomplete or misleading in any material respect when made or furnished.

(iv)    **Condemnation; Attachment.** The condemnation, seizure or appropriation of any material portion (as reasonably determined by Lender) of the Property, or the sequestration or attachment of, or levy or execution upon any of the Property, the Collateral or any other collateral provided by Borrower or Borrower under any of the Loan Documents, or any material portion of the other assets of Borrower, which sequestration, attachment, levy or execution is not released or dismissed within forty-five (45) days after its occurrence; or the sale of any assets affected by any of the foregoing.

(v)    **Uninsured Casualty.** The occurrence of an uninsured casualty with respect to any material portion (as reasonably determined by Lender) of the Property unless:

(A)    no other Default has occurred and is continuing at the time of such casualty or occurs thereafter;

(B)    Trustor promptly notifies Lender of the occurrence of such casualty; and

(C)    not more than forty-five (45) days after the occurrence of such casualty, Trustor delivers to Lender immediately available funds ("Restoration Funds") in an amount sufficient, in Lender's reasonable opinion, to pay all costs of the repair or restoration (including, without limitation, taxes, financing charges, insurance and rent during the repair period).

So long as no Default has occurred and is continuing at the time of Lender's receipt of the Restoration Funds and no Default occurs thereafter, Lender shall make the Restoration Funds available for the repair or restoration of the Property. Notwithstanding the foregoing, Lender shall have no obligation to make any Restoration Funds available for repair or restoration of the Property unless and until all the conditions set forth in clauses (ii) and (iii) of the second sentence of Section 6.10(b) of this Deed of Trust have been satisfied. Trustor acknowledges that the specific conditions described above are reasonable.

(vi)    **Key Person or Entity.** The retirement, death, incapacity or withdrawal of ANNE KIHAGI as manager of Trustor and Trustor's failure to provide a substitute or replacement acceptable to Lender within sixty (60) days after the occurrence of any such event.

(b)    **Automatic Default.** An "Automatic Default" shall occur automatically upon the occurrence of any of the following events:

(i)    **Voluntary Bankruptcy, Insolvency, Dissolution.**

(A)    Borrower's filing a petition for relief under the Bankruptcy Reform Act of 1978, as amended or recodified ("Bankruptcy Code"), or under any other present or future state or federal law regarding bankruptcy, reorganization or other relief to debtors (collectively, "Debtor Relief Law"); or

(B)    Borrower's filing any pleading in any involuntary proceeding under the Bankruptcy Code or other Debtor Relief Law which admits the jurisdiction of a court to regulate Borrower or the Property or the petition's material allegations regarding Borrower's insolvency; or

(C)    Borrower's making a general assignment for the benefit of creditors; or

(D)    Borrower's applying for, or the appointment of, a receiver, trustee, custodian or liquidator of Borrower or any of its property; or

(E)    the filing by or against Borrower of a petition seeking the liquidation or dissolution of Borrower or the commencement of any other procedure to liquidate or dissolve Borrower.

(ii)    **Involuntary Bankruptcy.**  Borrower's failure to effect a full dismissal of any involuntary petition under the Bankruptcy Code or other Debtor Relief Law that is filed against Borrower or in any way restrains or limits Borrower, Lender regarding the Loan or the Property, prior to the earlier of the entry of any order granting relief sought in the involuntary petition or forty-five (45) days after the date of filing of the petition.

(iii)    **Partners, Guarantors.**  The occurrence of an event specified in sections (i) or (ii) as to Borrower, any general partner of Borrower, or any guarantor or other person or entity in any manner obligated to Lender under the Loan Documents.

7.2    **Acceleration.**  Upon the occurrence of an Optional Default, Lender may, at its option, declare all sums owing to Lender under the Note and the other Loan Documents immediately due and payable.  Upon the occurrence of an Automatic Default, all sums owing to Lender under the Note and the other Loan Documents shall automatically become immediately due and payable.

7.3    **Rights and Remedies.**  In addition to the rights and remedies in Section 7.2 above, at any time after a Default, Lender and Trustee shall each have all of the following rights and remedies:

(a)    **Entry on Property.**  With or without notice, and without releasing Borrower from any Secured Obligation, and without becoming a mortgagee in possession, to enter upon the Property from time to time and to do such acts and things as Lender or Trustee deem necessary or desirable in order to inspect, investigate, assess and protect the security hereof or to cure any Default, including, without limitation:

(i)    to take and possess all documents, books, records, papers and accounts of Borrower, Borrower or the then owner of the Property which relate to the Property;

(ii)    to make, terminate, enforce or modify leases of the Property upon such terms and conditions as Lender deems proper;

(iii)    to make repairs, alterations and improvements to the Property necessary, in Trustee's or Lender's sole judgment, to protect or enhance the security hereof;

(iv)    to appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Lender or Trustee hereunder;

(v)    to pay, purchase, contest or compromise any encumbrance, charge, lien or claim of lien which, in the sole judgment of either Lender or Trustee, is or may be senior in priority hereto, the judgment of Lender or Trustee being conclusive, as between the parties hereto;

(vi)    to obtain insurance;

(vii)    to pay any premiums or charges with respect to insurance required to be carried hereunder; and/or

(viii)    to employ legal counsel, accountants, engineers, consultants, contractors and other appropriate persons to assist them;

(b)    **Appointment of Receiver.**  To apply for and obtain, without regard to the adequacy of any security for the Obligations or the solvency of the Borrower or any other person or entity, a receiver by any court of competent jurisdiction to take charge of all the Property, to manage, operate

and carry on any business then being conducted or that could be conducted on the Property, to carry on, protect, preserve, replace and repair the Property, and receive and collect all rents and revenues and to apply the same to pay the receiver's expenses for the operation of the Trust Property and then payment of

(i)     all taxes and assessments levied against the Property,

(ii)    all amounts due and owing under the Obligations, and

(iii)   current operating costs and expenses, in the order set forth herein.

Upon appointment of said receiver, Trustor shall immediately deliver possession of all of the Property to such receiver. Neither the appointment of a receiver for the Property by any court at the request of Lender or by agreement with Trustor nor the entering into possession of all or any part of the Property by such receiver shall constitute Lender a "mortgagee in possession" or otherwise make Lender responsible or liable in any manner with respect to the Property or the occupancy, operation or use thereof. Trustor agrees that Lender shall have the absolute and unconditional right to the appointment of a receiver in any independent and/or separate action brought by Lender regardless of whether Lender seeks any relief in such action other than the appointment of a receiver. In that respect, Trustor waives any express or implied requirement under applicable law that a receiver may be appointed only ancillary to other judicial or non-judicial relief. Trustor expressly waives any rights it may otherwise have under applicable law to require Lender to make any showing or establish any fact prior to the appointment of a receiver;

(c)     **Judicial Foreclosure, Injunction.** To commence and maintain an action or actions in any court of competent jurisdiction to foreclose this instrument as a mortgage or to obtain specific enforcement of the covenants of Trustor hereunder, and Trustor agrees that such covenants shall be specifically enforceable by injunction or any other appropriate equitable remedy and that for the purposes of any suit brought under this subparagraph, Trustor waives the defense of laches and any applicable statute of limitations;

(d)     **Nonjudicial Foreclosure.** To execute a written notice of such Default and of the election to cause the Property to be sold to satisfy the Secured Obligations. Trustee shall give and record such notice as the law then requires as a condition precedent to a trustee's sale. When the minimum period of time required by law after such notice has elapsed, Trustee, without notice to or demand upon Trustor except as required by law, shall sell the Property at the time and place of sale fixed by it in the notice of sale, at one or several sales, either as a whole or in separate parcels and in such manner and order, all as Lender in its sole discretion may determine, at public auction to the highest bidder for cash, in lawful money of the United States, payable at time of sale. Neither Trustor nor any other person or entity other than Lender shall have the right to direct the order in which the Property is sold. Subject to requirements and limits imposed by law, Trustee may, from time to time postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time may postpone the sale by public announcement at the time and place fixed by the preceding postponement. A sale of less than the whole of the Property or any defective or irregular sale made hereunder shall not exhaust the power of sale provided for herein. Trustee shall deliver to the purchaser at such sale a deed conveying the Property or portion thereof so sold, but without any covenant or warranty, express or implied. The recitals in the deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustee, Trustor or Lender may purchase at the sale;

Upon sale of the Property at any judicial or nonjudicial foreclosure, Lender may credit bid (as determined by Lender in its sole and absolute discretion) all or any portion of the Secured Obligations. In determining such credit bid, Lender may, but is not obligated to, take into account all or any of the following:

(i)     appraisals of the Property as such appraisals may be discounted or adjusted by Lender in its sole and absolute underwriting discretion;

(ii)    expenses and costs incurred by Lender with respect to the Property prior to foreclosure;

(iii)    expenses and costs which Lender anticipates will be incurred with respect to the Property after foreclosure, but prior to resale, including, without limitation, costs of property inspections, structural reports and other due diligence, costs to carry the Property prior to resale, costs of resale (e.g., commissions; attorneys' fees, and taxes), costs of deferred maintenance, repair, refurbishment and retrofit, costs of defending or settling litigation affecting the Property, and lost opportunity costs (if any), including the time value of money during any anticipated holding period by Lender;

(iv)    declining trends in real property values generally and with respect to properties similar to the Property;

(v)    anticipated discounts upon resale of the Property as a distressed or foreclosed property;

(vi)    the fact of additional collateral (if any), for the Secured Obligations; and

(vii)    such other factors or matters that Lender (in its sole and absolute discretion) deems appropriate.

In regard to the above, Trustor acknowledges and agrees that:

(viii)    Lender is not required to use any or all of the foregoing factors to determine the amount of its credit bid;

(ix)    this paragraph does not impose upon Lender any additional obligations that are not imposed by law at the time the credit bid is made;

(x)    the amount of Lender's credit bid need not have any relation to any loan-to-value ratios specified in the Loan Documents or previously discussed between Trustor and Lender; and

(xi)    Lender's credit bid may be (at Lender's sole and absolute discretion) higher or lower than any appraised value of the Property;

(e)    **Multiple Foreclosures.**  To resort to and realize upon the security hereunder and any other security now or later held by Lender concurrently or successively and in one or several consolidated or independent judicial actions or lawfully taken nonjudicial proceedings, or both, and to apply the proceeds received upon the Secured Obligations all in such order and manner as Trustee and Lender or either of them determine in their sole discretion and in accordance with the statute then in effect;

(f)    **Rights to Collateral.**  To exercise all rights Trustee or Lender may have with respect to the Collateral under this Deed of Trust, the UCC or otherwise at law; and

(g)    **Other Rights.**  To exercise such other rights as Trustee or Lender may have at law or in equity or pursuant to the terms and conditions of this Deed of Trust or any of the other Loan Documents.

In connection with any sale or sales hereunder, Lender may elect to treat any of the Property which consists of a right in action or which is property that can be severed from the Property (including, without limitation, any improvements forming a part thereof) without causing structural damage thereto as if the same were personal property or a fixture, as the case may be, and dispose of the same in accordance

with applicable law, separate and apart from the sale of the Property. Any sale of Collateral hereunder shall be conducted in any manner permitted by the UCC.

7.4    **Application of Foreclosure Sale Proceeds.**  If any foreclosure sale is effected, Trustee shall apply the proceeds of such sale in the following order of priority:  First, to the costs, fees and expenses of exercising the power of sale and of the sale, including, without limitation, the payment of the Trustee's fees and attorneys' fees permitted pursuant to subdivision (b) of California Civil Code Section 2924d and subdivision (b) of Section 2924h;  Second, to the payment of the Secured Obligations which are secured by this Deed of Trust, in such order as Lender shall determine in its sole discretion;  Third, to satisfy the outstanding balance of obligations secured by any junior liens or encumbrances in the order of their priority; and  Fourth, to the Trustor or the Trustor's successor in interest, or in the event the Property has been sold or transferred to another, to the vested owner of record at the time of the Trustee's sale.

7.5    **Waiver of Marshaling Rights.**  Trustor, for itself and for all parties claiming through or under Trustor, and for all parties who may acquire a lien on or interest in the Property, hereby waives all rights to have the Property and/or any other property, including, without limitation, the Collateral, which is now or later may be security for any Secured Obligation, marshaled upon any foreclosure of this Deed of Trust or on a foreclosure of any other security for any of the Secured Obligations.

7.6    **No Cure or Waiver.**  Neither Lender's nor Trustee's nor any receiver's entry upon and taking possession of all or any part of the Property, nor any collection of rents, issues, profits, insurance proceeds, condemnation proceeds or damages, other security or proceeds of other security, or other sums, nor the application of any collected sum to any Secured Obligation, nor the exercise of any other right or remedy by Lender or Trustee or any receiver shall cure or waive any Default or notice of default under this Deed of Trust, or nullify the effect of any notice of default or sale (unless all Secured Obligations then due have been paid or performed and Borrower has cured all other Defaults hereunder), or impair the status of the security, or prejudice Lender or Trustee in the exercise of any right or remedy, or be construed as an affirmation by Lender of any tenancy, lease or option or a subordination of the lien of this Deed of Trust.

7.7    **Payment of Costs, Expenses and Attorneys' Fees.**  Trustor agrees to pay to Lender immediately and upon demand all costs and expenses incurred by Trustee and Lender in the enforcement of the terms and conditions of this Deed of Trust (including, without limitation, statutory trustee's fees, court costs and attorneys' fees, whether incurred in litigation or not) with interest from the date of expenditure until said sums have been paid at the rate of interest applicable to the principal balance of the Note as specified therein.

7.8    **Power to File Notices and Cure Defaults.**  Trustor hereby irrevocably appoints Lender and its successors and assigns, as its attorney-in-fact, which power of attorney is coupled with an interest, to perform any obligation of Trustor hereunder upon the occurrence of an event, act or omission which, with notice or passage of time or both, would constitute a Default, provided, however, that (i) Lender as such attorney-in-fact shall only be accountable for such funds as are actually received by Lender; and (ii) Lender shall not be liable to Trustor or any other person or entity for any failure to act under this section.

7.9    **Remedies Cumulative.**  All rights and remedies of Lender and Trustee provided hereunder are cumulative and are in addition to all rights and remedies provided by applicable law (including specifically that of foreclosure of this instrument as though it were a mortgage) or in any other agreements between Trustor and Lender.  Lender may enforce any one or more remedies or rights hereunder successively or concurrently.

7.10    **Expenses During Redemption Period.**  If this Deed of Trust is foreclosed as a mortgage and the Property is sold at a foreclosure sale, the purchaser may, during any redemption period allowed, make such repairs or alterations of the Property as may be reasonably necessary for the proper operation, care, preservation, protection and insuring thereof. Any sums so paid, together with interest

thereon from the time of such expenditure at the lesser of the default rate under the Note, or the maximum rate permitted by law, shall be added to and become part of the amount required to be paid for redemption from such sale.

7.11    **Waiver of Appraisement, Valuation, One Action Rule.** Trustor hereby waives, to the full extent that it may lawfully do so, the benefit of all appraisement, valuation, stay and extension laws now or hereafter in force and all rights of marshalling of assets in the event of any sale of the Trust Property, any part thereof or any interest therein, and any court having jurisdiction to foreclose the lien hereof may sell the Trust Property (real or personal, or both) as an entirety or in such parcels, lots, manner or order as Lender, in its sole discretion, may elect. Trustor waives and agrees not to assert any right to require Lender to proceed against any guarantor, to proceed against or exhaust any other security for the obligations secured hereby, to pursue any other remedy available to Lender, or to pursue any remedy in any particular order or manner.

### ARTICLE 8
### MISCELLANEOUS PROVISIONS

8.1    **Additional Provisions.** The Loan Documents contain or incorporate by reference the entire agreement of the parties with respect to matters contemplated herein and supersede all prior negotiations. The Loan Documents grant further rights to Lender and contain further agreements and affirmative and negative covenants by Trustor which apply to this Deed of Trust and to the Property and such further rights and agreements are incorporated herein by this reference. THE OBLIGATIONS AND LIABILITIES OF TRUSTOR UNDER THIS DEED OF TRUST AND THE OTHER LOAN DOCUMENTS ARE SUBJECT TO THE PROVISIONS OF THE SECTION, IF ANY, IN THE NOTE ENTITLED "BORROWER'S LIABILITY."

8.2    **Non-Waiver.** By accepting payment of any amount secured hereby after its due date or late performance of any other Secured Obligation, Lender shall not waive its right against any person obligated directly or indirectly hereunder or on any Secured Obligation, either to require prompt payment or performance when due of all other sums and obligations so secured or to declare default for failure to make such prompt payment or performance. No exercise of any right or remedy by Lender or Trustee hereunder shall constitute a waiver of any other right or remedy herein contained or provided by law. No failure by Lender or Trustee to exercise any right or remedy hereunder arising upon any Default shall be construed to prejudice Lender's or Trustee's rights or remedies upon the occurrence of any other or subsequent Default. No delay by Lender or Trustee in exercising any such right or remedy shall be construed to preclude Lender or Trustee from the exercise thereof at any time while that Default is continuing. No notice to nor demand on Trustor shall of itself entitle Trustor to any other or further notice or demand in similar or other circumstances.

8.3    **Consents and Approvals.** Wherever Lender's consent, approval, acceptance or satisfaction is required under any provision of this Deed of Trust or any of the other Loan Documents, such consent, approval, acceptance or satisfaction shall not be unreasonably withheld, conditioned or delayed by Lender unless such provision expressly so provides.

8.4    **Permitted Contests.** After prior written notice to Lender, Trustor may contest, by appropriate legal or other proceedings conducted in good faith and with due diligence, the amount, validity or application, in whole or in part, of any lien, levy, tax or assessment, or any lien of any laborer, mechanic, materialman, supplier or vendor, or the application to Trustor or the Property of any law or the validity thereof, the assertion or imposition of which, or the failure to pay when due, would constitute a Default; provided that

(a)    Trustor pursues the contest diligently, in a manner which Lender determines is not prejudicial to Lender, and does not impair the lien of this Deed of Trust;

(b)    the Property, or any part hereof or estate or interest therein, shall not be in any danger of being sold, forfeited or lost by reason of such proceedings;

(c)    in the case of the contest of any law or other legal requirement, Lender shall not be in any danger of any civil or criminal liability; and

(d)    if required by Lender, Trustor deposits with Lender any funds or other forms of assurance (including a bond or letter of credit) satisfactory to Lender to protect Lender from the consequences of the contest being unsuccessful.

Trustor's right to contest pursuant to the terms of this provision shall in no way relieve Trustor of its obligations under the Loan or to make payments to Lender as and when due.

8.5    **Further Assurances.**  Trustor shall, upon demand by Lender or Trustee, execute, acknowledge (if appropriate) and deliver any and all documents and instruments and do or cause to be done all further acts reasonably necessary or appropriate to effectuate the provisions hereof.

8.6    **Attorneys' Fees.**  In the event it is necessary for Lender to retain the services of an attorney or any other party to enforce or to commence any legal action to enforce the terms of this Note, Deed of Trust, or any of the other Loan Documents, or any portion hereof or thereof, Trustor agrees to pay to Lender, in addition to damages or other relief, any and all costs and expenses, including, without limitation, expert witness fees and reasonable attorneys' fees and costs incurred by Lender as a result thereof.

8.7    **Trustor and Lender Defined.**  The term "Trustor" includes both the original Trustor and any subsequent owner or owners of any of the Property, and the term "Lender" includes the original Lender and any future owner or holder, including assignees, pledges and participants, of the Note or any interest therein.

8.8    **Disclaimers.**

(a)    **Relationship of Parties.**  Notwithstanding any other provisions of this Deed of Trust and the other Loan Documents:

(i)    Lender is not, and shall not be construed to be, a partner, joint venturer, member, alter ego, manager, controlling person or other business associate or participant of any kind of Trustor, and Lender does not intend to ever assume such status;

(ii)    Lender does not intend to ever assume any responsibility to any person for the quality, suitability, safety or condition of the Property; and

(iii)    Lender shall not be deemed responsible for or a participant in any acts, omissions or decisions of Trustor.

(b)    **No Liability.**  Lender shall not be directly or indirectly liable or responsible for any loss, claim, cause of action, liability, indebtedness, damage or injury of any kind or character to any person or property arising from any construction on, or occupancy or use of, the Property, whether caused by or arising from:

(i)    any defect in any building, structure, grading, fill, landscaping or other improvements thereon or in any on-site or off-site improvement or other facility therein or thereon;

(ii)    any act or omission of Borrower or any of Borrower's agents, employees, independent contractors, licensees or invitees;

(iii)    any accident in or on the Property or any fire, flood or other casualty or hazard thereon;

(iv)    the failure of Borrower or any of Borrower's licensees, employees, invitees, agents, independent contractors or other representatives to maintain the Property in a safe condition; or

(v)    any nuisance made or suffered on any part of the Property.

8.9    Severability.  If any term of this Deed of Trust, or the application thereof to any person or circumstances, shall, to any extent, be invalid or unenforceable, the remainder of this Deed of Trust, or the application of such term to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term of this Deed of Trust shall be valid and enforceable to the fullest extent permitted by law.

8.10    Relationship of Articles.  The rights, remedies and interests of Lender under the deed of trust established by Article 1 and the security agreement established by Article 4 are independent and cumulative, and there shall be no merger of any lien created by the deed of trust with any security interest created by the security agreement.  Lender may elect to exercise or enforce any of its rights, remedies or interests under either or both the deed of trust or the security agreement as Lender may from time to time deem appropriate.  The absolute assignment of rents and leases established by Article 3 is similarly independent of and separate from the deed of trust and the security agreement.

8.11    Merger.  No merger shall occur as a result of Lender's acquiring any other estate in, or any other lien on, the Property unless Lender consents to a merger in writing.

8.12    Obligations of Trustor, Joint and Several.  If more than one person has executed this Deed of Trust as "Trustor", the obligations of all such persons hereunder shall be joint and several.

8.13    Separate and Community Property.  Any married person who executes this Deed of Trust as a Trustor agrees that any money judgment which Lender or Trustee obtains pursuant to the terms of this Deed of Trust or any other obligation of that married person secured by this Deed of Trust may be collected by execution upon any separate property or community property of that person.

8.14    Integration; Interpretation.  The Loan Documents contain or expressly incorporate by reference the entire agreement of the parties with respect to the matters contemplated therein and supersede all prior negotiations or agreements, written or oral.  The Loan Documents shall not be modified except by written instrument executed by all parties.  Any reference in any of the Loan Documents to the Property or Collateral shall include all or any part of the Property or Collateral.  Any reference to the Loan Documents includes any amendments, renewals or extensions now or hereafter approved by Lender in writing.  When the identity of the parties or other circumstances make it appropriate, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

8.15    Capitalized Terms.  Capitalized terms not otherwise defined herein shall have the meanings set forth in the Note.

8.16    Successors in Interest.  The terms, covenants, and conditions herein contained shall be binding upon and inure to the benefit of the heirs, successors and assigns of the parties hereto.  The foregoing sentence shall not be construed to permit Trustor to assign the Loan except as otherwise permitted under the Note or the other Loan Documents.

8.17    Governing Law.  Trustor agrees, as provided below, the Loan Documents shall be governed by, and shall be construed and enforced in accordance with, the internal laws of the state in which the Property is located (without regard to conflicts of laws principles) as to interpretation, enforcement, validity, construction, effect and in all other respects (except as provided below).  Trustor hereby:

(a)    consents and submits to the jurisdiction of any local, state or federal court located within the state in which the Property is located, and hereby irrevocably agrees that, subject to Beneficiary's election, all actions or proceedings in any way, manner or respect arising out of, from or relating to the Loan Documents, shall be litigated in such courts;

(b)    accepts, generally and unconditionally, the nonexclusive jurisdiction of such courts, waives any defenses of forum non conveniens, and irrevocably agrees to be bound by any final, nonappealable judgment rendered thereby in connection with any of the Loan Documents;

(c)    with respect to the foregoing choice of law, agrees that the state in which the Property is located has a substantial relationship to the parties, to the Loan and to the transactions evidenced by the Loan Documents; and

(d)    in all respects (including without limitation matters of construction, validity and performance), agrees that the Loan Documents and the obligations arising thereunder shall be governed by, and construed in accordance with, the laws of the state in which the Property is located applicable to contracts made and performed in such state and any applicable law of the United States of America, in addition, and not by way of limitation:

(i)    enforcement of the real property liens created pursuant to the Loan Documents on that portion of the collateral at any time securing payment of the loan which is subject to statutory real property and foreclosure laws and rules shall be governed by and construed according to the law(s) of the state(s) in which the applicable portion of such collateral is located;

(ii)    enforcement of the liens created pursuant to the Loan Documents on that portion of the collateral at any time securing payment of the loan which is not subject to the Uniform Commercial Code shall be governed by and construed according to the law(s) of the state(s) in which the applicable portion of such collateral is located; and

(iii)    enforcement of the liens and security interests created pursuant to the Loan Documents on that portion of the collateral at any time securing payment of the loan which is subject to the Uniform Commercial Code shall be governed and construed by the laws of the state in which the Property is located, but the provisions for the perfection of such liens shall be governed by and construed according to the laws of the state whose law is designated as the governing law pursuant to the Uniform Commercial Code of the state in which the Property is located;

it being understood that, to the fullest extent permitted by law, the laws of the state in which the Property is located shall govern the validity and the enforceability of the Loan Documents and the indebtedness and obligations arising thereunder.  Trustor agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

8.18    **Consent to Jurisdiction.**  Trustor irrevocably submits to the jurisdiction of:  (a) any state or federal court sitting in the State of California over any suit, action, or proceeding, brought by Trustor against Lender, arising out of or relating to this Deed of Trust, the Note or the Loan;  (b) any state or federal court sitting in the state where the Property is located or the state in which Trustor's principal place of business is located over any suit, action or proceeding, brought by Lender against Trustor, arising out of or relating to this Deed of Trust, the Note or the Loan; and  (c) any state court sitting in the county of the state where the Property is located over any suit, action, or proceeding, brought by Lender to exercise its STATUTORY POWER OF SALE under this Deed of Trust or any action brought by Lender to enforce its rights with respect to the Collateral.  Trustor irrevocably waives, to the fullest extent permitted by law, any objection that Trustor may now or hereafter have to the laying of venue of any such suit, action, or proceeding brought in any such court and any claim that any such suit, action, or proceeding brought in any such court has been brought in an inconvenient forum.

8.19    **Exhibits.** Exhibit "A" is incorporated into this Deed of Trust by this reference.

8.20    **Addresses; Request for Notice.** All notices and other communications that are required or permitted to be given to a party under this Deed of Trust shall be in writing, refer to the Loan number, and shall be sent to such party, either by personal delivery, by overnight delivery service, or by certified first-class mail, return receipt requested, to the addressee set forth below. All such notices and communications shall be effective upon receipt of such delivery or facsimile transmission. The addresses of the parties are set forth as follows:

Name and Address of Trustor:   XELAN PROP 1, LLC
                               P.O. BOX 691889
                               LOS ANGELES, California 90069
                               Attention: Anne Kihagi

Name and Address of Lender:    STERLING BANK
                               P.O. Box 2131
                               Spokane, Washington 99201
                               Attention: Commercial Loan Support

With a copy to:                STERLING BANK
                               111 N. Wall Street
                               Spokane, Washington 99201
                               Attention: Legal Department

Name and Address of Trustee:   UPF INCORPORATED
                               910 West Boone Avenue
                               Spokane, Washington 99201
                               Attention: Mortgage Servicing Department

Any party shall have the right to change its address for notice hereunder to any other location within the continental United States by giving thirty (30) days' notice to the other parties in the manner set forth above.

8.21    **Counterparts.** This Deed of Trust may be executed in any number of counterparts, each of which, when executed and delivered, will be deemed an original and all of which taken together, will be deemed to be one and the same instrument.

8.22    **DISPUTE RESOLUTION.**   THIS SECTION CONTAINS A JURY WAIVER, ARBITRATION CLAUSE, AND A CLASS ACTION WAIVER. READ IT CAREFULLY.

(a)     **Jury Trial Waiver.** As permitted by applicable law, each party waives their respective rights to a trial before a jury in connection with any "Dispute" (as defined below), and Disputes shall be resolved by a judge sitting without a jury. If a court determines that this provision is not enforceable for any reason and at any time prior to trial of the Dispute, but not later than thirty (30) days after entry of the order determining this provision is unenforceable, any party shall be entitled to move the court for an order compelling arbitration and staying or dismissing such litigation pending arbitration ("**Arbitration Order**").

(b)     **Arbitration.** If a claim, dispute, or controversy arises between us with respect to this Deed of Trust, any Loan Document, related agreements, or any other agreement or business relationship between any of us whether or not related to the subject matter of this Deed of Trust (all of the foregoing, a "**Dispute**"), and only if a jury trial waiver is not permitted by applicable law or ruling by a court, any of us may require that the Dispute be resolved by binding arbitration before a single arbitrator at the request of any party. By agreeing to arbitrate a Dispute, each party gives up any right that party

DOT (CA)
477049 (rev 03/27/13)

30-    1000-1022 FILBERT STREET 2013 (Loan No. 3720003948)

may have to a jury trial, as well as other rights that party would have in court that are not available or are more limited in arbitration, such as the rights to discovery and to appeal.

Arbitration shall be commenced by filing a petition with, and in accordance with the applicable arbitration rules of, JAMS or National Arbitration Forum ("Administrator") as selected by the initiating party.  If the parties agree, arbitration may be commenced by appointment of a licensed attorney who is selected by the parties and who agrees to conduct the arbitration without an Administrator.  Disputes include matters (i) relating to a deposit account, application for or denial of credit, enforcement of any of the obligations we have to each other, compliance with applicable laws and/or regulations, performance or services provided under any agreement by any party, (ii) based on or arising from an alleged tort, or (iii) involving either of our employees, agents, affiliates, or assigns of a party.  However, Disputes do not include the validity, enforceability, meaning, or scope of this arbitration provision and such matters may be determined only by a court.  If a third party is a party to a Dispute, we each will consent to including the third party in the arbitration proceeding for resolving the Dispute with the third party.  Venue for the arbitration proceeding shall be at a location determined by mutual agreement of the parties or, if no agreement, in the city and state where lender or bank is headquartered.

After entry of an Arbitration Order, the non-moving party shall commence arbitration.  The moving party shall, at its discretion, also be entitled to commence arbitration but is under no obligation to do so, and the moving party shall not in any way be adversely prejudiced by electing not to commence arbitration.  The arbitrator: (i) will hear and rule on appropriate dispositive motions for judgment on the pleadings, for failure to state a claim, or for full or partial summary judgment; (ii) will render a decision and any award applying applicable law; (iii) will give effect to any limitations period in determining any Dispute or defense; (iv) shall enforce the doctrines of compulsory counterclaim, res judicata, and collateral estoppel, if applicable; (v) with regard to motions and the arbitration hearing, shall apply rules of evidence governing civil cases; and (vi) will apply the law of the state specified in the agreement giving rise to the Dispute.  Filing of a petition for arbitration shall not prevent any party from (i) seeking and obtaining from a court of competent jurisdiction (notwithstanding ongoing arbitration) provisional or ancillary remedies including, but not limited to, injunctive relief, property preservation orders, foreclosure, eviction, attachment, replevin, garnishment, and/or the appointment of a receiver, (ii) pursuing non-judicial foreclosure, or (iii) availing itself of any self-help remedies such as setoff and repossession.  The exercise of such rights shall not constitute a waiver of the right to submit any Dispute to arbitration.

Judgment upon an arbitration award may be entered in any court having jurisdiction except that, if the arbitration award exceeds $4,000,000, any party shall be entitled to a de novo appeal of the award before a panel of three arbitrators.  To allow for such appeal, if the award (including Administrator, arbitrator, and attorney's fees and costs) exceeds $4,000,000, the arbitrator will issue a written, reasoned decision supporting the award, including a statement of authority and its application to the Dispute.  A request for de novo appeal must be filed with the arbitrator within 30 days following the date of the arbitration award; if such a request is not made within that time period, the arbitration decision shall become final and binding.  On appeal, the arbitrators shall review the award de novo, meaning that they shall reach their own findings of fact and conclusions of law rather than deferring in any manner to the original arbitrator.  Appeal of an arbitration award shall be pursuant to the rules of the Administrator or, if the Administrator has no such rules, then the JAMS arbitration appellate rules shall apply.

Arbitration under this provision concerns a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq.  This arbitration provision shall survive any termination, amendment, or expiration of this Agreement.  If the terms of this provision vary from the Administrator's rules, this arbitration provision shall control.

(c)     CLASS ACTION WAIVER.  EACH PARTY WAIVES THE RIGHT TO LITIGATE IN COURT OR ARBITRATE ANY CLAIM OR DISPUTE AS A CLASS ACTION, EITHER AS A MEMBER OF A CLASS OR AS A REPRESENTATIVE, OR TO ACT AS A PRIVATE ATTORNEY GENERAL.

**(d)    Reliance.** Each party (i) certifies that no one has represented to such party that the other party would not seek to enforce jury and class action waivers in the event of suit, and (ii) acknowledges that it and the other party have been induced to enter into this Deed of Trust by, among other things, the mutual waivers, agreements, and certifications in this section.

**8.23    Time Is of the Essence.** Time is of the essence with respect to all of Trustor's obligations and agreements hereunder.

**8.24    Deed of Trust.** Each term, condition and provision of this Deed of Trust shall be interpreted in such manner as to be effective and valid under applicable law but if any term, condition or provision of this Deed of Trust shall be held to be void or invalid, the same shall not affect the remainder hereof which shall be effective as though the void or invalid term, condition or provision had not been contained herein. In addition, should this instrument be or become ineffective as a deed of trust, then these presents shall be construed and enforced as a really deed of trust with the Trustor being the mortgagor and Lender being the mortgagee. If the lien of this Deed of Trust is invalid or unenforceable as to any part of the debt, or if the lien is invalid or unenforceable as to any part of the Trust Property, the unsecured or partially secured portion of the debt shall be completely paid prior to the payment of the remaining and secured or partially secured portion of the debt, and all payments made on the debt, whether voluntarily or under foreclosure or other enforcement action or procedure, shall be considered to have been first paid on or applied to the full payment of that portion of the debt which is not secured or fully secured by the lien of this Deed of Trust.

ARTICLE 9
HAZARD INSURANCE DISCLOSURE

**9.1.    HAZARD INSURANCE DISCLOSURE MADE PURSUANT TO CALIFORNIA CIVIL CODE SECTION 2955.5. IMPORTANT. DO NOT INITIAL BELOW UNTIL YOU HAVE CAREFULLY READ AND UNDERSTAND THE CONTENT OF THIS DISCLOSURE.**
You have applied for a loan or credit accommodation that will be secured by real property. As a condition of the loan or credit accommodation, Lender may require you to maintain hazard insurance coverage for the real property. California law provides that Lender cannot require you, as a condition of receiving or maintaining a loan secured by real property, to provide hazard insurance coverage against risks to the property (such as fire and other perils) in an amount exceeding the replacement value of the building or structures attached to the property. BY INITIALING BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ, RECEIVED AND UNDERSTAND THIS HAZARD INSURANCE DISCLOSURE.

Trustor's Initials:

[The balance of this page is intentionally left blank.]

## EXHIBIT "A"
## DESCRIPTION OF LAND

This Exhibit "A" is attached to and forms a part of the DEED OF TRUST AND ABSOLUTE ASSIGNMENT OF RENTS AND LEASES AND SECURITY AGREEMENT (AND FIXTURE FILING) ("Deed of Trust") among XELAN PROP 1, LLC, a California limited liability company, "Trustor", UPF INCORPORATED, a Washington corporation, as "Trustee", and STERLING SAVINGS BANK, a Washington banking corporation, d/b/a Sterling Bank, as "Beneficiary" or "Lender".

1.     Description of Land. The Land referred to in this Deed of Trust is situated in San Francisco County, California and is described as follows:

TO BE INSERTED

Escrow No.: 1135515156JM
Locate No.: CACTI3-7738-7738-2355-003551.v56
Title No.: 12-35515156-JM

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN FRANCISCO, COUNTY OF SAN FRANCISCO,
STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

BEGINNING at a point of intersection of the Northerly line of Filbert Street and the Westerly line of Jones Street; running
thence Westerly along said line of Filbert Street 106 feet and 3 inches; thence at a right angle Northerly 52 feet; thence at
a right angle Easterly 36 feet and 3 inches; thence at a right angle Southerly 25 feet; thence at a right angle Easterly 70 feet
to the Westerly line of Jones Street; thence at a right single Southerly along said line of Jones Street 27 feet to the point
of beginning.

BEING part of 50 Vara Block No. 237.

APN: Lot 10, Block 93

Exhibit Page - Legal(exhibit)(08-07)

# EXHIBIT "B"

INTENTIONALLY OMITTED

# EXHIBIT 3

## ASSIGNMENT OF AGREEMENTS, PERMITS, LICENSES AND APPROVALS

This ASSIGNMENT OF AGREEMENTS, PERMITS, LICENSES AND APPROVALS ("Assignment") is made as of July 31, 2013, by XELAN PROP 1, LLC, a California limited liability company ("Borrower"), to STERLING SAVINGS BANK, a Washington banking corporation, d/b/a Sterling Bank ("Lender").

### RECITALS

**A.**    Borrower is justly indebted to Lender for money actually loaned or to be loaned and advanced to Borrower in the maximum sum of One Million Nine Hundred Sixty Thousand Dollars and No Cents ($1,960,000.00) ("Loan"). The Loan is evidenced by a Promissory Note Secured by Deed of Trust dated as of even date herewith in the amount of One Million Nine Hundred Sixty Thousand Dollars and No Cents ($1,960,000.00) executed by Borrower in favor of Lender ("Note"). All the terms, provisions, conditions, covenants, stipulations and agreements contained in the Note are hereby made a part of this Assignment to the same extent and with the same and like force and effect as if they were fully set forth herein. Any and all documents evidencing, relating to and/or securing obligations under the Loan collectively shall be referred to as the "**Loan Documents.**"

**B.**    The Note is secured by a Deed of Trust and Absolute Assignment of Rents and Leases and Security Agreement (and Fixture Filing) of even date herewith ("**Deed of Trust**") in favor of Lender covering certain real property more particularly described in **Exhibit "A"** to the Deed of Trust ("**Property**"), including all improvements (collectively "**Project**") constructed thereon.

**C.**    Lender requires as a condition to making the Loan to Borrower evidenced by the Note that Borrower assign to Lender all of Borrower's right, title and interest in and to:

**(i)**    all agreements and contracts between Borrower and any third parties, heretofore or hereafter entered into for the account of Borrower pertaining to any tenancy, construction, utilities, off-site improvements, services and other matters related to or in connection with the Project and/or the Property or which creates a right in Borrower as a result of its ownership or operation of all or any part of the Project and/or Property, together with any and all existing and future amendments, modifications, supplements, general conditions and addenda thereto (collectively "**Contracts**");

**(ii)**    all permits, licenses, warranties, indemnities and approvals (including without limitation all building permits and other governmental entitlements and approvals) now or hereafter issued to Borrower or to Borrower's predecessor(s)-in-interest from time to time with respect to the Property and/or the Project, together with any and all existing and future amendments, modifications, supplements and addenda thereto (collectively "**Property Rights**"); and

**(iii)**    all surveys, site plans, and plans and specifications for onsite and offsite improvements prepared in connection with the construction, operation and/or maintenance of the Project, together with any and all existing and future amendments, modifications, supplements, general conditions and addenda thereto heretofore or hereafter prepared by any architect and/or engineer for the account of Borrower (collectively "**Plans and Specifications**").

**D.**    For all purposes herein, the Contracts, Property Rights and Plans and Specifications collectively shall be referred to as the "**Assigned Documents.**"  Borrower is willing to enter into this Assignment to effectuate the foregoing assignment so as to induce Lender to make the Loan to Borrower.

### TERMS AND CONDITIONS

NOW THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, the receipt whereof is hereby acknowledged:

---

1.    **ASSIGNMENT OF ASSIGNED DOCUMENTS.**

    **1.1    Assignment Clause.** Borrower hereby assigns, transfers and conveys to Lender all of Borrower's right, title and interest in and to the Assigned Documents, and hereby creates in favor of Lender a security interest in the Assigned Documents under the California Uniform Commercial Code.

    **1.2    Lender as Attorney-in-Fact for Borrower.** Borrower hereby irrevocably appoints Lender as its attorney-in-fact with full power of substitution and authority, which appointment is coupled with an interest and is effective from and after the occurrence of any **"Default"** (as defined in the Loan Documents), to receive, demand, exercise and enforce any and all of Borrower's rights with respect to the Assigned Documents and to perform any and all acts in the name of Borrower or, at the option of Lender, in the name of Lender with the same force and effect as if performed by Borrower in the absence of this Assignment.

2.    **PURPOSE OF ASSIGNMENT.** This Assignment is made for the purposes of securing:

    **2.1    Note Payments.** Payment of the principal sum, interest and indebtedness evidenced by the Note.

    **2.2    Payment of Other Sums.** Payment of all other sums with interest thereon becoming due and payable to Lender under the provisions of this Assignment or of the Note, the Deed of Trust, or the other Loan Documents.

    **2.3    Performance of Other Obligations.** The performance and discharge of each and every obligation, covenant and agreement of Borrower contained herein or in the Note, the Deed of Trust, or the other Loan Documents.

3.    **GENERAL PROVISIONS.** This Assignment is made on the following terms, covenants and conditions:

    **3.1    No Default.** So long as no Default has occurred and continued beyond any applicable notice and cure period, Borrower shall have the right to enjoy all of the rights arising out of the Assigned Documents.

    **3.2    Default.** Upon or at any time after a Default has occurred and continued beyond any applicable notice and cure period, Lender shall have the right to enforce Borrower's rights and interest with respect to the Assigned Documents. Upon the occurrence of any Default by Borrower and the expiration of any applicable notice and cure period, Lender may, without affecting any of Lender's rights and remedies against Borrower under any other instrument, document or agreement, exercise Lender's rights under this Assignment as Borrower's attorney-in-fact or in any other manner permitted by law. In addition, Lender shall have and possess, without limitation, any and all rights and remedies of a secured party under the California Uniform Commercial Code or as otherwise provided by law.

    **3.3.    Borrower's Representations and Warranties.** Borrower hereby represents and warrants to Lender that:

        **3.3.1    No Prior Assignment.** No previous assignment of Borrower's interest in and to or rights under the Assigned Documents has been made.

        **3.3.2    Performance Under the Assigned Documents.** All covenants, agreements and conditions required to be performed or to occur under the Assigned Documents as of the date hereof by Borrower have been performed or occurred.

        **3.3.3    No Modification or Transfer of Assigned Documents.** Borrower agrees not to materially amend, assign, sell, pledge or otherwise transfer or encumber in any manner Borrower's

interest in or rights under and to the Assigned Documents without the prior written consent of Lender so long as this Assignment remains in effect.

     **3.4**    <u>Indemnification of Lender</u>.  Borrower hereby agrees to protect, indemnify, defend and hold Lender free and harmless from and against any and all claims, causes of action, demands, damages, liens, liabilities, losses, costs and expenses (including reasonable attorneys' fees) to which Lender may become exposed or which Lender may incur in exercising any of Lender's rights under this Assignment, except where caused by the gross negligence or willful misconduct of Lender. Borrower shall not indemnify Lender from and against any and all claims, causes of action, demands, damages, liens, liabilities, losses, costs and expenses arising (a) after Lender has exercised any of its rights hereunder, and (b) as a result of Lender's action or failure to act pursuant to such rights where such action or inaction was the result of Lender's gross negligence or willful misconduct.

     **3.5**    <u>Termination of Assignment</u>.  Upon payment in full of the principal sum, interest and indebtedness secured hereby and by said Note, Deed of Trust and the other Loan Documents, this Assignment shall become void and of no further force or effect, but the affidavit, certificate, letter or statement of any officer, agent or attorney of Lender showing any part of said principal, interest or indebtedness remains unpaid shall be and constitute conclusive evidence absent a contrary court order of the validity, effectiveness and continuing force of this Assignment, and any third person may, and is hereby authorized to, rely thereon.

     **3.6**    <u>Binding Obligations Under This Assignment</u>.  This Assignment, together with the covenants and warranties herein contained, shall inure to the benefit of Lender, to any lender participating in the Note, and to any subsequent holder of said Note, and shall be binding upon Borrower, its successors and assigns.

     **3.7**    <u>Severability.</u>  If any one or more of the provisions contained in this Assignment shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Assignment, but this Assignment shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

     **3.8**    <u>Governing Law</u>.  This Assignment shall be deemed to have been applied for, considered, approved, negotiated, executed, made and shall be performed in the State of Washington and shall be governed by its laws (without regard to conflicts of laws principles), except to the extent the laws of the state in which the collateral property and/or pledged assets are located affect enforceability of the liens granted in the Loan Documents, all as expressly set forth in the Governing Law provisions of Section 8.17 of the Deed of Trust executed in connection with this Assignment. Borrower irrevocably agrees that subject to Lender's sole and absolute election, Lender may bring suit, action, or other legal proceedings arising out of the Loan Documents in courts located in Washington or the state in which the collateral property and/or pledged assets are located, whether local, state, or federal. Borrower hereby submits to the jurisdiction of such court(s) and waives any right Borrower may have to request a change of venue or a removal to another court.

     **3.9**    <u>Attorneys' Fees</u>.  In the event of any dispute arising out of this Assignment or any action or proceeding to enforce the provisions of this Assignment, the prevailing party in such dispute, action or proceeding shall be entitled to recover from the losing party all costs and expenses incurred by the prevailing party in connection therewith, including without limitation court costs and reasonable attorneys' fees and expenses.

         [The balance of this page is intentionally left blank.]

---

IN WITNESS WHEREOF, Borrower has executed this Assignment as of the date first above written.

**BORROWER**

**XELAN PROP 1, LLC**, a California limited liability company

By: _____

ANNE KIHAGI, its manager

# EXHIBIT 4



**UMPQUA**
**B·A·N·K**

January 26, 2018

<u>VIA U.S. MAIL AND EXPRESS MAIL</u>

XELAN Prop 1, LLC
P.O. Box 691889
Los Angeles, CA 90069
Attn: Anne Kihagi

<u>VIA U.S. MAIL AND OVERNIGHT DELIVERY</u>

Anne Kihagi, Member/Manager
Renka Prop LLC
1220 N. Formosa Avenue
West Hollywood, CA 90046

<u>VIA EXPRESS MAIL</u>

Renka Prop LLC
P.O. Box 691889
Los Angeles, CA 90069
Attn: Anne Kihagi

Re:    Promissory Note Secured by Deed of Trust dated June 13, 2013 in the original principal amount of $1,700,000 ("XELAN Note No. 1") executed by XELAN Prop 1, LLC ("XELAN") in favor of Sterling Savings Bank ("Sterling"); Deed of Trust and Absolute Assignment of Rents and Leases and Security Agreement (and Fixture Filing) dated as of June 13, 2013 ("XELAN Deed of Trust No. 1") executed by XELAN, as trustor, in favor of UPF Incorporated, as trustee ("Trustee"), for the benefit of Sterling recorded on June 28, 2013 in the Official Records of the San Francisco County Recorder's Office with respect to the real property commonly known as 4018-4022 19th Street, San Francisco, California ("Subject Property No. 1"); and Assignment of Agreements, Permits, Licenses and Approvals Dated as of June 13, 2013 ("XELAN Assignment Agreement No. 1") executed by XELAN in favor of Sterling.

Promissory Note Secured by Deed of Trust dated July 31, 2013 in the original principal amount of $1,960,000 ("XELAN Note No. 2") executed by XELAN in favor of Sterling; Deed of Trust and Absolute Assignment of Rents and Leases and Security Agreement (and Fixture Filing) dated as of July 31, 2013 ("XELAN Deed of Trust No. 2") executed by XELAN, as trustor, in favor of Trustee, for the benefit of Sterling recorded on August 14, 2013 in the Official Records of the San Francisco County Recorder's Office with respect to the real property commonly known as 1000-1022 Filbert Street, San Francisco, California ("Subject Property No. 2"); and Assignment of Agreements, Permits, Licenses and Approvals Dated

61660006v1

139

Anne Kihagi, Member/Manager
XELAN Prop 1, LLC
January 26, 2018
Page 2

December 18, 2013 ("Renka Deed of Trust") executed by Renka, as trustor, in favor of Trustee, for the benefit of Sterling recorded on December 27, 2013 in the Official Records of the San Francisco County Recorder's Office with respect to the real property commonly known as 195 Eureka Street, San Francisco, California ("Subject Property No. 3"); and Assignment of Agreements, Permits, Licenses and Approvals Dated as of December 18, 2013 ("Renka Assignment Agreement") executed by Renka in favor of Sterling.

Dear Ms. Kihagi:

The XELAN Note No. 1, the XELAN Note No. 2, and the Renka Note are hereinafter collectively referred to as the "Notes". The XELAN Deed of Trust No. 1, The XELAN Deed of Trust No. 2, and the Renka Deed of Trust are hereinafter collectively referred as to the "Deeds of Trust". The XELAN Assignment Agreement No. 1, the XELAN Assignment Agreement No. 2, and the Renka Assignment Agreement are hereinafter collectively referred to as the "Assignment Agreements"). Subject Property No. 1, Subject Property No. 2 and Subject Property No. 3 are hereinafter collectively referred to as the "Subject Properties". XELAN and Renka are hereinafter referred to as the "Borrowers". Umpqua Bank ("Bank") is the successor-in-interest by merger to Sterling. Capitalized terms when used herein without definitions shall have the meaning given to them in the Notes, Deeds of Trust and/or Assignment Agreements.

The Borrowers have failed to comply with the demand for financial reporting required to be provided to the Bank pursuant to the Loan Documents set forth in the Bank's letter to the Borrowers dated November 27, 2017 including, without limitation, providing current personal financial statements, current guarantor financial statements, 2014, 2015 and 2016 tax returns, 2014, 2015, 2016 and year-to-date Entity tax operating statements, 2014, 2015, 2016 and year-to-date Entity profit and loss statements, and current rent rolls (collectively, the "Financial Reporting") which the Bank demanded be provided by December 10, 2017.

The failure of the Borrowers to provide the Financial Reporting is a breach of "Exhibit A", Additional Terms and Conditions, to each of the Notes that occurred on December 10, 2017. This breach of the Notes has remained uncured for a period of 30 days (the "Financial Reporting Default"). As a result, pursuant to Sections 7.1 and 7.1(a)(ii)(A) of the Deeds of Trust, the Bank hereby declares an Optional Default.

Article 3, Section 3 of each of the Deeds of Trust entitled "Absolute Assignment of Rents and Leases" provides in part as follows:

3.1 Assignment. Trustor irrevocably assigns to Lender all of trustor's right, title, and interest in, to and under:

(a) all present and future leases of the Property or any portion thereof . . .; and

6)660006v1

Anne Kihagi, Member/Manager
XELAN Prop 1, LLC
January 26, 2018
Page 3

3.1 <u>Assignment</u>.  Trustor irrevocably assigns to Lender all of trustor's right, title,
and interest in, to and under:

(a) all present and future leases of the Property or any portion thereof . . .; and

(b) the rents, issues, deposits and profits of the Property, including, without
limitation, all amounts payable and all rights and benefits accruing to Trustor
under the leases ("Payments") . . .

This is a present and absolute assignment, not an assignment for security purposes
only, and Lender's right to the leases and payments is not contingent upon, and
may be exercised without possession of the Property.

Section 3.2 of each of the Deeds of Trust provides in part:

3.2 <u>Grant of License</u>.  Lender confers upon Trustor a revocable license
("License") to collect and retain the Payments as they become due and payable,
until the occurrence of a "Default" (as hereinafter defined).  Upon a Default, the
License shall be automatically revoked and Lender may collect and apply the
Payments pursuant to the terms hereof without notice and without taking
possession of the Property.  All Payments thereafter collected by Trustor shall be
held by Trustor as trustee under constructive trust for the benefit of Lender.

As a result of the occurrence of the Financial Reporting Default, the License granted to
the Borrowers pursuant to Section 3.2 of the Deed of Trust is automatically revoked and all
Payments collected by the Borrowers from the Subject Properties **shall be held by the
Borrowers as trustee under constructive trust for the benefit of the Bank**.  The Bank
reserves the right to exercise additional rights and remedies against the Borrowers at law, equity
and otherwise, without further notice to the Borrowers, as a result of the occurrence of the
Financial Reporting Default.

In addition, Section 6.7(b) of the Deeds of Trust provides as follows:

Trustor shall immediately discharge by bonding or otherwise any lien, charge or
other encumbrance which attaches to the Property in violation of Section 6.14.

Section 6.14 of the Deeds of Trust provides in part as follows:

**Prohibition of Transfer of Property or Interests in Trustor**. . . . [E]xcept with
the prior written consent of Lender or as otherwise expressly permitted in the
Note, Trustor shall not cause or permit any sale, exchange, mortgage, pledge,
hypothecation, assignment, encumbrance or other transfer, conveyance or
disposition. whether voluntarily, involuntarily or by operation of law
("**Transfer**") of all or any part of, or all or any direct or indirect interest in, the
Property or the Collateral . . .

61660006v1

Anne Kihagi, Member/Manager
XELAN Prop 1, LLC
January 26, 2018
Page 4

Section 4.1(c) of the Deed of Trust provides, inter alia, that the Bank was granted a
security interest in the Collateral described in that section including, without limitation, all
accounts receivable.  Section 1.1(d) of the Deed of Trust assigned to the Trustee for the benefit
of the Bank, all of the Borrower's right, title and interest in all "equipment . . . and all accessions
thereto and renewals and replacements thereof and substitutions therefor used in the operation or
the occupancy of the Land . . . ."

On October 3, 2017 and November 16, 2017, the City and County of San Francisco filed
multiple Personal Property Judgment Liens pursuant to California Code of Civil Procedure
§ 697.510 et seq., file Nos. 17-7608945764, 17-7608941720, and 17-7617083727 (collectively,
the "Personal Property Judgment Liens") against the Borrower, et al., pursuant to which the City
and County of San Francisco was granted a judgment lien on, inter alia, the Borrower's accounts
receivables and equipment.

On December 26, 2017, that certain Order granting the City's Renoticed Motion for
Assignment Order of Rights, Restraining Order and Turnover Order pursuant to Code of Civil
Procedure § 708.510(a) et seq. (the "Assignment Order") was filed in the action entitled City and
County of San Francisco, etc., v. Anne Kihagi, etc., et al., San Francisco County Superior Court
Case No. CGC-15-546152.  The Assignment Order provided, inter alia, that "all the rents, lease
payments, lease obligations, general intangibles, rights to payment of money, contract rights,
deposit and deposit accounts . . ." arising from the Borrower's ownership of the Subject Property
were "assigned, transferred and payable to the City and County of San Francisco and the People
of the State of California."

The Personal Property Judgment Liens and the Assignment Order are a breach of Section
6.14 of the Deed of Trust.  In addition, the failure of the Borrower to immediately discharge the
Personal Property Judgment Liens and Assignment Order is a breach of Section 6.7(b) of the
Deed of Trust.  The Bank hereby demands that the Borrower take the necessary steps to cure
these breaches by causing the Personal Property Judgment Liens and the Assignment Order to be
released on or before February 26, 2018.  If the Borrower fails to do so, the Bank shall thereafter
declare additional Defaults under the Loan Documents pursuant to Sections 7.1 and 7.1(a)(ii)(A)
of the Deed of Trust.

Nothing contained in this letter constitutes a waiver, amendment, or modification of any
of the terms of the Loan Documents, all of which remain in full force and effect; no failure by
the Bank to exercise any particular rights or remedies under the Loan Documents or applicable
law constitutes a waiver of its right to do so at a future date; no failure by the Bank to identify
herein any other default and/or Defaults that may exist constitutes a waiver of any such other
default and/or Defaults and all the Bank's rights and remedies with respect to any such defaults
and/or Defaults have not been waived and are hereby preserved in their entirety; no oral
communication from or on behalf of the Bank will constitute any agreement, commitment, or
evidence of any assurance or intention of them with respect to any aspect of the Loan
Documents; and no agreement, commitment, assurance, or intention of the Bank with respect to

61660006v1

142

Anne Kihagi, Member/Manager
XELAN Prop 1, LLC
January 26, 2018
Page 5


any aspect of the Loan Documents will be effective unless it is in writing and duly authorized
and executed on behalf of the Bank.


Very truly yours,

*Beverly Tengco*

Beverly Tengco
Vice President and Special Assets Officer

cc:    Anne Kihagi, Guarantor (via U.S. Mail and Overnight Delivery)
       Robert B. Kaplan, Esq. (via electronic mail)

61660006v1

143

# EXHIBIT 5



**UMPQUA**
**B · A · N · K**

January 29, 2018

**VIA U.S. MAIL AND EXPRESS MAIL**

XELAN Prop 1, LLC
P.O. Box 691889
Los Angeles, CA 90069
Attn: Anne Kihagi

**VIA U.S. MAIL AND OVERNIGHT DELIVERY**

Anne Kihagi, Member/Manager
Renka Prop LLC
1220 N. Formosa Avenue
West Hollywood, CA 90046

**VIA EXPRESS MAIL**

Renka Prop LLC
P.O. Box 691889
Los Angeles, CA 90069
Attn: Anne Kihagi

Re:     Promissory Note Secured by Deed of Trust dated June 13, 2013 in the original principal amount of $1,700,000 ("XELAN Note No. 1") executed by XELAN Prop 1, LLC ("XELAN") in favor of Sterling Savings Bank ("Sterling"); Deed of Trust and Absolute Assignment of Rents and Leases and Security Agreement (and Fixture Filing) dated as of June 13, 2013 ("XELAN Deed of Trust No. 1") executed by XELAN, as trustor, in favor of UPF Incorporated, as trustee ("Trustee"), for the benefit of Sterling recorded on June 28, 2013 in the Official Records of the San Francisco County Recorder's Office with respect to the real property commonly known as 4018-4022 19th Street, San Francisco, California ("Subject Property No. 1"); and Assignment of Agreements, Permits, Licenses and Approvals Dated as of June 13, 2013 ("XELAN Assignment Agreement No. 1") executed by XELAN in favor of Sterling.

Promissory Note Secured by Deed of Trust dated July 31, 2013 in the original principal amount of $1,960,000 ("XELAN Note No. 2") executed by XELAN in favor of Sterling; Deed of Trust and Absolute Assignment of Rents and Leases and Security Agreement (and Fixture Filing) dated as of July 31, 2013 ("XELAN Deed of Trust No. 2") executed by XELAN, as trustor, in favor of Trustee, for the benefit of Sterling recorded on August 14, 2013 in the Official Records of the San Francisco County Recorder's Office with respect to the real property commonly known as 1000-1022 Filbert Street, San Francisco, California ("Subject Property No. 2"); and Assignment of Agreements, Permits, Licenses and Approvals Dated

61674477v1

145

Anne Kihagi, Member/Manager
XELAN Prop 1, LLC
January 29, 2018
Page 2

as of July 31, 2013 ("XELAN Assignment Agreement No. 2") executed by
XELAN in favor of Sterling.

Promissory Note Secured by Deed of Trust dated December 18, 2013 in the
original principal amount of $1,325,000 ("Renka Note") executed by Renka Prop
LLC ("Renka") in favor of Sterling; Deed of Trust and Absolute Assignment of
Rents and Leases and Security Agreement (and Fixture Filing) dated as of
December 18, 2013 ("Renka Deed of Trust") executed by Renka, as trustor, in
favor of Trustee, for the benefit of Sterling recorded on December 27, 2013 in the
Official Records of the San Francisco County Recorder's Office with respect to
the real property commonly known as 195 Eureka Street, San Francisco,
California ("Subject Property No. 3"); and Assignment of Agreements, Permits,
Licenses and Approvals Dated as of December 18, 2013 ("Renka Assignment
Agreement") executed by Renka in favor of Sterling.

Dear Ms. Kihagi:

The XELAN Note No. 1, the XELAN Note No. 2, and the Renka Note are hereinafter
collectively referred to as the "Notes". The XELAN Deed of Trust No. 1, The XELAN Deed of
Trust No. 2, and the Renka Deed of Trust are hereinafter collectively referred as to the "Deeds of
Trust". The XELAN Assignment Agreement No. 1, the XELAN Assignment Agreement No. 2,
and the Renka Assignment Agreement are hereinafter collectively referred to as the "Assignment
Agreements"). Subject Property No. 1, Subject Property No. 2 and Subject Property No. 3 are
hereinafter collectively referred to as the "Subject Properties". XELAN and Renka are
hereinafter referred to as the "Borrowers". Umpqua Bank ("Bank") is the successor-in-interest
by merger to Sterling. Capitalized terms when used herein without definitions shall have the
meaning given to them in the Notes, Deeds of Trust and/or Assignment Agreements.

Reference is made to the Bank's letter to you dated January 26, 2018. In that letter, the
Bank advised the Borrowers as a result of the occurrence of an Optional Default, the License
granted to the Borrowers pursuant to Section 3.2 of the Deed of Trust was automatically revoked
and all Payments collected by the Borrowers from the Subject Properties shall be held by the
Borrowers as trustee under a constructive trust for the benefit of the Bank. Pursuant to Civil
Code § 2938(c)(4), the Bank now hereby demands that the Borrowers pay to the Bank all of the
Payments now due or that hereafter come due. Please contact the Bank's counsel, Robert B.
Kaplan, Esq. at (415) 984-9673 or at rbk@jmbm.com to make immediate arrangements to
satisfy this demand. The Bank reserves the right to exercise additional rights and remedies
against the Borrowers at law, equity and otherwise, without further notice to the Borrowers, as a
result of the occurrence of this Optional Event of Default.

Nothing contained in this letter constitutes a waiver, amendment, or modification of any
of the terms of the Loan Documents, all of which remain in full force and effect; no failure by
the Bank to exercise any particular rights or remedies under the Loan Documents or applicable
law constitutes a waiver of its right to do so at a future date; no failure by the Bank to identify

61674477v1

Anne Kihagi, Member/Manager
XELAN Prop 1, LLC
January 29, 2018
Page 3

herein any other default and/or Defaults that may exist constitutes a waiver of any such other default and/or Defaults and all the Bank's rights and remedies with respect to any such defaults and/or Defaults have not been waived and are hereby preserved in their entirety; no oral communication from or on behalf of the Bank will constitute any agreement, commitment, or evidence of any assurance or intention of them with respect to any aspect of the Loan Documents; and no agreement, commitment, assurance, or intention of the Bank with respect to any aspect of the Loan Documents will be effective unless it is in writing and duly authorized and executed on behalf of the Bank.

Very truly yours,

Beverly Tengco
Vice President and Special Assets Officer

cc:    Anne Kihagi, Guarantor (via U.S. Mail and Overnight Delivery)
Robert B. Kaplan, Esq. (via email)
David J. Cook, Esq.
Peter J. Keith, Esq.
Peter Manazian, Esq.
Gregory R. De le Pena, Esq.
Sam B. Maralan, Esq.
Isaac R. Zfaty, Esq.
Karen Y. Uchiyama, Esq.

61674477v1

# EXHIBIT 6



**UMPQUA**
**B · A · N · K**

February 27, 2018

<u>**VIA U.S. MAIL AND EXPRESS MAIL**</u>

XELAN Prop 1, LLC
P.O. Box 691889
Los Angeles, CA 90069
Attn: Anne Kihagi

Re:    Promissory Note Secured by Deed of Trust dated June 13, 2013 in the original
principal amount of $1,700,000 ("XELAN Note No. 1") executed by XELAN
Prop 1, LLC ("XELAN") in favor of Sterling Savings Bank ("Sterling"); Deed of
Trust and Absolute Assignment of Rents and Leases and Security Agreement (and
Fixture Filing) dated as of June 13, 2013 ("XELAN Deed of Trust No. 1")
executed by XELAN, as trustor, in favor of UPF Incorporated, as trustee
("Trustee"), for the benefit of Sterling recorded on June 28, 2013 in the Official
Records of the San Francisco County Recorder's Office with respect to the real
property commonly known as 4018-4022 19th Street, San Francisco, California
("Subject Property No. 1"); and Assignment of Agreements, Permits, Licenses
and Approvals Dated as of June 13, 2013 ("XELAN Assignment Agreement No.
1") executed by XELAN in favor of Sterling.

Promissory Note Secured by Deed of Trust dated July 31, 2013 in the original
principal amount of $1,960,000 ("XELAN Note No. 2") executed by XELAN in
favor of Sterling; Deed of Trust and Absolute Assignment of Rents and Leases
and Security Agreement (and Fixture Filing) dated as of July 31, 2013 ("XELAN
Deed of Trust No. 2") executed by XELAN, as trustor, in favor of Trustee, for the
benefit of Sterling recorded on August 14, 2013 in the Official Records of the San
Francisco County Recorder's Office with respect to the real property commonly
known as 1000-1022 Filbert Street, San Francisco, California ("Subject Property
No. 2"); and Assignment of Agreements, Permits, Licenses and Approvals Dated
as of July 31, 2013 ("XELAN Assignment Agreement No. 2") executed by
<u>XELAN in favor of Sterling.</u>

Dear Ms. Kihagi:

The XELAN Note No. 1 and the XELAN Note No. 2 are hereinafter collectively referred
to as the "Notes". The XELAN Deed of Trust No. 1 and the XELAN Deed of Trust No. 2 are
hereinafter collectively referred as to the "Deeds of Trust". The XELAN Assignment Agreement
No. 1 and the XELAN Assignment Agreement No. 2 are hereinafter collectively referred to as
the "Assignment Agreements"). Subject Property No. 1 and Subject Property No. 2 are

61765453v2

149

Anne Kihagi, Member/Manager
XELAN Prop 1, LLC
February 27, 2018
Page 2

hereinafter collectively referred to as the "Subject Properties". Umpqua Bank ("Bank") is the
successor-in-interest by merger to Sterling. Capitalized terms when used herein without
definitions shall have the meaning given to them in the Notes, Deeds of Trust and/or Assignment
Agreements.

XELAN has still failed to comply with the demand for financial reporting required to be
provided to the Bank pursuant to the Loan Documents set forth in the Bank's letter to XELAN
dated November 27, 2017 including, without limitation, providing current personal financial
statements, current guarantor financial statements, 2014, 2015 and 2016 tax returns, 2014, 2015,
2016 and year-to-date Entity tax operating statements, 2014, 2015, 2016 and year-to-date Entity
profit and loss statements, and current rent rolls (collectively, the "Financial Reporting") which
the Bank demanded be provided by December 10, 2017.

The failure of XELAN to provide the Financial Reporting is a breach of "Exhibit A",
Additional Terms and Conditions, to the Notes that occurred on December 10, 2017. This
breach of the Notes has remained uncured for a period of 30 days (the "Financial Reporting
Default"). As a result, in the Bank's letter to XELAN dated January 26, 2018, pursuant to
Sections 7.1 and 7.1(a)(ii)(A) of the Deeds of Trust, the Bank declared an Optional Default and
advised XELAN that as a result of the Financing Reporting Default, the license granted to
XELAN pursuant to Section 3.2 of the Deeds of Trust was automatically revoked.

Further, in the Bank's letter to XELAN dated January 26, 2018, the Bank advised
XELAN that the Personal Property Judgment Liens and the Assignment Order (as those terms
were defined in the Bank's letter to XELAN dated January 26, 2018) were a breach of Section
6.14 of the Deeds of Trust and demanded that XELAN take the necessary steps to cure those
breaches by causing the Personal Property Judgment Liens and Assignment Order to be released
on or before February 26, 2018. To date, XELAN has failed to do so. Therefore, an additional
Optional Event of Default has occurred under the Loan Documents pursuant to Sections 7.1 and
7.1(a)(ii)(A) of the Deeds of Trust.

In view of the occurrence of the Optional Events of Defaults set forth above, the Bank
**hereby accelerates** all outstanding obligations due and owing by XELAN to the Bank, pursuant
to Section 7 of the Notes and Section 7.2 of the Deeds of Trust, and demands immediate
repayment of those outstanding obligations on or before **March 9, 2018** including, without
limitation, all unpaid principal, interest, attorneys' fees and costs. If XELAN intends to timely
and satisfy this demand for payment, please contact me prior to March 9, 2018 to obtain a
payoff quote from the Bank. If XELAN fails to timely and punctually satisfy this demand for
payment by March 9, 2018, the Bank will thereafter exercise the rights and remedies available to
it pursuant to Section 7.3 of the Deeds of Trust, in the sole and absolute discretion of the Bank,
including, without limitation, seeking to filing a lawsuit against XELAN to have a receiver
appointed over the Subject Property. Please further be advised that effective as of March 12,
2018, interest shall accrue on the unpaid principal balance and all other amounts payable under
the Notes at the Default Rate.

Anne Kihagi, Member/Manager
XELAN Prop 1, LLC
February 27, 2018
Page 3

     Nothing contained in this letter constitutes a waiver, amendment, or modification of any of the terms of the Loan Documents, all of which remain in full force and effect; no failure by the Bank to exercise any particular rights or remedies under the Loan Documents or applicable law constitutes a waiver of its right to do so at a future date; no failure by the Bank to identify herein any other default and/or Defaults that may exist constitutes a waiver of any such other default and/or Defaults and all the Bank's rights and remedies with respect to any such defaults and/or Defaults have not been waived and are hereby preserved in their entirety; no oral communication from or on behalf of the Bank will constitute any agreement, commitment, or evidence of any assurance or intention of them with respect to any aspect of the Loan Documents; and no agreement, commitment, assurance, or intention of the Bank with respect to any aspect of the Loan Documents will be effective unless it is in writing and duly authorized and executed on behalf of the Bank.

                       Very truly yours,

                       Beverly Tengco
                       Vice President and Special Assets Officer

cc:    Anne Kihagi, Guarantor (via U.S. Mail and Overnight Delivery)
       Robert b. Kaplan, Esq. (via email)
       Paul Manasian, Esq. (via email)

61765453v2

151

# EXHIBIT 7

## PROMISSORY NOTE SECURED BY DEED OF TRUST

$1,700,000.00        San Francisco, California        June 13, 2013

**1.**    <u>Promise To Pay.</u> For value received, the undersigned XELAN PROP 1, LLC, a California limited liability company ("Borrower"), promises to pay to the order of STERLING SAVINGS BANK, a Washington banking corporation, d/b/a Sterling Bank ("Lender"), at Spokane, Washington, or at such other place as may be designated in writing by Lender, the principal sum of One Million Seven Hundred Thousand Dollars and No Cents ($1,700,000.00) ("Loan"), with interest thereon as specified herein. All sums owing hereunder are payable in lawful money of the United States of America, in immediately available funds, without offset, deduction or counterclaim of any kind.

**2.**    <u>Secured by Deed of Trust.</u> This Note is secured by, among other things, that Deed of Trust and Absolute Assignment of Rents and Leases and Security Agreement (and Fixture Filing) (as the same may hereinafter be amended, modified, restated, reviewed or extended from time to time, "Deed of Trust") of even date herewith, encumbering certain real property described therein ("Property").

**3.**    <u>Definitions.</u> For the purposes of this Note, the following terms shall have the following meanings:

"Business Day" shall mean any day other than a Saturday, Sunday, legal holiday or other day on which commercial banks in Washington are authorized or required by law to close. All references in this Note to a "day" or a "date" shall be to a calendar day unless specifically referenced as a Business Day.

"Closing Date" shall mean the date the Deed of Trust is recorded in the Office of the County Recorder of the county where the Property is located and Lender authorizes the Loan proceeds to be released to Borrower.

"Default" shall have the meaning set forth in the Deed of Trust.

"Loan Documents" shall mean the documents listed in Exhibit "B" attached hereto and incorporated herein by this reference, as the same may hereinafter be amended, modified, restated, reviewed or extended from time to time.

"Maturity Date" shall mean July 1, 2043.

**4.**    <u>Interest; Payments.</u>

**4.1**    <u>Payment.</u> Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph:

     (a)    Sixty (60) monthly consecutive principal and interest payments in the initial amount of Seven Thousand Nine Hundred Thirty Dollars and Ninety-Six Cents ($7,930.96) each, beginning August 1, 2013, with interest calculated on the unpaid principal balances using an interest rate of three and eighty-one/one-hundredths percent (3.81%);

     (b)    Three Hundred (300) monthly consecutive principal and interest payments to be calculated as follows:

         (i)    The amount of each monthly installment payment of principal and interest from and after the initial 60-month period described in Section 4.1(a) above shall be calculated on July 1, 2018 ("Initial Rate Adjustment Date"), and shall be recalculated on the

same day of each six (6)-month period thereafter (each of which is a "Rate Adjustment Date"); and

(ii)    on each of the Initial Rate Adjustment Date and each succeeding Rate Adjustment Date, the monthly installment payment shall be recalculated based on the "Applicable Interest Rate" (as defined below) and a 360-month amortization schedule, less the number of months that have elapsed between the Closing Date and the Initial Rate Adjustment Date and/or each succeeding Rate Adjustment Date.

As used herein, the following terms shall have the meanings set forth below:

(x)    The term "Applicable Interest Rate" shall mean the then-applicable interest rate based on the "Index" plus the "Margin" (both as defined hereinbelow), adjusted if necessary for the minimum and maximum rate limitations for this loan as set forth in Section 4.2 below).

(y)    The term "Index" shall mean an interest rate based on the rate of interest at which banks borrow funds from other banks, in marketable size, in the London interbank market (which rate is generally known as the "SIX (6) MONTH LIBOR," which stands for the "London Interbank Offering Rate." Information on this Index as used herein for the calculation of the Applicable Interest Rate is the rate published by the Wall Street Journal, Western Edition (currently 0.411%) as of the Wednesday prior to the applicable Rate Adjustment Date.

(z)    The term "Margin" shall mean 2.25%, adjusted if necessary for the minimum and maximum rate limitations for this loan as set forth in Section 4.2 below).

(c)    The final principal and interest payment on July 1, 2043, will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note.

4.2    Variable Interest Rate. The Applicable Interest Rate on this Note is subject to change from time to time based on changes in the Index. The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each six (6) months. Borrower understands that Lender may make loans based on other rates as well. The interest rate or rates to be applied to the unpaid principal balance during this Note will be the rate or rates set forth herein. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream.

NOTICE: Under no circumstances will the interest rate on this Note be less than 3.81% per annum or more than (except for any higher default rate shown below) the lesser of 9.5% per annum or the maximum rate allowed by applicable law; provided, however, that AFTER the adjustment of the Applicable Interest Rate on the Initial Rate Adjustment Date, each recalculation of the Applicable Interest Rate on each succeeding Rate Adjustment Date shall not exceed one percent (1%) ("Rate Change Cap") in excess of the Applicable Interest Rate for the preceding six (6)-month period. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will payoff by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

4.3    Interest Calculation Method. Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days before the first full payment cycle, monthly interest is calculated by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days before the first full month is

calculated on the basis of the actual days and a 360-day year. All interest payable under this Note is computed using this method.

    **4.4**    **Application of Payments.** In the absence of a specific determination by Lender to the contrary, all payments paid by Borrower to Lender in connection with the obligations of Borrower under this Note and under the other Loan Documents shall be applied in the following order of priority: (a) to amounts, other than principal and interest, due to Lender pursuant to this Note or the other Loan Documents; (b) to accrued but unpaid interest on this Note; and (c) to the unpaid principal balance of this Note. Borrower irrevocably waives the right to direct the application of any and all payments at any time hereafter received by Lender from or on behalf of Borrower, and Borrower irrevocably agrees that Lender shall have the continuing exclusive right to apply any and all such payments against the then due and owing obligations of Borrower in such order of priority as Lender may deem advisable.

**5.**    **Late Charge; Default Rate.**

    **5.1**    **Late Charge.** If Borrower shall fail to make any payment of interest or principal, (excluding the final combined principal and interest installment due at the Maturity Date), within ten (10) days after the date the same is due and payable, a late charge by way of damages shall be immediately due and payable. Borrower recognizes that default by Borrower in making the payments herein agreed to be paid when due will result in Lender incurring additional expense in servicing the loan, in loss to Lender of the use of the money due and in frustration to Lender in meeting its other financial and loan commitments. Borrower agrees that, if for any reason Borrower fails to pay the amounts due under this Note when due, Lender shall be entitled to damages for the detriment caused thereby, but that it is extremely difficult and impractical to ascertain the extent of such damages. Borrower therefore agrees that a sum equal to five percent (5.00%) of each payment which becomes delinquent is a reasonable estimate of said damages to Lender, which sum Borrower agrees to pay on demand. Borrower acknowledges and agrees that by its execution of this Note, it has received prior notice of Lender's right to collect any late charge payable hereunder in full compliance with the provisions of applicable law, and that no further or additional notice shall be required by Borrower as a condition to Lender's right to collect any such charge in the event Borrower fails to make a timely payment hereunder.

    **5.2**    **Default Rate.** During the period commencing with any Default hereunder and continuing until such Default is cured, Lender, at its option and if permitted under applicable law, shall do one or both of the following: (a) increase the interest chargeable under this Note to the Default Rate; and/or (b) add the unpaid principal balance, all accrued and unpaid interest and all other amounts payable under the Note, with the resulting sum to bear interest at the Default Rate. The "Default Rate" shall be the rate which is five percent (5.00%) above the rate that would otherwise be payable under the terms of this Note. In no event shall the interest rate charged hereunder exceed the maximum rate permitted under applicable law.

**6.**    **Maximum Rate Permitted By Law.** Neither this Note nor any of the other Loan Documents shall require the payment or permit the collection of any interest or any late payment charge in excess of the maximum rate permitted by law to be charged to Borrower. If any such excess interest or late payment charge is provided for under this Note or any of the other Loan Documents or if this Note or any of the other Loan Documents shall be adjudicated to provide for such excess, neither Borrower nor Borrower's successors or assigns shall be obligated to pay such excess, and the right to demand the payment of any such excess shall be and hereby is waived, and this provision shall control any other provision of this Note or any of the other Loan Documents. If Lender shall collect amounts which are deemed to constitute interest and which would increase the effective interest rate to a rate in excess of the maximum rate permitted by law to be charged to Borrower, all such amounts deemed to constitute interest in excess of the maximum legal rate shall, upon such determination, at the option of Lender, be returned to Borrower or credited against the outstanding principal balance of this Note.

**7.**    **Acceleration.** If (a) Borrower shall fail to pay when due any sums payable under this Note; (b) any other Default shall occur; or (c) any other event or condition shall occur which, under the terms of the Deed of Trust or any other Loan Document, gives rise to a right of acceleration of sums owing under

this Note, then Lender, at its sole option, shall have the right to declare all sums owing under this Note immediately due and payable; provided, however, that if the Deed of Trust or any other Loan Document provides for the automatic acceleration of payment of sums owing under this Note, all sums owing under this Note shall be automatically due and payable in accordance with the terms of the Deed of Trust or such other Loan Document.

8.    **Borrower's Liability.**

8.1.    **Full Recourse.** All of the terms and provisions of this Note are recourse obligations of Borrower and not restricted by any limitation on personal liability provided in any of the other Loan Documents or limited to any collateral securing any of the obligations under this Note, it being the intent of Lender to create recourse obligations of Borrower hereunder which can be enforced against Borrower without regard to the existence of the other Loan Documents.

8.2    **Specific Additional Recourse Obligations.** Notwithstanding anything to the contrary contained in Section 8.1 or elsewhere in this Note or the other Loan Documents, Borrower shall be personally liable to Lender:

(a)    for any liabilities, costs, expenses (including reasonable attorneys' fees and expenses), claims, losses or damages incurred by Lender (including, without limitation, any impairment of Lender's security for the Loan) with respect to any of the following matters:

(i)    fraud, material misrepresentation or failure to disclose a material fact by Borrower or any of its principals, officers, general partners or members, any guarantor, any indemnitor, or any agent, employee or other person authorized or apparently authorized to make statements, representations or disclosures on behalf of such persons;

(ii)    waste committed on the Property by, or damage to the Property as a result of the intentional misconduct or gross negligence of, Borrower or any of its principals, officers, general partners or members, any guarantor, any indemnitor, or any agent or employee of such persons, or any removal of the Property in violation of the terms of the Loan Documents, to the full extent of the losses or damages incurred by Lender on account of such occurrence;

(iii)    failure to pay property or other taxes, assessments or charges and/or failure to procure and maintain the insurance policies for the Property required by the Loan Documents (other than amounts paid to Lender for taxes, assessments or charges and/or insurance premiums pursuant to an impound account and where Lender elects not to apply such funds toward payment of the taxes, assessments or charges and/or insurance premiums owed) which may create liens senior to the lien of the Deed of Trust on all or any portion of the Property;

(iv)    failure to deliver any insurance or condemnation proceeds or awards or any security deposits received by Borrower to Lender or to otherwise apply such sums as required under the terms of the Loan Documents or any other instrument now or hereafter securing this Note;

(v)    gross negligence, willful misconduct or criminal acts perpetrated by Borrower resulting in the forfeiture, seizure, loss or diminution in value of all or any portion of the Collateral; or

(vi)    failure to apply any rents (including without limitation any rents and other lease payments received more than one (1) month in advance), royalties, accounts, revenues, income, issues, profits, sums received in consideration of any surrender or termination of any lease (or the release or discharge of any tenant thereunder) or material modification of any lease on the Property, and other benefits from the Property which are collected or received by Borrower (A) as required under the terms of the Loan Documents or any other instrument now or hereafter

Note – ALL
477042 (rev 03/13/13)

4018-4022 19th Street (Loan No. 3720003627)

securing the Note for the payment of the ordinary and necessary expenses of owning and operating the Property or paid to Lender, or (B) either during the period of any "Default" (as defined in the Note), or after the occurrence of any event which with the giving of notice or the passage of time, or both, would constitute a Default, or after acceleration of the indebtedness and other sums owing under the Loan Documents, only to the payment of either such indebtedness or other sums, or the normal and necessary operating expenses of the Property.

(b) for the performance and payment of all of its obligations under the Environmental Indemnity Agreement of even date herewith made by Borrower in favor of Lender.

(c) for all fees and other collection costs (including without limitation attorneys' fees and/or expert witness fees) reasonably incurred by Lender in any legal or equitable, judicial or non-judicial, action or proceeding (including without limitation any arbitration, mediation, and/or any other alternative dispute resolution proceeding to enforce or defend any provisions of this Section 8.2 (including without limitation attorneys' fees and costs reasonably incurred in any appeal proceedings or in any bankruptcy proceedings involving Borrower and/or any indemnitor or guarantor under any indemnity or guaranty to enforce the provisions of this Section 8.2), together with interest thereon from the date of such demand until paid at the rate of interest applicable to the principal balance of the Note as specified herein.

8.3    Additionally, notwithstanding anything to the contrary contained in Section 8.1 of this Note or the other Loan Documents, if (x) Borrower shall voluntarily file or commence a petition, case or application for any bankruptcy, reorganization, dissolution or other relief for Borrower under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, or if any such petition, case or application shall be filed or commenced against Borrower and Borrower shall consent to such petition, case or application, (y) any "Transfer" of the Property or any part thereof, within the meaning of Section 6.14 of the Deed of Trust, shall occur without the prior written consent of Lender, or (z) Borrower shall (1) incur any debt, secured or unsecured, direct or indirect, absolute or contingent (including guaranteeing any obligation) related to or secured by the Property, other than the Loan or trade debt incurred in the ordinary course of Borrower's business which shall be paid in accordance with terms of the Loan Documents, or (2) permit the encumbrance, hypothecation or pledge of any of the membership interests of Borrower, in violation of Section 6.7 of the Deed of Trust, then Lender shall have the right to seek a personal judgment against Borrower on this Note and under any other Loan Document with respect to any and all indebtedness secured thereby.

8.4    No Release or Impairment.  Nothing contained in Section 8.1 shall be deemed to release, affect or impair the indebtedness evidenced by this Note or the obligations of Borrower under, or the liens and security interests created by the Loan Documents, or Lender's rights to enforce its remedies under this Note and the other Loan Documents, including, without limitation, the right to pursue any remedy for injunctive or other equitable relief, or any suit or action in connection with the preservation, enforcement or foreclosure of the liens, mortgages, assignments and security interests which are now or at any time hereafter security for the payment and performance of any of the obligations under this Note or the other Loan Documents, or Lender's rights to recover any sums under Section 10.12 in connection with any such suit or action.

8.5    Prevail and Control.  The provisions of this Section 8 shall prevail and control over any contrary provisions elsewhere in this Note or the other Loan Documents.

9.    Reserved.

10.    Miscellaneous.

10.1    Joint and Several Liability.  If this Note is executed by more than one person or entity as Borrower, the obligations of each such person or entity shall be joint and several. No person or entity shall be a mere accommodation maker, but each shall be primarily and directly liable hereunder.

**10.2    Waiver of Presentment.** Except as otherwise provided in any other Loan Document, Borrower hereby waives presentment, demand, notice of dishonor, notice of default or delinquency, notice of acceleration, notice of nonpayment, notice of costs, expenses or losses and interest thereon, and notice of interest on interest and late charges.

**10.3    Delay In Enforcement.** No previous waiver or failure or delay by Lender in acting with respect to the terms of this Note or the Deed of Trust shall constitute a waiver of any breach, default or failure of condition under this Note, the Deed of Trust or the obligations evidenced or secured thereby. A waiver of any term of this Note, the Deed of Trust or of any of the obligations evidenced or secured thereby must be made in writing signed by Lender, shall be limited to the express terms of such waiver, and shall not constitute a waiver of any subsequent obligation of Borrower. The acceptance at any time by Lender of any past due amount shall not be deemed to be a waiver of the right to require prompt payment when due of any other amounts then or thereafter due and payable.

**10.4    Time of the Essence.** Time is of the essence with respect to every provision hereof.

**10.5    Governing Law.** This Note shall be deemed to have been applied for, considered, approved, negotiated, executed, made and shall be performed in and shall be governed by the laws of the state in which the collateral property and/or pledged assets are located (without regard to conflicts of laws principles), except to the extent the laws of the state in which the collateral property and/or pledged assets are located affect enforceability of the liens granted in the Loan Documents, all as expressly set forth in the Governing Law provisions of Section 8.17 of the Deed of Trust executed in connection with this Note. Borrower irrevocably agrees that subject to Lender's sole and absolute election, Lender may bring suit, action, or other legal proceedings arising out of the Loan Documents in courts located in the state in which the collateral property and/or pledged assets are located, whether local, state, or federal.

**10.6    Consent to Jurisdiction.** Borrower irrevocably submits to the jurisdiction of: (a) any state or federal court sitting in the state of Washington over any suit, action, or proceeding, brought by Borrower against Lender, arising out of or relating to this Note or the Loan evidenced hereby; (b) any state or federal court sitting in the state where the Property is located or the state in which Borrower's principal place of business is located over any suit, action or proceeding, brought by Lender against Borrower, arising out of or relating to this Note or the Loan evidenced hereby, and (c) any state court sitting in the county of the state where the Property is located, over any suit, action, or proceeding, brought by Lender to exercise its STATUTORY POWER OF SALE under the Deed of Trust or any action brought by the Lender to enforce its rights with respect to the Collateral. Borrower irrevocably waives, to the fullest extent permitted by law, any objection that Borrower may now or hereafter have to the laying of venue of any such suit, action, or proceeding brought in any such court and any claim that any such suit, action, or proceeding brought in any such court has been brought in an inconvenient forum.

**10.7    Counterparts.** This Note may be executed in any number of counterparts, each of which when executed and delivered shall be deemed an original and all of which taken together shall be deemed to be one and the same Note.

**10.8    Heirs, Successors and Assigns.** All of the terms, covenants, conditions and indemnities contained in this Note and the other Loan Documents shall be binding upon the heirs, successors and assigns of Borrower and shall inure to the benefit of the successors and assigns of Lender. The foregoing sentence shall not be construed to permit Borrower to assign the Loan except as otherwise permitted in this Note or the other Loan Documents.

**10.9    Severability.** If any term of this Note, or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Note, or the application of such term to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term of this Note shall be valid and enforceable to the fullest extent permitted by law.

Note - ALL
477042 (rev 03/13/13)

6

4018-4022 19th Street (Loan No. 3720083627)

10.10  **Consents and Approvals.**  Wherever Lender's consent, approval, acceptance or satisfaction is required under any provision of this Note or any of the other Loan Documents, such consent, approval, acceptance or satisfaction shall not be unreasonably withheld, conditioned or delayed by Lender unless such provision expressly so provides.

10.11  **Further Assurances.**  Borrower shall, upon demand by Lender, execute, acknowledge (if appropriate) and deliver any and all documents and instruments and do or cause to be done all further acts reasonably necessary or appropriate to effectuate the provisions hereof.

10.12  **Attorneys' Fees.**  In the event it is necessary for Lender to retain the services of an attorney or any other party to enforce or to commence any legal or equitable action or any alternative dispute resolution proceeding (including without limitation arbitration and/or mediation proceedings) to enforce the terms of this Note and/or Deed of Trust, or any of the other Loan Documents, or any portion hereof or thereof, Borrower agrees to pay to Lender (in addition to any sums payable under Section 8.2 above and not subject to the recourse limitation in Section 8.1 above), in addition to any damages or other relief otherwise recoverable under this Note, any and all costs and expenses, including without limitation expert witness fees and reasonable attorneys' fees, incurred by Lender as a result thereof (including without limitation attorneys' fees and costs reasonably incurred in any appeal proceedings or in any bankruptcy proceedings involving Borrower).

10.13  **Disclaimers.**

(a)  **Relationship.**  The relationship of Borrower and Lender under this Note and the other Loan Documents is, and shall at all times remain, solely that of borrower and lender; and Lender neither undertakes nor assumes any responsibility or duty to Borrower or to any third party with respect to the Property.  Notwithstanding any other provisions of this Note and the other Loan Documents:

(i)  Lender is not, and shall not be construed to be, a partner, joint venturer, member, alter ego, manager, controlling person or other business associate or participant of any kind of Borrower, and Lender does not intend to ever assume such status;

(ii)  Lender does not intend to ever assume any responsibility to any person for the quality, suitability, safety or condition of the Property; and

(iii)  Lender shall not be deemed responsible for or a participant in any acts, omissions or decisions of Borrower.

(b)  **No Liability.**  Lender shall not be directly or indirectly liable or responsible for any loss, claim, cause of action, liability, indebtedness, damage or injury of any kind or character to any person or property arising from any construction on, or occupancy or use of, the Property, whether caused by or arising from:

(i)  any defect in any building, structure, grading, fill, landscaping or other improvements thereon or in any on-site or off-site improvement or other facility therein or thereon;

(ii)  any act or omission of Borrower or any of Borrower's agents, employees, independent contractors, licensees or invitees;

(iii)  any accident in or on the Property or any fire, flood or other casualty or hazard thereon;

(iv)  the failure of Borrower or any of Borrower's licensees, employees, invitees, agents, independent contractors or other representatives to maintain the Property in a safe condition; or

(v)    any nuisance made or suffered on any part of the Property.

**10.14    Separate and Community Property.** Any married person who executes this Note or any other Loan Document as a Borrower agrees that any money judgment which Lender obtains pursuant to the terms of this Note or any other Loan Document may be collected by execution upon any separate property or community property (as applicable) of that person.

**10.15    Integration; Interpretation.** The Loan Documents contain or expressly incorporate by reference the entire agreement of the parties with respect to the matters contemplated therein and supersede all prior negotiations or agreements, written or oral. The Loan Documents shall not be modified except by written instrument executed by all parties. Any reference in any of the Loan Documents to the Property or Collateral shall include all or any part of the Property or Collateral. Any reference to the Loan Documents includes any amendments, renewals or extensions now or hereafter approved by Lender in writing. When the identity of the parties or other circumstances make it appropriate, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

**11.    Notices.** All notices and other communications that are required or permitted to be given to a party under this Note shall be in writing and shall be sent to such party, either by personal delivery, by overnight delivery service, or by certified first-class mail, return receipt requested transmission to the address below. Any party shall have the right to change its address for notice hereunder to any other location within the continental United States by giving thirty (30) days' notice to the other parties in the manner set forth above. All such notices and communications shall be effective upon receipt of such delivery or facsimile transmission. The addresses and facsimile numbers of the parties shall be:

Lender:    STERLING BANK
P.O. Box 2131
Spokane, Washington 99201
Attention: Commercial Loan Support

With a copy to: STERLING BANK
111 N. Wall Street
Spokane, Washington 99201
Attention: Legal Department

Borrower:    At the address set forth following the Borrower's signature on the signature pages of this Note.

**12.    Additional Terms and Conditions.** The additional terms and conditions set forth in **Exhibit "A"** attached hereto are incorporated herein by this reference.

**13.    Prepayment.** Borrower acknowledges that any prepayment of this Note will cause Lender to lose its interest rate yield on this Note and will possibly require that Lender reinvest any such prepayment amount in loans of a lesser interest rate yield (including, without limitation, in debt obligations other than first deed of trust loans on commercial properties). As a consequence, Lender and Borrower agree, as an integral part of the consideration for Lender's making the Loan, that:

**13.1    Voluntary Prepayment.**

(a).    **Prepayment Fee.** If this Note is prepaid in full at any time, whether such prepayment is voluntarily made, is involuntary, is made as a requirement of Section 6 of **Exhibit "A"** or is made following a Default upon full acceleration of the principal amount of this Note by Lender, or in connection with or pursuant to any statutory reinstatement or right of redemption exercised by Borrower or by any other party having such a statutory right, or any sale in any judicial or non-judicial foreclosure (including pursuant to a credit bid made by Lender in connection with any such sale), or pursuant to any

---

Note – ALL                                        8                    4018-4022 19th Street (Loan No. 3720003627)
477042 (rev 03/13/13)

other collection action by Lender, Borrower shall pay to Lender on the date of any such prepayment ("Prepayment Date"). Borrower shall pay a prepayment fee in connection with any such prepayment to be calculated as follows:

| Prepayment period | Prepayment fee |
|---|---|
| MONTHS 1 THROUGH 12 | 2% of the Prepayment Amount |
| MONTHS 13 THROUGH 24 | 1% of the Prepayment Amount |
| MONTHS 25 THROUGH 36 | 1% of the Prepayment Amount |
| MONTHS 37 THROUGH 360 | No Prepayment Fee |

(b)   **Partial Prepayment**. Except as provided in Section 13.1(c) or 13.1(d) below, if this Note is prepaid in part following a Default (it being acknowledged that Borrower has no right to voluntarily prepay this Note in part or during the Prohibited Prepayment Period), whether such prepayment is involuntary, is made upon full acceleration of the principal amount of this Note by Lender following a Default, or is made in connection with or pursuant to any statutory reinstatement or right of redemption exercised by Borrower or by any other party having such a statutory right, any sale in any judicial or non-judicial foreclosure (including pursuant to a credit bid made by Lender in connection with any such sale), or pursuant to any other collection action by Lender, Borrower shall pay to Lender on the prepayment date (in addition to all other sums then due and owing to Lender under this Note and the other Loan Documents) a prepayment charge equal to (i) the prepayment charge determined in accordance with Section 13.1(a) above multiplied by (ii) a fraction whose numerator is the amount of the partial prepayment and whose denominator is the outstanding principal balance of the Loan as of the prepayment date.

(c)   **Insurance or Condemnation Proceeds**. No prepayment charge shall apply in respect to any insurance or condemnation proceeds received by Lender and applied by Lender to the outstanding principal balance of the Loan.

(d)   **Cure Payment**. No prepayment charge shall apply in respect to any payment received by Lender and applied by Lender to cure any Default within any cure period provided herein.

13.2   **Prepayment Waiver**. Borrower waives any right to prepay this Note except under the terms and conditions set forth in this section and agrees that if this Note is prepaid, Borrower will pay the prepayment charge set forth above. Borrower hereby acknowledges that:

(a)   the inclusion of this waiver of prepayment rights and agreement to pay the prepayment charge for the right to prepay this Note was separately negotiated with Lender;

(b)   the economic value of the various elements of this waiver and agreement was discussed;

(c)   the consideration given by Borrower for the Loan was adjusted to reflect the specific waiver and agreement negotiated between Borrower and Lender and contained herein; and

(d)   this waiver is intended to comply with applicable state law.

Borrower's initials: _____

14.   **DISPUTE RESOLUTION**. THIS SECTION CONTAINS A JURY WAIVER, ARBITRATION CLAUSE, AND A CLASS ACTION WAIVER. READ IT CAREFULLY.

(a)   **Jury Trial Waiver**. As permitted by applicable law, each party waives their respective rights to a trial before a jury in connection with any "Dispute" (as defined below), and Disputes shall be

resolved by a judge sitting without a jury. If a court determines that this provision is not enforceable for any reason and at any time prior to trial of the Dispute, but not later than thirty (30) days after entry of the order determining this provision is unenforceable, any party shall be entitled to move the court for an order compelling arbitration and staying or dismissing such litigation pending arbitration ("**Arbitration Order**").

(b)    **Arbitration**.    If a claim, dispute, or controversy arises between us with respect to this Note, any Loan Document, related agreements, or any other agreement or business relationship between any of us whether or not related to the subject matter of this Note (all of the foregoing, a "**Dispute**"), and only if a jury trial waiver is not permitted by applicable law or ruling by a court, any of us may require that the Dispute be resolved by binding arbitration before a single arbitrator at the request of any party. By agreeing to arbitrate a Dispute, each party gives up any right that party may have to a jury trial, as well as other rights that party would have in court that are not available or are more limited in arbitration, such as the rights to discovery and to appeal.

Arbitration shall be commenced by filing a petition with, and in accordance with the applicable arbitration rules of, JAMS or National Arbitration Forum ("**Administrator**") as selected by the initiating party. If the parties agree, arbitration may be commenced by appointment of a licensed attorney who is selected by the parties and who agrees to conduct the arbitration without an Administrator. Disputes include matters (i) relating to a deposit account, application for or denial of credit, enforcement of any of the obligations we have to each other, compliance with applicable laws and/or regulations, performance or services provided under any agreement by any party, (ii) based on or arising from an alleged tort, or (iii) involving either of our employees, agents, affiliates, or assigns of a party. However, Disputes do not include the validity, enforceability, meaning, or scope of this arbitration provision and such matters may be determined only by a court. If a third party is a party to a Dispute, we each will consent to including the third party in the arbitration proceeding for resolving the Dispute with the third party. Venue for the arbitration proceeding shall be at a location determined by mutual agreement of the parties or, if no agreement, in the city and state where lender or bank is headquartered.

After entry of an Arbitration Order, the non-moving party shall commence arbitration. The moving party shall, at its discretion, also be entitled to commence arbitration but is under no obligation to do so, and the moving party shall not in any way be adversely prejudiced by electing not to commence arbitration. The arbitrator: (i) will hear and rule on appropriate dispositive motions for judgment on the pleadings, for failure to state a claim, or for full or partial summary judgment; (ii) will render a decision and any award applying applicable law; (iii) will give effect to any limitations period in determining any Dispute or defense; (iv) shall enforce the doctrines of compulsory counterclaim, res judicata, and collateral estoppel, if applicable; (v) with regard to motions and the arbitration hearing, shall apply rules of evidence governing civil cases; and (vi) will apply the law of the state specified in the agreement giving rise to the Dispute. Filing of a petition for arbitration shall not prevent any party from (i) seeking and obtaining from a court of competent jurisdiction (notwithstanding ongoing arbitration) provisional or ancillary remedies including but not limited to injunctive relief, property preservation orders, foreclosure, eviction, attachment, replevin, garnishment, and/or the appointment of a receiver, (ii) pursuing non-judicial foreclosure, or (iii) availing itself of any self-help remedies such as setoff and repossession. The exercise of such rights shall not constitute a waiver of the right to submit any Dispute to arbitration.

Judgment upon an arbitration award may be entered in any court having jurisdiction except that, if the arbitration award exceeds $4,000,000, any party shall be entitled to a de novo appeal of the award before a panel of three arbitrators. To allow for such appeal, if the award (including Administrator, arbitrator, and attorney's fees and costs) exceeds $4,000,000, the arbitrator will issue a written, reasoned decision supporting the award, including a statement of authority and its application to the Dispute. A request for de novo appeal must be filed with the arbitrator within 30 days following the date of the arbitrators' award; if such a request is not made within that time period, the arbitration decision shall become final and binding. On appeal, the arbitrators shall review the award de novo, meaning that they shall reach their own findings of fact and conclusions of law rather than deferring in any manner to the original arbitrator. Appeal of an arbitration award shall be pursuant to the rules of the Administrator or, if the Administrator has no such rules, then the JAMS arbitration appellate rules shall apply.

Arbitration under this provision concerns a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. This arbitration provision shall survive any termination, amendment, or expiration of this Agreement. If the terms of this provision vary from the Administrator's rules, this arbitration provision shall control.

(c) CLASS ACTION WAIVER. EACH PARTY WAIVES THE RIGHT TO LITIGATE IN COURT OR ARBITRATE ANY CLAIM OR DISPUTE AS A CLASS ACTION, EITHER AS A MEMBER OF A CLASS OR AS A REPRESENTATIVE, OR TO ACT AS A PRIVATE ATTORNEY GENERAL.

(d) Reliance. Each party (i) certifies that no one has represented to such party that the other party would not seek to enforce jury and class action waivers in the event of suit, and (ii) acknowledges that it and the other party have been induced to enter into this Note by, among other things, the mutual waivers, agreements, and certifications in this section.

15. USA Patriot Act Notification. Borrower agrees to provide evidence of the identity of Borrower that Lender may request from time to time to permit Lender to verify the identity of Borrower or to otherwise comply with applicable governmental laws and regulations, including without limitation Section 326 of the USA Patriot Act of 2001, 31 U.S.C. 5318.

16. ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

[The balance of this page is intentionally left blank.]

IN WITNESS WHEREOF, Borrower has executed this Note as of the date first above written.

BORROWER:

XELAN PROP 1, LLC, a California limited liability company

By: _____

ANNE KIHAGI, its managing member

Address:   P.O. BOX 691889
           LOS ANGELES, California 90069
Phone:     (323) 244-9178

164

## EXHIBIT "A"
## ADDITIONAL TERMS AND CONDITIONS

This Exhibit "A" is attached to and forms a part of that Promissory Note ("Note") executed by XELAN-PROP 1, LLC, a California limited liability company ("Borrower") in favor of STERLING SAVINGS BANK, a Washington banking corporation, d/b/a Sterling Bank ("Lender").

1.    **Disbursement of Loan Proceeds; Limitation of Liability.** Borrower hereby authorizes Lender to disburse the proceeds of the Loan, after deducting any and all fees owed by Borrower to Lender in connection with the Loan. With respect to such disbursement, Borrower understands and agrees that Lender does not accept responsibility for errors, acts or omissions of others, including, without limitation, the escrow company, other banks, communications carriers or clearinghouses through which the transfer of Loan proceeds may be made or through which Lender receives or transmits information, and no such entity shall be deemed Lender's agent. As a consequence, Lender shall not be liable to Borrower for any actual (whether direct or indirect), consequential or punitive damages, whether or not (a) any claim for such damages is based on tort or contract, or (b) either Lender or Borrower knew or should have known of the likelihood of such damages in any situation.

2.    **Financial Statements.**

2.1    **Statements Required.** During the term of the Loan or while any liabilities of Borrower to Lender under any of the Loan Documents remain outstanding and unless Lender otherwise consents in writing, Borrower shall provide to Lender, each in a form acceptable to Lender, the following:

(a)    **Rent Roll.** An annual "Rent Roll" (as defined below) not later than thirty (30) days after and as of the end of each fiscal year. For purposes of this provision, a "Rent Roll" shall mean a schedule which shall include without limitation the following lease information with regard to each tenant — the name of the tenant, unit number and unit type, any other income or reimbursement amounts, a description of the demised premises, occupancy percentage, monthly or other periodic rental amount, dates of commencement and expiration of the lease, and payment status — and which shall be certified by a principal, managing member or general partner of Borrower as being true, correct and complete.

(b)    **Property Operating Statement.** An annual "Property Operating Statement" (as defined below) not later than thirty (30) days after and as of the end of each fiscal year. For purposes of this provision, a "Property Operating Statement" shall mean an unaudited operating statement for the Property, which statement shall include a schedule showing all revenues and expenses relating to the Property during the period in question and for the year-to-date and shall be certified by a principal, managing member or general partner of Borrower as being true, correct and complete.

(c)    **Annual Financial Statement of Borrower and Guarantor(s).** Not later than thirty (30) days after and as of the end of each fiscal year, the following:

(i)    For Borrower — an annual balance sheet showing all assets and liabilities of Borrower, which shall be certified by a principal, managing member or general partner of Borrower as being true, correct and complete or, upon the reasonable request of Lender, audited by an independent certified public accountant (which audited statement shall be provided to Lender within ninety (90) days following such request by Lender).

(ii)    For Guarantor — an annual balance sheet showing all assets and liabilities (including a schedule of real estate owned) of each indemnitor and guarantor under any indemnity or guaranty which shall be certified by a principal, managing member or general partner of such indemnitor or guarantor as being true, correct and complete or, upon the reasonable request of Lender, audited by an independent certified public accountant (which audited statement shall be provided to Lender within ninety (90) days following such request by Lender).

---

Note – ALL                          EXHIBIT "A" – Page 1          4018-4022 19th Street (Loan No. 3720003627)
477042 (rev 03/13/13)

(d)    **Tax Return.** Not later than fifteen (15) days after the date of filing, copies of all tax returns filed by Borrower and any guarantor (provided, however, that in the event that Borrower and/or guarantor has filed a request for extension in connection with the filing of any tax return, Borrower and/or guarantor shall provide Lender with a copy of said extension no later than fifteen (15) days following the filing of said extension, with copies of said tax return to be provided to Lender within (15) days after the date of said extended filing).

(e)    **Other Information.** Upon the occurrence of a Default, such other information with regard to Borrower, principals of Borrower, guarantors or the Property in such form and within such time period(s) as Lender may reasonably request in writing; and

(f)    **Monthly Reporting.** Upon the occurrence of a Default, Lender may request monthly reporting of the Financial Statements described in this paragraph 2.1 on an as-needed basis.

(g)    **Failure to Timely Deliver Financial Statements.** Borrower and guarantor each acknowledge the importance to Lender of the timely delivery of each of the items required by Sections 2.1(a)(b)(c)(d) (each, a "**Required Financial Item**" and collectively, the "**Required Financial Items**"). In the event any reporting party fails to deliver to Lender any of the Required Financial Items within the time frame specified herein (each such event, a "**Reporting Failure**"), shall constitute a Default under the Loan Documents.

2.2    **Form; Warranty.** Borrower agrees that all financial statements to be delivered to Lender pursuant to the immediately preceding section shall: (a) be complete and correct; (b) present fairly the financial condition of the party; (c) disclose all liabilities that are required to be reflected or reserved against; and (d) be prepared in accordance with the same accounting standard used by Borrower to prepare the financial statements delivered to and approved by Lender in connection with the making of the Loan or other accounting standards acceptable to Lender. By delivering any such financial statement, Borrower shall be deemed to warrant and represent that, as of the date of delivery of any such financial statement, there has been no material adverse change in financial condition, nor have any assets or properties been sold, transferred, assigned, mortgaged, pledged or encumbered since the date of such financial statement except as disclosed by Borrower in a writing delivered to Lender. Borrower agrees that all leasing schedules and other information to be delivered to Lender pursuant to the immediately preceding section shall not contain any misrepresentation or omission of a material fact.

3.    **Impounds.** As required under **Exhibit "C"** attached hereto and incorporated herein by reference, Borrower shall provide those certain impounds and/or reserves in connection with the making and closing of the Loan.

4.    **Application of Payments from Rents and Leases.** All "Payments", as defined in the Deed of Trust, will be applied first to the Obligations and then to the payment of maintenance (including deferred maintenance), operating expenses, taxes, assessments, disbursements, and any other charges or expenses incurred in connection with the ownership, operation and maintenance of the Property.

5.    **Permitted Transfers.**

5.1    **Right of Transfer of Property.** Notwithstanding anything to the contrary contained in Section 5.14 of the Deed of Trust, Lender shall consent to the voluntary sale or exchange of all of the Property by "Trustor" (as defined in the Deed of Trust) to a *bona fide* third-party purchaser, without any modification of the terms of this Note or the other Loan Documents, upon satisfaction of all of the following conditions precedent prior to any permitted transfer:

(a)    Lender's reasonable determination that each proposed purchaser, each proposed guarantor, if any, and the Property all satisfy Lender's then applicable credit review and underwriting standards;

(b)    Lender's reasonable determination that each proposed purchaser possesses satisfactory recent experience in the ownership and operation of properties comparable to the Property;

(c)    the execution and delivery to Lender of such documents and instruments as Lender shall reasonably require, in form and content reasonably satisfactory to Lender, including, without limitation, (i) an assumption agreement under which the purchaser assumes all obligations and liabilities of Borrower under this Note and the other Loan Documents and agrees to periodically pay such new or additional impounds to Lender as Lender may reasonably require, and (ii) a consent to the transfer by any existing guarantor and a reaffirmation of such guarantor's obligations and liabilities under any guaranty made in connection with the Loan or a new guaranty executed by a new guarantor reasonably satisfactory to Lender;

(d)    if required by Lender, delivery to Lender of evidence of title insurance reasonably satisfactory to Lender insuring Lender that the lien of the Deed of Trust and the priority thereof will not be impaired or affected by reason of such transfer or exchange of the Property;

(e)    payment to Lender of an assumption fee equal to one percent (1%) of the then outstanding principal balance of this Note;

(f)    if required by Lender, deposit with Lender of any new or additional impounds;

(g)    reimbursement to Lender of any and all costs and expenses paid or incurred by Lender in connection with such transfer or exchange, including, without limitation, all in-house or outside counsel attorneys' fees, title insurance fees, appraisal fees, inspection fees and environmental consultant's fees; and

(h)    delivery to Lender of such other information, certificates, documents or instruments as Lender may reasonably require to effectuate said assumption (including without limitation any items required to satisfy any rating agency requirements imposed as a condition to said assumption, an updated appraisal or other evidence in form and substance satisfactory to Lender relating to the Property, and/or any opinion of counsel for Borrower in form and substance and delivered by counsel satisfactory to Lender relating to the effect of said assumption on the status of any "real estate mortgage investment conduit" (within the meaning of Section 860D of the Code) which holds the Loan).

Lender shall fully release Borrower (and each successor borrower approved under this Section 5.1) and any existing guarantor (and each successor guarantor approved under this Section 5.1) from any further obligation or liability to Lender under this Note and the other Loan Documents upon the assumption by the purchaser and any new guarantor of all such obligations and liabilities and the satisfaction of all other conditions precedent to each transfer or exchange in accordance with the provisions of this section.

5.2    Other Permitted Transfers.    Notwithstanding the foregoing, however, the following transfers shall be permitted (with, in the case of the transfers described in clauses (a) and (c), the prior written consent of Lender, such consent not be unreasonably withheld, conditioned or delayed):

(a)    the transfer of not more than 25% of the (i) limited partnership interests in any Borrower which is a limited partnership, (ii) membership interests in any Borrower which is a limited liability company [other than the membership interests in or of a member which is the manager or managing member of such Borrower, which shall not be transferable without the prior written consent of Lender, which may be withheld, conditioned or delayed by Lender in its sole and absolute discretion) or (iii) voting stock in any Borrower which is a corporation;

(b)    any involuntary transfer caused by the death of any general partner, shareholder, joint venturer or member of Borrower or any general partner or member of Borrower or beneficial owner of a trust; and

(c)      gifts for estate planning purposes of any individual's interests in Borrower or in any of Borrower's general partners, members or joint venturers to the spouse or any lineal descendant of such individual, or to a trust for the benefit of any one or more of such individual, spouse or lineal descendant; provided, however, that in each case described in clauses (a), (b) or (c) above, such transfer shall be permitted only so long as Borrower is reconstituted, if required, following such transfer and so long as those persons responsible for the management of the Property and Borrower remain unchanged following such gift or any replacement management is approved by Lender.

        5.3      **Sale or Participation of Loan.**  In addition to Lender's rights set forth in Section 6.21 of the Deed of Trust, following the Closing Date, Lender may sell, transfer or assign the Loan, interests in the Loan, issue securities backed by or evidencing ownership of the Loan and/or further tranche the Loan, bifurcate the Loan into two (2) or more components and/or separate notes and/or create a senior/subordinate note structure at anytime without Borrower's written consent.  Borrower and any guarantor (if applicable) will cooperate with any such transaction as may be reasonably requested by Lender.

6.      **Additional Loan Covenants.**  Borrower shall be in compliance with the following covenants:

        6.1      As of the Closing Date, the fair market value of the Property, as determined by an appraisal acceptable to Lender in its reasonable discretion, shall not exceed a "Loan-to-Value Ratio" (as defined below) of sixty-eight percent (68%).  For purposes of this provision, "Loan-to-Value Ratio" shall mean the outstanding principal balance of this Note divided by the then-current fair market value of the Property.

EXHIBIT "B"
## LOAN DOCUMENTS AND OTHER RELATED DOCUMENTS

This Exhibit "B" is attached to and forms a part of that Promissory Note ("Note") executed by XELAN PROP 1, LLC, a California limited liability company ("Borrower") in favor of STERLING SAVINGS BANK, a Washington banking corporation, d/b/a Sterling Bank ("Lender").

1.    **Loan Documents.** The documents checked below of even date herewith (unless otherwise specified) and any amendments, modifications and supplements thereto which have received the prior written approval of Lender and any documents executed in the future that are approved by Lender and that recite that they are "Loan Documents" for purposes of this Note are collectively referred to as the "Loan Documents".

[X]    This Note;
[X]    Deed of Trust;
[X]    Continuing Guaranty Agreement;
[ ]    Limited Recourse Carve-Out Guaranty;
[X]    Environmental Indemnity Agreement;
[X]    State(s) of CALIFORNIA Uniform Commercial Code(s) - Financing Statement - Form UCC-1;
[X]    Assignment of Agreements, Permits, Licenses and Approvals;
[ ]    Manager's Consent and Subordination of Management Agreement;
[X]    Limited Liability Company Borrowing Authorization;
[ ]    Partnership Borrowing Authorization;
[ ]    Corporate Borrowing Resolution;
[ ]    Limited Liability Company Guaranty Authorization;
[ ]    Partnership Guaranty Authorization;
[ ]    Corporate Guaranty Resolution;
[ ]    Trustee Certification;
[X]    Incumbency Certificate;
[X]    Closing Certificate;
[X]    Agreement to Disburse Prior to Recording;
[X]    Deposit Account and Security Agreement;
[ ]    Borrower's Counsel Opinion Letter;
[ ]    Tenant Estoppel Certificate(s) of various date(s);
[ ]    Subordination, Non-Disturbance and Attornment Agreement(s) of various date(s);
[ ]    Ground Lessor Consent and Estoppel;
[ ]    Flood Hazard Notice;
[ ]    Conditional Waiver and Release on Progress Payment;
[ ]    Unconditional Waiver and Release on Progress Payment;
[ ]    Conditional Waiver and Release on Final Payment;
[ ]    Unconditional Waiver and Release on Final Payment;
[X]    Verification of Customer Identity;
[X]    Service Contract for Real Property Taxes; and
[X]    Form W-9 (Request for Taxpayer Identification Number and Certification).
[ ]    N/A
[ ]    N/A
[ ]    N/A

## EXHIBIT "C"
## IMPOUND AND RESERVE PROVISIONS

This Exhibit "C" is attached to and forms a part of that Promissory Note ("Note") executed by XELAN PROP 1, LLC, a California limited liability company ("Borrower") in favor of STERLING SAVINGS BANK, a Washington banking corporation, d/b/a Sterling Bank ("Lender").

1.    **Impound and Reserve Provisions.**

   1.1    **Amounts.** Borrower shall deposit with Lender the amounts ("Impounds") stated below on the dates stated below, for the purpose of paying the costs stated below:

      (a)    **Taxes – Initial and Monthly Impounds.** Intentionally Omitted.

      (b)    **Insurance.** Intentionally Omitted.

      (c)    **Tenant Improvements; Leasing Commissions – Closing Deposit.** Intentionally Omitted.

      (d)    **Tenant Improvements; Leasing Commissions – Monthly Impounds.** Intentionally Omitted.

      (e)    **Repairs – Closing Deposit.** $36,750.00 on the Closing Date for any and all "Repair Work" (as defined in Exhibit "D" attached hereto).

      (f)    **Capital Improvements – Closing Deposit.** Intentionally Omitted.

      (g)    **Capital Improvements – Monthly Impounds.** Intentionally Omitted.

   1.2    **Application.**

      (a)    **Repair Work.** If no Default or event which, with the giving of notice or the passage of time, or both, would constitute a Default exists, Lender shall release the funds held by Lender as provided in Exhibit "D" attached hereto.

   1.3    **General.**

      (a)    **Excess or Insufficient Impounds.** Any portion of the Impounds that exceeds the amount required for payment of the foregoing costs shall be repaid to Borrower upon Borrower's compliance with the foregoing.  Reference is made to Section 6.11(b) of the Deed of Trust for a description of the account into which the Impounds shall be deposited and for a description of certain rights and remedies of Lender with respect to amounts in such account.  If, however, any Impounds shall not contain sufficient funds to pay the sums required when the same shall become due and payable, Borrower shall promptly deposit with Lender the full amount of any such deficiency.

      (b)    **Deposit of Impound Funds.** Any Impounds paid by Borrower hereunder shall not, unless otherwise explicitly required by applicable law, be or be deemed to be escrow or trust funds, but, at Lender's option and in Lender's discretion, may either be held in a separate account or be commingled by Lender with the general funds of Lender.  No interest on funds contained in any Impound shall be paid by Lender to Borrower.  The Impounds are solely for the protection of Lender and entail no responsibility on Lender's part beyond the application of said Impounds in accordance with the provisions of Section 1.2 above and beyond the allowing of due credit for the sums actually received.

(c)    <u>Assignment of Loan</u>.  Upon assignment of the Deed of Trust by Lender, any Impounds shall be turned over to the assignee and any responsibility of Lender, as assignor, with respect thereto shall terminate.

(d)    <u>No Cure; Application of Impounds After Default</u>.  No application of any Impound funds shall be deemed to cure any Default hereunder.  Following any Default under this Note, Lender may in its sole and absolute discretion, but shall not be obligated to, apply at any time the balance then remaining in the Impounds against the principal and interest or any other amounts due under the Loan Documents in whatever order Lender shall subjectively determine.

1.4    <u>Maintenance and Construction</u>.

(a)    <u>Repair Work</u>.  Borrower shall complete the lien-free performance of the Repair Work on or before sixty (60) days after the Closing Date.  Borrower shall perform the Repair Work in a workmanlike manner and in accordance with all applicable laws, ordinances, rules and regulations.

(b)    <u>Right of Inspection</u>.  Lender shall have the right to enter upon the Property at all reasonable times to inspect all work for the purpose of verifying information disclosed or required pursuant to this Note.  Notwithstanding the foregoing, Lender shall not be obligated to supervise or inspect any work or to inform Borrower or any third party regarding any aspect of any work.

EXHIBIT "D"

POST CLOSING REPAIR WORK

This Exhibit "D" is attached to and forms a part of that Promissory Note ("Note") executed by XELAN PROP 1, LLC, a California limited liability company ("Borrower") in favor of STERLING SAVINGS BANK, a Washington banking corporation, d/b/a Sterling Bank ("Lender").

1.    **Repair Work Impound and Reserve Provisions.**

   1.1    _Amounts._  Borrower shall deposit with Lender the amounts ("Impounds") stated below on the dates stated below, for the purpose of paying the costs stated below:

         (a)    _Repairs – Closing Deposit._  All "Repair Work" (as defined below).

   1.2    _Application._

         (a)    _Repair Work._  If no Default or event which, with the giving of notice or the passage of time, or both, would constitute a Default exists, Lender shall release the Impounds to Borrower once a calendar quarter to reimburse Borrower for the Repair Work stated above; provided, however, that Lender shall have received and approved each of the following:  (i) Borrower's written request for such release, describing the Repair Work and a cost breakdown thereof in reasonable detail, and certifying that all such Repair Work has been completed lien-free and in a workmanlike manner, and (ii) an inspection report signed by an inspector selected by Lender, whose fees and expenses shall be paid by Borrower, and such other evidence as Lender shall require, confirming Borrower's certification.

   1.3    _General._

         (a)    _Excess or Insufficient Impounds._  Any portion of the Impounds that exceeds the amount required for payment of the foregoing costs shall be repaid to Borrower upon Borrower's compliance with the foregoing.  Reference is made to Section 6.11(b) of the Deed of Trust for a description of the account into which the Impounds shall be deposited and for a description of certain rights and remedies of Lender with respect to amounts in such account.  If, however, any Impounds shall not contain sufficient funds to pay the sums required when the same shall become due and payable, Borrower shall promptly deposit with Lender the full amount of any such deficiency.

         (b)    _Deposit of Impound Funds._  Any Impounds paid by Borrower hereunder shall not, unless otherwise explicitly required by applicable law, be or be deemed to be escrow or trust funds, but, at Lender's option and in Lender's discretion, may either be held in a separate account or be commingled by Lender with the general funds of Lender.  No interest on funds contained in any Impound shall be paid by Lender to Borrower.  The Impounds are solely for the protection of Lender and entail no responsibility on Lender's part beyond the application of said Impounds in accordance with the provisions of Section 1.2 above and beyond the allowing of due credit for the sums actually received.

         (c)    _Assignment of Loan._  Upon assignment of the Deed of Trust by Lender, any Impounds shall be turned over to the assignee and any responsibility of Lender, as assignor, with respect thereto shall terminate.

         (d)    _No Cure; Application of Impounds After Default._  No application of any Impound funds shall be deemed to cure any Default hereunder.  Following any Default under this Note, Lender may in its sole and absolute discretion, but shall not be obligated to, apply at any time the balance then remaining in the Impounds against the principal and interest or any other amounts due under the Loan Documents in whatever order Lender shall subjectively determine.

**1.4    Maintenance and Construction.**

(a)    Repair Work.  Borrower shall complete the lien-free performance of the Repair Work on or before sixty (60) days after the Closing Date.  Borrower shall perform the Repair Work in a workmanlike manner and in accordance with all applicable laws, ordinances, rules and regulations.

**2.    Post-Closing Repair Work.**

The Property Condition Report received by Lender disclosed the following necessary repair ("Immediate Repair Work"):

1.    TITLE CLEARANCE OF ABATEMENT ORDER# 103154-A; COMPLAINT# 200867336

2.    REPLACE RETAINING WALL AT NORTH PROPERTY LINE INCLUDING FINAL INSPECTION APPROVAL

Lender has agreed to close the Loan notwithstanding the fact that the performance of the Repair Work has not been completed as of the date hereof, subject to the following terms and conditions (collectively, "Additional Conditions"):

(a).    Intentionally Omitted.

(b)    Borrower shall complete or cause to be completed the lien free performance of the Immediate Repair Work within sixty (60) days of the Closing Date.

(c)    Intentionally Omitted.

(d)    Borrower shall perform or cause to be performed any and all Repair Work in a workmanlike manner and in accordance with all applicable laws, ordinances, rules and regulations.

(e)    Borrower shall promptly provide Lender with:  (i) copies of all invoices for costs incurred for the performance of the Repair Work and either evidence that such costs have been paid in full or unconditional lien waivers for all labor performed and/or materials supplied in connection with the performance and completion of the Repair Work; and (ii) a certification from Borrower stating that the Repair Work has been completed lien free and in a workmanlike manner (including, without limitation, pictures of the completed Repair Work), and/or an inspection report signed by an inspector selected by Lender, whose fees and expenses shall be paid by Borrower, and such other evidence as Lender shall require, confirming Borrower's certification.

Lender shall have the right to conduct inspections of such Repair Work as provided herein to verify compliance with any of the Additional Conditions.  Borrower's failure to satisfy any one or more of the Additional Conditions set forth herein may, at Lender's election, constitute a Default under the Loan Documents.

**3.    Right of Inspection.**  Lender shall have the right to enter upon the Property at all reasonable times to inspect all work for the purpose of verifying information disclosed or required pursuant to this Note.  Notwithstanding the foregoing, Lender shall not be obligated to supervise or inspect any work or to inform Borrower or any third party regarding any aspect of any work.