1   JEFFER MANGELS BUTLER & MITCHELL LLP
    ROBERT B. KAPLAN, P.C. (Bar No. 76950)
2   *rbk@jmbm.com*
    Two Embarcadero Center, 5th Floor
3   San Francisco, California 94111-3813
    Telephone:    (415) 398-8080
4   Facsimile:    (415) 398-5584

5   JEFFER MANGELS BUTLER & MITCHELL LLP
    THOMAS M. GEHER (Bar No. 130588)
6   *tmg@jmbm.com*
    1900 Avenue of the Stars, 7th Floor
7   Los Angeles, California 90067-4308
    Telephone:    (310) 203-8080
8   Facsimile:    (310) 203-0567

9   Attorneys for UMPQUA BANK

10

11

12                  UNITED STATES BANKRUPTCY COURT

13                  CENTRAL DISTRICT OF CALIFORNIA

14                      LOS ANGELES DIVISION

15

16   In re                              Case No. 2:19-bk-14626-NB

17   XELAN PROP 1, LLC,                  Chapter 11

18            Debtors.                   **DECLARATION OF ROBERT B.
                                         KAPLAN IN SUPPORT OF MOTION TO
19                                       DISMISS CHAPTER 11 CASE WITH
                                         PREJUDICE [11 U.S.C. SECTION 1112(b)]**
20
                                         **VOLUME SIX**
21
                                         **EXHIBITS 14 - 16**
22
                                         Date:        April 30, 2019
23
                                         Time:        2:00 p.m.
24
                                         Place:       Courtroom 1545
25                                                    255 East Temple Street
                                                      Los Angeles, CA
26

27

28

# EXHIBIT 14

1 | David J. Pasternak, CSBN 72201
Blake C. Alsbrook, CSBN 262603
2 | PASTERNAK, PASTERNAK & ALSBROOK
A Law Corporation
3 | 1875 Century Park East, Suite 2200
Los Angeles, California 90067-2523
4 | Telephone:  310.553.1500
Facsimile:  310.553.1540
5 | Email:    djp@paslaw.com
Email:    bca@paslaw.com
6 |
Proposed Attorneys for Receiver
7 | Kevin Singer

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **COUNTY OF SAN FRANCISCO, CIVIC CENTER COURTHOUSE**

10 |

| | |
|---|---|
| 11  UMPQUA BANK, a state chartered bank, | Case No. CGC-18-564941 |
| 12  Plaintiff, | Hon. Charles F. Haines |
| 13  vs. | **RECEIVER KEVIN SINGER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER:** |
| 14  XELAN PROP 1, LLC, a California limited liability company; and Does 1-30, inclusive, | **1.  PROVIDING INSTRUCTIONS RE DEFENDANT XELAN PROP 1, LLC'S VIOLATION OF PRELIMINARY INJUNCTION;** |
| 15 | |
| 16  Defendants. | **2.  DETERMINING THAT COURT ORDERED SALE OF RECEIVERSHIP REAL PROPERTY HAS NOT BEEN STAYED BECAUSE NO SUPERSEDEAS BOND HAS BEEN POSTED; AND** |
| 17 | |
| 18 | |
| 19 | |
| 20 | **3.  AUTHORIZING RECEIVER TO RETAIN COUNSEL** |
| 21 | |
| 22 | **DECLARATIONS OF KEVIN SINGER, BLAKE C. ALSBROOK AND ROBERT B. KAPLAN; MEMORANDUM OF POINTS AND AUTHORITIES** |
| 23 | |
| 24 | DATE:  April 22, 2019 |
| 25 | TIME:  9:00 a.m. |
| 26 | DEPT:  501 |

27 |

28 |

PASTERNAK,
PASTERNAK
& ALSBROOK

RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC.

607

1      Receiver Kevin Singer ("Receiver") hereby applies, *ex parte*,

2  for the issuance of an Order:   (1) Providing Instructions Re

3  Defendant Xelan Prop 1, LLC's ("Xelan") Violation of This Court's

4  Preliminary Injunction; (2) Determining That Court Ordered Sale

5  Of Receivership Real Property Has Not Been Stayed Because No

6  Supersedeas Bond Has Been Posted; and (3) Authorizing the

7  Receiver to Retain Counsel.

8      On April 15, 2019, this Court issued an Order confirming the

9  Receiver's sale of the receivership real property located at

10  4018-4022 19th Street, San Francisco, CA ("**19th Street**").   Since

11  that hearing, in an effort to derail the sale ordered by this

12  Court, Xelan has blatantly violated a Preliminary Injunction by

13  encumbering 19th Street with a massive, $2.7 million loan.   Xelan

14  improperly recorded a deed of trust securing the loan against the

15  property without the Receiver or Court's knowledge or permission,

16  rendering title uninsurable.   Moreover, since this Court

17  confirmed the Receiver's sale, Xelan has (1) threatened the

18  Receiver's title insurance company and (2) served an incorrect

19  "Notice of Stay" on the Receiver.   The Receiver seeks an Order of

20  this Court providing for a sale of 19th Street free and clear of

21  the improper deed of trust and determining that Xelan must post a

22  supersedeas bond prior to any stay of the sale.   Moreover, in

23  order to address these complex legal issues here and in the Court

24  of Appeal, it is necessary for the Receiver to retain counsel.

25      This Application is made on an *ex parte* basis because

26  Xelan's interference – if not addressed by this Court immediately

27  – will derail the sale of the Receivership real property, **which**

28  **is scheduled to close on or before April 24, 2019.**   While the

PASTERNAK,
PASTERNAK
& ALSBROOK

{00215385.DOCX 75296.0009 }          2          CGC-18-564941

RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC.

608

1   Receiver reserves his right to bring to this Court's further

2   attention the full extent of Xelan's interference at a later

3   time, the instant application solely seeks to ensure that the

4   beneficial sale of 19th Street closes and is not lost.  As this

5   Court knows, the current sale is for an excellent price that was

6   the result of sustained marketing and significant overbidding at

7   the sale hearing, and if the sale – which is part of a 1031

8   deferred exchange for the Buyer – is lost, the Receivership

9   Estate will unquestionable be harmed.  While the Receiver

10  believes it is critical that the Court act now, if the Court

11  ultimately determines that additional time is needed for review

12  and/or briefing, the Receiver requests that a hearing be set as

13  quickly as possible.

14      Ex parte notice was provided to all parties and interested

15  parties prior to 10:00 a.m. on Friday April 19, 2019, as further

16  detailed in the Declaration of Blake C. Alsbrook below.  This Ex

17  Parte Application is based on the attached Declarations of Kevin

18  Singer, Blake C. Alsbrook, Robert B. Kaplan, and all exhibits

19  attached thereto; the attached Memorandum of Points and

20  Authorities; all other pleadings, records, and papers on file in

21  this matter; and such other oral and documentary evidence as the

22  Court may receive at the hearing of this Ex Parte Application.

23                      PASTERNAK, PASTERNAK & ALSBROOK
                        A Law Corporation
24

25
    DATED:  April 19, 2019
26                      _____
                        Blake C. Alsbrook
27                      Proposed Attorneys for Receiver
                        Kevin Singer
28

PASTERNAK,
PASTERNAK
& ALSBROOK

RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC

# DECLARATION
# OF
# KEVIN SINGER

## DECLARATION OF KEVIN SINGER

I, Kevin Singer, declare as follows:

1.    I am the Court appointed Receiver in the above-referenced matter.  If called upon to testify, I could and would competently do so as the matters hereinafter set forth are based on firsthand knowledge.

### Receivership Background

2.    There have been many proceedings and filings before this and other Courts concerning Kihagi's practices as a landlord in San Francisco, and the facts and circumstances in the present case are complex.  For purposes of this Ex Parte Application, therefore, I will limit discussion solely to matters directly relevant to the requested relief.  While it may be appropriate at a later time for me to apply for the issuance of an Order to Show Cause re Contempt, I am not currently seeking such relief because it is critically important that I attempt to complete the Court-ordered sale of the receivership real property located at 4018-4022 19th Street, San Francisco, CA ("**19th Street**").

3.    On or about April 6, 2018, this Court issued an Order Appointing Receiver; And Preliminary Injunction In Aid Of Receiver ("**Appointment Order**"), a true and correct copy of which is attached hereto as **Exhibit 1**.  Among other things, the Appointment Order directed me to take exclusive control over 19th Street to the exclusion of Defendant XELAN Prop 1, LLC ("**Xelan**").  Anne Kihagi ("**Kihagi**") is the managing member of Xelan, and prior to my appointment as Receiver acted as the landlord of 19th Street.

4.    Among other things, the Appointment Order specified that, if necessary, I had the "right to file an application with

PASTERNAK,
PASTERNAK
& ALSBROOK

{00215385.DOCX 75296.0009 }                    4                    CGC-18-564941
RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC

611

1   this Court for the sale of [19th Street], or any portion thereof,

2   on such terms as the Court may authorize." (Exhibit 1 at p. 7.)

3   The Appointment Order also contained a Preliminary Injunction to

4   aid in carrying out my duties, which provided that both Xelan and

5   its agents - including, most certainly, Kihagi - were barred from

6   interfering with my control over the Property and were similarly

7   barred from taking any acts to encumber the Property:

> 8    IT IS FURTHER ORDERED THAT [Xelan] and its agents,
>      employees, and representatives, and all persons or entities
> 9    acting under or in concert with [Xelan], are restrained and
>      enjoined from engaging in or performing, directly or
> 10   indirectly, any or all of the following acts:

11

> 12          . . .

> 13   4.   Transferring, conveying, assigning, pledging,
>      deeding, selling, renting, leasing, **encumbering**,
> 14   changing ownership of, besting of title to, or
>      otherwise disposing of [19th Street]." (Exhibit 1 at p.
> 15   9, emphasis added.)

16   5.   On or about October 12, 2018, after hearing Plaintiff

17   Umpqua Bank's (**"Bank"**) Motion, this Court determined that it was

18   appropriate for me to sell 19th Street, and entered an Order Re:

19   Granting Motion of [Bank] for Order: (1) Instructing and

20   Authorizing Receiver to Sell Real Property Assets of Receivership

21   Estate; and (2) Confirming Sale Procedures, a true and correct

22   copy of which is attached hereto as **Exhibit 2**, [omitting lengthy

23   attached proposed listing agreement].

24   6.   Pursuant to the terms of that Order, I actively and

25   extensively marketed 19th Street for sale over a number of months,

26   and ultimately entered into a purchase agreement to sell the

27   property to Kenneth and Brandon Kaplan (**"Buyer"**) for $3,650,000.

28   On or about February 28, 2019, Buyer waived all remaining

PASTERNAK,
PASTERNAK
& ALSBROOK

{00215365.DOCX 75296.0009 }            5            CGC-18-564941
RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC.
612

1    contingencies, but specified in an Addendum that their purchase of

2    19th Street was being made with 1031 exchange funds, and therefore

3    the sale would need to be completed within a specified timeframe,

4    a true and correct copy of which Contingency Removal and Addendum

5    is attached hereto as **Exhibit 3**.  I agreed to those terms of the

6    sale.  Based on the contract terms, if the sale is not closed on

7    or before April 24, 2019, Buyer may terminate the purchase

8    agreement because of the time restrictions involved with their

9    1031 exchange.

10        7.    The Bank thereafter filed a Motion seeking approval of

11    that sale and, on or about April 10, 2019, after significant

12    overbidding at the hearing, this Court approved the sale to Buyer

13    for $4,550,000.  The Court entered its order on April 15, 2019, a

14    true and correct copy of which Order is attached hereto as **Exhibit**

15    **4 ("Sale Order")**.

16    <u>**Xelan Has Secretly Secured A Massive Loan Against 19th Street In**</u>

17    <u>**Violation Of The Preliminary Injunction**</u>

18        8.    At the April 10, 2019 sale before this Court, I was

19    troubled to learn from the Bank's counsel that, without my

20    knowledge or authorization, on or about April 1, 2019, *Kihagi*

21    *signed a promissory note on behalf of Xelan in the amount of*

22    *$2,700,000, secured by a deed of trust that was then improperly*

23    *recorded against 19th Street on April 5, 2019* (hereafter referred

24    to as the **"Improper Loan"**).  A true and correct copy of the

25    improperly-recorded deed of trust is attached hereto as **Exhibit 5**,

26    and authenticated in the Declaration of Robert Kaplan below.

27

28

PASTERNAK,
PASTERNAK
& ALSBROOK

{00215385.DOCX 75296.0009 }                6                CGC-18-564941

RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC
613

9.   Xelan kept this Improper Loan secret from me, and this significant encumbrance must be paid in full or removed from title by order of this Court before any sale of 19th Street can close.

10.   As described further in the Declaration of Robert Kaplan filed herewith, the lenders who funded the Improper Loan have a long history with Kihagi, and are named Yu Sheng Victor Liu, Lin Dee Liu, Eric Liu, Xiang Liu, and Frank Chiou (**"Improper Lenders"**).

11.   After determining who the Improper Lenders were, on or about April 17, 2019, I instructed the title insurance company I am working with on the sale of 19th Street - Orange Coast Title - to immediately request a payoff demand from the Improper Lenders to determine the specifics of what was owing.  The following day, Richard Yaria of Orange Coast title sent an email to me and my proposed counsel informing me that the Improper Lenders were in possession of the payoff request, *but that the Improper Lenders were refusing to issue a payoff demand*.  A true and correct copy of the email from Richard Yaria is attached hereto as **Exhibit 6**.

12.   This refusal to provide a payoff demand is not surprising, however.  Given the Improper Lenders' relationship with Kihagi, I believe that they are refusing to provide a payoff and that they will refuse to reconvey the deed of trust in an attempt to make title uninsurable.  If a title insurance policy is not issued, the sale will be lost, which is exactly what Kihagi and Xelan want.

13.   As described further in the Declaration of Blake C. Alsbrook below, my proposed counsel has since contacted the escrow and title companies involved in the Improper Loan transaction –

PASTERNAK,
PASTERNAK
& ALSBROOK

{00215385.DOCX 75296.0009 }                    7                    CGC-18-564941

RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC 614

1  Wilshire Escrow and Stewart Title, respectively.  While Wilshire

2  Escrow has provided approximate amounts of the Improper Loan

3  proceeds distributed, it has refused to provide any documentation

4  regarding distribution of the Improper Loan proceeds.

5      14.  As further discussed in Mr. Alsbrook's Declaration, my

6  understanding of the current status of the $2.7 million loan funds

7  (that represent much of the equity in 19th Street) is as follows:

8          a.   Stewart Title holds approximately $1.8 million

9               (this amount was sent to Bank as a purported loan

10              payoff - when Bank learned that the purported

11              payoff was linked to this Improper Loan

12              transaction, Bank immediately returned the $1.8

13              million to Stewart Title);

14         b.   Wilshire Escrow currently holds $184,531.45;

15         c.   Kihagi currently holds $627,926.42, which she has

16              refused to return; and

17         d.   Approximately $90,000 is unaccounted for, and

18              Wilshire Escrow has refused to provide me with a

19              closing statement indicating where those funds

20              went.

21     15.  After discussing this matter with my title insurance

22  company, Orange Coast Title, I have determined that in order for

23  a title insurance policy to issue, it is necessary to dispose of

24  the Deed of Trust either by satisfying a payoff demand from the

25  Improper Lenders or obtaining an order from this Court

26  authorizing a sale free and clear of the deed of trust securing

27  the Improper Loan.

28

PASTERNAK,
PASTERNAK
& ALSBROOK

{00215385.DOCX 75296.0009 }            8                CGC-18-564941
RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC
615

1    16.  As explained further in the Declaration of Blake

2  Alsbrook below, Kihagi's associates – the Improper Lenders – have

3  now refused to provide a payoff demand for the Improper Loan, and

4  Wilshire Escrow is refusing to provide documentation regarding

5  distribution of the loan proceeds without Kihagi's approval.

6  Under current circumstances, I believe the only option available

7  to timely complete the sale is for this Court to issue an Order

8  that the sale be closed free and clear of the improper deed of

9  trust.  By way of such an order, the sale can close, the deed of

10  trust securing the Improper Loan will attach to the net sale

11  proceeds, and this Court can then make a determination regarding

12  whether and how that Improper Loan should be paid at a later

13  hearing.

14    17.  On or about April 18, 2019, I received an email from

15  Teresa Litt of Select Mortgage, and learned that Select Mortgage

16  is making a claim in the amount of $87,265.64 against the

17  Receivership Estate based on **yet another** improper attempt by

18  Kihagi, on behalf of Xelan, to secure a loan without reaching an

19  agreement with me or the Bank.  A true and correct copy of that

20  email is attached hereto as **Exhibit 7**. Thankfully, the escrow and

21  title companies involved in that loan transaction contacted the

22  Bank as required by the terms of the Deed of Trust, and this

23  proposed loan was never made.

24  **Xelan Has Repeatedly Threatened My Title Insurer**

25    18.  On or about April 18, 2019, my proposed counsel and I

26  learned from Steve Fernando, the Title Officer for the 19th Street

27  transaction, that Kihagi, acting on behalf of Xelan, has been

28  repeatedly threatening Orange Coast Title regarding this

PASTERNAK,
PASTERNAK
& ALSBROOK

{00215385.DOCX 75296.0009 }                9                CGC-18-564941

RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC.
616

1 | transaction and with respect to the sale of the receivership
2 | property located at 1022 Filbert Street that this Court previously
3 | authorized me to sell.

4 |     19.   Later that day, Mr. Fernando forwarded me a copy of an
5 | email sent by Kihagi on April 17, 2019, threatening to sue Orange
6 | Coast title if it closed the sale of 19th Street, a true and
7 | correct copy of which email is attached hereto as **Exhibit 8.**

8 |     20.   This interference by Xelan must be stopped because no
9 | sale will close without a title insurance policy, and Kihagi's
10 | threats amount to direct interference in violation of this Court's
11 | Preliminary Injunction.

12 | **Kihagi Has Improperly Filed A Purported "Notice of Stay"**

13 |     21.   On or about April 15, 2019, Xelan served me with a
14 | Notice of Appeal for the Sale Order of 19th Street as well as an
15 | improper "Notice of Stay," true and correct copies of which are
16 | attached hereto as **Exhibit 9.**   It is unclear whether this
17 | purported Notice of Stay has been filed with the Court, as it does
18 | not currently appear on the docket.

19 |     22.   This Notice of Stay is plainly another attempt by
20 | Xelan/Kihagi to derail the sale of 19th Street.   The current Notice
21 | of Stay argues that an automatic stay of the sale arose upon
22 | Xelan's filing of a Notice of Appeal.   Amazingly, just a month
23 | ago, Xelan itself argued the opposite:   that there was no
24 | automatic stay of a receiver's sale prior to the defendant seeking
25 | and posting a supersedeas bond.

26 |     23.   Specifically, on March 14, 2019, Xelan filed an Ex Parte
27 | Application (1) For an Order Setting the Amount of a Bond to Stay
28 | Sale of Filbert Street Property Pending Appeal, etc., a true and

PASTERNAK,
PASTERNAK
& ALSBROOK

{00215385.DOCX 75296.0009 }                    10                    CGC-18-564941
RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC
617

correct copy of which ex parte application is attached hereto as

Exhibit 10.  In its Ex Parte Application, ***Xelan specifically***

***argued that there was no stay of the Court-ordered sale of the***

***Filbert Street property,*** because

> A judgment or order directing the sale, conveyance or
> delivery of possession of real property is stayed on
> appeal only by posting a bond or undertaking.  Security
> is required whether the judgment or order is directed
> to appellant or another party.  (Exhibit 9 at p. 3.)

This Court ultimately denied Xelan's ex parte application, and the

sale was therefore able to close.

24.  This sudden change in position by Xelan/Kihagi is

problematic because it signals costly litigation to my title

insurance company even though there is no merit to Xelan's "Notice

of Stay".  As set forth in the Memorandum of Points and

Authorities herein, Xelan's argument last month was correct:  a

supersedeas bond must be posted prior to any stay of the pending

sale. Despite that, as this Court and Kihagi are certainly aware,

title insurance companies are undoubtedly highly sensitive to

threats of litigation, and for good reason.

25.  I therefore seek the issuance of an ex parte Order of

this Court finding that there is no stay of the sale until a

supersedeas bond is posted by Xelan, whose responsibility it is to

request such a bond.

**Request to Retain Counsel**

26.  As should be clear to this Court, there are a

significant number of complex legal issues in this case at both

the trial court and appellate levels. As a non-attorney, I require

experienced receivership counsel in order to protect the interests

PASTERNAK
PASTERNAK
& ALSBROOK

{00215385.DOCX 75296.0009 }                    11                    CGC-18-564941
RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC    618

1 | of the Receivership Estate and to assist me in negotiating what
2 | appears to be a treacherous landscape ahead.
3 |     27.   I am seeking to retain Pasternak, Pasternak & Alsbrook,
4 | A Law Corporation ("PPA") because Blake Alsbrook and David
5 | Pasternak are known experts in receivership law and specifically
6 | in issues pertaining to receiver's sales and appeals thereon, as
7 | further explained in the Declaration of Blake C. Alsbrook below.
8 | They have represented me in prior complex receiverships.

9 | **Ex Parte Urgency**

10 |     28.   As set forth above, my contractual agreement with the
11 | Buyer specifies that the sale close on or before April 24, 2019.
12 | While it is not guaranteed that Buyer will immediately cancel the
13 | sale after April 24th, there is a grave danger of that occurring.
14 | If the sale is lost - as I fear it will be as a result of Buyer's
15 | strict timing requirements related to its 1031 exchange - the
16 | Receivership Estate will lose an excellent sale approved by this
17 | Court after significant marketing and overbidding at hearing, and
18 | will unquestionably be significantly harmed.

19 |     29.   I did not have time to file this matter for hearing as a
20 | noticed motion because (1) I only received Xelan's improper
21 | "Notice of Stay" on April 15, 2019; (2) I only learned about the
22 | Improper Lenders' and Xelan's refusal to cooperate on April 19,
23 | 2019; and (3) after learning of the above-described improprieties
24 | I immediately took action to contact my proposed law firm, PPA, on
25 | Tuesday, April 16, 2019, and they thereafter immediately took
26 | action to prepare this ex parte application.

27 | ///

28 | ///

PASTERNAK,
PASTERNAK
& ALSBROOK

{00215385.DOCX 75296.0009 }                12                CGC-18-564941
RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC
619

## Conclusion

30.  I am submitting a Proposed Order to this Court that would allow the sale of 19th Street free and clear of the deed of trust recorded to secure the Improper Loan, that would determine that a supersedeas bond must be posted prior to any stay of the pending sale, and authorizing me to retain counsel.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on April 19, 2019, at Los Angeles, California.

Kevin Singer

RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC.

# DECLARATION
# OF
# BLAKE C. ALSBROK

1

## DECLARATION OF BLAKE C. ALSBROOK

2      I, BLAKE C. ALSBROOK, declare:

3      1.    I am an attorney admitted to practice before all the

4    courts of California.

5      2.    I have personal knowledge of the facts contained in

6    this declaration, and if called as a witness herein, I could and

7    would competently testify thereto.  I am a shareholder of the law

8    firm Pasternak, Pasternak & Alsbrook, A Law Corporation ("PPA"),

9    which law firm is proposed legal counsel for Receiver Kevin

10   Singer ("Receiver") in this matter, and was first contacted by

11   the Receiver on Tuesday, April 16, 2019.

12   <u>Xelan/Kihagi's Interference with Receiver</u>

13     3.    On or about Thursday, April 18, 2019, I spoke with Eric

14   Moore, Title Officer for Stewart Title, who provided a policy of

15   title insurance for the Improper Loan described in the Receiver's

16   Declaration above.  Mr. Moore informed me that Stewart Title is

17   currently holding approximately $1.8 million dollars of proceeds

18   from the Improper Loan that was returned by the Bank based on an

19   improper payoff amount, as further specified in the Declaration

20   of Robert Kaplan below.

21     4.    On or about Thursday, April 18, 2019, I spoke with

22   Scott Whitman - counsel for Wilshire Escrow - which entity

23   provided escrow services to Xelan for the Improper Loan

24   transaction.  Mr. Whitman informed me of the following facts

25   regarding the proceeds of the Improper Loan:

26          a.    Stewart Title retains $1.8 million;

27          b.    $627,926.42 was disbursed to Kihagi, which she has

28                refused to return;

{00215385.DOCX 75296.0009 }                    14                    CGC-18-564941

RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC.

622

1        c.    $184,531.45 is held by Wilshire Escrow;

2        d.    Approximately $90,000 is unaccounted for.

3      5.   I immediately demanded that Wilshire Escrow provide an

4 estimated closing statement or other documentation regarding

5 where the loan proceeds had been disbursed, **but Mr. Whitman**

6 **refused to provide any documentation to the Receiver on the basis**

7 **that he did not have Kihagi's approval.**

8      6.   On or about April 19, 2019, I made a telephone call to

9 the contact for the Improper Lenders – Lin Dee Liu – gave her

10 notice of this hearing, and then demanded that the Improper

11 Lenders provide a payoff demand to the Receiver's title insurance

12 company.  I specifically told Ms. Liu that the Improper Loan had

13 been secured in contravention of this Court's Orders, and that

14 the matter would be brought to the Court's attention.  I stated

15 that, based on the information provided in Mr. Kaplan's

16 Declaration below, it was my understanding that the Improper

17 Lenders and Kihagi have a long-standing relationship, and that

18 while I was unaware of whether the Improper Lenders knew that the

19 Court had specifically barred the encumbrance of 19th Street, the

20 Improper Loan transaction was troubling.  **Ms. Liu refused to**

21 **provide a payoff demand, stating that she believed there was**

22 **ongoing mediation and/or that she had 21 days to provide such a**

23 **demand.**  I told Ms. Liu that the Receiver was immediately

24 demanding that the Improper Lenders provide a payoff demand, and

25 sent a follow-up email with that request.

26     7.   Ms. Liu responded to me by email later that morning,

27 stating that she could not provide a "full reconveyance" because

28 one of the beneficiaries was in China.  I explained that I had

PASTERNAK,
PASTERNAK
& ALSBROOK

{00215385.DOCX 75296.0009 }       15       CGC-18-564941

RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC.

623

1 | not asked for a full reconveyance, but rather a payoff demand

2 | stating the money claimed to be owed by the Improper Lenders.  A

3 | true and correct copy of the email chain is attached hereto as

4 | **Exhibit 11.**

5 |     8.   On or about April 19, 2019, I made a telephone call to

6 | and sent an email to Xelan's counsel, Kevin Brodehl, informing

7 | him of this hearing and inquiring whether his client would

8 | voluntarily return the Improper Loan proceeds that it/she has

9 | withheld.  A true and correct copy of that email is attached

10 | hereto as **Exhibit 12.**  Mr. Brodehl did not respond to my

11 | question.

12 | **Receiver's Authorization to Retain Counsel**

13 |     9.   California Rule of Court 3.1180 requires that, prior to

14 | retaining counsel, the Receiver make a written request to the

15 | Court including the following information:

16 |      a.   Necessity for Employment:  Based on my case review

17 | over the past several days, it is immediately apparent that there

18 | are a significant number of complex legal issues facing the

19 | Receiver at both the trial and appellate level in this matter,

20 | and that it is necessary for the Receiver to retain counsel with

21 | experience in receivership law to assist him as a non-attorney.

22 | The Receiver must act as a neutral in this matter, and the

23 | interests of the Receiver and this Court must be represented

24 | separately from any party.

25 |      b.   As noted above, PPA is the law firm being proposed

26 | for retention by the Receiver.  My partner David Pasternak and I

27 | are proposed to be the attorneys who counsel and represent the

28 | Receiver.  My current billing rate is $475 per hour and Mr.

PASTERNAK,
PASTERNAK
& ALSBROOK

{00215385.DOCX 75296.0009 }        16        CGC-18-564941

RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC

624

1   Pasternak's billing rate is $595 per hour.  Both Mr. Pasternak

2   and I specialize in receivership law, and are incredibly

3   experienced with issues pertaining to receiver's sales and

4   appeals therefrom.  We are both Board Members of the California

5   Receivers Forum and regularly lecture and write articles

6   pertaining to receivership law.  Among other things, Mr.

7   Pasternak and I have successfully prosecuted a number of contempt

8   proceedings for violation of receivership orders.  True and

9   correct copies of our professional biographies/resumes are

10  collectively attached hereto as **Exhibit 13**.

11          c.    PPA is not counsel for, nor is it associated with,

12  any party to this action.

13  **Ex Parte Notice**

14          10.   I have provided ex parte notice to all parties in this

15  matter by telephone, informing them that I will be appearing at

16  the San Francisco Superior Court located at 400 McAllister

17  Street, San Francisco, CA 94102 at 9:00 a.m. on Monday, April 22,

18  2019 for the hearing of the Receiver's ex parte application for

19  the issuance of an Order:   (1) Providing Instructions re

20  Defendant Xelan and Kihagi's Violation of Preliminary Injunction;

21  (2) Fixing Amount of Supersedeas Bond for any Party Wishing to

22  Stay Sale of Receivership Real Property on Appeal; and (3)

23  Authorizing Receiver to Retain Counsel, as follows:

24          a.    On Friday, April 18, 2019, at 9:120 a.m., I

25  personally spoke with Robert Kaplan, counsel for Plaintiff Umpqua

26  Bank and informed him of the information above regarding the

27  hearing;

28

PASTERNAK,
PASTERNAK
& ALSBROOK

{00215385.DOCX 75296.0009 }              17              CGC-18-564941

1      b. On Thursday, April 18, 2019, I personally spoke

2    with Scott Whitman, counsel for Wilshire Escrow, and informed him

3    of the information above regarding the hearing;

4      c. On Thursday, April 18, 2019, I personally spoke

5    with Eric Moore, Title Officer for Stewart Title, and informed

6    him of the information above regarding the hearing.  Mr. Moore

7    informed me that Stewart Title has not retained counsel yet

8    regarding this matter because they have not received a claim;

9      d. On Friday, April 19, 2019, at 9:06 a.m., I

10    personally spoke with Lin Dee Liu, representative for the

11    Improper Lenders, and informed her of the information above

12    regarding the hearing;

13      e. On Friday, April 19, 2019 at 9:06 a.m. I made a

14    telephone call to Kevin Brodehl, counsel for Defendant Xelan Prop

15    1, LLC, and was informed by the receptionist that Mr. Brodehl was

16    busy, so I left a voicemail providing the information regarding

17    the ex parte haring as specified above regarding the hearing.  I

18    thereafter sent Mr. Brodehl an email referenced above [Exhibit

19    12], providing notice of the ex parte.

20     11.  I expect Defendant to oppose this ex parte application.

21     I declare under penalty of perjury under the laws of the

22    State of California that the foregoing is true and correct and

23    that this Declaration was executed on April 19, 2019, at Los

24    Angeles, California.

25

26    

27          Blake C. Alsbrook

28

PASTERNAK,
PASTERNAK
& ALSBROOK

{00215385.DOCX 75296.0009 }   18   CGC-18-564941

RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC.

626

# *DECLARATION*
# *OF*
# *ROBERT B. KAPLAN*

1                    <u>DECLARATION OF ROBERT B. KAPLAN</u>

2        I, Robert B. Kaplan, declare:

3        1.    I am an attorney at law duly licensed to practice law

4    before all of the courts of the State of California and am a

5    partner with Jeffer Mangels Butler & Mitchell LLP ("JMBM"),

6    attorneys of record for Plaintiff Umpqua Bank ("Bank"), in the

7    above-entitled action.    If called upon to testify to the matters

8    set forth in this declaration, I could and would competently

9    testify thereto as the facts herein set forth are personally

10   known to me to be true.

11   <u>THE RECORDING OF THE DEED OF TRUST IN VIOLATION OF THE</u>

12   <u>PRELIMINARY INJUNCTION</u>

13       2.    Attached hereto as **Exhibit 14** is a true and correct

14   copy of the Reply Declaration of Beverly Tengco filed in Support

15   of Motion of Umpqua Bank for (1) Instructing Receiver to Sell

16   Real Property Asset of Receivership Estate; and (2) Confirming

17   Sale of Real Property [4018-4022 19th Street, San Francisco, CA]

18   ("Tengco Reply Decl."), which sets forth the events which

19   occurred during the morning of April 8, 2019, when the Bank

20   received an unsolicited wire from Stewart Title Company of

21   California in the amount of $1,834,270.48 even though the Bank

22   had never submitted a demand for payment to Stewart Title Company

23   of California for the outstanding obligations owed by Xelan to

24   the Bank, repayment of which is secured by the 19th Street

25   property.    As indicated in the Tengco Reply Decl., the Bank had

26   previously received a demand from North American Title Company

27   requesting the Bank submit a demand into escrow of the 19th

28   Street Property owned by XELAN and never had any contact

PASTERNAK,
PASTERNAK
& ALSBROOK

{00215385.DOCX 75296.0009 }                    19                    CGC-18-564941

1  whatsoever with Stewart Title Company prior to receiving the

2  unsolicited wire on April 8, 2019.

3      3.    The Tengco Reply Decl. states that since the Bank had

4  not submitted a demand for payment to Stewart Title Company of

5  California, Inc. for payment of its loan,  repayment which was

6  secured by 19th Street, and the money wired by Stewart Title

7  Company of California to the Bank was insufficient to pay the

8  outstanding obligations owed to the Bank, the Bank returned the

9  wire it received from Stewart Title Company of California, Inc.

10 on April 8, 2019.

11     4.    As set forth in the Receiver's Declaration above, the

12 Appointment Order [Exhibit 1] specifically barred Xelan and its

13 agents from encumbering 19th Street.  Noting this, at the hearing

14 on the Bank's sale motion for 19th Street, a true and correct copy

15 of the transcript of which is attached hereto as **Exhibit 15**, The

16 Honorable Charles Haines, Judge Presiding, stated on page 5,

17 lines 20-21:

18      THE COURT:  "Wasn't there an injunction saying they couldn't

19      encumber the property?"

20     5.    On April 10, 2019, prior to the hearing on the 19th

21 Street Sale Motion, the Bank caused to be conducted through

22 CRiis.com a search of the records of the San Francisco County

23 Recorder's Office and ascertained that a document entitled Deed

24 of Trust was recorded on April 5, 2019 as Document No. K751370-

25 01.  Subsequently, on April 11, 2019, JMBM obtained from the San

26 Francisco County Recorder's Office a certified copy of the Deed

27 of Trust referenced on the CRiis.com report, a true and correct

28 copy of which is attached hereto as **Exhibit 5**, which stated that

PASTERNAK,
PASTERNAK
& ALSBROOK

[00215385.DOCX 75296.0009 ]                    20                    CGC-18-564941

RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC.629

1   it was recorded on April 5, 2019 with XELAN as trustor, County

2   Records Research, as trustee, in favor of the Improper Lenders

3   (Yu Sheng Victor Liu and Lin Dee Liu, Eric Liu, Xiangu Liu, and

4   Frank Chiou, as beneficiary,) in the amount of $2,700,000 (the

5   **"Liu Deed of Trust"**).

6        6.    On April 15, 2019, I prepared and sent a letter to

7   XELAN's two attorneys of record in this action, a true and

8   correct copy of which is attached hereto as **Exhibit 16**, demanding

9   that the Liu Deed of Trust be reconveyed on the grounds that it

10  violated the preliminary injunction set forth in the Appointment

11  Order.   To date, I have not received any response to my letter to

12  XELAN's two attorneys of record sent on April 15, 2019.

13  **RELATIONSHIP BETWEEN LIU FAMILY AND ANNE KIHAGI**

14       7.    Attached hereto as **Exhibit 17** is a true and correct

15  copy of a Statement of Information for the limited liability

16  company known as Nivo 1 LLC filed on January 22, 2016 with the

17  California Secretary of State which I obtained from the

18  California Secretary of State's office by accessing its website

19  on April 18, 2019 at 3:00 p.m.   This Declarant respectfully

20  directs the Court's attention to the fact that the Statement of

21  Information states that Anne Kihagi is a manager of Nivo 1 LLC.

22       8.    Attached hereto as **Exhibit 18** is a true and correct

23  copy of a Statement of Information filed on June 20, 2016 for the

24  limited liability company known as Zoriall, LLC filed on June 20,

25  2016 with the California Secretary of State, which I obtained

26  from the California Secretary of State's office by accessing its

27  website on April 18, 2019 at 3:00 p.m.   This Declarant

28  respectfully directs the Court's attention to the fact that the

PASTERNAK
PASTERNAK
& ALSBROOK

{00215385.DOCX 75296.0009 }                21                CGC-18-564941

RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC.

1  Statement of Information states that Anne Kihagi is a manager of

2  Zoriall, LLC.

3      9.   Attached hereto as **Exhibit 19** is a true and correct

4  copy of a Statement of Information filed on July 10, 2015 with

5  the California Secretary of State for the limited liability

6  company known as D.A. Bec 007, LLC, which I obtained from the

7  California Secretary of State's office by accessing its website

8  on April 18, 2019 at 3:00 p.m.   This Declarant respectfully

9  directs the Court's attention to the fact that the Statement of

10  Information states that Anne Kihagi is a manager of D.A. Beec

11  007, LLC.

12      10.   This Declarant respectfully requests that the Court

13  take judicial notice of the Statements of Information attached

14  hereto as **Exhibits 17, 18, and 19** pursuant to Evidence Code §

15  452(c) and People v. Castillo (2010) 49 Cal.4th 145, 157.

16      11.   The Bank also requests that the Court take judicial

17  notice of the following pursuant to Evidence Code § 452(c) and

18  (h) and Fontnot v. Wells Fargo Bank, N.A. (2011) 198 Cal.App.4th

19  256, 264-265:

20      (a) Deed of Trust and Assignment of Rent recorded on January

21  31, 2018 in the Official Records of the Los Angeles County

22  Recorder's Office as Document No. 20180101957, executed by Nivo i

23  LLC and 1263 North Crescent LLC, as trustor, in favor of Yu Sheng

24  Victor Liu and Xiang Liu, as beneficiary, securing repayment of

25  an $800,000 Promissory Note dated January 29, 2019, a true and

26  correct of which is attached hereto as **Exhibit 20**;

27      (b) Deed of Trust and Assignment of Rent recorded on January

28  24, 2019 in the Official Records of the Los Angeles County

PASTERNAK,
PASTERNAK
& ALSBROOK

{00215385.DOCX 75296.0009 }                22                CGC-18-564941
RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC 631

1  Recorder's Office as Document No. 20180077721, executed by D.A.

2  Beec-007 LLC, as trustor, in favor of Eric Liu and Building Farms

3  Foundation, as beneficiary, securing repayment of $1,000,000

4  Promissory Note dated January 19, 2018, a true and correct of

5  which is attached hereto as **Exhibit 21**;

6       (c) Deed of Trust and Assignment of Rent recorded on May 8,

7  2018 recorded in the Official Records of the Los Angeles County

8  Recorder's Office as Document No. 20180452320, executed by D.A.

9  Beec-007 LLC and Nivo 1 LLC, as trustor, in favor of Yu Sheng

10  Victor Liu and Xiang Liu, as beneficiary, securing repayment of a

11  $1,500,000 Promissory Note dated May 7, 2018, a true and correct

12  of which is attached hereto as **Exhibit 22**; and

13       (d) Assignment of Deed of Trust and Other Loan Documents

14  recorded on May 25, 2018 in the Official Records of the San

15  Francisco County Recorder's Office as Document No. DOC-2018-

16  K619494-00 executed by Opus Bank, as assignor, in favor of Lin

17  Dee Liu, as assignee, with respect to that certain Deed of Trust,

18  Assignment of Rents, Security Agreement and Fixture Filing

19  executed by Zoriall LLC, as trustor, in favor of Opus Bank dated

20  as of July 21, 2014 and recorded on July 25, 2014, a true and

21  correct of which is attached hereto as **Exhibit 23**.

22       I declare under penalty of perjury under the laws of the

23  State of California the foregoing is true and correct.

24

25  DATED:  April 19, 2019

26                              ROBERT B. KAPLAN, Declarant

27

28

{00215385.DOCX 75296.0009 }                    23                    CGC-18-564941

RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC.

# Memorandum
## of
# Points & Authorities

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

I.

**THIS COURT SHOULD AUTHORIZE THE SALE OF 19TH STREET TO CLOSE FREE AND CLEAR OF THE FRAUDULENTLY-OBTAINED DEED OF TRUST**

Receivership courts, sitting in equity, have extraordinarily broad discretion to order their receivers to take necessary action based on the circumstances of the case.  (*City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 931-32 [California Supreme Court affirmed Receivership Court order authorizing Receiver to demolish, rather than repair, substandard structure because it was more economical].)  Generally speaking, therefore, a receiver's powers in any action are governed solely by statute, the appointment order, and the receivership court's subsequent orders.  (*Cal-American Income Property Fund VII v. Brown Development Corp.* (1982) 138 Cal.App.3d 268, 273.)  Based on these broad equitable notions,  receivership courts have long enjoyed the power to authorize sales of receivership real property free and clear of liens.  (*See, e.g., First National Bank of Cleveland v. Shedd* (1887) 121 U.S. 74; *Van Huffel v. Harkelrode* (1931) 284 U.S. 225, 227-228; *see also City of Sierra Madre v. SunTrust Mortgage, Inc.* (2019) 32 Cal.App.5th 648, 658, *review filed (Apr. 5, 2019)* [within receivership court's discretion to subordinate first priority deed of trust].)

The Receiver believes that the only available option by which to avoid losing the pending sale of 19th Street is for this Court to authorize that sale free and clear of the deed of trust recorded by the Improper Lenders.  As set forth above, Xelan has refused to return the Improper Loan proceeds distributed to it,

1  the Improper Lenders have refused to provide a payoff demand to

2  the Receiver, and Wilshire Escrow has refused to provide the

3  Receiver with documentation regarding the payment of Improper

4  Loan proceeds to other creditors of title.  These acts make it

5  impossible for the Receiver to close the sale.

6       Under present circumstances, the best possible outcome for

7  all interested parties is for the sale to close, resulting in the

8  payment of significant funds into the Receivership Estate, after

9  which the Improper Lenders' deed of trust will attach to those

10 sale proceeds.  As detailed in the Receiver, Mr. Alsbrook, and

11 Mr. Kaplan's Declarations, the actions of Xelan and company have

12 been specifically designed to derail this sale, and should not be

13 tolerated by the Court.  If the sale of 19th Street does not close

14 on April 24th, the contract terms with the Buyer will have been

15 violated, and there is a significant potential that the sale will

16 be lost because of the time parameters of Buyer's 1031 exchange.

17                             II.

18 **A SUPERSEDEAS BOND MUST BE REQUESTED BY XELAN AND POSTED PRIOR TO
   ANY STAY OF THE 19TH STREET SALE**

19

20                             A.

21 **California Law Mandates That A Supersedeas Bond Be Posted To Stay
   A Receiver's Sale**

22

23      As Xelan correctly argued in its ex parte application last

24 month [see Exhibit 10], California law mandates that a

25 supersedeas  bond or undertaking must be posted if any party

26 wishes to stay a court-ordered sale of real property:  "A

27 judgment or order directing the *sale, conveyance or delivery of*

28 *possession of real property* is stayed on appeal only by posting a

PASTERNAK,
PASTERNAK
& ALSBROOK
{00215385.DOCX 75296.0009 }           25                    CGC-18-564941
RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC.
635

1  bond or undertaking." (Rutter Group, Cal. Prac. Guide Civ. App. &

2  Writs (2013), §7:142, emphasis in original [citing CCP § 917.4;

3  *First Fed'l Bank of Calif. v. Fegen* (2005) 131 Cal.App.4th 798,

4  800; *Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964,

5  988].)

6      Indeed, in 2014, the Fourth District Court of Appeal made

7  clear that a receiver's sale of real property is not stayed until

8  a supersedeas bond is posted:

9      **Here [the defendant property owner's] failure to post**
       **an undertaking on appeal left the trial court free to**
10     **grant the receiver's application for an order to sell**
       **the property, and the receiver proceeded to sell it to**
11     **a purchaser. Because there is no relief we can grant,**
       **the appeal . . . is moot.**
12

13  (*City of Riverside v. Horspool* (2014) 223 Cal.App.4th 670, 681-

14  683.)

15      It is the Appellant's responsibility to apply to the trial

16  court to set the amount of such a supersdeas bond absent a

17  stipulation with the respondent. (Rutter Group, Cal. Prac. Guide

18  Civ. App. & Writs (2018) at §§7:174-7:176 ["If the applicable

19  statute requires the amount of the bond or undertaking to be set

20  by the trial court, appellant [] must file a *motion* in the trial

21  court *to fix the amount*" absent stipulation from respondent as to

22  amount," citing *McClintock v. Powley* (1930) 210 Cal. 333, 337].)

23      Because this Court ordered the Receiver to sell 19th Street,

24  therefore, it is necessary for Xelan to file a motion before this

25  Court specifying the amount of any supersedeas bond – and for

26  Xelan to post such a bond – prior to any stay taking effect.

27  Until that time, California law provides that the Receiver is

28  free to consummate the sale of 19th Street, and the Receiver seeks

PASTERNAK,
PASTERNAK
& ALSBROOK
{00215385.DOCX 75296.0009 }                26                    CGC-18-564941
RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC.
636

1  an Order of this Court clarifying that no stay is in place so

2  that he can close the sale forthwith.

                                 **B.**

**Xelan's "Notice of Stay" Is Improper Because It Relies On
Outdated And Inapposite Case Law**

   Xelan's purported Notice of Stay – which is directly

contrary to its previous attempts to obtain a supersedeas bond –

is based on inapposite and incorrect case law.  Specifically,

Xelan relies on *Zappettini v. Buckles* (1914) 167 Cal. 27, 29-31

for the proposition that, because Xelan does not currently have

possession of 19th Street, §917.4 does not apply.  (See Exhibit 9

at p. 2.)  Importantly, *Zappettini* was decided in 1914, long

before important changes were made to the California Code of

Civil Procedure pertaining to supersedeas bonds.

   Specifically, in 1968, the California Legislature recodified

the statutory provisions of the Code of Civil Procedure

concerning stays pending appeal, and significantly altered what

is now CCP § 917.4.  In doing so, the Legislature expanded

Section 917.4 such that the bond requirement is no longer limited

to circumstances where an appellant is in possession of the real

property to be sold.  (See former CCP § 945 and current Section

917.4; *Estate of Murphy* (1971) 16 Cal.App.3d 564, 568.)

Specifically, former Section 945 provided, in relevant part, as

follows:  "If the judgment or order appealed from, directs the

sale or delivery of possession of real property, the execution of

the same cannot be stayed, unless a written undertaking be

executed on the part of the appellant, with two or more sureties,

to the effect that *during the possession of such property by*

PASTERNAK,
PASTERNAK
& ALSBROOK

{00215385.DOCX 75296.0009 }          27          CGC-18-564941
RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC
637

1  *appellant,* he will not commit, or suffer to be committed any

2  waste thereon . . ."  (Emphasis added.)  By contrast, recodified

3  Section 917.4 provides, in relevant part, that "[t]he perfecting

4  of an appeal shall not stay enforcement of the judgment or order

5  in the trial court if the judgment or order appealed from directs

6  the sale, conveyance or delivery of possession of real property

7  which is in the possession or control of the appellant *or the*

8  *party ordered to sell, convey or deliver possession of the*

9  *property,* unless an undertaking in a sum fixed by the trial court

10  is given . . ."  (Emphasis added.)

11      The California Court of Appeal explained the rationale

12  behind the Legislature's expansion of Section 917.4 in *Estate of*

13  *Murphy:*

14      Former section 945, dealing with judgments for the sale
        or delivery of possession of real property, required an
15      undertaking to the effect that 'during the possession
        of such property by the Appellant, he will not commit,
16      or suffer to be committed any waste thereon' (emphasis
        added). Section 917.4, on the other hand, requires an
17      undertaking to insure that 'the Appellant or party
        ordered to sell, convey or deliver possession of such
18      property' will not commit waste. (Emphasis added.)

19
20      The changes in language indicate the Legislature's
        recognition that injury to the respondent can result
21      from a stay even where the appellant is not required to
        perform under the judgment. Where the value of the
22      property in question is subject to diminution during
        appeal, the respondent may need protection. Equity
23      demands that, as between respondent and appellant, the
        appellant who seeks the stay should assume the risk.
24

25

26

27

28

PASTERNAK,
PASTERNAK
& ALSBROOK

{00215385.DOCX 75296.0009 }                    28                    CGC-18-564941
RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC.638

1  (*Estate of Murphy* (1971) 16 Cal.App.3d 564, 568 [citing Comment,

2  California Stay Law—Supersedeas and Statutory, 40 Cal.L.Rev. 249,

3  273—275].)[1]

4      Consequently, under Section 917.4, as explained in *Estate of*

5  *Murphy,* the fact that the Receivership Estate is subject to

6  damages pending Xelan's appeal makes it irrelevant that Xelan is

7  not in possession of 19th Street, and a supersedeas bond must be

8  posted.  Under the plain terms of the statute, "[t]he perfecting

9  of an appeal shall not stay enforcement of the judgment or order

10  in the trial court if the judgment or order appealed from directs

11  the sale ... of real property which is in the possession or

12  control of the appellant **or the party ordered to sell**."  The

13  Receiver is the party ordered to sell, and a bond must therefore

14  be obtained.

15      The other case relied upon by Xelan – *Royal Thrift & Loan*

16  *Co. v. Cty. Escrow, Inc.* (2004) 123 Cal.App.4th 24, 36–37 –

17  actually supports the proposition that an appeal of this Court's

18  sale order will not stay the order absent the posting of a bond.

19  In *Royal Thrift*, appellants argued that the exception to the

20  automatic stay found in CCP § 917.4 was applicable because the

21  Plaintiffs (the Joneses) were subject to a sale order that

22  directed the sale of the Joneses' real property.  (*Id.* at 36.)

23  The Court specifically stated that "the exception to the

24  automatic stay rule found in [CCP 917.4] . . . applies to

25  _____

[1] The Court in *Estate of Murphy* analyzed each of the Code of Civil

26  Procedure's recodified stay provisions, but the Court's ultimate

decision was specific to CCP 917.9 - the Court's ability to

27  exercise its discretion to require a bond - as discussed further

below.

28

PASTERNAK,
PASTERNAK
& ALSBROOK

{00215385.DOCX 75296.0009 }                29                    CGC-18-564941

RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC.639

1  judgments that 'direct the sale, conveyance of delivery of

2  possession of real property which in the possession or control of

3  . . . the party ordered to sell, convey, or deliver possession of

4  the property . . .'"

5      In *Royal Thrift*, the court recognized that whether Section

6  917.4 applied, "hinges solely on whether an undertaking or bond

7  was needed to cover the value of occupation and waste by the

8  Joneses, in view of their right (<u>if any</u>) to possess the property

9  during the first appeal." (*Id.* at 36, emphasis added.)  This was

10  because the Joneses were both the appellants in the original

11  appeal (*id.* at 31) and the parties arguably in possession or

12  control of the property (*id.* at 36-37).  However, appellants [in

13  the subsequent appeal] did <u>not</u> present any evidence that the

14  Joneses retained the right to possession during the [first]

15  appeal.  Because they failed to establish that Code of Civil

16  Procedure section 917.4 was applicable, the trial court correctly

17  determined that Royal Thrift had properly postponed the

18  foreclosure sale.  (*Id.* at 37.)

19      Thus, the Court found that appellants did not present any

20  evidence that this was an order directing "the sale, conveyance

21  or delivery of possession of real property *which is in the*

22  *possession or control of the appellant <u>or</u> the party ordered to*

23  *sell, convey or deliver possession of the property.*" (Cal. Code

24  Civ. Proc. § 917.4, emphasis added.)  Had evidence been presented

25  that the Joneses retained the right to possess the property, the

26  Court would have found CCP § 917.4 applied and that, because a

27  bond was not posted, the sale was not stayed.

28

PASTERNAK,
PASTERNAK
& ALSBROOK

{00215385.DOCX 75296.0009 }                30                CGC-18-564941
RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC.640

1     In the present case, by contrast, it is undisputed that the

2  Receiver is in possession of 19th Street.  Moreover, it is

3  indisputable that the order approving the sale, "directs the

4  sale, conveyance or delivery of possession of real property"

5  which is in the possession and control of the Receiver.  As such,

6  under both the plain language of CCP § 917.4 and *Royal Thrift,*

7  the Court's sale order here is not stayed pending appeal a

8  supersedeas bond being posted.

9     It is also worth noting that the *Royal Thrift* Court based

10  its analysis of Section 917.4 entirely on a passage from the

11  Witkin treatise on California procedure.  (*Royal Thrift and Loan*

12  *Co. v. County Escrow, Inc.* (2004) 123 Cal.App.4th 24, 36-37.)

13  Upon review of the relevant section of Witkin, however, that

14  exposition of law is supported entirely by three cases decided in

15  1899, 1930, and 1914, respectively, and a 1952 issue of the

16  California Law Review.  (9 Witkin, Cal. Proc. 5th Appeal (2008) §

17  244[2] [citing *Owen v. Pomona Land & Water Co.* (1899) 124 Cal. 331,

18  334; *Keeling Collection Agency v. McKeever* (1930) 209 Cal. 625,

19  627; *Zappettini v. Buckles* (1914) 167 Cal. 27, 30; 40 Cal. L.

20  Rev. 261].)  In other words, the analysis of Witkin presented in

21  *Royal Thrift* – and the legal basis for the decision therein - is

22  entirely premised on the state of law prior to the 1968

23  recodification described above, which mandates a bond under

24  Section 917.4 where "the party ordered to sell, convey or deliver

25  possession of the property" is in possession of the real

26  _____

27  [2] The Receiver cites the updated Witkin volume for the ease of the
   Court, which still contains the language relied upon in *Royal*

28  *Thrift*, verbatim.

PASTERNAK,
PASTERNAK
& ALSBROOK

{00215385.DOCX 75296.0009 }           31                CGC-18-564941
RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC. 641

1    property. Thus, language in *Royal Thrift* about the lack of need

2    for a bond where appellants are not in possession of the property

3    are both dicta, and fail to address the current state of the

4    expanded law that requires a bond for issuance of a stay even

5    where appellants are not in possession or control of the

6    property.

7                        **III.**

8       **THE RECEIVER SHOULD BE AUTHORIZED TO RETAIN COUNSEL**

9       California Rule of Court 3.1180 requires the Receiver to

10    make a written request prior to retaining counsel. The

11    information required under that Rule of Court is set forth in the

12    Declarations of Blake C. Alsbrook and Kevin Singer herewith. The

13    Receiver believes that it should be evident to the Court, given

14    the complexity of the issues herein, that counsel is necessary.

15                        **IV.**

16                  **CONCLUSION**

17       The Receiver therefore respectfully requests that this Court

18    issue the Proposed Order submitted herewith.

19

20                    PASTERNAK, PASTERNAK & ALSBROOK

21                    A Law Corporation

22

23    DATED:   April 19, 2019

24                    Blake C. Alsbrook

                       Proposed Attorneys for Receiver

25                    Kevin Singer

26

27

28

{00215385.DOCX 75296.0009 }         32         CGC-18-564941

RECEIVER'S EX PARTE APPLICATION FOR ISSUANCE OF ORDER RE DEFENDANT'S VIOLATION
OF PRELIMINARY INJUNCTION AND INTERFERENCE WITH RECEIVER'S SALE, ETC. 642

# *Exhibit   1*

1 | JEFFER MANGELS BUTLER & MITCHELL LLP

**ENDORSED**
**F I L E D**
*San Francisco County Superior Court*

2 | ROBERT B. KAPLAN, P.C. (Bar No. 76950)
*rbk@jmbm.com*

3 | Two Embarcadero Center, 5th Floor
San Francisco, California 94111-3813
Telephone:    (415) 398-8080

APR 0 6 2018

4 | Facsimile:    (415) 398-5584

CLERK OF THE COURT
BY:    ERICKA LARNAUTI
Deputy Clerk

5 | Attorneys for Plaintiff UMPQUA BANK

6

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | COUNTY OF SAN FRANCISCO

10

11 | UMPQUA BANK, a state chartered bank,

Case No. CGC-18-564941

12 | Plaintiff,

**ORDER APPOINTING RECEIVER; AND PRELIMINARY INJUNCTION IN AID OF RECEIVER**

13 | v.

14 | XELAN PROP 1, LLC, a California limited liability company; and DOES 1-30, inclusive,

Date:        April 6, 2018
Time:        2:00 p.m.

15 |

Place:       Dept. 501

16 | Defendants.

Action Filed:    March 12, 2018

17 |

Trial Date:    None Set

18

19 |        Upon a reading of the Verified Complaint ("Complaint") of Plaintiff Umpqua Bank

20 | ("Plaintiff" or "Bank") on file in the above-captioned action (the "Action") and the Ex Parte

21 | Application for Immediate Appointment of Receiver and Preliminary Injunction in Aid of

22 | Receiver ("Application") with all supporting declarations filed by the Bank, and good cause

23 | appearing for the appointment of a receiver:

24 |                **ORDER APPOINTING RECEIVER**

25 |        IT IS HEREBY ORDERED that Kevin Singer be and is hereby appointed as receiver (in

26 | such capacity, the "Receiver") in this action over the real properties commonly known as 1000-

27 | 1022 Filbert Street, San Francisco, California and 4018-4022 19th Street San Francisco, California

28 | (collectively, the "Subject Properties") subject to the condition that, before entering upon his

61794883v1                                    1

ORDER APPOINTING RECEIVER; AND PRELIMINARY INJUNCTION IN AID OF RECEIVER [XELAN]

Exhibit 1   Page 39

644

1  duties as a receiver, he shall take the oath and file a bond with a surety thereon approved by this

2  Court in the sum of $70,000.00 to secure the faithful performance of his duties as such receiver.

3        IT IS FURTHER ORDERED that the Receiver shall have the following powers and

4  responsibilities:

5        1.    To enter, gain access to and take possession of the Subject Properties, to exclude

6  and evict XELAN Prop 1, LLC (the "Defendant" or "Borrower"), or anyone claiming under or

7  through Defendant therefrom who are not under valid leases or rental agreements to use, operate,

8  manage and control the Subject Properties to recover the rents, issues, income, profits, revenues,

9  royalties, lease payments, security deposits and profits therefrom; to care for, preserve, protect,

10  secure, maintain, care for, preserve, finish construction of and maintain the Subject Properties, and

11  to receive the rents and incur the expenses necessary for such care, preservation and maintenance;

12  and to do all things and to incur the risks and obligations ordinarily incurred by the Borrower,

13  managers and operators of similar businesses and properties, as such Receiver, and no risks or

14  obligations so incurred shall be at the personal risk or obligation of the Receiver, but shall be a

15  risk or obligation of the receivership estate;

16        2.    To demand, collect and receive the rents, issues, income, profits, revenues, prepaid

17  rent, percentage rent based on gross annual sales or the like, tenant improvement deposits,

18  royalties, lease payments and security deposits in the possession of Defendant, or now due and

19  hereafter coming due from the tenants or lessees of any portion of the Subject Properties;

20        3.    To let, rent or lease from time to time any part of Subject Properties and the

21  Personal Property and to keep the buildings thereon insured and in good repair;

22        4.    To take possession of and receive from any and all banks, savings and loan

23  associations and/or any financial institutions any monies and funds on deposit in said banks,

24  savings and loan associations and/or any financial institutions in the name of the Borrower, to the

25  extent that said accounts contain the rents, issues, income, profits, revenues, storage unit rentals,

26  royalties, lease payments or security deposits generated by or arising out of the Subject Properties,

27  and the Receiver's receipt of said monies and funds shall discharge said banks, savings and loan

28  associations and/or any financial institutions from further responsibility for accounting to said

617948X3v1

2

ORDER APPOINTING RECEIVER; AND PRELIMINARY INJUNCTION IN AID OF RECEIVER [XELAN]

Exhibit  1  Page 34

645

JMBM  Jeffer Mangels
Butler & Mitchell LLP

1    account holder for monies and funds for which the Receiver shall give his receipt;

2        5.        To take possession of all the books and records pertaining to the Subject Properties

3    including, without limitation, construction contracts, bids, subcontracts, permits, licenses,

4    blueprints, architectural documents, plans, and specifications, list of historical common area

5    maintenance charges and operating expenses, computer equipment, software, management files,

6    equipment files, supply files and all passwords needed to access all software and computer files

7    maintained at onsite and offsite management offices from the Defendant, wherever located, as the

8    Receiver deems necessary for the proper administration, management and/or control of the estate,

9    but said books and records shall be made available to said Defendant as is reasonably necessary;

10        6.        To execute and prepare all documents and to perform all acts, either in the name of

11    the Defendant or in the Receiver's own name, which are necessary or incidental to preserving,

12    protecting, managing and/or controlling the Subject Properties and the receivership estate;

13        7.        To employ agents, servants, employees, guards, clerks, accountants, on-site

14    managers and management consultants to administer the receivership estate and to collect said

15    rents, issues, income, profits, revenues, storage-unit rentals, royalties, lease payments and security

16    deposits and profits therefrom, manage the Subject Properties, and keep the same insured and in

17    good repair, if the Receiver shall deem the same necessary, and to pay the reasonable value of said

18    services out of the rents received;

19        8.        To require the Defendant to notify the Receiver upon the Receiver's taking

20    possession of the Subject Properties whether or not there is sufficient insurance coverage on the

21    Subject Properties, to provide the Receiver with the identity of the Borrower's insurance company,

22    insurance agent's name and contact information and to provide the Receiver with copies of all its

23    insurance policies relating to the Subject Properties. If sufficient insurance coverage does exist,

24    the Defendant shall be responsible for naming, and is hereby ordered to name, the Receiver as an

25    additional insured on the insurance policy(ies) for the period that the Receiver shall be in

26    possession of the Subject Properties. If there is insufficient insurance coverage, it is hereby

27    ordered that the Receiver shall have thirty (30) working days to procure said insurance on the

28    Subject Properties, provided that the Receiver has funds available to do so. If the Receiver does

61794883v1                          3
ORDER APPOINTING RECEIVER; AND PRELIMINARY INJUNCTION IN AID OF RECEIVER  [XELAN]

Exhibit ___/___ Page 35

1 | not have sufficient funds to do so, the Receiver shall seek instructions for the Court with regard to

2 | whether insurance shall be obtained and how it is paid for;

3 |      9.     To hold the monies coming into possession of the Receiver pursuant to his

4 | operation of the business thereto, and not expended for any of the purposes herein authorized,

5 | shall be held by said Receiver for the payment of the Borrower's obligations to Plaintiff sued upon

6 | in the Complaint.  Notwithstanding the foregoing, after reserving sufficient funds as the Receiver

7 | deems reasonable to cover expenses of the receivership, the Receiver may pay, at its discretion,

8 | any remaining amounts owing to Plaintiff by Defendant to reduce the amounts due and owing

9 | unpaid by Defendant and reduce the accrual of interest on such amounts;

10 |      10.     To establish bank accounts for the deposit of monies and funds collected and

11 | received in connection with the Receiver's administration of the receivership estate, at any

12 | financial institution the Receiver deems appropriate, provided that any funds on deposit at said

13 | financial institution are fully insured by an agency of the United States government;

14 |      11.     To institute ancillary proceedings in this state or other states and countries as are

15 | necessary to preserve and protect the receivership estate, and the Receiver may engage the

16 | services of legal counsel, if necessary, upon prior approval of the above-entitled Court and notice

17 | to the Plaintiff as required by California Rule of Court ("CRC") Rule 3.1180.  The Receiver may

18 | pay for such services from the funds of the receivership estate;

19 |      12.     To the extent feasible, the Receiver shall, within thirty (30) days of his qualification

20 | hereunder, file in this action an inventory of the Subject Properties which he shall have taken

21 | possession pursuant to this order per CRC Rule 3.1181 and shall file supplemental inventories as

22 | needed;

23 |      13.     To prepare periodic interim statements reflecting the Receiver's fees and

24 | administrative costs and expenses incurred for said period in the operation and administration of

25 | the Receivership estate.  The Receiver shall provide and file with the Court a monthly report with

26 | details as required by CRC Rule 3.1182.  Upon completion of an interim statement, and the

27 | mailing of such statement to the parties' respective attorneys of record, or any other designated

28 | person or agent, and if no objection is received within 10 calendar days after the mailing of the

61794883v1

ORDER APPOINTING RECEIVER; AND PRELIMINARY INJUNCTION IN AID OF RECEIVER [XELAN]

Exhibit _1_ Page _36_

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1  interim statement, the Receiver shall pay from the estate funds, if any, the amount of said

2  statement based upon the fee schedule set forth in the Declaration of the Receiver filed in support

3  of Plaintiff's Ex Parte Application for Immediate Appointment of a Receiver, etc. Despite the

4  periodic statement of Receiver's fees and administrative expenses, such fees and expenses shall be

5  submitted to the Court for its approval and confirmation, in the form of a stipulation among the

6  parties, or the Receiver's Final Accounting and Report;

7       14.    To take possession of all the books and records of Defendant wherever located, as

8  the Receiver deems necessary for the proper administration, management and/or control of the

9  receivership estate;

10       15.    If there are insufficient funds in the receivership estate to pay expenses of the

11  receivership, the expenses of the receivership estate may be paid by the Plaintiff or advanced to

12  the Receiver by the Plaintiff, in its sole and absolute discretion, opinion and judgment of the

13  Plaintiff, and the Receiver shall issue receiver's Certificates of Indebtedness to the Plaintiff in the

14  amount of any such payments or advances, all subject to the right of the Receiver or the Plaintiff,

15  in their discretion, to seek further orders of this Court with respect thereto. Any such Certificates

16  of Indebtedness issued by the Receiver to the Plaintiff shall not be the personal obligation of the

17  Receiver but the obligation of the receivership estate;

18       16.    The Receiver shall not be responsible for payment of any real property taxes, utility

19  bills, unpaid payroll expenses or other unpaid invoices for services or utilities incurred by the

20  Borrower, or for the benefit of, the Subject Properties prior to the Receiver's taking possession of

21  the Subject Properties provided, however, the Receiver is authorized to pay operating expenses of

22  the Subject Properties that were incurred prior to the date of this Order if such payment is

23  reasonably necessary or beneficial to enable the Receiver to continue to operate the Subject

24  Properties as determined by the Receiver in its sole discretion including, without limitation, the

25  payment of utility bills dated prior to the date of this Order. No utility or other vendor may

26  terminate service or the provision of other goods or services to the Subject Properties as a result of

27  the non-payment of pre-receivership obligations, without prior order of this Court;

28  ///

ORDER APPOINTING RECEIVER; AND PRELIMINARY INJUNCTION IN AID OF RECEIVER [XELAN]

Exhibit _1_ Page_37_

648

17.    The Defendant, its agents, servants, employees or representatives, or all persons or entities acting under or in concert with the Defendant, on receipt of a copy of this Order shall provide the Receiver with the Tax Identification number utilized by the Borrower for the operation of the Subject Properties.  The Receiver shall be entitled to utilize the aforementioned Tax Identification number during his operation of the Subject Properties;

18.    The Receiver shall be authorized to open all mail addressed to the Borrower, its agents, servants, employees or representatives, or all persons or entities acting under or in concert with the Defendant at the Subject Properties.  The Receiver is authorized to make copies of this mail, and then forward this mail to the addressed to the Defendant, their agents, servants, employees or representatives, or all persons or entities acting under or in concert with the Defendant at the address provided by the Defendant;

19.    The Receiver and the parties to this case may, at any time, apply to this Court for further or other instructions or orders and for further powers necessary to enable the Receiver to perform the Receiver's duties properly;

20.    The Receiver is authorized to endorse checks payable to the Defendant, to send notice to accounts receivable debtors of the Borrower directing the same to make payments due to the Defendant which are part of the Subject Properties or the proceeds thereof to the Receiver, to undertake whatever actions are reasonable or necessary to collect the accounts receivable of the Borrower, and to compromise the amounts owing from account debtors of the Borrower if in the Receiver's reasonable business judgment it is appropriate to do so;

21.    The Receiver is authorized to institute ancillary proceedings in this or in other states as are reasonable or necessary to preserve and protect the Subject Properties and receivership estate, to collect upon accounts receivable which are part of Subject Properties to obtain possession and collect any other part of the Subject Properties, and to defend himself from the action of others;

22.    The Receiver shall have no responsibility for filing federal and state income tax returns or federal or state payroll tax returns and shall not be responsible for paying any unpaid federal and state payroll taxes and expenses of the Borrower.  The responsibility for such filings

61794883v1

6

Exhibit 1   Page 38

649

1  and payments lie exclusively with the Defendant and their agents, servants, employees and

2  representatives;

3      23.    The Receiver shall not be obligated to upgrade the Subject Properties or make any

4  improvements thereto, unless and until ordered to do so by the above entitled Court;

5      24.    The Receiver shall not be obligated to contribute personal funds in the performance

6  of his duties hereunder;

7      25.    Any security or other deposits which tenants have paid to the Borrower or its

8  agents and which are not paid to the Receiver and over which the Receiver has no control, shall be

9  obligations of the Borrower and may not be refunded by the Receiver without an order of the

10  above entitled Court.  Any other security or other deposits which tenants have paid or may pay to

11  the Receiver, if otherwise refundable under the terms of their leases or agreements with the

12  Receiver, shall be refundable by the Receiver in accordance with such leases or agreements;

13      26.    The Receiver shall have the right to file an application with this Court for the sale

14  of the Subject Properties, or any portion thereof, on such terms as the Court may authorize;

15      27.    The Defendant is ordered to promptly notify the Receiver of the names, addresses

16  and telephone numbers of all parties and their counsel who appear in the above-entitled action, so

17  that the Receiver may give notice to all parties of any matters affecting the receivership estate;

18      28.    To have the authority to engage the services of one or more environmental

19  consultants to perform environmental reviews as necessary, including a Phase I, II or III

20  Environmental Audits at the Subject Properties.  The Receiver may pay for such services from the

21  funds of the receivership estate;

22      29.    Notwithstanding any provision in this Order to the contrary, the Receiver does not

23  assume and is not obligated to assume and will not be obliged to pay, perform or otherwise

24  discharge any Employment-Related Liability (as defined below) of Defendant.  Defendant is and

25  will be solely and exclusively liable with respect to any Employment-Related Liability.

26  "Employment-Related Liability" includes all of Defendant's liabilities to any former or current

27  employee in any way related to the employee's employment with or separation from Defendant or

28  its management company for the Subject Properties, including, but not limited to, any claims:  (a)

61794883v1

7

1  for salary, wages, commissions, bonuses, benefits, vacation, or any other form of compensation;

2  (b) arising out of any acts or omissions of Defendant or any of its agents or representatives with

3  respect to any benefit plan, employee practices or employee programs, including employee claims

4  of discrimination, retaliation or other wrongful conduct or discharge decisions; (c) severance

5  liabilities; (d) obligations under employment contracts or any other related agreements with

6  employees; (e) any change of control amounts payable to any employees; (f) all liabilities under

7  the Worker Adjustment and Retraining Notification Act (WARN) 29 U.S.C. § 210 et seq., or

8  similar state statute or regulation; and (g) any other statutory or common law claim; and

9        30.    Notwithstanding the provisions of Section 7 of that certain Order Granting Motion

10  to Determine Lien Priority filed on February 28, 2018 in the action entitled City and County of

11  San Francisco, etc. v. Anne Kihagi, etc., et al., San Francisco County Superior Court Case No.

12  CGC-15-546152, the tenants of the Subject Properties shall now forthwith pay all rents due and

13  owing to the Borrower to the Receiver.

14                        **PRELIMINARY INJUNCTION IN AID OF RECEIVER**

15        IT IS FURTHER ORDERED that the Defendant, and all persons and entities now in

16  possession of any part of the Subject Properties and not holding under valid leases, or rental

17  agreements, shall forthwith surrender their possession thereof to said Receiver, and that all tenants

18  or lessees in possession of any part of the Subject Properties, and such other persons or entities as

19  may be lawfully in possession thereof, are hereby directed to attorn as tenants, or lessees to said

20  Receiver, and until further order of this Court, to pay over to said Receiver all rents, issues,

21  income profits, revenues, and lease payments of the Subject Properties now due and unpaid or that

22  may hereafter become due, and all persons and entities liable for such rents, issues, income,

23  profits, revenues, royalties or lease payments are hereby enjoined and restrained from paying any

24  rents, issues, income, profits, revenues, royalties, storage unit rentals or lease payments for the

25  Subject Properties to the Defendant, its agents, servants or attorneys.

26        IT IS FURTHER ORDERED that the Defendant and its agents, employees and

27  representatives, and all persons or entities acting under or in concert with the Defendant, are

28  restrained and enjoined from engaging in or performing, directly or indirectly, any or all of the

61794883v1                                     8

ORDER APPOINTING RECEIVER; AND PRELIMINARY INJUNCTION IN AID OF RECEIVER [XELAN]

Exhibit  1  Page 40

651

following acts:

1.    Demanding, collecting, receiving or in any other way diverting or using any of the rents, issues, income, profits, revenues, royalties or lease payments emanating from the Subject Properties;

2.    Interfering with or hindering in any way whatsoever the Receiver in the performance of the Receiver's duties herein described and in the performance of any duties incident thereto;

3.    Interfering in any manner with the Subject Properties, including its possession;

4.    Transferring, conveying, assigning, pledging, deeding, selling, renting, leasing, encumbering, changing ownership of, vesting of title to, or otherwise disposing of the Subject Properties; and

5.    Terminating or otherwise affecting any of the utilities which service the Subject Properties.

IT IS FURTHER ORDERED that:

1.    All rents, security deposits, issues, income, profits, revenues, royalties, and lease payments of the Subject Properties which are received, or have been received, by the Defendant shall be turned over to the Receiver within five (5) days, and the Defendant shall simultaneously, upon said turnover, deliver to the Receiver written verification of the source of all said monies being turned over;

2.    The Defendant, its agents, servants, employees or representatives, or any persons or entities acting under or in concert with Defendant, shall immediately turn over to the Receiver possession of all records, books of account, ledgers, and all documents and papers pertaining to the operation of the Subject Properties and the rents or lease payments due therefor; and

3.    Plaintiff and its officers, employees and agents shall have immediate access to the Subject Properties to enable them to view and inspect Subject Properties for the purposes of appraisal.

///

///

Exhibit   1   Page  41

652



1    IT IS FURTHER ORDERED that Plaintiff file an Undertaking pursuant to Code of Civil

2    Procedure § 529 in the amount of $1,000.00.

3                                                      LYNN O'MALLEY-TAYLOR

4    DATED:            APR 0 6 2018            _____

5                                              JUDGE OF THE SUPERIOR COURT

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

617948B3v1                          10

ORDER APPOINTING RECEIVER; AND PRELIMINARY INJUNCTION IN AID OF RECEIVER [XELAN]

Exhibit ___1___ Page 42

653

# *Exhibit  2*

1  JEFFER MANGELS BUTLER & MITCHELL LLP
   ROBERT B. KAPLAN, P.C. (Bar No. 76950)
2  *rbk@jmbm.com*
   Two Embarcadero Center, 5th Floor
3  San Francisco, California 94111-3813
   Telephone:    (415) 398-8080
4  Facsimile:    (415) 398-5584

5  Attorneys for Plaintiff UMPQUA BANK

**F I L E D**
San Francisco County Superior Court

OCT 1 2 2018

CLERK OF THE COURT
By: _____
Deputy Clerk

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF SAN FRANCISCO – UNLIMITED JURISDICTION

10

11  UMPQUA BANK, a state chartered bank,        Case No. CGC-18-564941

12              Plaintiff,                       **ORDER RE: GRANTING MOTION OF
                                                 UMPQUA BANK FOR ORDER:  (1)**
13      v.                                       **INSTRUCTING AND AUTHORIZING
                                                 RECEIVER TO SELL REAL PROPERTY**
14  XELAN PROP 1, LLC, a California limited      **ASSETS OF RECEIVERSHIP ESTATE;
    liability company; and DOES 1-30, inclusive, AND (2) CONFIRMING SALES**
15                                               **PROCEDURES**
                Defendants.
16                                               Date:          October 12, 2018
                                                 Time:          9:30 a.m.
17                                               Dept.:         501

18                                               Action Filed:  March 12, 2018
                                                 Trial Date:    None Set
19

20          The Motion of Plaintiff Umpqua Bank ("Bank") for an Order (1) Instructing and

21  Authorizing Receiver to Sell Real Property Assets of Receivership Estate; and (2) Confirming

22  Sales Procedures ("Motion") came on regularly for hearing on October 12, 2018.  Robert B.

23  Kaplan, Esq. of Jeffer Mangels Butler & Mitchell LLP appeared for Plaintiff Bank and other

24  appearances were as noted in the record at the time of the hearing.  The Court, having reviewed

25  the Motion, and good cause appearing therefor:

26          IT IS ORDERED:

27          1.      Kevin Singer (the "Receiver"), shall employ the following sale procedures with

28  respect to the sale of the real property commonly known as 1000-1022 Filbert Street, San

62395849v3

1

[PROPOSED] ORDER RE: GRANTING MOTION OF UMPQUA BANK FOR ORDER:  (1) INSTRUCTING ETC.

Exhibit 2 Page 43

655

1  Francisco, California ("Filbert Street Property") and 4018-4022 19th Street, San Francisco,

2  California ("19th Street Property").

3          a.    The Receiver shall list the Filbert Street Property and 19th Street Property

4  for sale with Vanguard Properties ("Vanguard"), pursuant to the terms of the Commercial and

5  Residential Income Listing Agreement attached hereto as Exhibit A (the "Listing Agreement").

6  The Receiver shall be authorized to execute the Listing Agreement upon the entry of the order;

7          b.    All offers to purchase the Filbert Street Property and/ or the 19th Street

8  Property shall be presented in writing by Vanguard to the Receiver.  On or before two business

9  days have elapsed from the date of the Receiver's receipt of any offer to purchase the Filbert Street

10  Property and/or the 19th Street Property (each a "Sale Offer"), the Receiver shall deliver a copy of

11  the Sale Offer to Robert B. Kaplan, Esq., counsel for the Bank by way of electronic mail to

12  rbk@jmbm.com for informational purposes.  For the avoidance of doubt, nothing contained in this

13  Order shall require the Receiver to sell the Filbert Street Property and the 19th Street Property to

14  the same buyer;

15          c.    The Receiver shall have the absolute right, in his sole and absolute

16  discretion, opinion and judgment, to reject, and/or make a counteroffer to any Sale Offer and shall

17  provide notice in the manner set forth in section 1.b. above of any rejection and/or counteroffer to

18  counsel for the Bank by way of electronic mail to rbk@jmbm.com, for informational purposes,

19  within two business days after the delivery of same to any proposed buyer;

20          d.    The Receiver shall have the authority, in his sole and absolute discretion,

21  opinion and judgment, to accept any Sale Offer, by executing a Purchase and Sale Agreement

22  ("PSA") and to perform such acts as reasonably may be required to sell the Filbert Street Property

23  and/or the 19th Street Property and to execute all documents and instruments reasonably necessary

24  related thereto to close any escrow established for the sale of the Filbert Street Property and/or the

25  19th Street Property, and to transfer title to the Filbert Street Property and/or 19th Street Property

26  to a buyer;

27          e.    After the buyer designated in the PSA pays into escrow all deposits required

28  by the PSA and removes all contingencies to closing, the Receiver or the Bank shall file a noticed

62395849v3

2

[PROPOSED] ORDER RE: GRANTING MOTION OF UMPQUA BANK FOR ORDER:  (1) INSTRUCTING ETC.

Exhibit 2 Page 44

1  motion with this Court seeking instructions to approve of the PSA for and confirm the sale of the

2  Filbert Street Property and/or the 19th Street Property to the buyer designated in the PSA (the

3  "Confirmation Hearing"). Any persons seeking to overbid the sale offer set forth in the PSA must

4  prequalify by presenting proof to the Receiver of sufficient financing and/or cash resources to pay

5  the purchase price set forth in the PSA and overbids must be made in increments of no less than

6  $10,000.

7          f.    The Receiver shall serve a Notice of Sale compliant with the provisions of

8  California Code of Civil Procedure § 701.540 ("Notice of Sale") and a right to overbid by no less

9  than 20 days before the date of the Confirmation Hearing by mail on (i) on Defendant XELAN

10  Prop 1, LLC and its attorneys of record, and (ii) on all persons having recorded liens on the Filbert

11  Street Property and/or 19th Street Property which is the subject of the PSA as of the date of

12  hearing of this Motion;

13          g.    Any actions taken by the Receiver to sell the Filbert Street Property and/or

14  the 19th Street Property shall not constitute or create a representation or warranty by the Receiver

15  as to any aspect of the sale of the Filbert Street Property and/or the 19th Street Property and any

16  such sale shall be "as is" "where is," with no representations and/or warranties, shall not be subject

17  to the provisions of California Civil Code §§ 896 and 897, and shall be without risk or liability to

18  the Receiver and/or the receivership estate;

19          h.    The Receiver may proceed to close a sale of the Filbert Street Property

20  and/or the 19th Street Property pursuant to any PSA approved of by the above-entitled Court

21  subject to the terms and conditions set forth in the PSA;

22          i.    The Receiver shall have the right to perform such acts reasonably necessary

23  to sell the Filbert Street Property and/or the 19th Street Property pursuant to the Court-approved

24  PSA and to execute all documents and instruments reasonably necessary related thereto to close

25  any escrow established for the sale of the Filbert Street Property and/or the 19th Street Property

26  and to transfer title to the Filbert Street Property and/or the 19th Street Property as provided for in

27  the PSA;

28          j.    The Receiver shall be authorized to pay, at the close of and directly from

62395849v3

3

[PROPOSED] ORDER RE: GRANTING MOTION OF UMPQUA BANK FOR ORDER:  (1) INSTRUCTING ETC.

Exhibit _2_ Page_45_

657

1   any escrow established pursuant to the PSA approved of by this Court after the Confirmation

2   Hearing, the amounts owed to holders of any liens which have been recorded against the Filbert

3   Street Property and/or the 19th Street Property, as appropriate, and to transfer title to the Filbert

4   Street Property and/or the 19th Street Property as provided for in the PSA, approved of by this

5   Court. The Receiver may, in his discretion, negotiate with any lien claimants to release their liens

6   in exchange for agreed upon payments from escrow for amounts less than their liens as the

7   Receiver sees fit;

8          k.    By closing escrow and taking title to the Filbert Street Property and/or the

9   19th Street Property, the buyer identified in the PSA acknowledges that: (i) the buyer has no

10  recourse against the Receiver (or his agents) for any claim or cause of action; and (ii) the buyer's

11  sole and only recourse is against buyer's title insurance policy, if applicable, except as expressly

12  permitted by any PSA approved of by the above-entitled Court. The above-entitled Court retains

13  jurisdiction over any dispute that may arise involving Receiver with the sale of the Filbert Street

14  Property and/or the 19th Street Property pursuant to the terms of any PSA approved of by the

15  above-entitled Court;

16         l.    Any licensed title insurer may rely upon this order as authorizing the

17  Receiver to transfer legal title to the Filbert Street Property and/or the 19th Street Property;

18         m.    A certified copy of this order may be recorded concurrently with or any

19  time before the close of escrow for the sale of the Filbert Street Property and/or the 19th Street

20  Property pursuant to the PSA providing, however, the failure to record this order will not affect

21  the enforceability of this order or the validity of the deed transferring title of the Filbert Street

22  Property and/or the 19th Street Property to the buyer set forth in the PSA; and

23  //

24  //

25  //

26  //

27  //

28  //

62395849v3

4

[PROPOSED] ORDER RE: GRANTING MOTION OF UMPQUA BANK FOR ORDER: (1) INSTRUCTING ETC.

Exhibit _2_ Page _46_

1          n.        Nothing contained in this Order shall constitute an agreement by the Bank

2   to forbear from exercising its state law foreclosure rights and remedies pursuant to that certain

3   Deed of Trust and Absolute Assignment of Rents and Leases and Security Agreement (and Fixture

4   Filing) dated as of July 31, 2013 executed by XELAN Prop 1, LLC in favor of the Bank and that

5   certain Deed of Trust and Absolute Assignment of Rents and Leases and Security Agreement (and

6   Fixture Filing) dated as of June 13, 2013 executed by XELAN Prop 1, LLC in favor of the Bank

7   which are the subject of the above-entitled action, and the Bank shall be free to commence and/or

8   complete foreclosure proceedings pursuant to thereto at any time the Bank decides to do so in the

9   Bank's sole and absolute discretion, opinion and judgment.

10

11  DATED:    10 - 12 - 2018

                                               JUDGE OF THE SUPERIOR COURT
12                                                 CHARLES F. HAINES

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

62385849v3

                                              5

[PROPOSED] ORDER RE: GRANTING MOTION OF UMPQUA BANK FOR ORDER:  (1) INSTRUCTING ETC.

Exhibit  2  Page  47

659

# *Exhibit  3*

DocuSign Envelope ID: AFD33780-8E4E-4D94-AE7F-84E4D80D827A



**SAN FRANCISCO ASSOCIATION of REALTORS®**

**CONTINGENCY REMOVAL #** _1_

SAN FRANCISCO ASSOCIATION OF REALTORS ® STANDARD FORM
This form is intended for use in San Francisco

Contingency Removal for the San Francisco Purchase Agreement dated _____ **February 1, 2019** _____ (Date Prepared)
for the Property known as _____ **4018-4022 19th Street, San Francisco, CA 94114** _____
between _____ **Kenneth Kaplan, and/or Assignee, Brandon Kaplan, and/or Assignee** _____ ("Buyer")
and _____ **Kevin Singer, Court Receiver** _____ ("Seller").

By checking a box below, Buyer acknowledges that Buyer (a) has had the opportunity to inspect or has received documents pursuant to the referenced items in the San Francisco Purchase Agreement (Buyer has signed, or agrees to sign, copies of said documents for Broker/Agent's transaction file) and (b) is fully satisfied with the matters addressed in the referenced paragraph of the Contract. Except for information contained in Seller's and Broker/Agent's Disclosure Statements, Buyer has not relied upon Seller's or Broker/Agent's representations as to the condition of the Property.

| Check | Contract Paragraph and Terms | |
|---|---|---|
| ☐ | 1 | Financing Provisions |
| ☐ | 4 | Appraisal |
| ☐ | 8 | Title Review (subject to the Exceptions noted below) |
| ☐ | 9B | Leased or Liened Items |
| ☐ | 12A | Property Inspections (subject to the Exceptions noted below) |
| ☐ | 13 | Condominium Disclosure (including parking and storage spaces, CC&Rs, Bylaws, Articles of Incorporation, rules and regulations, budget, financial statements of the Homeowners Association, one year's minutes of the Homeowners Association meetings, and any other condominium documents required by law or this Contract) |
| ☐ | 14 | Rental Property (including copies of all leases and rental agreements, copies of all outstanding notices sent to tenants, notification of any pass-throughs which constitute part of the existing rent, which units include parking as part of the rent, whether or not any parking spaces are rented to non-tenants, vacant unit disclosures, any buyout agreements, the rental history of each unit from the date of each tenant's occupancy to the present, notices of rent increases, rental information questionnaires and protected tenant status forms received back from tenants) |
| ☐ | 15 | Income and Expense Statement (for the current year and prior requested years) |
| ☐ | 18 | Sale of Buyer's Property |
| ☐ | 19A | Real Estate Transfer Disclosure Statement |
| ☐ | 19B | San Francisco Seller Disclosure |
| ☐ | 19C | Natural Hazards Disclosure Statement/Report |
| ☐ | 19D | Earthquake Hazards Disclosure |
| ☐ | 19E | Lead-Based Paint Hazards Disclosure |
| ☐ | 19F | Building Permit History (Report of Residential Building Record – 3R) |
| ☐ | 19G | Other Disclosures: |
| ☒ | 48 | Additional Terms: _See attached Addendum A to Contingency Removal, dated February 28th 2019_ |
| ☐ | Addenda | ☐ TIC Purchase ☐ 1031 Exchange ☐ Other: _____ ☐ Other: _____ |
| ☒ | All | Remaining Buyer contingencies established by the Agreement. (Note: This alternative is not a requirement of the Agreement, but a convenience for Buyer.) |

Exceptions (attach separate sheet, if necessary): _____

Do not use this form to renegotiate the terms of the Agreement. If Buyer is only willing to remove contingencies in exchange for Seller concessions, Broker/Agent recommends that Buyer use a Request for Repair or other Amendment of Existing Agreement Terms form.

Buyer _Kenneth M Kaplan_ Date 2/28/2019    Buyer _[signature]_ Date 2/28/2019
       Kenneth Kaplan, and/or Assignee                          Brandon Kaplan, and/or Assignee

Confirmation of Receipt of this Removal of Contingencies:    Seller's Initials: _K___ / _____    Date 3-1-19

BROKERS/AGENTS CAN ADVISE ON REAL ESTATE TRANSACTIONS ONLY. FOR LEGAL OR TAX ADVICE, CONSULT A QUALIFIED ATTORNEY OR CPA.

Page 1 of 1
(Rev. 03/18)    Copyright © 2018 San Francisco Association of REALTORS®

Vanguard Properties, 2501 Mission St. San Francisco CA 94118    Phone: 4153317000    Fax:    4018-4022 19th
Edward Deleski                                        Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

Exhibit _3_   Page _58_

661

DocuSign Envelope ID: AFD33780-8E4E-4D94-AE7F-64E4D80D827A

## ADDENDUM A (ADDENDUM TO CONTINGENCY REMOVAL AND APPROVAL OF DOCUMENTS)

**Purchase Sale Agreement: 4018-4022 19th Street, San Francisco CA 94114**

**Buyer:** Kenneth Kaplan, and/or Assignee and Brandon Kaplan, and/or Assignee

**Seller:** Kevin Singer, Court Receiver

1.  Overbid shall be set at $150,000 above current purchase price, and $150,000 increments thereafter. In the event of an overbid, (i) Buyer shall have the right to match the amount of all overbids, without the necessity of increasing Buyer's deposit, and (ii) if Buyer elects not to match an overbid (A) the successful over-bidder (the "Overbid Buyer") must deliver to Seller on the date of the Hearing (as defined below) a non-refundable deposit in the amount of $114,000 (3% of First Overbid Amount) in the form of a cashier's check payable to Orange Coast Title, (B) execute a purchase agreement substantially in the form of this Agreement, including a waiver of all contingencies (the "Overbid Purchase Agreement") on the date of the Hearing, and (C) if the Overbid Buyer defaults in its obligation to purchase the Property pursuant to the Overbid Purchase Agreement, then Seller shall cancel the Overbid Purchase Agreement and Buyer shall have the right to purchase the Property for $3,650,000.00, with a closing date which is 20 days after Buyer receives written notice from Seller of such cancellation. A

2.  Seller acknowledges that Buyer is acquiring the Property with 1031 exchange funds and must close escrow on or before a date certain in order to satisfy its exchange requirements. Seller and Buyer agree that the date for the close of escrow shall be the earlier of (i) 20 calendar days after the date of the court confirmation and any overbid hearing (collectively, the "Hearing") or (ii) April 24, 2019 (the "Outside Date"). Seller shall endeavor to schedule the Hearing as soon after the Addendum Execution Date as is reasonably practicable, provided that if the Hearing has not taken place on April 3, 2019, Buyer may elect in writing, delivered to Seller during the period commencing on April 3, 2019 and ending 3 business days following receipt of written notice from Seller of the date to which the Hearing is rescheduled, to extend the Outside Date to a date up to 20 calendar days after date on which the Hearing has been rescheduled to occur (the "Extended Outside Date"). If this transaction does not close on or before the Outside Date or, if Buyer has timely elected to extend the Outside Date, the Extended Outside Date, for any reason other than a default by Buyer, Buyer shall have the right to terminate this Agreement by written notice delivered to Seller during the period commencing on the Outside Date or the Extended Outside Date, if applicable, and ending 3 business days following receipt of notice thereof from Seller, in which event the Deposit shall be immediately returned to Buyer.

3.  All other terms and conditions to remain.

Kenneth Kaplan, and/or Assignee    2/28/2019          Brandon Kaplan, and/or Assignee    2/28/2019

Kevin Singer, Court Receiver

4916
63501423v2

Exhibit 3    Page 49

662

*Exhibit  4*

1  JEFFER MANGELS BUTLER & MITCHELL LLP
   ROBERT B. KAPLAN, P.C. (Bar No. 76950)
2  *rbk@jmbm.com*
   Two Embarcadero Center, 5th Floor
3  San Francisco, California 94111-3813
   Telephone:    (415) 398-8080
4  Facsimile:    (415) 398-5584

5  Attorneys for Plaintiff UMPQUA BANK

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            COUNTY OF SAN FRANCISCO – UNLIMITED JURISDICTION

10

11  UMPQUA BANK, a state chartered bank,          Case No. CGC-18-564941

12              Plaintiff,                         **[PROPOSED] ORDER ON MOTION FOR
                                                   ORDER:**
13       v.
                                                   **(1) INSTRUCTING RECEIVER TO SELL
14  XELAN PROP 1, LLC, a California limited        REAL PROPERTY ASSET OF
    liability company; and DOES 1-30, inclusive,  RECEIVERSHIP ESTATE; AND**
15
                Defendants.                        **(2) CONFIRMING SALE OF REAL
16                                                 PROPERTY [4018-4022 19th STREET,
                                                   SAN FRANCISCO, CA]**
17
                                                   Date:        April 10, 2019
18                                                 Time:        9:30 a.m.
                                                   Dept.:       501
19
                                                   Action Filed:    March 12, 2018
20                                                 Trial Date:      None Set

21       The Motion of Plaintiff Umpqua Bank ("Bank") for an Order:  (1) Instructing Receiver to

22  Sell Real Property Assets of Receivership Estate; and (2) Confirming Sale of Real Property Asset

23  (the "Motion"), came on regularly for hearing on April 10, 2019 at 9:30 a.m. in Department 501 of

24  the above-entitled Court.  Robert B. Kaplan, Esq. of Jeffer Mangels Butler & Mitchell LLP

25  appeared for Plaintiff Bank and other appearances were as noted in the record at the time of the

26  hearing.

27  ///

28  ///

63606234v1                                    1
    [PROPOSED] ORDER ON MOTION FOR ORDER:  (1) INSTRUCTING RECEIVER TO SELL, ETC.
                 [XELAN-19th STREET] - Original Buyer       Exhibit 4   Page 50
                                                                                      664

F I L E D
San Francisco County Superior Court
APR 1 5 2019
CLERK OF THE COURT
BY: _____
Deputy Clerk

JMBM₁ er Mangels
          Butler & Mitchell LLP

1    The Court, having reviewed the Motion, makes the following findings, conclusions and

2  order.[1]

3    1.    Notice.  Based upon the evidence before the Court, the Court finds that the Bank:

4        (a)    Timely served the Notice of Motion and Motion on XELAN Prop 1, LLC,

5  on its counsel of record; and

6        (b)    The Receiver has caused to be notified those parties that heretofore have

7  expressed an interest in purchasing 4018-4022 19th Street, San Francisco, California (the "19th

8  Street Property"), legally described in Exhibit A attached hereto and incorporated herein by this

9  reference as though set forth in full, regarding the pending sale and has invited them to participate

10  in the public overbid process by having a notice of sale complying with the provisions of

11  California Code of Civil Procedure § 701.540(a) and of the right to overbid ("Notice of Sale")

12  served on Defendant XELAN Prop 1, LLC and its attorneys of record and on all persons having

13  recorded liens, encumbrances and interests on the 19th Street Property as of January 23, 2019 by

14  at least 20 calendar days before the date of the hearing scheduled in this Court on this Motion and

15  has caused the Notice of Sale to be posted on the 19th Street Property, at a public place in the City

16  of San Francisco, to be delivered to a tenant at the 19th Street Property and published in a

17  newspaper of general circulation for the City and County of San Francisco at least three times

18  prior to the hearing of this Motion and by emailing the Notice of Sale to all potential buyers of the

19  19th Street Property, as set forth in the  Declaration of Edward Deleski filed in support of the

20  Motion, at least 20 days prior to the hearing of the Motion.

21    Based upon the foregoing findings, the Court concludes that the Receiver has employed all

22  procedures and given all notices required by law to effect the sale of the 19th Street Property and

23  shall convey good and clear title to the assets to Kenneth M. Kaplan, and/or assignee, and Brandon

24  Kaplan, and/or assignee (the "Original Buyer"), for the price of $ 4,550,000 .

25  In the event Original Buyer does not close the sale within the time limits provided for in the PSA

26

27  _____

[1] All terms not defined in this Order shall have the meanings ascribed to them in the Motion.

28

JMBM, er Mangels |sutler & Mitchell LLP

1   (as that term is defined below),   TING TSAI   which submitted

2   the last overbid immediately prior the successful over bid made by the Original Buyer to purchase

3   the 19th Street Property of $ 4,400,000   shall have the right to purchase the 19th

4   Street Property for its final overbid by executing the Original Buyer's PSA, as modified by its last

5   over bid and this Order, and shall close the sale within 20 calendar days of the Receiver cancelling

6   in writing the Original Buyer's PSA.

7   2.   Best Interests. The Court further finds that:

8   (a)   The proposed sale of the 19th Street Property as set forth in the Motion was

9   negotiated in good faith and at arm's length between the Receiver the Original Buyer and upon the

10   closing of escrow for the sale of the 19th Street Property, the Receiver shall be authorized to pay

11   the amounts owed to holders of any liens, encumbrances and interests which have been recorded

12   against the 19th Street Property as set forth in the Preliminary Title Report attached as Exhibit 6 to

13   the Declaration of Kevin Singer in support of the Motion ("Singer Decl.") and to transfer title to

14   the 19th Street Property as provided for in the San Francisco Purchase Agreement dated February

15   1, 2019, Addendum to San Francisco Purchase Agreement, Addendum to SFAR Purchase Sale

16   Agreement dated January 30, 2019, Seller Counter Offer 1 dated February 6, 2019, Contingency

17   Removal #1 dated March 1, 2019, and Addendum A (Addendum to Contingency Removal and

18   Approval of Documents) dated February 28, 2019 (collectively, the "PSA") attached as Exhibit 3

19   to the Singer Decl. for the purchase price of $3,650,000 set forth in the PSA (the "Purchase

20   Price");

21   (b)   The offer of the Original Buyer on the terms set forth in PSA is the best and

22   highest bid for the 19th Street Property. No better or higher bids for the assets to be sold by the

23   receiver were made during the public overbid conducted by the Court;

24   (c)   The proposed sale of the 19th Street Property is in the best interests of the

25   parties to this action and the receivership estate;

26   (d)   By closing escrow and taking title to the 19th Street Property, the Original

27   Buyer acknowledges that: (i) the Original Buyer has no recourse against the Receiver (or his

28   agents) for any claim or cause of action; (ii) the Original Buyer's sole and only recourse is against

1  the Original Buyer's title insurance policy, if applicable; and (iii) any actions taken by the

2  Receiver to sell the 19th Street Property shall not constitute a representation and warranty by the

3  Receiver as to any aspects of the sale of the 19th Street Property and the sale shall be "as is",

4  "where is" with no representations and/or warranties, shall not be subject to the provisions of Civil

5  Code §§ 896 and 897, and shall be without risk or liability to the Receiver and/or the receivership

6  estate. The above-entitled Court retains jurisdiction over any dispute that may arise involving the

7  Receiver with the sale of the 19th Street Property pursuant to the terms of the PSA approved of by

8  the Court; and

9         (e)    That certain Order Granting Motion of Umpqua Bank for Order:

10  (1) Instructing and Authorizing Receiver to Sell Real Property Assets of Receivership Estate; and

11  (2) Confirming Sale Procedures filed on October 12, 2018 (the "Sale Order") is hereby modified

12  to authorize overbids of at least $150,000 above the Purchase Price, with subsequent overbids to

13  be at least $150,000 in excess of the prior bid, with the Original Buyer having the right to match

14  any overbid, with the successful overbid buyer required to deliver a non-refundable deposit in the

15  amount of $114,000 in the form of a cashier's check payable to Orange Coast Title Company to

16  the Receiver.

17         Based upon the foregoing findings, the Court concludes that sale of the 19th Street

18  Property as proposed by the Receiver's Motion should be confirmed by the Court.

19         3.    Receiver's Actions. The Court further finds that the Receiver has acted in good

20  faith and pursuant to the instructions of the Court in carrying out the duties of his office in relation

21  to the proposed sale.

22         4.    Orders and Instructions. Based upon the foregoing findings and conclusions, the

23  Court instructs, authorizes, and orders as follows:

24         (a)    Notice of the Motion was proper to Defendant XELAN Prop 1, LLC and all

25  other parties in interest. The Motion is granted, any opposition to the Motion has been withdrawn

26  or is overruled and the sale to the Original Buyer on the terms set forth in the PSA is confirmed.

27         (b)    The Original Buyer's purchase of the 19th Street Property was conducted as

28  authorized by this Court pursuant to the Sale Order.

4

1      (c)    The Receiver shall execute any and all documents necessary to complete the

2  sale to the Original Buyer pursuant to the PSA and shall pay the proceeds of sale paid by the

3  Original Buyer pursuant to the PSA as follows: (i) the unpaid delinquent real estate taxes and pro-

4  rata real estate taxes owed by XELAN Prop 1, LLC to the City and County of San Francisco on

5  the 19th Street Property; (ii) to pay real estate commissions payable to Vanguard Properties in the

6  amount equal to 5.0% of the Purchase Price at closing of escrow; (iii) for reasonable closing costs

7  and escrow fees and title fees owed with respect to the sale of the 19th Street Property pursuant to

8  the PSA; (iv) the amounts owed by XELAN Prop 1, LLC to Umpqua Bank secured by that certain

9  Deed of Trust and Assignment of Rents and Security Agreement (and Fixture Filing) dated as of

10  June 13, 2013 executed by XELAN Prop 1, LLC and recorded on June 28, 2013 in the Official

11  Records of the San Francisco County Recorder's Office as Document No. DOC-2013-J69776; (v)

12  the amounts owed, if any, to the holders of the following liens, encumbrances, and interests

13  recorded against the 19th Street Property: (A) Abstract of Judgment recorded by David and

14  Caroline Green on April 23, 2018 in the Official Records of the San Francisco County Recorder's

15  Office as DOC-2018-K604682-00; (B) Abstract of Judgment recorded by the City and County of

16  San Francisco and the People of the State of California on June 7, 2018 in the Official Records of

17  the San Francisco County Recorder's Office as Document No. DOC-2018-K623991-00; and (C)

18  Abstract of Judgment recorded by City and County of San Francisco and the People of the State of

19  California on October 17, 2018 in the Official Records of the San Francisco County Recorder's

20  Office as Document No. DOC-2018-K683730-00; and (vi) any other liens which the Receiver

21  determines, in the exercise of his business judgment, must be paid in order to close the sale of the

22  19th Street Property to the Original Buyer on the terms set forth in the PSA, with the remaining

23  proceeds of sale to be held by the Receiver until further order of this Court to, inter alia, pay all

24  allowed claims filed against the receivership estate, to pay all unpaid Receiver's fees and expenses

25  due and owing to the Receiver until discharge of the Receiver and approval of his final accounting

26  pursuant to California Rule of Court 3.1184, , to pay all amounts, if any, ordered by this Court to

27  Dale Duncan and Marta Munoz Mendoza pursuant to that certain Order on Motion for Charging

28  Orders, Assignment Orders, Restraining Order and for Appointment of Receiver [on judicial

63606234v1

5

JMBM
ar Margels
outler & Mitchell ue

1  foreclosure of two properties held by Debtor Anne Kihagi's LLC: XELAN Prop 1, LLC] and that

2  certain Order on Motion for Charging Orders, Assignment Orders, Restraining Order and for

3  Appointment of Receiver [on pending non-judicial foreclosure of property held by Debtor Anne

4  Kihagi's LLC(s)] filed in the action entitled Dale Duncan, etc. v. Anne Kihagi, etc., et al., San

5  Francisco County Superior Court Case No. CGC-15-545655 and, thereafter, to pay the remaining

6  proceeds of sale, if any, to XELAN Prop 1, LLC.

7          (d)     The Original Buyer shall take good and clear title to the 19th Street

8  Property sold by the Receiver.

9          (e)     The Receiver is instructed, authorized, and ordered to forthwith complete

10  the sale of assets to the Original Buyer pursuant to the terms of the PSA.

11          (f)     Original Buyer's purchase of the 19th Street Property results from a legally

12  authorized properly noticed, non-collusive, non-fraudulent arms' length transaction, the Purchase

13  Price for the 19th Street Property (including under the terms of the PSA is fair and reasonable and

14  constitutes the highest and best Purchase Price for the 19th Street Property and the Original Buyer

15  is a good faith purchaser for value of the 19th Street Property.

16          (g)     The Receiver is instructed, authorized, and ordered to forthwith complete

17  the sale of assets to the Original Buyer pursuant to the terms of the PSA.  The PSA or any

18  documents or instruments related thereto maybe amended, or supplemented by the Original Buyer

19  and the Receiver without further order of this Court, provided such modifications, amendments or

20  supplements do not have a material adverse effect on the receivership estate.

21          (h)     Any licensed title insurer and the Original Buyer may rely on this Order as

22  authorizing the Receiver to transfer legal title to the 19th Street Property free and clear of all liens

23  and encumbrances.

24  ///

25  ///

26  ///

27  ///

28  ///

63606234v1

[PROPOSED] ORDER ON MOTION FOR ORDER:  (1) INSTRUCTING RECEIVER TO SELL, ETC.
[XELAN-19th STREET].- Original Buyer    Exhibit 4 Page 55

JMBM ar Mangels
outler & Mitchell ur

1           (i)     In the event a timely and proper appeal is filed from this Order, the

2  Receiver is authorized and directed to defend any such appeal, without further order of Court if he

3  elects to do so in the exercise of his business judgment.

4

5  DATED:  4 - 15 - 2019      JUDGE OF THE SUPERIOR COURT

6                          **CHARLES F. HAINES**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

63606234v1

[PROPOSED] ORDER ON MOTION FOR ORDER: (1) INSTRUCTING RECEIVER TO SELL, ETC.
[XELAN-19th STREET] - Original Buyer    Exhibit 4 Page 56

670

JMBM | Jeffer Mangels | Butler & Mitchell LLP

**LEGAL DESCRIPTION OF**
**4018-4022 19th Street, San Francisco, California**

Beginning at a point on the Northerly line of 19th Street, distant thereon 83 feet Westerly from the Westerly line of Noe Street; running thence Westerly along said line of 19th Street 42 feet; thence at a right angle Northerly 145 feet; thence at a right angle Easterly 42 feet; thence at a right angle Southerly 145 feet to the point of beginning, in the City of San Francisco, County of San Francisco, State of California.

Being a portion of Mission Block No. 115.

# EXHIBIT A

[PROPOSED] ORDER ON MOTION FOR ORDER:  (1) INSTRUCTING RECEIVER TO SELL, ETC.
[XELAN-19th STREET] - Original Buyer

Exhibit 4 Page 57

671

*Exhibit 5*

**CERTIFIED COPY**

Stewart Title of California, Inc.

RECORDING REQUESTED BY
Stewart Title

Assessor's: Lot 018, Block 3583

When Recorded Mail to:

Lin Dee Liu Services
41368 Danzon Court
Fremont, CA 94539

20199K75137000006
San Francisco Assessor-Recorder
Carmen Chu, Assessor-Recorder
DOC 2019-K751370-00
Acct 5003-Stewart Title Company
Friday, APR 05, 2019 13:13:21
Ttl Pd  $196.00    Nbr-0005977892
ofa/RE/2-6

## DEED OF TRUST AND ASSIGNMENT OF RENT

This Deed of Trust is dated April 1, 2019
**TRUSTOR: XELAN PROP 1, LLC, a California Limited Liability Company**
Trustor's address is P.O. Box 691889, Los Angeles, CA 90069
**TRUSTEE:** County Records Research
**BENEFICIARY:** Yu Sheng Victor Liu and Lin Dee Liu, husband & wife as to 700,000/2,700,000 interest, Eric Liu, a married man as to 800,000/2,700,000 interest, Xiang Liu, a married woman as to 500,000/2,700,000 interest and Frank Chiou, a married man as to 700,000/2,700,000 interest

Trustor owes Beneficiary the principal sum of **$2,700,000.00**. This debt is evidenced by a PROMISSORY NOTE dated April 1, 2019 (the "Note").

This Deed of Trust secures to Beneficiary:
(1)     Performance of each agreement and covenant of Trustor incorporated by reference, contained in the Note or contained in this Deed of Trust;
(2)     The repayment of the debt evidenced by the Note, with interest, and all amounts which shall become due under the Note, and all extensions, modifications, or renewals of the Note;
(3)     The payment of all sums, with interest, advanced under any provision of this Deed of Trust.

As security for the performance of Trustor's obligations secured by this Deed of Trust, Trustor IRREVOCABLY GRANTS, TRANSFERS, AND ASSIGNS to TRUSTEE IN TRUST, with POWER OF SALE, the following property in the City of San Francisco, State of California, (the "Property"), described as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.**

Further Security: Trustor hereby assigns to Beneficiary, as a further security for the indebtedness secured hereby, Trustor's interest in all plans, permits, specifications and all third party reports, studies, testing related to the property.

ACCELERATION ON TRANSFER OR ENCUMBRANCE OF THE PROPERTY:

DEED OF TRUST (VERSION 10/14/96) PAGE 1 OF 5

Exhibit _5_  Page _58_

# CERTIFIED COPY

If as to any or all of Trustor's interest in the Property, Trustor sells, transfers, contracts to sell, gives an option to purchase, conveys, leases for a term exceeding 10 years, encumbers, or alienates the Property; or causes or allows the Property to be subject to a junior lien or encumbrance; or if any or all of the title of the Trustor is impaired or divested, whether voluntarily or involuntarily; or if title to the Property be subject to any lien or charge, voluntary or involuntary, contractual or statutory, without the written consent of Beneficiary being first had and obtained; then Beneficiary shall have the right of acceleration, at its option, to declare the Note secured by this Deed of Trust, irrespective of the maturity date expressed therein, and without demand or notice, immediately due and payable. No waiver of this right shall be effective unless it is in writing. Consent by Beneficiary to one such transaction shall not constitute waiver of the right to require such consent in succeeding transactions.

TO PROTECT the security of this Deed of Trust, and with respect to the Property described above, Trustor expressly makes each of all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth as follows:

(1)    GOOD REPAIR:    To keep the Property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon; to keep all buildings, structures and other improvements now or hereafter situated on the above described Property at all times entirely free of dry rot, fungus, rust, decay, termites, beetles, and any other destructive insects or elements; to pay when due all claims for labor performed and materials furnished therefore to comply with all laws affecting the Property or requiring any alterations or improvements to be made thereon; not to commit waste or permit waste thereof; not to commit, suffer or permit any act upon the Property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune, and do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumeration's herein not excluding the general. Either Beneficiary or Trustee, or both, at any time during the continuation of the Deed of Trust, may enter upon and inspect the Property, provided such entry is reasonable as to time and manner.

(2)    HAZARD INSURANCE:    To provide, maintain and deliver to Beneficiary hazard insurance, including, without limitation, insurance against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Beneficiary requires insurance. Insurance for personal injury claims is required. All insurance shall be satisfactory to Beneficiary and shall be for an amount at least equal to the amount secured by this Deed of Trust. Such insurance shall contain a provision for loss payable to Beneficiary and shall contain a standard mortgage clause. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice. Beneficiary shall have the right to hold all policies and renewals. Beneficiary may make proof of loss if not made promptly by Trustor. Trustor hereby assigns to Beneficiary the proceeds of any and all insurance policies covering the Property, whether or not that insurance is required by Beneficiary. Trustor shall pay all insurance premiums required herein including, without limitation, any insurance obtained by Beneficiary due to Trustor's failure to secure insurance. Insurance shall be required regardless of the loan amount as compared to the value of the Property.

(3)    LEGAL PROCEEDINGS:    To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; to pay all costs, expenses and attorney's fees incurred by Beneficiary in any action or proceeding in which Beneficiary is named as a party which affects this Deed of Trust and/or the rights or powers of the Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding instituted by Beneficiary or Trustee to protect or enforce the security of this Deed of Trust or the obligations secured hereby.

(4)    TAXES AND LIENS:    To pay before delinquency all taxes and assessments affecting the Property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on the Property or any part appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

(5)    TRUSTOR'S FAILURE:    Should Trustor fail to make any payments or to do any act as herein provided, then Beneficiary or Trustee, but without obligation to do so and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as

Exhibit _5_ Page _59_

674

# CERTIFIED COPY

either may deem necessary to protect the security thereof, Beneficiary or Trustee being authorized to enter upon the Property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment or either appears to be prior or superior thereto; and in exercising any such powers, pay necessary expenses, employ counsel and pay counsel's reasonable fees.

(6)　ADVANCES: To pay immediately and without demand all sums, including attorneys' fees, advanced or expended by Beneficiary or Trustee, with interest from the date of expenditure at the rate prescribed in the Note. Should any additional funds be advanced on any note secured by a Trust Deed now of record, or should any change be made in the time or manner of paying such note, or should any other action be taken by the undersigned with respect to such note whereby the security herein provided for shall be impaired in any manner whatsoever, then the Note secured hereby shall, at the option of the Beneficiary, immediately become due and payable. All advances and expenditures incurred by Beneficiary and/or trustee shall be added to the amount due under the Note and shall accrue interest at the rate of interest under the Note.

(7)　CONDEMNATION: Any award of damages or sums received in settlement in connection with any condemnation for public use of or any injury to the Property or any part thereof from any cause, is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(8)　LEASEHOLD: If the security for this Deed of Trust is a leasehold estate, Trustor agrees not to amend, change or modify his leasehold interest, or any of the terms thereof, or agree to do so, without the written consent of the Beneficiary being first obtained. In the event of a violation of this provision, Beneficiary shall have the right, at its option, to declare all sums secured hereby immediately due and payable. .

(9)　PAYMENTS: By accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure to so pay.

Notwithstanding any provision herein or in the Note secured hereby to the contrary, Beneficiary or Trustee shall have the absolute right to direct manner, order and amount in which payments shall be applied upon or allocated among the various items composing Trustor's indebtedness secured hereby.

In the event of default in the payment of any of the moneys to be paid under the terms of the Note secured hereby or in the performance of any of the covenants and obligations of this Deed of Trust, then any funds in the possession of the Beneficiary, or other credits to which the Trustor would otherwise be entitled may, at the option of the Beneficiary, be applied to the payment of any obligation secured hereby in such order as the Beneficiary may, in its sole discretion determine.

(10)　POWER OF TRUSTEE: At any time or from time to time, without liability therefore and without notice upon written request of Beneficiary and presentation of this Deed and the Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect the Property or the title thereto, or purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee.

(11)　RECONVEYANCE: Upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and the Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as the "person or persons legally entitled thereto". The Trustee may destroy the Note, this Deed of Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance. Trustor shall pay the Trustee's fee for issuance of a reconveyance which shall be $65.00 or the maximum amount allowed by law, whichever is greater.

(12)　MISCELLANEOUS: The Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner or holder, including pledgees, of the Note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural. As used herein, "fixtures" includes but is not limited to carpeting, built-in appliances, draperies and drapery rods, shrubs, water tanks, plumbing, machinery, air conditions, ducts, and the like.

(13)　TRUST: Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public

Exhibit 5  Page 60

675

## CERTIFIED COPY

record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

(14)    STATEMENTS:  Trustor agrees to pay Beneficiary or his agent, the maximum legal charge for each statement regarding the Trust Deed obligation herein.  A statement includes but is not limited to a Beneficiary Statement, Credit Statement, Verification of Mortgage and any statement evidencing the debt.

(15)    PARTIAL PAYMENT:  Acceptance by Beneficiary of a partial payment on account, after Notice of Default has been recorded, shall not be construed as curing the default nor as a waiver of past or future delinquencies.

(16)    DEFAULT AND FORECLOSURE:  Upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice. Beneficiary also shall deposit with Trustee this Deed, the Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following the recordation of such Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in such Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which the Property, if consisting of several lots or parcels, shall be sole), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the Property to be sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including the Trustor, Trustee, or Beneficiary as hereinafter defined may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

(17)    SUBSTITUTION OF TRUSTEE:  Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where the Property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties.

Such instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.  If Notice of Default shall have been recorded, this power of substitution cannot be exercised until after the costs, fees and expenses of the then acting Trustee shall have been paid to such Trustee, who shall endorse receipt thereof upon such instrument of substitution.  The procedure herein provided for substitution of Trustees shall not be exclusive of other provisions for substitution provided by law.

(18)    CC&R'S:  If the security under this Deed of Trust is a condominium or a community apartment or planned development project, Trustor agrees to perform each and every obligation of the owner of such condominium or interest in such project under the declaration of covenants, conditions and restrictions or bylaws or regulations pertaining to such condominium or project.  Upon the request of Beneficiary, Trustor agrees to enforce against other owners in such condominium or project each and every obligation to be performed by them, if the same have not been performed or if valid legal steps have not been taken to enforce such performance within ninety (90) days after such request is made.

(19)    COVENANTS AND REPRESENTATIONS BY TRUSTOR:  Trustor covenants and represents that Trustor is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for matters disclosed in writing to Beneficiary.  Trustor covenants and represents to Beneficiary that Trustor has provided written disclosure to Beneficiary of all bankruptcy petitions which Trustor has filed at any time and that Trustor is not a debtor under any bankruptcy.  In the event that Trustor has filed a petition in bankruptcy or files a petition in bankruptcy at any time prior to the perfection of a secured lien

DEED OF TRUST (VERSION 10/14/96) PAGE 4 OF 5

Exhibit 5  Page 61

676

CERTIFIED COPY

evidenced by this Deed of Trust against the Property, then upon execution of this Deed of Trust Trustor transfers title to the Property to Beneficiary and such transfer shall be deemed a transfer under Bankruptcy Code Section 549.

This undersigned Trustor(s), requests that a copy of any Notice of Default and any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

TRUSTOR(S)

By: Anne Kihagi, Manager
XELAN PROP 1, a California Limited Liability Company

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signs the document to which this certificate is attached and not the truthfulness, accuracy or validity of that document.

---

State of California, County of _____ LOS ANGELES
On April 4, 2019 before me, LANA BROWN, A NOTARY PUBLIC (Public Notary)
personally appeared ANNe Kihagi
_____, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to this deed of trust and acknowledged to me that he executed this deed of trust in his authorized capacity, and that by his signature on this deed of trust the person, or the entity upon behalf of which the person acted, executed this Deed of Trust.

I certify under PENALTY OF PREJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary's Signature

LANA BROWN
Commission # 2119104
Notary Public - California
Los Angeles County
My Comm. Expires Aug 8, 2019

DEED OF TRUST (VERSION 10/14/96) PAGE 5 OF 5

Exhibit _5_ Page _62_

# CERTIFIED COPY

## LEGAL DESCRIPTION

Real property in the City of San Francisco, County of San Francisco, State of California, described as follows:

BEGINNING AT A POINT ON THE NORTHERLY LINE OF 19TH STREET, DISTANT THEREON 83 FEET WESTERLY FROM THE WESTERLY LINE OF NOE STREET; RUNNING THENCE WESTERLY ALONG SAID LINE OF 19TH STREET 42 FEET; THENCE AT A RIGHT ANGLE NORTHERLY 145 FEET; THENCE AT A RIGHT ANGLE EASTERLY 42 FEET; THENCE AT A RIGHT ANGLE SOUTHERLY 145 FEET TO THE POINT OF BEGINNING.

BEING A PORTION OF MISSION BLOCK NO. 115.

Assessor's: **Lot 018; Block 3583**



Rev. NAT 8/15/15

Order No.  92002-1619037-19

Exhibit  5  Page 63

678

## CERTIFIED COPY

This is a true certified copy of the record
if it bears the seal, imprinted in purple ink
of the Assessor-Reorder

 APR 1 1 2019    CARMEN CHU

ASSESSOR - RECORDER
SAN FRANCISCO COUNTY CALIFORNIA
BY_____

Exhibit 5 Page 64

# *Exhibit 6*

## Blake Alsbrook

| | |
|---|---|
| **From:** | OCTLSG Sales <OCTLSGSales@octitle.com> |
| **Sent:** | Thursday, April 18, 2019 4:34 PM |
| **To:** | Blake Alsbrook; OCTLSG Sales; David Schumacher - Orange Coast Title Company; Steve Fernando - Orange Coast Title Company; Annette Soto - Orange Coast Title Company; Ricardo Baldenegro - Orange Coast Title Company |
| **Cc:** | kevin@receivershipspecialists.com; David Pasternak; Edward Deleski; Rick Marquis |
| **Subject:** | RE: Umpqua Bank, etc. v. XELAN Prop 1, LLC, San Francisco County Superior Court Case No. CGC-18-564941 - XELAN - 19th Street New Deed of Trust and Assignment of Rent |

Hello Blake,

Just as an fyi Lin Dee called us back and she does have our request (I also emailed it to her today LinDeeLiu@comcast.net); however, she does not want to issue a demand just yet...stating something about waiting to hear back on how the mediation goes?



  

**Richard Yaria**
Escrow Officer
Orange Coast Title Company
2461 W. La Palma Ave, Suite 120 | Anaheim, CA 92801
Phone: 714-822-3235 | Fax: 714-864-3172
Email: octlsgsales@octitle.com

Join Us
in the fight
against
Wire Fraud

**\*\*Be aware!  Online banking fraud is on the rise.  If you receive an email containing WIRE TRANSFER INSTRUCTIONS please "call" escrow immediately to verify the information prior to sending funds.\*\***

*\*\*\* Please note our office is moving effective Monday, April 15th. Our new address will be: 2461 W. La Palma Ave., Suite 120, Anaheim, CA 92801\*\*\**

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and is non-public in nature and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure, dissemination or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system and promptly destroy any copies made of this electronic message. Thank you.

**From:** Blake Alsbrook [mailto:BCA@PasLaw.com]
**Sent:** Wednesday, April 17, 2019 1:43 PM
**To:** OCTLSG Sales; David Schumacher - Orange Coast Title Company; Steve Fernando - Orange Coast Title Company; Annette Soto - Orange Coast Title Company; Ricardo Baldenegro - Orange Coast Title Company
**Cc:** kevin@receivershipspecialists.com; David Pasternak; Edward Deleski; Rick Marquis
**Subject:** RE: Umpqua Bank, etc. v. XELAN Prop 1, LLC, San Francisco County Superior Court Case No. CGC-18-564941 - XELAN - 19th Street New Deed of Trust and Assignment of Rent

ank you!!

Exhibit 6  Page 65

# Exhibit 7

## Blake Alsbrook

| | |
|---|---|
| **From:** | Kevin Singer <kevin@receivershipspecialists.com> |
| **Sent:** | Thursday, April 18, 2019 1:30 PM |
| **To:** | Blake Alsbrook |
| **Subject:** | FW: CGC-18-564941 / 4018-4022 19th St., San Francisco, CA |
| **Attachments:** | Xelan - Invoice.04162019.pdf; Xelan - $1.25M signed DOT.pdf; Xelan - $850K signed DOT.pdf; Xelan - Proof of Funding.pdf; 2019.04.15 - Order.pdf |

**Kevin Singer**
Court Receiver

| | |
|---|---|
| Southern California | (310) 552-9064 |
| Northern California | (415) 848-2984 |
| Arizona | (602) 343-1889 |
| Nevada | (702) 562-4230 |
| Colorado | (303) 386-7193 |
| Cell Phone | (323) 864-4214 |

www.ReceivershipSpecialists.com

~ Information contained in this e-mail message may be privileged, confidential, and protected from disclosure. This information may not shared with other people or posted
  electronic format for anyone else to read. If you are not the intended recipient, any dissemination, distribution, or copying is strictly prohibited. If you think that you have
  ...ed this e-mail message in error, please e-mail the sender

**From:** Teresa Litt <tlitt@selectmortgageca.com>
**Sent:** Tuesday, April 16, 2019 5:33 PM
**To:** Kevin Singer <kevin@receivershipspecialists.com>
**Cc:** David Litt <dlitt@selectmortgageca.com>
**Subject:** CGC-18-564941 / 4018-4022 19th St., San Francisco, CA

Hello Kevin,

Pursuant to the attached Order, Select Mortgage is making its formal claim against the receivership estate for those amounts indicated in our attached Invoice (with supporting documentation) to Xelan Prop 1, LLC. Our company arranged and funded the $2,100,000 refinance of the referenced property that failed due to the borrower's inaction.

Please advise if there is anything further you should require.

My Best,
Teresa Litt
Mortgage Loan Broker / Real Estate Broker
CA, Dept. of Real Estate 01385234
NMLS# 238932

...ect Mortgage, Inc.
dba Select Properties
23564 Calabasas Rd., Ste. 208

1

Exhibit 7 Page 66

Calabasas, CA  91302
Real Estate Broker – CA, Dept. of Real Estate 02007009
P͘   ͘# 1599866
(8͘͘) 225-1500 office
(818) 225-1584 fax
(818) 929-4439 direct
https://davidlitt.zipforhome.com/



Confidentiality Notice:  This electronic transmission and its contents are legally privileged and confidential information, and intended solely for the
use of the addressee.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution,
copying or other use of this message and its contents is strictly prohibited.  If you have received this transmission in error, please reply to us
immediately and delete this message from your directory.

Exhibit __7__ Page __67__

684

Select Mortgage, Inc.

23564 Calabasas Rd., Ste. 208
Calabasas, CA 91302

# Invoice

| Date | Invoice # |
|------|-----------|
| 4/16/2019 | 1 |

| Bill To |
|---------|
| Xelan Prop 1, LLC<br>458 Doheny Dr., #1889<br>Los Angeles, CA  900048 |

| Description | Amount |
|-------------|--------|
| Document Preparation Fee | 1,100.00 |
| Credit Report Fee | 28.00 |
| Mortgage Brokerage Fee | 84,000.00 |
| Notary Fee | 325.00 |
| Property Inspection - Travel Expenses | 1,062.64 |
| cessing Fee | 750.00 |

Property Address:4018-4022 19th St., San Francisco, CA 94114;
ms - Due Upon Receipt

| **Total** | $87,265.64 |
|-----------|------------|

Exhibit 7 Page 68

685

Select Mortgage, Inc., LIC# 02007009, NMLS# 1599866

## MORTGAGE BROKERAGE BUSINESS CONTRACT

Anne Kihagi/Xelan Prop 1, LLC

(hereinafter called Borrower), employs _____ **Select Mortgage, Inc.** _____
(hereinafter called Business) to obtain a mortgage loan commitment (hereinafter called Commitment) within **1 Day** days from the date hereof and acknowledges that Business cannot make loans or commitments or guarantee acceptance into specific programs, terms or conditions of any loan. However, Business may issue a rate lock-in or commitment on behalf of a lender to the Borrower.

### I. PROPERTY:
Address:  **4018 - 4022 19th Street**
        **San Francisco, CA 94114**

Borrower's estimates of fair market value: $    **3,650,000**
Borrower's estimates of the balances on any existing mortgage loan: $    **1,831,460.61**

### II. TERMS OF LOAN APPLICATION:
Loan Amount: $   **2,100,000**    Interest Rate:   **10.500**   %     Loan Term/Due In:   **24 months / 24**   months
Monthly Payment: $   **18,375.00**
Loan Type:   [✓] First Mortgage     [ ] Second/Junior Mortgage

### III. MORTGAGE BROKERAGE FEE
Business, in consideration of the Borrower's agreement to pay a mortgage brokerage fee along with actual costs incurred in connection with this loan, agrees to exert its best efforts to obtain a bona fide mortgage loan commitment in accordance with the terms (or better terms) and conditions set forth herein. The Business and its associates or employees shall be held harmless from any liability resulting from failure to obtain said loan commitment.

Borrower hereby agrees to pay the actual costs as estimated herein and Borrower agrees to pay Business a mortgage brokerage fee of $  **84,000.00** for obtaining the commitment.

Alternatively, Business may receive compensation from Lender based on the mortgage program and terms Borrower has engaged Business to obtain in securing the commitment and that Business will receive a sum in range of     % to     % of the total loan amount. This compensation, the exact amount of which will be disclosed at the time of closing, is the total brokerage fee due Business.

In no event will the brokerage fee or lender compensation exceed the maximum fee permitted by the applicable state law.

### IV. APPLICATION FEE
An application fee is charged for the initial cost of processing, verifying and preparing your loan package to submit to a lender for commitment, and will be credited against the amount the Borrower owes if closing occurs. This fee is [ ] Refundable [✓] Non-refundable [ ] Applicable to your closing costs at the time of the settlement of your loan. Business acknowledges the receipt of $   **1,000.00**   as an Application Fee.

### V. DEPOSIT
Business acknowledge the deposit of $    **0.00**   will be used toward the costs incurred by the Business, or by third party, on behalf of Borrower, to pay expenses necessary to secure the mortgage loan commitment. Actual costs incurred by the Business for items listed on Good Faith Estimate are non-refundable, even if the mortgage loan commitment is not received. In the event of default by the Borrower, Business is authorized to immediately disburse from the deposit all sums then due Business or any third party. The disbursement is not a waiver of any other sums due Business by Borrower, as more fully enumerated herein. Money retained by Business as the deposit shall be returned to the Borrower, within 60 days of disposition of the loan, in accordance with the following:

    (a) the services for which the money is expended are not performed.
    (b) the services for which the money is expended are performed, but there is an excess amount that would be paid as
       brokerage fee but this commitment is not obtained.

### VI. SERVICES TO BE PROVIDED BY MORTGAGE BROKERAGE BUSINESS
In consideration for Business earning its fee, the services to be provided by Business are: assembling information, compiling files and completing credit application for borrower(s), processing the application file including verifying of information received and ordering vendor reports, preparing and submitting the completed file for conditional loan commitment between borrower(s) and lender, and any incidental services necessary to obtain commitment including courier, express mail, photographs, and telephone toll charges.

| | | | |
|---|---|---|---|
| _Akihagi_    Manager | 03/22/19 | **Select Mortgage, Inc.** | 02007009 |
| Applicant   **Anne Kihagi/Xelan Prop 1, LLC** | Date | Mortgage Brokerage Business | License # |

| | | | |
|---|---|---|---|
| pplicant | Date | By | Date |

Calyx Form - mbbc.frm (4/12)                Page 1 of 2

Exhibit **7** Page**69**

Select Mortgage, Inc., LIC# 02007009, NMLS# 1599866

# STANDARDS AND DISCLOSURES

**COMMITMENT:** Brokerage Business hereby agrees to act on behalf of Borrower to secure a mortgage loan commitment. Brokerage Business cannot guarantee acceptance into any particular loan program or promise that any specific loan terms or conditions will be obtained. Receipt of a mortgage loan commitment by Brokerage Business satisfies Brokerage Businesses obligation under the Mortgage Brokerage Business Contract and Good Faith Estimate of Borrower's Costs and the terms of this contract are deemed fulfilled upon receipt of the mortgage loan commitment. Brokerage Business cannot make a mortgage loan or a Mortgage Loan Commitment. A Commitment may, however, be passed through to the Borrower if received from a lender. The term "Commitment" shall mean a written or oral Commitment received by the Brokerage Business, unless otherwise agreed in writing between Brokerage Business and Borrower. Upon demand by the Borrower, the Brokerage Business shall produce for the Borrower's inspection evidence of the mortgage loan commitment.

**AGENCY; NON-LIABILITY FOR LENDER'S ACTS:** Borrower acknowledges that Brokerage Business is acting as an 'agent' on behalf of the Borrower in securing a mortgage commitment pursuant to this Agreement. Borrower acknowledges that Brokerage Business shall not be responsible for any errors of the Lender or Investor nor for any term or condition of the loan documentation that may be contrary to any or federal law. Brokerage Business shall not be responsible for any nonperformance of a commitment or mortgage by any Lender or Investor.

**LITIGATION:** In the event of any litigation arising out of this Agreement, Brokerage Business shall be entitled to all costs incurred, including attorney's fees, whether before trial, at trial, on appeal, or in any other administrative or quasi-judicial proceedings.

**ADDITIONAL CLAUSES:** If not precluded by the provisions of this Agreement, any loan commitment and loan obtained by Brokerage Business may contain such additional clauses or provisions as the Lender may request including but not limited to, nonassumable clauses, late fee clauses and prepayment penalties.

**TIME FOR PAYMENT:** Unless otherwise agreed between Brokerage Business and Borrower, the mortgage brokerage fee shall be due and payable in full upon delivery to the Borrower of mortgage loan commitment from the Lender or Investor, or may be paid at closing, if agreed to by Brokerage Business.

**DECISION:** In applying for this loan, Borrower acknowledges that Borrower has reviewed his personal and financial situation and that it is in Borrower's best interest to proceed with the loan. Borrower further acknowledges that Borrower has not relied on the advice of the Mortgage Brokerage Business or its colleagues as to wisdom of doing so.

**GOOD FAITH ESTIMATE OF COSTS:** The estimated costs stated may be expressed as a range of possible costs and can be charged only when such costs have actually been incurred in connection with securing the loan or loan commitment. Actual costs incurred for items which include, but are not limited to, express mail fees, long distance calls and photographs will be paid by Borrower unless otherwise stated herein.

**TITLE:** Borrower represents and warrants that he is the fee simple title holder to the property described in this Agreement and there are no liens, judgements, unpaid taxes or mortgages which will effect title to the property except

Borrower agrees to pay all costs necessary to clear any defect if status of the title differs from the representation made herein .

**DEFAULT:** If commitment is secured and title is not found to be good, marketable and insurable by the attorney or title company acting for the lender, or the Borrower refuses to execute and deliver the documents required by the lender, or in any other way fails to comply with this Agreement, or if for any reason the loan referred to herein cannot be closed through no fault of the Brokerage Business, Borrower acknowledges that the full brokerage fee has been earned by Brokerage Business and agrees to immediately pay same plus any and all costs incurred on Borrower's behalf.

**DISCLOSURE:** Borrower acknowledges that Brokerage Business has advised him any existing business relationship Brokerage Business has with any vendor. Borrower also acknowledges that Lender may require certain preapproved vendors be used exclusively for services required by this agreement. Brokerage Business has no business relationship with any vendor except as may be listed on attached Provider Relationship form.

**SEVERABILITY OF CLAUSES CONTAINED HEREIN:** In the event that any part or portion of this Agreement is held invalid or unlawful through any administrative, quasi-judicial, or judicial proceeding, the invalidity or illegality thereof shall not effect the validity of this Agreement as a whole and the other provisions and terms contained herein shall remain in full force and effect as if the illegal or invalid provision had been eliminated.

| Akiheg   Manager | 03/22/19 | | |
|---|---|---|---|
| Applicant  Anne(Ki)hagi/Xelan Prop 1, LLC | Date | Applicant | Date |

Calyx Form - mbbc2.frm (04/12)                    Page 2 of 2

Exhibit 7  Page 70

## Borrower Signature Acknowledgement and Authorization

Privacy Act Notice: This information is to be used by the agency collecting it or its assignees in determining whether you qualify as a prospective mortgagor under its program. It will not be disclosed outside the agency except as required and permitted by law. You do not have to provide this information, but if you do not your application for approval as a prospective mortgagor or borrower may be delayed or rejected. The information requested in this form is authorized by Title 38, USC, Chapter 37(if VA), BY 12 USC, Section 1701 et. seq. (if HUD/FHA); by 42 USC, Section 1452b (if HUD/CPD); and Title 42 USC, 1471 et. seq. or 7 USC, 1921 et seq. (if USDA/FmHA)

| 1. Borrower(s): (Print full names here) | 2. Name and address of Lender/Broker |
|---|---|
| Xelan Prop 1 lle. | Select Mortgage, Inc. 23564 Calabasas Rd., Ste. 208 Calabasas, CA 91302 p (818) 225-1500 - f (818) 225-1584 CalBRE License No. 02007009 NMLS No. 1599866 Email: debbie@selectmortgageca.com |
| 3. Date  8/1/19 | 4. Loan Number |

I/we hereby authorize the Lender/Broker to process our Loan Application and to obtain all documentation needed and order all reports/services required to obtain loan approval, such as, but not limited to: credit, appraisal, messenger, past and present employment earnings records, mortgage and landlord references, financial/bank statements and other documents needed to process my mortgage loan application.  I/we are fully aware that fees will be incurred for necessary reports and services related to our application process, including, but not limited to, credit report fees, appraisal fees, processing fees, notary and signing fees, escrow fees, demand fees, and document preparation fees.  I/we accept all responsibility for payment of these fees upon demand of same.  In the event the Lender/Broker has obtained loan approval, in addition to these fees, I/we further accept all responsibility for payment of the Broker's loan origination fee as disclosed in the Loan Estimate and Closing Disclosure.  The information the Lender/Broker obtains is only to be used in the processing of my/our application for a mortgage loan.

I/we certify, under the penalty of perjury, that all documentation given in regards to this application are true and correct copies of the originals.  Lender/Broker accepts no responsibility as to the validity of documentation provided by the undersigned.

To protect against unauthorized access to or use of the borrower's information, Broker will shred papers containing consumer report information so that the information cannot be read or reconstructed, after the required timeframe for retention.

By providing my email address below, I agree to receive electronic communications from Select Mortgage, and the lender, for the purpose of this loan application process.

It is understood that a copy of this form will also serve as an original authorization.

Date:  3/1/19

| | |
|---|---|
| Borrower Signature   Xelean Prop lle  Tew #1 | Co-Borrower Signature |
| S.S.N. | S.S.N. |
| D.O.B. | D.O.B. |
| Current Address  458 Doheny Dr # 1884 | Current Address |
| City  Los Angeles   State  CA   Zip  90048 | City   State   Zip |
| Home Phone | Home Phone |
| Business Phone  323) 244-9178 | Business Phone |
| Mobile Phone  84147 AC@gmail.com | Mobile Phone |
| Email | Email |

Exhibit  7  Page  71
688

3/29/2019                                                    Report Invoice



**Advantage Credit**
Credit Reporting Services

32065 CASTLE COURT SUITE 300
EVERGREEN, CO 80439
Tel: 800-670-7993
Fax: 800-670-8067

3/29/2019

SELECT MORTGAGE, INC. #7032
23564 CALABASAS RD STE 208
CALABASAS, CA 91302

| Date | File # | Name | Description | Payments | Charges |
|------|--------|------|-------------|----------|---------|
| 3/23/2019 | 4931814 | KIHAGI, ANNE | 3BUR | $0.00 | $28.00 |

| | |
|---|---|
| Total Charges: | $28.00 |
| Taxes: | $0.00 |
| Total Payments: | $0.00 |
| Amount Due: | $28.00 |

*Note: If paying by check, please include the invoice or report number on the check.*

7891 Port Arthur Drive
Eastvale, CA 92880
714-797-8161
jessoncall@gmail.com

# On Call Notary

# Invoice

| Bill To: | Maria Jacobsen | Invoice No: | 9655 |
| | mjacobsen@nat.com | Date: | 03/28/2019 |
| | North American Title | | |
| | 6 Hutton Centre Drive #550 | | |
| | Santa Ana, CA 92707 | | |

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| Docs signing first and second- Xelan Prop 1619037 | 1 | $325.00 | $325.00 |

| | | |
|---|---|---|
| Subtotal | | $325.00 |
| TAX 0% | | $0.00 |
| Total | | $325.00 |
| PAID | | $0.00 |

| Balance Due | $325.00 |
|---|---|

Notes

Please send payment to:

On Call Notary
7891 Port Arthur Drive
Eastvale, CA 92880

1 / 1

Exhibit _7_ Page _73_

690

## PLM LOAN PROCESSING CENTER, INC.
46 N. Second Street
Campbell, CA  95008

# DEMAND

ERIN TWEEDY
NORTH AMERICAN TITLE COMPANY                    Escrow # 92002-1619037-19
3090 BRISTOL STREET #190
COSTA MESA, CA 92626

Please collect and issue **separate check** on behalf of **PLM Loan Processing Center, Inc.**

Document Preparation fee                              $550.00
Credit Report fee
Appraisal fee
Processing fee
Document Redraw fee

                    **Total Amount Due:**        $550.00

---

Mail Check To:        **PLM LOAN PROCESSING CENTER, INC.**
46 N. Second Street
Campbell, CA  95008
Attn: Doc Drawing Dept.
CALDRE # 01858761; NMLS # 945371

Borrower:  XELAN PROP 1, LLC, A CALIFORNIA LIMITED
                LIABILITY COMPANY

Loan No.   SMI18172

Address:   4018-4022 19TH STREET
                SAN FRANCISCO, CA  94114

Broker:     SELECT MORTGAGE, INC.

APPROVED
BY: _____
BY: _____
        3/17/19

Exhibit  7  Page  74

691

*2nd*

## PLM LOAN PROCESSING CENTER, INC.
46 N. Second Street
Campbell, CA  95008

# DEMAND

ERIC TWEEDY
NORTH AMERICAN TITLE COMPANY                    Escrow # 92002-1619037-19
3090 BRISTOL STREET #190
COSTA MESA, CA 92626

Please collect and issue **separate check** on behalf of **PLM Loan Processing Center, Inc.**

Document Preparation fee                            $550.00
Credit Report fee
Appraisal fee
Processing fee
Document Redraw fee

                     **Total Amount Due:**        $550.00

---

Mail Check To:    **PLM LOAN PROCESSING CENTER, INC.**
                  46 N. Second Street
                  Campbell, CA  95008
                  Attn: Doc Drawing Dept.
                  CALDRE # 01858761; NMLS # 945371

         Borrower:   XELAN PROP 1, LLC, A CALIFORNIA LIMITED
                     LIABILITY COMPANY

         Loan No.    SMI18173

         Address:    4018-4022 19TH STREET
                     SAN FRANCISCO, CA  94114

         Broker:     SELECT MORTGAGE, INC.

APPROVED
BY: _____
BY: _____
    03/27/69

Exhibit 7  Page 75

692

# *Exhibit 8*

## Blake Alsbrook

| | |
|---|---|
| F..... | Steve Fernando - Orange Coast Title Company <stevef@octitle.com> |
| **Sent:** | Thursday, April 18, 2019 2:23 PM |
| **To:** | Blake Alsbrook |
| **Cc:** | Kevin Singer |
| **Subject:** | RE: Make sure you forward the emails to both me and Kevin Singer |

Blake – please see below.  This was forwarded on to UW as well.

**From:** Anna [mailto:94147a@gmail.com]
**Sent:** Wednesday, April 17, 2019 9:00 PM
**To:** Steve Fernando - Orange Coast Title Company; Mari Hayes - Orange Coast Title Company; Annette Soto - Orange Coast Title Company; Stacy Switala - Orange Coast Title Company
**Subject:** Re: WARNING – 4018 19th Street - APPEAL FILED AND AUTOMATIC STAY ENFORCED

Hello

Email cutoff:

If you attempt to ignore my payment as satisfaction for the loan, and instead pursue your closing to my detriment, Xelan will have no recourse but to add you as the 4th leg in its damage case.

⌐ ⌐nk you so much

Anna
323 244 9178

On Wed, Apr 17, 2019 at 8:57 PM Anna <94147a@gmail.com> wrote:
Hi Steve and Marih,

I am sure by now you have learned that you sold my Filbert Property during an automatic APPEAL stay. Further, you were on notice on more than 10 occasions of the issues on the file - but you disregarded all of the warnings and moved to close the escrow.

We hope that this time you will be very mindful and investigate the law.

Just in case you didn't know - Umpqua's attorney admitted in Court on April 10, 2019 that this was NOT a foreclosure. In essence, you are all in no man's land and you are creating your own laws.

Further - you have to DISCLOSE TO ANY BUYER - the bold words in the purchase agreement:

We have been attempting to have Umpqua accept our funds and have previously wired FULL payoff. However, Umpqua has refused to provide an updated payoff. Your team should have received a payoff and I ask you send a copy to me as Xelan is part of the transaction

Exhibit _8_ Page _76_

1

# *Exhibit 9*

**KEVIN BRODEHL**, State Bar No.:197657
PATTON, SULLIVAN, BRODEHL LLP
6600 Koll Center Pkwy, Ste, 250
Pleasanton, CA 94566
Telephone: (925) 600-1800
Fax:        (925) 600-1802
Email:      kbrodehl@psblegal.com

**PAUL MANASIAN**, State Bar No.: 130855
1310 65th Street
Emeryville, CA 94608
Telephone: (415) 730-3419
manasian@mrlawsf.com

Attorney for Defendant ZELAN PROP 1, LLC

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| UMPQUA BANK, a state-chartered bank,<br><br>      Plaintiff,<br><br>    v.<br><br>XELAN PROP 1, LLC, a California limited liability company; and Does 1-30, inclusive,<br><br>      Defendants. | CASE NO. **CGC-18-564941**<br><br>**NOTICE OF STAY**<br>**[CODE CIV. PROC. §916]**<br><br><br>Action Filed:   March 12, 2018<br>Trial Date:   None Set |

1

NOTICE OF STAY [CODE CIV. PROC. §916]

Exhibit 9 Page 77
696

## NOTICE OF STAY

TO ALL PARTIES, THE COURT-APPOINTED RECEIVER, AND THEIR ATTORNEYS OF RECORD IN THIS ACTION, PLEASE TAKE NOTICE THAT enforcement of, action taken pursuant to, and any proceedings based upon, the court's orders confirming the sale of Xelan Prop 1, LLC's Filbert Street Property and 19th Street Property are stayed pending appeal pursuant to the Notices of Appeal filed by Xelan on both March 11, 2019 and April 15, 2019, copies of which are attached hereto as **Exhibits A** and **B**. (See Code Civ. Proc. §916; *Royal Thrift & Loan Co. v. County Escrow, Inc.* (2004) 123 Cal.App.4th 24, 35-37 [appeal automatically stays sale of property including extra-judicial sale; bond under section 917.4 not required where appellant not in possession or control of property]; *Zappettini v. Buckles* (1914) 167 Cal. 27, 29-31 [automatic stay pending appeal applied to prevent sale of property pursuant to appealed judgment where receiver, not appellant, was in possession of property].)

The stay is effective immediately. (See Code Civ. Proc. §§995.410(a), 995.420(a).) All efforts to enforce the trial court's orders, including any proposed sale of the properties (judicially or extra-judicially), must cease until the appeal is resolved. **Any sale occurring in violation of the automatic stay shall be vacated and set aside.** (*Craig v. Stansbury* (1918) 37 Cal.App. 668, 670-671; *Owen v. Pomona Land & Water Co.* (1899) 124 Cal. 331, 332-334.) All existing execution liens are hereby extinguished, any properties held pursuant to such liens must be released, and no new execution liens can be created while the stay is in effect. (Code Civ. Proc. §§697.040(a), 697.050; *California Commerce Bank v. Superior Court* (1992) 8 Cal.App.4th 582, 586-587.)

Dated: April 15, 2019                       PATTON SULLIVAN BRODEHL LLP

Kevin Brodehl
Attorney for Appellant/Defendant Xelan Prop 1, LLC

2

# EXHIBIT A

Exhibit **9** Page **79**

1    CHARLES E. SHELTON (SBN 170048)
2    LAW OFFICES OF CHARLES SHELTON
     1230 Rosecrans Avenue, Suite 650
3    Manhattan Beach, CA 90266
     Tel: (310) 600-9013
4    Fax: (310) 321-6641
     Email: csheltonla@gmail.com
5
6    Attorneys for Defendant XELAN PROP 1, LLC

**ELECTRONICALLY**
**FILED**
*Superior Court of California,*
*County of San Francisco*
**03/11/2019**
**Clerk of the Court**
BY:**KIMBERLY SEPTIEN**
**Deputy Clerk**

7
8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  FOR THE CITY AND COUNTY OF SAN FRANCISCO

10   UMPQUA BANK, a state-chartered bank,          CASE NO. CGC-18-564941

11                 Plaintiff,                       **XELAN PROP 1, LLC'S AMENDED**
12                                                  **NOTICE OF APPEAL**
         v.
13
14   XELAN PROP 1, LLC, a California limited       Action Filed:    March 12, 2018
     liability company; and Does 1-30, inclusive,  Trial Date:      None Set
15
16                 Defendants

17
18
19
20
21        Defendant and Appellant Xelan Prop 1, LLC ("Xelan"), by its appellate counsel who is not

22   appearing to represent Xelan in the above-captioned superior court action, hereby appeals from the

23   following separately appealable final order in the above-captioned action:   The entirety of the order

24   filed on February 21, 2019 entitled "Order on Motion for Order: (1) Instructing Receiver to Sell

25   Real Property Asset of Receivership Estate; and (2) Confirming Sale of Real Property [1000-1022

26   Filbert Street, San Francisco, CA]" signed by the Honorable Richard B. Ulmer, Jr. on February 21,

27   2019.   The prior Xelan Notice of Appeal erroneously gave the name of the Court's February 21,

28

                    XELAN PROP 1 LLC'S AMENDED NOTICE OF APPEAL

Exhibit __9__  Page __8D__
699

1  2019 order appealed from as "Order Re Sale of 1000-1022 Filbert Street" signed by the Honorable

2  Richard B. Ulmer Jr.

3      DATED:  March 11, 2019

4                                    By: _____

5                                         Charles E. Shelton
                                          Attorney for Defendant Xelan Prop 1, LLC

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

2

XELAN PROP 1 LLC'S AMEMDED NOTICE OF APPEAL

Exhibit  9  Page  81
                              700

# EXHIBIT B

Exhibit 9  Page 82

701

APP-002

| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO.: | FOR COURT USE ONLY |
|---|---|
| NAME: Kevin R. Brodehl (SBN 197857)<br>FIRM NAME: PATTON SULLIVAN BRODEHL LLP<br>STREET ADDRESS: 6600 Koll Center Parkway, Suite 250<br>CITY: Pleasanton    STATE: CA    ZIP CODE: 94566<br>TELEPHONE NO.: 925-600-1800    FAX NO.: 925-600-1802<br>E-MAIL ADDRESS: kbrodehl@psblegal.com<br>ATTORNEY FOR (name): Defendant XELAN PROP 1, LLC | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
 STREET ADDRESS: 400 McAllister Street
 MAILING ADDRESS:
 CITY AND ZIP CODE: San Francisco, CA 94102-4515
 BRANCH NAME: Civic Center Courthouse

PLAINTIFF/PETITIONER: UMPQUA BANK
DEFENDANT/RESPONDENT: XELAN PROP 1, LLC, et al.

| [x] NOTICE OF APPEAL    [ ] CROSS-APPEAL<br>(UNLIMITED CIVIL CASE) | CASE NUMBER:<br>CGC-18-564941 |
|---|---|

Notice: Please read *Information on Appeal Procedures for Unlimited Civil Cases* (Judicial Council form APP-001) before completing this form. This form must be filed in the superior court, not in the Court of Appeal. A copy of this form must also be served on the other party or parties to this appeal. You may use an applicable Judicial Council form (such as APP-009 or APP-009E) for the proof of service. When this document has been completed and a copy served, the original may then be filed with the court with proof of service.

1. NOTICE IS HEREBY GIVEN that (name):  Xelan Prop 1, LLC

   appeals from the following judgment or order in this case, which was entered on (date):  April 15, 2019

   [ ] Judgment after jury trial
   [ ] Judgment after court trial
   [ ] Default judgment
   [ ] Judgment after an order granting a summary judgment motion
   [ ] Judgment of dismissal under Code of Civil Procedure, §§ 581d, 583.250, 583.360, or 583.430
   [ ] Judgment of dismissal after an order sustaining a demurrer
   [ ] An order after judgment under Code of Civil Procedure, § 904.1(a)(2)
   [ ] An order or judgment under Code of Civil Procedure, § 904.1(a)(3)–(13)
   [x] Other *(describe and specify code section that authorizes this appeal):*
       Final Order on Collateral Matter (Order Confirming Sale of Xelan Prop 1, LLC's 19th Street, S.F. Property) (See Kan v. Tsang (1948) 87 Cal.App.2d 699.)

2. For cross-appeals only:
   a.  Date notice of appeal was filed in original appeal:
   b.  Date superior court clerk mailed notice of original appeal:
   c.  Court of Appeal case number (if known):

Date:  April 15th, 2019

_____      ▶ _____
Kevin R. Brodehl                          (SIGNATURE OF PARTY OR ATTORNEY)
        (TYPE OR PRINT NAME)

Form Approved for Optional Use      **NOTICE OF APPEAL/CROSS-APPEAL (UNLIMITED CIVIL CASE)**      Cal. Rules of Court, rule 8.100
Judicial Council of California                       (Appellate)                            www.courts.ca.gov
APP-002 [Rev. January 1, 2017]

Exhibit 9    Page 83

702

# *Exhibit 10*

1    PAUL MANASIAN, State Bar No.: 130855
     1310 65th Street
2    Emeryville, CA 94608
     Telephone: (415) 730-3419
3    manasian@mrlawsf.com

4

5    Attorneys for Defendant XELAN PROP 1, LLC

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**03/14/2019**
Clerk of the Court
BY:CAROL BALISTRERI
Deputy Clerk

6              SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                    FOR THE COUNTY OF SAN FRANCISCO

8    UMPQUA BANK, a state-chartered bank,          CASE NO. CGC-18-564941

9                          Plaintiff,              **DEFENDANT XELAN PROP 1, LLC'S**
                                                   **EX PARTE APPLICATION (1) FOR AN**
10          v.                                     **ORDER SETTING THE AMOUNT OF A**
                                                   **BOND TO STAY SALE OF FILBERT**
11   XELAN PROP 1, LLC, a California limited       **STREET PROPERTY PENDING**
     liability company; and Does 1-30, inclusive, **APPEAL OR (2) IN THE**
12                                                 **ALTERNATIVE, FOR AN ORDER**
                          Defendants.              **SHORTENING TIME TO HAVE**
13                                                 **MOTION TO SET AMOUNT OF BOND**
                                                   **HEARD AND STAYING SALE OF**
14                                                 **FILBERT STREET PROPERTY**
                                                   **PENDING ADJUDICATION OF**
15                                                 **MOTION; MEMORANDUM OF POINTS**
                                                   **AND AUTHORITIES, DECLARATIONS**
16                                                 **OF PAUL MANASIAN AND ANNA**
                                                   **KIHAGI IN SUPPORT THEREOF;**
17                                                 **[PROPOSED] ORDER LODGED**
                                                   **CONCURRENTLY**
18

19   Hearing Date:        March 14, 2019
     Time:                9:00 a.m.
20   Dept:

21   Action Filed:        March 12, 2018
     Trial Date:          None Set
22

23

24

25   **TO THE COURT AND ALL PARTIES IN THE ABOVE-CAPTIONED ACTION:**

26        Defendant Xelan Prop, 1 LLC ("Xelan") hereby applies on an ex parte basis for an order (1)

27   setting the amount of the bond to stay the sale of the property located at 1000-1022 Filbert Street in

28

---

DEFENDANT XELAN PROP 1, LLC EX PARTE APPLICATION TO SET BOND AMOUNT ET AL.

Exhibit 10    Page 84    Z04

1  San Francisco, California ("Filbert Street Property") while the Court's February 21, 2019 order

2  instructing the Receiver to sell the Filbert Street property is on appeal or (2) in the alternative, for an

3  order shortening time to have the motion to set the bond set and staying the sale of the Filbert Street

4  Property until adjudication of this motion (collectively, the motion in both alternatives, "Ex Parte

5  Application").    This Ex Parte Application is based on this Ex Parte Application, the attached

6  Memorandum of Points, the attached Declarations of Paul Manasian and Anna Kihagi in support of

7  the Ex Parte Application, and such evidence and argument as will be presented at the hearing on the

8  Ex Parte Application.    As is demonstrated in the attached declarations of Paul Manasian or Anna

9  Kihagi, there has been no previous ex parte motion seeking the same relief as this Ex Parte

10  Application, notice of this Ex Parte Application was given to counsel Umpqua Bank before 10 a.m.

11  on the court day before the hearing on this Ex Parte Application, and the irreparable harm and

12  immediate danger is that if the Court does not grant the Ex Parte Application, then the Filbert Street

13  Property will be sold whereas California Code of Civil Procedure Section 917.4 envisions that

14  where the sale of real property has been ordered sold and an appeal of that order made, the posting

15  of a bond or undertaking in the proper amount should stay the sale of the disputed real property

16  pending resolution of the appeal.

17

18

19  DATED: March 14, 2019

20

By: _____
Paul Manasian
Attorney for Defendant Xelan Prop 1, LLC

21

22

23

24

25

26

27

2

DEFENDANT XELAN PROP 1, LLC EX PARTE APPLICATION TO SET BOND AMOUNT ET AL.

Exhibit 10  Page 25.    705

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

By order dated February 21, 2019 ("February 21, 2019 Sale Order"), the above-captioned Court instructed court-appointed Superior Court Receiver, Kevin Singer, ("Receiver") to sell the 7-unit apartment building located at 1000-1022 Filbert Street in San Francisco, California ("Filbert Street Property"). On March 11, 2019, defendant Xelan Prop 1, LLOC ("Xelan") appealed this February 21, 2019 Sale Order by timely filing a notice of appeal and notice of amended appeal. *See* Manasian Decl. at ¶2 & Exh. A. Therefore, Xelan now (1) moves for an order setting the amount of a bond sufficient to stay the sale of the Filbert Street Property pending the appeal of the February 21, 2019 Sale Order ("Motion to Set Bond Amount") or in the alternative, (2) moves for an order shortening the time to have a Motion to Set Bond Amount heard and staying the sale of the Filbert Street Property until the motion may be heard on shortened time. (collectively, this motion in both alternatives, "Ex Parte Application"). Notice of this Ex Parte Application was made before 10 a.m. on the court day before the hearing on this ex parte application. *See* Manasian Decl. at ¶ 3.

### II.

### ARGUMENT

**A.    CCP Section 917.4 and Case Law Require the Trial Court to Set the Bond or Undertaking Amount to Stay an Appeal from an Order to Sell Real Property.**

A judgment or order directing the sale, conveyance or delivery of possession of real property is stayed on appeal only by posting a bond or undertaking. Security is required whether the judgment or order is directed to appellant or another party. Cal.Civ.Proc.Code § 917.4; *see, e.g., First Fed'l Bank of Calif. v. Fegen*, 131 Cal.App.4th 798, 800 (2005); *Marriage of Falcone & Fyke*, 203 Cal.App.4th 964, 988 (2012).

The amount of the bond or undertaking is fixed by the trial court upon appellant's motion. Cal.Civ.Proc.Code § 917.4. A trial court must set such a bond amount and if it does not, the

3

Exhibit 10  Page 86
706

1  remedy is to apply to the Supreme Court for a writ of mandate. *E.g., Doudell v. Shoo*, 158 Cal. 50,

2  50 (1910). By the express terms of California Code of Civil Procedure ("CCP") Section 917.4, the

3  bond or undertaking is to be fixed by the trial court in an amount so that (1) "the appellant or party

4  ordered to sell, convey, or deliver possession of the property will not commit or suffer any waste

5  thereon and [(2)] if the judgment or order appealed from is affirmed, or the appeal is withdrawn or

6  dismissed, the appellant shall pay the damaged suffered by the waste and value of the use and

7  occupancy of the property, or the part of it as to which the judgment and order is affirmed, from

8  the time of the taking of the appeal until the delivery of the possession of the property."

9  Cal.Civ.Proc.Code § 917.4.

10

11  **B.    The Amount of the Bond or Undertaking Should Be for $83,123.**

12

13      In the instant case, Xelan is not currently in possession of the Filbert Street. *See* Kihagi

14  Decl. at ¶ 3. Thus, Xelan in not likely to have the opportunity to commit waste to the Filbert Street

15  Property. Moreover, because Xelan is not in possession of the Filbert Street Property, Xelan should

16  not be charged with the value of any use or occupancy of the Filbert Street Property. Theoretically,

17  the market value of the Filbert Street Property may go down if there were a general decline in

18  market values for 5+unit apartment buildings in San Francisco generally. Exhibit A to the

19  concurrently filed Kihagi Declaration shows that the market value of San Francisco 5+ unit

20  residential buildings has gone up for every year (except two) from 2003 to 2018 (i.e., for 16 years).

21  In the economic meltdown of 2009, prices declined 24% and in 2017, prices declined 1.7%. Thus,

22  the risk of a general decline in market values in apartment buildings in San Francisco is small.

23  Assuming a 12.5% chance[1] of a market value decline of 12.85%,[2] the bond should be set at 0.125 x

24

_____

25  [1] The 12.5% chance of a market decline was calculated based on 2 years in which prices declined

26  for San Francisco apartment buildings of five units or more divided by 16 years for which there is
    data (i.e., from 2003 to 2018).

27

[2] The 12.85 % in market price decline is calculated by taking the average price decline for San
Francisco apartment buildings of five units or more in the two years where prices did decline, i.e.,

4

- -

**DEFENDANT XELAN PROP 1, LLC EX PARTE APPLICATION TO SET BOND AMOUNT ET AL.**

Exhibit 10  Page 8 7707

1    .1285 x the sales prices of the Filbert Street Property of $5,175,000 (which is auction price offered

2    by Craig Knight) or $83,123.

3    **C.    In the Alternative, the Court Should Grant an Order Shortening Time to Have the**

4    **Motion to Set Bond Amount Heard and Staying the February 21, 2019 Sales Order**

5    **Until Adjudication of the Motion to Set Bond Amount.**

6

7        In the alternative, this Court should issue an order shortening time to have a Motion to Set

8    Bond Amount heard and staying enforcement of the February 21, 2019 Sale Order until the Motion

9    to Set Bond Amount can be heard and adjudicated. *See generally* Cal.Civ.Proc.Code § 1005(b)

10   ("[t]he court, or a judge thereof, may prescribe a shorter time" than otherwise prescribed by CCP

11   section 1005, which sets the times for written motions); Cal. Rules of Ct., rule 3.1300(b) (court

12   may, *sua sponte* or on application for order shortening time, prescribe shorter times for the filing

13   and service of papers other than those specified in CCP Section 1005).

14

15   **D.    Ex Parte Relief Is Warranted Under the Circumstances**

16       As stated in the attached Declaration of Anna Kihagi, the irreparable harm and immediate

17   danger is that if the Ex Parte Application is Not Granted, Xelan will suffer irreparable harm and

18   immediate danger in that Xelan will lose ownership of the Filbert Street Property, the Filbert Street

19   Property will be sold, and Xelan will lose its right under CCP section 917.4 to stay the February 21,

20   2019 Sales Order pending appeal of this order. *See* Kihagi Decl. at ¶ 4.

21

22   **E.    Xelan Gave Ex Parte Notice as Required by California Rule of Court 3.1203**

23       In compliance with California Rule of Court 3.1203, Xelan's counsel, Paul Manasian,

24   gave Umpqua Bank's counsel, Robert Kaplan, and the Receiver, Kevin Singer, notice of the Ex

25   Parte Application at 9:45 a.m. on March 13, 2019, which is the court day before the hearing on

26

27

a 24% price decline during the economic meltdown of 2009 and a 1.7 % price decline in 2017,
which averages to a price decline of 12.85% in years when prices did decline.

**DEFENDANT XELAN PROP 1, LLC EX PARTE APPLICATION TO SET BOND AMOUNT ET AL.**

Exhibit 10 Page 88

708

1  the Ex Parte Application. *See* Manasian Decl. at ¶ 3.  At 2:37 p.m. on March 13, 2019, Umpqua

2  Bank's counsel, Robert Kaplan, emailed Xelan's counsel, Paul Manasian, that the bank would not

3  stipulate to any of the relief sought by the Ex Parte Application. *Id.*

4

5

6                                    **III.**

7                              **CONCLUSION**

8       For the foregoing reason, the Court should issue an order (1) setting the amount of a bond

9  sufficient to stay the sale of the Filbert Street Property pending the appeal of the February 21, 2019

10 Sale Order or in the alternative, (2) shortening the time to have a Motion to Set Bond Amount heard

11 and staying the sale of the Filbert Street Property until the motion may be heard and adjudicated on

12 shortened notice and briefing.

13

14 DATED:  March 14, 2019

15                                    By: _____
                                          Paul Manasian
16                                        Attorney for Defendant Xelan Prop 1 LLC

17

18

19

20

21

22

23

24

25

26

27

6

# *Exhibit 11*

**Blake Alsbrook**

| | |
|---|---|
| From: | Blake Alsbrook |
| Sent: | Friday, April 19, 2019 8:56 AM |
| To: | 'lindeeliu' |
| Cc: | OCTLSGSales@octitle.com; kevin@receivershipspecialists.com; David Pasternak; 'Kaplan, Robert B.'; 'Anna' |
| Subject: | RE: Umpqua Bank v. XELAN Prop 1, LLC: Payoff Demand |

Ms. Liu:

I was not referencing a full reconveyance in our conversation—I demanded that you complete a payoff demand by noon which sets forth the full amount owed to the lender so that the Court can be informed what you are claiming is owed. You have known about this request for some time now, and that information is certainly in your possession.

As noted, please provide that information by noon today.

Thanks,

Blake C. Alsbrook, Esq.
Pasternak, Pasternak & Alsbrook
A ` aw Corporation
. , Century Park East, Suite 2200
Los Angeles, CA 90067-2523
Telephone: 310.553.1500
Facsimile: 310.553.1540
E-Mail: bca@paslaw.com

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation.

IRS Circular 230 Disclosure: In order to comply with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

---

**From:** lindeeliu [mailto:lindeeliu@comcast.net]
**Sent:** Friday, April 19, 2019 8:52 AM
т ` Blake Alsbrook
    )CTLSGSales@octitle.com; kevin@receivershipspecialists.com; David Pasternak; 'Kaplan, Robert B.'; 'Anna'
**Subject:** RE: Umpqua Bank v. XELAN Prop 1, LLC: Payoff Demand
**Importance:** High

1

Exhibit 11    Page 90
711

Blake:

P,  ᵕ do not accuse me "refuse to provide you a payoff demand". Your requested for a payoff demand from all beneficiaries within one hour. It is impossible for all beneficiaries to execute the full reconveyance. There are 4 beneficiaries in total. One beneficiary is in China and won't be back until next Thursday night. The earliest day I can give you a payoff with the deed reconveyance executed by all beneficiaries will be next Friday. The borrower did advise me the hearing on Monday. I was also advised there will be a mediation next week. I also copy this e-mail to the borrower. All parties can be properly informed.

Lin Dee Liu

From: Blake Alsbrook <BCA@PasLaw.com>
Sent: Friday, April 19, 2019 8:08 AM
To: lindeeliu@comcast.net
Cc: OCTLSGSales@octitle.com; Kevin Singer <kevin@receivershipspecialists.com> (kevin@receivershipspecialists.com)
<kevin@receivershipspecialists.com>; David Pasternak <DJP@PasLaw.com>; Kaplan, Robert B. {RBK@JMBM.com}
<RBK@JMBM.com>
Subject: Umpqua Bank v. XELAN Prop 1, LLC: Payoff Demand

Ms. Liu,

Thank you for speaking with me this morning about the hearing that will take place Monday, April 22, 2019 at 9:00 a.m. at Department 501 of the San Francisco Superior Court located at 400 McAllister Street, San Francisco CA 94102.

explained on the phone, your refusal to provide a payoff demand to Orange Coast Title or to me for the illegal $2.7 million loan now secured against the 19th Street property will be brought to the Court's attention on Monday morning.  I am giving you one last opportunity to provide a payoff demand to Orange Coast Title and/or me, but understand that your actions in working with Xelan to interfere with the Court ordered sale may have potential legal and financial consequences for you and the other lenders.  It may be wise for you and the other lenders to speak with counsel.  Please also have your counsel immediately contact me if you choose to retain an attorney.

I need the payoff demand no later than noon today, because our moving papers are being filed today.

Thanks in advance,

Blake C. Alsbrook, Esq.
Pasternak, Pasternak & Alsbrook
A Law Corporation
1875 Century Park East, Suite 2200
Los Angeles, CA 90067-2523
Telephone:  310.553.1500
Facsimile:  310.553.1540
E-Mail: bca@paslaw.com

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a
c~mmunication privileged by law. If you received this e-mail in error, any review, use, dissemination,
ibution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return
e-mail and please delete this message and any and all duplicates of this message from your system. Thank you

2

Exhibit __11__ Page _91_

in advance for your cooperation.

I⌐ Circular 230 Disclosure: In order to comply with requirements imposed by the Internal Revenue Service, w⋯ ⋯form you that any U.S. tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

3

Exhibit 11 Page 92

# *Exhibit 12*

## Blake Alsbrook

| | |
|---|---|
| **F...:** | Blake Alsbrook |
| **Sent:** | Friday, April 19, 2019 9:44 AM |
| **To:** | kbrodehl@psblegal.com |
| **Cc:** | Kaplan, Robert B. (RBK@JMBM.com); David Pasternak; Kevin Singer <kevin@receivershipspecialists.com> (kevin@receivershipspecialists.com) |
| **Subject:** | Umpqua Bank v. XELAN Prop 1, LLC: Ex Parte Notice |

Mr. Brodehl,

This office is proposed counsel for Receiver Kevin Singer in the above-referenced matter. I attempted to contact you by phone at approximately 9:00 a.m. this morning, but you were unavailable, so I left a voicemail providing ex parte notice. Please take notice that on Monday, April 22, 2019, at 9:00 a.m., the Receiver and I will appear in Department 501 of the San Francisco Superior Court located at 400 McAllister Street, CA 94102 for the hearing of the Receiver's Ex Parte Application for the Issuance of an Order: (1) Providing Instructions Re Defendant Xelan Prop 1, LLC and Anna Kihagi's Violation of the Court's Preliminary Injunction; (2) Determining That Court Ordered Sale Of Receivership Real Property Has Not Been Stayed Because No Supersedeas Bond Has Been Posted; and (3) Authorizing the Receiver to Retain Counsel.

The moving papers will be provided once they have been prepared. Please let us know whether you plan to appear and whether your client opposes this application.

F...ther, it has come to our attention that your client illegally secured a loan against the 19th Street property in ...tion of the order appointing Mr. Singer as Receiver, and that Xelan/Ms. Kihagi received $627,926.42 in improper loan proceeds. Please inform me by noon today whether your client will voluntarily return those funds and cease and desist her interference with the Receiver's actions in this matter.

Thanks in advance,

Blake C. Alsbrook, Esq.
Pasternak, Pasternak & Alsbrook
A Law Corporation
1875 Century Park East, Suite 2200
Los Angeles, CA 90067-2523
Telephone:  310.553.1500
Facsimile:  310.553.1540
E-Mail: bca@paslaw.com

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation.

IRS Circular 230 Disclosure: In order to comply with requirements imposed by the Internal Revenue Service, v... inform you that any U.S. tax advice contained in this communication (including any attachments) is not ...ded to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue

1

Exhibit 12 Page 93

Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

2

Exhibit 12 Page 94

716

# *Exhibit 13*



**DAVID J. PASTERNAK**
**Pasternak, Pasternak & Alsbrook**
A Law Corporation
1875 Century Park East, Suite 2200
Los Angeles, CA 90067-2523
Telephone:  310.553.1500
Facsimile:   310.553.1540
E-Mail:  djp@paslaw.com

David Pasternak is a member of Pasternak, Pasternak & Alsbrook, A Law Corporation in Century City.   Since 1982, he has been appointed as a state and federal court receiver, a provisional director, referee, special master, and Bankruptcy Court Custodian hundreds of times, and has represented and advised other receivers and provisional directors in hundreds of other cases.  His receivership appointments include regulatory, rents-and-profits, marital dissolution, equity, and collection of judgment receiverships.  He was named on the approved receivers list that was previously maintained by the Los Angeles Superior Court.

As a receiver, he has operated and sold hundreds of commercial, residential and industrial properties throughout Southern California and elsewhere.  His business appointments include escrow companies, a car wash, a hospital, aged care facilities, orthopedic surgery offices, clothing and other manufacturers, a website design and maintenance business, and a wide variety of other retail and service businesses.  He also has served as a health and safety code receiver for many Southern California cities, and has collected medical and other accounts receivable for judgment debtors and others.  He has served as a Receiver many times at the request of the California Attorney General, Los Angeles District Attorney, and the California Department of Corporations.

He served as the Receiver of a holding company that owned both Wickes Furniture Company and one of its major suppliers.  As such, he was a member of the Board of Directors of both Wickes and its related company until he sold Wickes and most of the assets of its related company.  He recovered over $10 million in complex tax refunds and distributed over $53 million to the creditor banks in that receivership estate.

He also served at the request of the California Attorney General as the Receiver of California Research and Assistance Fund, the multi-million dollar non-profit benefit corporation established through insurance company contributions after the Northridge earthquake.

He also was a federal court Receiver in a $150 million mortgage fraud case in which he possessed some 85 homes in the most prestigious areas of California and Wyoming, as well as an array of other assets, including fine wines, art, jewelry, home furnishings, firearms, and various interests in high-end West Los Angeles home developments.  He sold most of those assets.

He is currently a Receiver in a real estate fraud case at the request of the California Attorney General.  He has possessed over 100 Southern California real properties in that receivership.

He also served as Receiver of California's largest low income housing developer, in a case in which he discovered fraudulent activity that exceeded $100 million and resulted in a federal grand jury indictment.

00200618-1

Exhibit 13 Page 95

**DAVID J. PASTERNAK**
Page 2

He is a former President of the California State Bar and completed a three-year term as the first member of the California State Bar Board of Trustees appointed by the California Supreme Court. He is a past President of the Los Angeles County Bar Association, a former chair of its Litigation Section, a former President of its Barristers Section, and former Chair of its Senior Lawyers Division. He has chaired a citizens' advisory committee for the Los Angeles City Council, as well as many committees for the American Bar Association, Los Angeles County Bar Association, and Beverly Hills Bar Association, among others. He is a founding Co-Chair of what is now the Los Angeles/Orange County branch of the California Receivers Forum, and an ex-officer member of its Board of Directors. He regularly writes and speaks about receivership practice. He also has served on a number of California Judicial Council and Los Angeles Superior Court committees, including some bench/bar committees that revised the Los Angeles Superior Court rules. He has served a three year term as a member of the California Judicial Council, as an attorney delegate to the 9th Circuit Judicial Conference, and as President of the Chancery Club.

# BLAKE C. ALSBROOK

1875 Century Park East, Suite 2200, Los Angeles, CA 90067 • 310.553.1500 • bca@paslaw.com

## Legal Experience

**Pasternak, Pasternak & Alsbrook, A Law Corporation**                    **Los Angeles, CA**
*Shareholder*                                                              August 2011-Present

Shareholder at firm specializing in receiverships, partition actions, and provisional directorships. Provide legal representation and administer equity, Health and Safety Code, rents and profits, regulatory, and Family Code receiverships. Represent and litigate on behalf of partition referees in significant and complex commercial and residential real property partitions. Represent and litigate on behalf of provisional directors of multiple businesses with compromised Boards of Directors. Representative matters: (1) achieved disputed $75mm sale of major Southern California business in satisfaction of judgment as lead counsel for post-judgment receiver; (2) represented receiver of low income housing developer alleged to have perpetrated $100mm+ fraud against California cities and banks in complex court; (3) represented receiver in regulatory matter brought by California Department of Corporations against internet company alleged to have illegally issued shares; and (4) represented rents and profits receiver responsible for completing multiple multi-million dollar development projects. Significant motion practice, court appearances, trial preparation and trial experience, settlement negotiation, discovery, and receivership administration. Successfully first-chaired contempt trial resulting in sentencing of contemnor to incarceration. Multiple successful arguments before the California Court of Appeal. Recent publications: "Professional Profile: Blake Alsbrook," Receivership News, Fall 2018; "Fending Off Bankruptcy Bullies: A New Strategy for Receivers," Receivership News, Summer 2015, "Why Rents and Profits Receivers May Sell Property and Courts May Authorize Real Property Sales Free and Clear of Liens: A Rejoinder to the 'Ten Commandments'," Receivership News Winter 2012. Recent speaking engagements: "Cannabis Receiverships," California Receivers Forum, Summer 2018; "Contempt! – Preparation, Trial and County Jail," California Receivers Forum, Spring 2014.

**Sterling & Clack, A Professional Corporation**                          **San Francisco, CA**
*Associate*                                                               November 2010-July 2011

Sole associate at boutique trial litigation firm specializing in defense-side insurance litigation and maritime litigation (Jones Act, COGSA, LHWCA) in federal and state court. Representative matters: (1) defended Fortune 500 insurance company in multi-million dollar coverage litigation including bad faith issues tied to "burning-limits" policy in California federal and state court; (2) defended Fortune 500 oil company in multi-million dollar tort action brought by former employee; and (3) defended significant public entity in multi-million dollar tort action brought by former employee. Draft dispositive motions and supporting memoranda of law, opposition and reply briefs, and discovery motions, demands, and responses. Participate in all aspects of trial preparation: member of trial team on a matter slated for trial in June 2011 that settled on the eve of trial for considerably less than "low estimate." Draft Motions in Limine, Special Jury Instructions, Trial Brief, Motion to Bifurcate, and all other trial documents. Synthesize major trial themes, voir dire questions, and witness preparation materials. Argue motions, advise clients, and manage staff.

**San Francisco Superior Court, Civil Division**                         **San Francisco, CA**
*Law Clerk*                                                              October 2008-October 2010

Assisted more than 20 Superior Court judges in determining questions of law and drafting orders and decisions. Accepted invitation to a second year-long term after judges were polled and recommended extension based on work product. Representative matters: (1) determined question whether to issue TRO

blocking sale of de Young Museum tribal art collection valued at $90 million; (2) determined validity of motion for summary judgment in first product defect action set for trial concerning Gadolinium-containing contrast agents in U.S.; (3) determined validity of motion for summary judgment in major class action employee-classification suit against Home Depot. Gained significant experience in substantive areas such as commercial law, including breach of contract, tortious interference with contract, and Business & Professions Code § 17200 actions and trust and estates law, including general property law and Probate Code questions. Analyzed and made recommendations on nearly every pretrial, trial, and post-trial motion. Decided innumerable discovery disputes. Became familiar with California Code of Civil Procedure, Civil Code, Evidence Code, and Probate Code. Assisted Appellate Division on criminal, limited civil, and unlawful detainer writs and appeals.

**O'Melveny & Myers, LLP**                                                    **Los Angeles, CA**
*Summer Associate*                                                               Summer 2007
Researched and drafted memoranda for partners and senior associates. Major projects included research on *Illinois Brick* doctrine in antitrust action against electronics manufacturer and due diligence in public utility bond issue. Participated in Advocacy Institute: drafted appellate brief and argued before Los Angeles Superior Court judges.

**Honorable Stephen J. Hillman**                                         **Los Angeles, CA**
*Extern*                                                                            Summer 2006
Researched and drafted memoranda for U.S. Magistrate Judge for the Central District of California.

## Education

University of Michigan Law School, Ann Arbor, MI
Juris Doctor, May 2008
Graduated *cum laude*
Campbell Moot Court
Clinical Experience: Criminal Appellate Practice Clinic – Assisted Michigan State Appellate Defender Office
Research Notes: *Make War Not Love: A Critique of Obscenity Jurisprudence in America* and *Stoneridge: Supreme Folly.*
Completed first-year courses at Loyola Law School, Los Angeles. Ranked 10 of 324.
First Honors, Constitutional Law. Invited to *Loyola of Los Angeles Law Review.*

**University of California, Santa Barbara, CA**
Bachelor of Arts in Political Science, December 2002
Dean's Honors (Winter 2001; Winter 2002)
Lead Intern, California Public Interest Research Group
UC D.C. Program: Legislative Intern for Senator Dianne Feinstein. Thesis: *First Amendment Interpretations and Campaign Finance Reform*

## Membership

Executive Committee Member of the Los Angeles County Bar Association, Remedies Section
Member of the Board of Directors of the California Receivers Forum
Bet Tzedek New Leadership Council
Beverly Hills Bar Association

Exhibit _13_ Page _98_

{00211571.DOCX 99999.0004 }

# *Exhibit 14*

1  JEFFER MANGELS BUTLER & MITCHELL LLP
   ROBERT B. KAPLAN, P.C. (Bar No. 76950)
2  *rbk@jmbm.com*
   Two Embarcadero Center, 5th Floor
3  San Francisco, California 94111-3813
   Telephone:    (415) 398-8080
4  Facsimile:    (415) 398-5584

5  Attorneys for Plaintiff UMPQUA BANK

6

7

ELECTRONICALLY
FILED
Superior Court of California,
County of San Francisco

04/08/2019
Clerk of the Court
BY:EDNALEEN ALEGRE
Deputy Clerk

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF SAN FRANCISCO – UNLIMITED JURISDICTION

10

11  UMPQUA BANK, a state chartered bank,    Case No. CGC-18-564941

12          Plaintiff,                      REPLY DECLARATION OF BEVERLY
                                            TENGCO IN SUPPORT OF MOTION OF
13      v.                                  UMPQUA BANK FOR:

14  XELAN PROP 1, LLC, a California limited  (1) INSTRUCTING RECEIVER TO SELL
    liability company; and DOES 1-30, inclusive, REAL PROPERTY ASSET OF
15                                          RECEIVERSHIP ESTATE; AND
            Defendants.
16                                          (2) CONFIRMING SALE OF REAL
                                            PROPERTY [4018–4022 19TH STREET,
17                                          SAN FRANCISCO, CA]

18                                          Date:          April 10, 2019
                                            Time:          9:30 a.m.
19                                          Dept.:         501

20                                          Action Filed:  March 12, 2018
                                            Trial Date:    None Set
21

22      I, Beverly Tengco, declare:

23      1.    I am employed by Umpqua Bank ("Bank") in the capacity of Vice

24  President/Special Assets Officer at its offices located in Elk Grove, California.  The Bank is the

25  successor in interest by merger to Sterling Savings Bank.  If called upon to testify as to the facts

26  set forth in this declaration, I could and would competently testify thereto since the facts set forth

27  herein are personally known to me to be true, except as to those matters which I state on

28  information and belief and as to those matters, I believe them to be true.

64336308v1
                                        1
REPLY DECL BEVERLY TENGCO ISO MOT FOR (1) INSTR. RECEIVER TO SELL, ETC. (XELAN-19TH)

JMBM | Jeffer Mangels
       Butler & Mitchell LLP

Exhibit 14 Page 99

723

2. I am one of the custodians of the books, records, files and credit records of the Bank as those books, records, files and credit records pertain to loans or extensions of credit made by Bank to XELAN Prop 1, LLC ("XELAN" or "Borrower"). I have personally worked on said books, records, files and credit records and, as to the following facts, I know them to be true of my own knowledge or have gained knowledge of them from the business records of the Bank, which records are maintained in the ordinary course of the Bank's business.

3. The records of the Bank as they pertain to the loans and extensions of credit which are the subject matter of this action are kept in the regular course of the Bank's business. The records are carefully prepared to reflect all acts, conditions and events at or near the time said acts, conditions or events occurred and the entries made therein are made by persons who have knowledge of the facts or have a business duty to maintain those records. Based on my personal knowledge and experience, I know that these records are accurate and trustworthy.

4. Today, on April 8, 2019, at 8:24 a.m., the Bank received a wire from Stewart Title of California, Inc. (Los Angeles Sub-Escrow Trust Account) referencing the real property owned by XELAN located at 4018-4022 19th Street, San Francisco, California ("19th Street Property") in the amount of $1,834,270.48. On March 28, 2019, the Bank received an email through fax delivery from North American Title Company requesting that the Bank submit a demand into escrow for the 19th Street Property owned by XELAN, the first page of which is attached hereto as Exhibit 1.

5. The Bank never submitted a demand into escrow to North American Title Company or any other title company with respect to the outstanding obligations owed by XELAN to the Bank, repayment of which is secured by the 19th Street Property. In addition, the wire transfer received by the Bank this morning in the amount of $1,834,270.48 is insufficient to pay off all outstanding obligations owed by XELAN to the Bank as of today. Therefore, for that reason, and others set forth in the Further Reply Declaration of Robert B. Kaplan served concurrently herewith, on April 8, 2019, the Bank returned the wire transfer it received from Stewart Title Company of California, Inc. in the full amount of $1,834,270.48.

///

JMBM | Jeffer Mangels
Butler & Mitchell LLP

Exhibit 14 Page 100

724

1    I declare under penalty of perjury under the laws of the State of California the foregoing is

2    true and correct.

3

4    DATED:  April 8, 2019

5    BEVERLY TENGCO, Declarant

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JMBM | Jeffer Mangels
Butler & Mitchell LLP

6433630308v1

3

REPLY DECL BEVERLY TENGCO ISO MOT FOR (1) INSTR. RECEIVER TO SELL, ETC. (XELAN-19TH)

Exhibit 14 Page 101

725

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JMBM | Jeffer Mangels Butler & Mitchell LLP

## **EXHIBIT 1**

64336308v1

4

REPLY DECL BEVERLY TENGCO ISO MOT FOR (1) INSTR. RECEIVER TO SELL, ETC. (XELAN-19TH)

Exhibit 4   Page 102

726

# Email to Fax Delivery

```
TO:      15414407524
From:    mraab@nat.com
Date:    March 28, 2019 12:06:13 PM PST
Subj:    FW: 890328271 / Xelan Prop 1 LLC / 4018-4022 19th / Escrow
Pages:   6
```

Attached you will find our Request for an Updated Demand along with previously issued demand and the Borrowers Authorization. We are requesting this on a super rush as the parties are trying to close on 3/29/19. Please email your demand to mraab@nat.com or fax to 714-550-6411.

If there is any additional documentation needed please contact the undersigned immediately

Thank you

**WE HAVE MOVED! Our new address is 3090 Bristol Street, Suite 190, Costa Mesa, CA 92626**



**NORTH AMERICAN TITLE COMPANY**

**Marla Argento-Raab**
**Escrow Officer**
o: (949) 419-9460   e: mraab@nat.com
3090 Bristol Street, Suite 190, Costa Mesa, CA 92626
www.nat.com

**WARNING! WIRE FRAUD ADVISORY**
Do Not Respond to Wire Transfer Instructions Via Email!
Instead, call your escrow officer/closer immediately using previously known contact information.
Click here to learn more on preventing fraud

Exhibit 14 Page 103

727

1  JEFFER MANGELS BUTLER & MITCHELL LLP
   ROBERT B. KAPLAN, P.C. (Bar No. 76950)
2  rbk@jmbm.com
   Two Embarcadero Center, 5th Floor
3  San Francisco, California 94111-3813
   Telephone:    (415) 398-8080
4  Facsimile:    (415) 398-5584

5  Attorneys for Plaintiff UMPQUA BANK

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*
**04/08/2019**
Clerk of the Court
BY:EDNALEEN ALEGRE
Deputy Clerk

6

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF SAN FRANCISCO – UNLIMITED JURISDICTION

10

11  UMPQUA BANK, a state chartered bank,          Case No. CGC-18-564941

12                    Plaintiff,                  **REPLY DECLARATION OF BEVERLY
                                                  TENGCO IN SUPPORT OF MOTION OF**
13        v.                                      **UMPQUA BANK FOR:**

14  XELAN PROP 1, LLC, a California limited       **(1) INSTRUCTING RECEIVER TO SELL
    liability company; and DOES 1-30, inclusive, REAL PROPERTY ASSET OF**
15                                                **RECEIVERSHIP ESTATE; AND**
                      Defendants.
16                                                **(2) CONFIRMING SALE OF REAL
                                                  PROPERTY [4018-4022 19TH STREET,**
17                                                **SAN FRANCISCO, CA]**

18                                                Date:          April 10, 2019
                                                  Time:          9:30 a.m.
19                                                Dept.:         501

20                                                Action Filed:  March 12, 2018
                                                  Trial Date:    None Set
21

22        I, Beverly Tengco, declare:

23        1.    I am employed by Umpqua Bank ("Bank") in the capacity of Vice

24  President/Special Assets Officer at its offices located in Elk Grove, California. The Bank is the

25  successor in interest by merger to Sterling Savings Bank. If called upon to testify as to the facts

26  set forth in this declaration, I could and would competently testify thereto since the facts set forth

27  herein are personally known to me to be true, except as to those matters which I state on

28  information and belief and as to those matters, I believe them to be true.

6433630081

1

REPLY DECL BEVERLY TENGCO ISO MOT FOR (1) INSTR. RECEIVER TO SELL, ETC. (XELAN-19TH)

Exhibit 14 Page 104

728

2.      I am one of the custodians of the books, records, files and credit records of the Bank as those books, records, files and credit records pertain to loans or extensions of credit made by Bank to XELAN Prop 1, LLC ("XELAN" or "Borrower"). I have personally worked on said books, records, files and credit records and, as to the following facts, I know them to be true of my own knowledge or have gained knowledge of them from the business records of the Bank, which records are maintained in the ordinary course of the Bank's business.

3.      The records of the Bank as they pertain to the loans and extensions of credit which are the subject matter of this action are kept in the regular course of the Bank's business. The records are carefully prepared to reflect all acts, conditions and events at or near the time said acts, conditions or events occurred and the entries made therein are made by persons who have knowledge of the facts or have a business duty to maintain those records. Based on my personal knowledge and experience, I know that these records are accurate and trustworthy.

4.      Today, on April 8, 2019, at 8:24 a.m., the Bank received a wire from Stewart Title of California, Inc. (Los Angeles Sub-Escrow Trust Account) referencing the real property owned by XELAN located at 4018-4022 19th Street, San Francisco, California ("19th Street Property") in the amount of $1,834,270.48. On March 28, 2019, the Bank received an email through fax delivery from North American Title Company requesting that the Bank submit a demand into escrow for the 19th Street Property owned by XELAN, the first page of which is attached hereto as Exhibit 1.

5.      The Bank never submitted a demand into escrow to North American Title Company or any other title company with respect to the outstanding obligations owed by XELAN to the Bank, repayment of which is secured by the 19th Street Property. In addition, the wire transfer received by the Bank this morning in the amount of $1,834,270.48 is insufficient to pay off all outstanding obligations owed by XELAN to the Bank as of today. Therefore, for that reason, and others set forth in the Further Reply Declaration of Robert B. Kaplan served concurrently herewith, on April 8, 2019, the Bank returned the wire transfer it received from Stewart Title Company of California, Inc. in the full amount of $1,834,270.48.

///

Exhibit 14 Page 105

729

1      I declare under penalty of perjury under the laws of the State of California the foregoing is

2  true and correct.

3

4  DATED: April 8, 2019

    BEVERLY TENGCO, Declarant

Exhibit 14 Page 106

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

6433630Bv1

4

REPLY DECL BEVERLY TENGCO ISO MOT FOR (1) INSTR. RECEIVER TO SELL, ETC. (XELAN-19TH)

Exhibit 14 Page 107

# Email to Fax Delivery

```
To:      15414407524
From:    mraab@nat.com
Date:    March 28, 2019 12:06:13 PM PST
Subj:    FW: 890328271 / Xelan Prop 1 LLC / 4018-4022 19th / Escrow
Pages:   6
```

Attached you will find our Request for an Updated Demand along with previously issued demand and the Borrowers Authorization.  We are requesting this on a super rush as the parties are trying to close on 3/29/19.  Please email your demand to mraab@nat.com or fax to 714-550-6411.

If there is any additional documentation needed please contact the undersigned immediately

Thank you

**WE HAVE MOVED! Our new address is 3090 Bristol Street, Suite 190, Costa Mesa, CA 92626**

 **NORTH AMERICAN TITLE COMPANY**

**Maria Argento-Raab**
**Escrow Officer**
o: (949) 419-9460  e: mraab@nat.com
3090 Bristol Street, Suite 190, Costa Mesa, CA 92626
www.nat.com

**WARNING! WIRE FRAUD ADVISORY**
**Do Not Respond to Wire Transfer Instructions Via Email!**
Instead, call your escrow officer/closer immediately using previously known contact information.
Click here to learn more on preventing fraud

Exhibit 14 Page 108
732

1  JEFFER MANGELS BUTLER & MITCHELL LLP
   ROBERT B. KAPLAN, P.C. (Bar No. 76950)
2  rbk@jmbm.com
   Two Embarcadero Center, 5th Floor
3  San Francisco, California 94111-3813
   Telephone:    (415) 398-8080
4  Facsimile:    (415) 398-5584

5  Attorneys for Plaintiff UMPQUA BANK

6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            COUNTY OF SAN FRANCISCO – UNLIMITED JURISDICTION

10

11  UMPQUA BANK, a state chartered bank,        Case No. CGC-18-564941

12            Plaintiff,                        REPLY DECLARATION OF BEVERLY
                                                TENGCO IN SUPPORT OF MOTION OF
13       v.                                     UMPQUA BANK FOR:

14  XELAN PROP 1, LLC, a California limited     (1) INSTRUCTING RECEIVER TO SELL
    liability company; and DOES 1-30, inclusive,  REAL PROPERTY ASSET OF
15                                              RECEIVERSHIP ESTATE; AND
              Defendants.
16                                              (2) CONFIRMING SALE OF REAL
                                                PROPERTY [4018-4022 19TH STREET,
17                                              SAN FRANCISCO, CA]

18                                              Date:          April 10, 2019
                                                Time:          9:30 a.m.
19                                              Dept.:         501

20                                              Action Filed:  March 12, 2018
                                                Trial Date:    None Set
21

22       I, Beverly Tengco, declare:

23       1.    I am employed by Umpqua Bank ("Bank") in the capacity of Vice

24  President/Special Assets Officer at its offices located in Elk Grove, California. The Bank is the

25  successor in interest by merger to Sterling Savings Bank. If called upon to testify as to the facts

26  set forth in this declaration, I could and would competently testify thereto since the facts set forth

27  herein are personally known to me to be true, except as to those matters which I state on

28  information and belief and as to those matters, I believe them to be true.

6413630Rv1                                      1
REPLY DECL BEVERLY TENGCO ISO MOT FOR (1) INSTR. RECEIVER TO SELL, ETC. (XELAN-19TH)

Exhibit 14 Page 109

733

2.    I am one of the custodians of the books, records, files and credit records of the Bank as those books, records, files and credit records pertain to loans or extensions of credit made by Bank to XELAN Prop 1, LLC ("XELAN" or "Borrower"). I have personally worked on said books, records, files and credit records and, as to the following facts, I know them to be true of my own knowledge or have gained knowledge of them from the business records of the Bank, which records are maintained in the ordinary course of the Bank's business.

3.    The records of the Bank as they pertain to the loans and extensions of credit which are the subject matter of this action are kept in the regular course of the Bank's business. The records are carefully prepared to reflect all acts, conditions and events at or near the time said acts, conditions or events occurred and the entries made therein are made by persons who have knowledge of the facts or have a business duty to maintain those records. Based on my personal knowledge and experience, I know that these records are accurate and trustworthy.

4.    Today, on April 8, 2019, at 8:24 a.m., the Bank received a wire from Stewart Title of California, Inc. (Los Angeles Sub-Escrow Trust Account) referencing the real property owned by XELAN located at 4018-4022 19th Street, San Francisco, California ("19th Street Property") in the amount of $1,834,270.48. On March 28, 2019, the Bank received an email through fax delivery from North American Title Company requesting that the Bank submit a demand into escrow for the 19th Street Property owned by XELAN, the first page of which is attached hereto as Exhibit 1.

5.    The Bank never submitted a demand into escrow to North American Title Company or any other title company with respect to the outstanding obligations owed by XELAN to the Bank, repayment of which is secured by the 19th Street Property. In addition, the wire transfer received by the Bank this morning in the amount of $1,834,270.48 is insufficient to pay off all outstanding obligations owed by XELAN to the Bank as of today. Therefore, for that reason, and others set forth in the Further Reply Declaration of Robert B. Kaplan served concurrently herewith, on April 8, 2019, the Bank returned the wire transfer it received from Stewart Title Company of California, Inc. in the full amount of $1,834,270.48.

///

1       I declare under penalty of perjury under the laws of the State of California the foregoing is

2   true and correct.

3

4   DATED:  April 8, 2019

                   BEVERLY TENGCO, Declarant

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JMBM | Jeffer Mangels
Butler & Mitchell LLP

64336308v1

3

REPLY DECL BEVERLY TENGCO ISO MOT FOR (1) INSTR. RECEIVER TO SELL, ETC. (XELAN-19TH)

Exhibit 14 Page 111

735

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JMBM | Jeffer Mangels Butler & Mitchell LLP

# **EXHIBIT 1**

64336308v1

4

REPLY DECL BEVERLY TENGCO ISO MOT FOR (1) INSTR. RECEIVER TO SELL, ETC. (XELAN-19TH)

Exhibit 14  Page 112

# Email to Fax Delivery

```
To:      15414407524
From:    mraab@nat.com
Date:    March 28, 2019 12:06:13 PM PST
Subj:    FW: 890328271 / Xelan Prop 1 LLC / 4018-4022 19th / Escrow
Pages:   6
```

Attached you will find our Request for an Updated Demand along with previously issued demand and the Borrowers Authorization.  We are requesting this on a super rush as the parties are trying to close on 3/29/19.  Please email your demand to mraab@nat.com or fax to 714-550-6411.

If there is any additional documentation needed please contact the undersigned immediately

Thank you

**WE HAVE MOVED! Our new address is 3090 Bristol Street, Suite 190, Costa Mesa, CA 92626**



**NORTH AMERICAN TITLE COMPANY**

**Maria Argento-Raab**
**Escrow Officer**
o: (949) 419-9460  e: mraab@nat.com
3090 Bristol Street, Suite 190, Costa Mesa, CA 92626
www.nat.com

**WARNING! WIRE FRAUD ADVISORY**
Do Not Respond to Wire Transfer Instructions Via Email!
Instead, call your escrow officer/closer immediately using previously known contact information.
Click here to learn more on preventing fraud

Exhibit 14 page 113

737

*Exhibit 15*

UMPQUA BANK vs XELAN PROP 1, LLC, ET AL.
Transcript of Proceedings on 04/10/2019

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                  COUNTY OF SAN FRANCISCO

3

4   UMPQUA BANK, a state
    chartered bank,

5
               Plaintiff,
6
       vs.                          Case No. CGC-18-564941
7
    XELAN PROP 1, LLC, a
8   Delaware limited liability
    company; and DOES 1-30,
9   inclusive,

10             Defendant.
                                    /
11

12

13

14          Reporter's Transcript of Proceedings

15             Wednesday, April 10, 2019

16

17

18        400 McAllister Street, Department 501

19            San Francisco, California

20

21

22

23

24       Reported By:  Sheila Pham, CSR No. 13293

25

15 - 114

739

```
 1                    APPEARANCES  OF  COUNSEL

 2

 3   For Plaintiff:

 4        JEFFER MANGELS BUTLER & MITCHELL
          BY: ROBERT B. KAPLAN, ESQ.
 5        Two Embarcadero Center, 5th Floor
          San Francisco, CA 94111
 6        (415) 398-8080
          rbk@jmbm.com
 7

 8   For the Receiver:

 9        RECEIVERSHIP SPECIALISTS
          BY: KEVIN SINGER
10        795 Folsom Street, 1st Floor
          San Francisco, CA 94107
11        kevin@receivershipspecialists.com

12

     For Defendant:
13
          PATTON SULLIVAN BRODEHL LLP
14        BY: KEVIN BRODEHL, ESQ.
          6600 Koll Center Parkway, Suite 250
15        Pleasanton, CA 94566
          (925) 600-1800
16        kbrodehl@psblegal.com

17

     Also Present:
18
          Brandon Kaplan
19        Kenneth Kaplan
          Ting Tsai
20

21

22

23

24

25
```

IS   US

740

```
 1      San Francisco, California, Wednesday, April 10, 2019
 2                  10:25 a.m. - 11:53 a.m.
 3
 4          THE CLERK:  Calling Line Number 2, and this
 5  matter is being reported.
 6          THE COURT:  All right.
 7          THE CLERK:  This is Case Number CGC-18-564941,
 8  Umpqua Bank versus Xelan Prop 1.
 9          Counsel, please state your appearances for the
10  record.
11          MR. KAPLAN:  Good morning, Your Honor.  Robert
12  Kaplan, Jeffer Mangels Butler & Mitchell LLP, for the
13  plaintiff, Umpqua Bank, the moving party.
14          THE COURT:  Good morning.
15          MR. SINGER:  Good morning, Your Honor.  Kevin
16  Singer, the Superior Court receiver on this case.
17          THE COURT:  Good morning, Mr. Singer.
18          MR. BRODEHL:  Good morning, Your Honor.  Kevin
19  Brodehl for defendant, Xelan Prop 1.
20          THE COURT:  Good morning, Mr. Brodehl.
21          So didn't we put this over for a week to see
22  what was going to happen?
23          MR. KAPLAN:  Yes, Your Honor.  If I could, I'd
24  like to go over what's happened.  And to refresh the
25  Court's recollection, we do have a rough transcript
```

15  116

741

```
 1  prepared by this great court reporter of last week's

 2  hearing.  If I could approach, I can give it to you.

 3  Save some time.  I have one for opposing counsel too

 4  (handing).

 5          THE COURT:  Have you seen this one,

 6  Mr. Brodehl?

 7          MR. BRODEHL:  I have not.

 8          Thank you.

 9          THE COURT:  Why don't you take a look at it.

10          All right.  Thank you.

11          MR. KAPLAN:  I can start, Your Honor, whenever

12  you're ready.

13          THE COURT:  So we put it over a week because

14  you were not just first and goal, you were inches --

15          MR. KAPLAN:  Yes, Your Honor.

16          THE COURT:  -- from the goal line; correct?

17          MR. KAPLAN:  So what happened --

18          THE COURT:  What happened?

19          MR. KAPLAN:  What happened is the following --

20          THE COURT:  I think I kind of know.  I think I

21  kind of know.

22          MR. KAPLAN:  Yes, I'm sure you do.  To save you

23  the trouble of going through that, just to summarize the

24  papers --

25          THE COURT:  I've got a pretty good summary
```

15  117

742

UMPQUA BANK vs XELAN PROP 1, LLC, ET AL.
Transcript of Proceedings on 04/10/2019                          Page 5

1   right here.

2           MR. KAPLAN:  -- what happened is:  I went back

3   to my office, I prepared revised drafts of the papers

4   the same day of the hearing.  I worked until after 7:00

5   to get them out.  And I sent them to Mr. Manasian.  We

6   requested comments and we did not receive any.

7           So both the receiver and I contacted Mr.

8   Manasian on Thursday, saying, "What's going on?"  We got

9   an e-mail saying he'd get back to us later Thursday or

10  tomorrow, which was Friday.  Friday afternoon at roughly

11  2:32 p.m., we had not received anything.  I sent an

12  e-mail to Mr. Manasian saying, "What's going on?  We

13  have the hearing today."  Did not receive anything.

14          And then on Monday morning at about 8:24,

15  Umpqua Bank received a wire for about $1.8 million from

16  Stewart Title Company.

17          THE COURT:  $1,869,018.30 to be exact.

18          MR. KAPLAN:  So that was a surprise to us for

19  two reasons.  One --

20          THE COURT:  Wasn't there an injunction saying

21  that they couldn't encumber the property?

22          MR. KAPLAN:  Yes.  And we found out today, it

23  looks like a junior deed of trust had been recorded

24  against the property.  I wish I could provide it to the

25  Court.  I don't have it.  And that was a problem.  Also,



15 · 118

743

1    the title company that we've been dealing with through

2    Mr. Manasian was North American Title.  So we were

3    surprised to get this money.  It wasn't even close to

4    the payoff balance.

5           THE COURT:  Well, that was $1,834,270.48, which

6    is exactly $29,747.90 short of what the real payoff was,

7    at least the way my math goes.

8           MR. KAPLAN:  Exactly.  The real payoff

9    constantly changes because there was attorneys' fees and

10   costs of documents.  So what we were trying to do

11   through Mr. Manasian was:  Get the payoff agreement

12   done, put in the final number --

13          THE COURT:  Pardon me for interrupting.  Just

14   to make sure everybody is on the same page, including

15   me, my understanding was:  We were giving them a week to

16   see if they could come up with this money to redeem the

17   property.  Okay?

18          Here's what it sounds like.  It sounds like

19   contrary to the Court's order not to encumber this

20   property, somebody went out and tried to secure another

21   loan on the property and then tried to clear this debt

22   with your bank, but they came up $29,000 and change

23   short.  So even though they weren't supposed to be doing

24   that to begin with, when they tried to do it, they

25   didn't even do it the right way to begin with.

IS   119

1          So isn't that where we're at today?

2          MR. KAPLAN:  Yes.  We're actually more than

3  $29,000 short because --

4          THE COURT:  You know, plus change.

5.          MR. KAPLAN:  Well, it's not change necessarily.

6  But in any event, so -- and then Mr. Manasian sent an

7  e-mail on Monday of this week saying Ms. Kihagi is not

8  going to sign the payoff agreement or the stipulation

9  and he's going to withdraw as counsel.  So that was a

10  surprise.  And now we have new counsel coming in.

11          Part of the issues we discussed at last week's

12  hearing was:  One, there was an injunction against

13  encumbering the property, which under our documents,

14  would be released upon payment to the bank; two, the

15  receiver needs to remain in possession until the Court

16  tells him to get out; and three, the receiver is going

17  to collect rent.

18          So all of these documents --

19          THE COURT:  Excuse me for interrupting you, but

20  isn't there also that somebody wants to purchase this

21  property?

22          MR. KAPLAN:  Yes.  And that's what we're here

23  today for.

24          THE COURT:  They have ready money to do it?

25          MR. KAPLAN:  That's correct.  So the Court is

15   12D

745

1  clearly up to speed on what's happened, so we request

2  the Court approve the sale.  This motion was filed over

3  a month ago.  We have a violation, apparently, of the

4  Court's preliminary injunction, we have new counsel

5  coming in for unknown reasons to me, and we have Mr.

6  Manasian saying his client won't sign anything, even

7  though last Tuesday, we thought we were pretty close.

8         And I can let the receiver speak now.

9         THE COURT:  Mr. -- Is it Brodehl?  Did I get

10  your name right, sir?

11         MR. BRODEHL:  Yes, you did.

12         THE COURT:  Is there anything you want to add

13  to this?

14         MR. BRODEHL:  Oh, yes.

15         THE COURT:  Okay.

16         MR. BRODEHL:  So before the week of April 2nd,

17  there was a lot of negotiation about a proposed payoff

18  demand.  There's two fundamental problems here, Your

19  Honor.  We've never been given a clear payoff demand and

20  that amount is changing every day.  And that's required

21  by statute.

22         So here's the bigger problem, Your Honor.  At

23  the last week of March, the payoff agreement that we got

24  from the bank and the receiver would have required a

25  complete release of all objections to the receiver's

15  121

1 final accounting. . We haven't even seen the last two

2 months' worth of accounting, and apparently, there's

3 more to come.

4         So that was the bank's required condition for

5 accepting a payoff, a complete release of the receiver.

6 The receiver's work is not even done yet.  That's the

7 point they made in their opposition today.

8         But, Your Honor, the bigger problem here is

9 that the receiver's status is being used to thwart our

10 rights of redemption.  That right is found in Civil Code

11 2903.  2905 also speaks to it.  Every borrower in

12 California has a right to redeem that loan.  It's a

13 statutory right and it's also an equitable right.

14         Related to that is the lender's obligation to

15 provide an accurate payoff demand.  That's in Civil Code

16 2943(a)(5).  And under the case, Cathay Bank, 46

17 Cal.App.4th 266, the burden is on the creditor to

18 provide an accurate amount to pay the loan, and if it's

19 not accurate, then a tender of whatever would believe to

20 be accurate captures everything.  The rest becomes

21 unsecured.

22         The problem here is that every time we've asked

23 for a payoff demand, we get a response that has blanks

24 saying, "Well, we can't figure it out because there's

25 still more proceedings.  There's today's hearing.

15    122

747

UMPQUA BANK vs XELAN PROP 1, LLC, ET AL.
Transcript of Proceedings on 04/10/2019                              Page 10

1    There's an eventual hearing on the final accounting.

2    There may be even an appeal that will take two years to

3    resolve."  That's not a proper payoff demand, Your

4    Honor, and that's all we've gotten every time that we've

5    asked, is a fill-in-the-blank exercise.  So we were left

6    to guess.

7            And my client did make a tender last week of

8    what should have been the full amount that is calculated

9    by the bank's only accurate payoff demand of March 14th,

10   I think it was.  That's what she used to calculate the

11   payoff demand and she has the right to tender that.

12   Upon tender, the secured obligation is done.  If there

13   are further things that the receiver needs to do, that's

14   on the lender's tab.  It's not part of the secured debt.

15           So the point here is that the receiver's

16   proceedings cannot be used to thwart the statutory right

17   of redemption, and that's exactly what's happened here.

18           THE COURT:  Thank you, Mr. Brodehl.

19           Mr. Singer, is there anything you want to say?

20           MR. SINGER:  I'll hold my comments.  I mean,

21   they're arguing on legal issues, and I'll let those get

22   out before, and then I'll advise you on my thoughts of

23   moving forward with the sale.

24           THE COURT:  Mr. Kaplan?

25           MR. KAPLAN:  A couple of responses.  There's no

15   123

748

UMPQUA BANK vs XELAN PROP 1, LLC, ET AL.
Transcript of Proceedings on 04/10/2019                     Page 11

```
 1  right of redemption in receiver sales.  We seem to be

 2  relitigating the whole receivership sale process.  The

 3  case was cited and all of the statutes.  This is not in

 4  the opposition.  And the reply we filed a long time ago,

 5  on March 26th, briefed the right of redemption issue.

 6          So in terms of the comments on the payoff, the

 7  payoff agreement, which, actually, Mr. Brodehl reviewed

 8  on March 29th, it has a procedure for quoting the number

 9  as of a certain date and that one day before closing, we

10  updated the legal fees.  We didn't receive any comments.

11  All the comments here about the deficiencies and the

12  stipulation and the payoff agreement, fine.  Mr.

13  Manasian was supposed to get back to us.  We were

14  supposed to have a dialogue, as the Court knows.

15          So Mr. Manasian basically doesn't get back to

16  us --

17          THE COURT:  He said he withdrew.

18          MR. KAPLAN:  Yeah.  He said, "I'm withdrawing

19  and my client won't sign anything."  Well, Your Honor,

20  we have a lawsuit.  And as the Court well knows,

21  lawsuits are often, most of the time, settled with

22  written agreements.  That's all these documents are.

23          And if someone didn't like the clause in the

24  agreement, Mr. Manasian should have gotten back to me.

25  I sent these out on April the 3rd.  We're now at April
```

15    124

749

```
 1   the 10th.  We still don't have comments on the drafts

 2   other than new arguments being raised by Counsel.

 3          And all of the other issues, the articles on

 4   receivership sales that were filed that Counsel wrote,

 5   we're not going to relitigate the receivership sale

 6   order here.  I think that was done in October of 2018.

 7   That's a long time for a motion for reconsideration on

 8   those kinds of issues.

 9          And now, I'll let the receiver speak to his

10   position.

11          THE COURT:  Is there anything else, Mr.

12   Brodehl, you want to add?

13          MR. BRODEHL:  Yes, Your Honor.  On the right of

14   redemption, I mean, the right is by statute, 2903.

15   Counsel here, you've heard him say that, "Well, the

16   receiver sales are immune from that."  I don't see any

17   cases or statute saying that, Your Honor.  And that's

18   part of the fundamental problem with the receiver sale

19   concept, and that's why I attached the article that I

20   coauthored from a few years ago.

21          So what happens to the right of redemption

22   then?

23          THE COURT:  Well, correct me if I'm wrong,

24   remember, I wasn't the person who authorized the

25   receivership.  That was the prior judge and everything,
```

IS    k2S

750

1   but my understanding was that we put this over so that

2   in good faith, the bank was willing to let Ms. Kihagi

3   attempt to redeem this property.  What everybody should

4   have known, or at least I thought everybody knew, that

5   there's a buyer who's sitting out there who's got the

6   money and ready, willing, and able to perform.  This, I

7   thought, was the bank's attempt to give this debtor a

8   last chance to do this.

9          Is that what was going on, Mr. Kaplan?

10         MR. KAPLAN:  That's what I understood in the

11  dialogue with Mr. Manasian and what he states to the

12  Court that is memorialized in the transcript.

13         THE COURT:  Yeah.  I'm just telling you that's

14  the way I --

15         MR. KAPLAN:  That's what we understood.

16         THE COURT:  That was my understanding of it.

17         In any event, is there anything else on these

18  legal issues before we hear from Mr. Singer?

19         MR. BRODEHL:  Yes.  Just a final point, Your

20  Honor.  The money was there, but the payoff was

21  conditioned on a complete release.  And that's not how

22  payoffs work under California mortgage law, Your Honor.

23         THE COURT:  Yeah, but unless somebody is going

24  to disabuse me, I quoted the figures from the beginning

25  that I was able to ascertain.  I didn't think there was

15    126

751

1    any mystery about these numbers, that she was $29,700

2    and some short just on the figures I had, which I didn't

3    claim were completely accurate to the penny.

4            But in any event, anything else anybody wants

5    to say on the legal issues before we hear from

6    Mr. Singer?

7            MR. KAPLAN:  My only comment is:  Right of

8    redemption, as we briefed on the 26th reply, they apply

9    to judicial foreclosure sales.

10           THE COURT:  Right.

11           MR. KAPLAN:  But this is not a judicial

12   foreclosure sale.

13           THE COURT:  I know that.

14           MR. KAPLAN:  You got that.  Okay.

15           THE COURT:  Anything else?  Yes, sir.

16           MR. BRODEHL:  If it's not a judicial sale, then

17   what is it?  There's only one permissible action under

18   California Code of Civil Procedure 726 to foreclose, and

19   that's a judicial foreclosure.  The only other

20   alternative is a nonjudicial foreclosure.  And if we're

21   there, there are statutes that need to be complied with

22   for a nonjudicial sale.  There are no statutes

23   authorizing a receiver sale.

24           And 568.5, which is the one statute that

25   they've been able to point to and rely on in the

15    127

1  Cal-American case that talks about it, that's never been

2  applied to a receiver sale in a deeds of trust

3  receivership.  Never.  Every case that they've cited has

4  been a general equity receivership, or as the statute

5  suggests, for enforcement of judgment receivership.

6  That statute has never been applied to a rents and

7  profits receivership, which is what we have here.

8           THE COURT:  Mr. Kaplan or Mr. Singer, when was

9  this tender made by the borrower?

10          MR. KAPLAN:  We received the unsolicited wire

11 on Monday morning at 8:24 a.m.

12          THE COURT:  So Monday would have been -- today

13 is the 11th.  That would have been the 9th of April;

14 right?  That's Monday.

15          MR. KAPLAN:  No, today is the 10th, so it was

16 the 8th.

17          THE COURT:  Today is the 10th or the 11th?

18          MR. KAPLAN:  Yes, today is the 10th.

19          MR. SINGER:  That's how I feel.

20          THE COURT:  So it would have been the 8th.

21          Okay.  In any event, anything else, folks?

22          MR. KAPLAN:  All I'm going to say is --

23          THE COURT:  Off the record.

24          (Off the record.)

25          MR. KAPLAN:  One final comment.  The

UMPQUA BANK vs XELAN PROP 1, LLC, ET AL.
Transcript of Proceedings on 04/10/2019                          Page 16

1    Cal-American case cited on Page 5 of our reply

2    specifically says in a rents and profits receivership,

3    the receiver can sell the property.  So I don't know

4    where these arguments are coming from.  That's what the

5    appellate court said, not an article that Counsel wrote.

6            Mr. Singer?

7            THE COURT:  Anything else?

8            MR. BRODEHL:  The Tuner case, Your Honor,

9    that's the one case that's essential to read for all of

10   this rents and profits versus general equity

11   receivership stuff.

12           THE COURT:  Thank you.

13           Mr. Singer?

14           MR. SINGER:  Thank you, Your Honor.  Obviously,

15   we're here today to decide whether we're going to go

16   forward with a Court confirmation overbid hearing.  I'm

17   not opposed to that.  We've brought in the buyer two

18   times.  He's sitting here now before us.  He's ready to

19   move forward.  We have an overbidder who was on call

20   last time and is now present in this courtroom today

21   ready to overbid.

22           I'm recommending that we move forward with the

23   sale.  I mean, first of all, it would be fair to these

24   buyers; secondly, to be fair to the plaintiff.  And one

25   may even argue to be fair to the defendant.

15    129

754

UMPQUA BANK vs XELAN PROP 1, LLC, ET AL.
Transcript of Proceedings on 04/10/2019                    Page 17

1              THE COURT:  There won't be a deficiency then;

2    right?

3              MR. BRODEHL:  Good question, Your Honor.

4              THE COURT:  I mean, you've got an overbid.

5              MR. SINGER:  There certainly will not be.

6              MR. KAPLAN:  There would not be, Your Honor.

7              MR. SINGER:  There would not be a deficiency.

8    I can tell you that.

9              THE COURT:  I mean, because under these

10   circumstances, it's possible to have a deficiency

11   judgment; right?  That could happen here.

12             MR. BRODEHL:  No, Your Honor.  Only with a

13   judicial foreclosure is that possible.

14             THE COURT:  Well, what I'm getting at is:  That

15   won't happen under these circumstances.

16             In any event, I interrupted you.

17             MR. SINGER:  No problem.  The plaintiff and

18   defendant's counsel and myself really worked to try to

19   settle this case, and it just appears that defendant

20   won't settle it.  This motion for sale has been now

21   challenged via noticed motion, ex parte, and multiple

22   judges in this courthouse have upheld this receivership

23   sale.  And that's why the Filbert property sale went

24   forward, which was another sale of this portfolio.

25             You know, defendant has had about a year now to

755

1   try to settle this, and now we're a year into this and

2   it's still not being settled at this point.  So, you

3   know, I think to put this over again will only cause us

4   to lose our buyers.  It will cause the increase in cost

5   and expense if we have to go through the sales process

6   one more time.  And who knows?  It might even devalue

7   the next sale because they heard about all of the

8   problems that we had with this sale.

9            So those are my thoughts on this matter.

10           THE COURT:  Anything else, folks?

11           MR. KAPLAN:  Submitted, Your Honor.

12           MR. BRODEHL:  No, Your Honor.

13           THE COURT:  What are you requesting, Mr.

14  Kaplan?

15           MR. KAPLAN:  Excuse me?

16           THE COURT:  What's your request for the Court?

17           MR. KAPLAN:  My request is that the motion be

18  granted and that the receiver be permitted to conduct

19  the overbid, which is part of the motion.  I realize

20  there's a lot of people in the courtroom.  And I don't

21  know -- when we did this before Judge Ulmer, we had a

22  single assignment, so we did it right after the hearing,

23  but that may take a while.

24           THE COURT:  May I first take it one step at a

25  time?

1        MR. BRODEHL:  Sure.

2        THE COURT:  I just need to know, legally,

3    you're asking me for an order authorizing the receiver

4    to sell the property?

5        MR. KAPLAN:  Yes, to grant the motion, Your

6    Honor.

7        THE COURT:  That's the motion?

8        MR. KAPLAN:  Yeah.

9        MR. BRODEHL:  It could be an order confirming

10   the sale.  That's the way it was structured.

11       THE COURT:  Why don't we get the order to sell

12   it first.  Okay?  Isn't that what you need right now?

13       MR. KAPLAN:  Yeah.  We have a proposed order

14   that we attached to the motion.

15       THE COURT:  Well, in any event, it's submitted.

16   I'll grant the order.

17       Now, as far as the mechanics of conducting it,

18   if you want to conduct it the way you suggested and

19   Mr. Singer is in agreement with that, I have no problem

20   with that.  I have a couple of other things I think I

21   have to go through.

22       Is that how you want to proceed?

23       MR. SINGER:  Yes, please.  We'll do it last on

24   calendar.

25       THE COURT:  Why don't we then -- for now, let's

15   132
757

UMPQUA BANK vs XELAN PROP 1, LLC, ET AL.
Transcript of Proceedings on 04/10/2019                    Page 20

1   table this and we'll have to come back to it.  Is that

2   right?

3            MR. SINGER:  Correct.

4            THE COURT:  Thank you very much.

5            MR. KAPLAN:  Your Honor, the order I have

6   basically grants the motion and approves the overbidder.

7   So it's a combined order, so we should do it at the end.

8            THE COURT:  Okay.  Thank you.

9            (Off the record.)

10           THE CLERK:  This is Case Number CGC-18 --

11           THE COURT:  Wait a minute.  The reason I was

12   delayed, I was doing an EPO.  Another one might come in

13   and I've got to be on call.

14           I'm sorry, I interrupted you.  Go ahead.

15           THE CLERK:  Thank you, Your Honor.

16           Case Number CGC-18-564941, Umpqua Bank versus

17   Xelan Property 1.

18           Counsel, state your appearances.

19           MR. KAPLAN:  Good morning, Your Honor.  Once

20   again, Robert Kaplan of Jeffer Mangels Butler & Mitchell

21   LLP for plaintiff, Umpqua Bank.

22           THE COURT:  Thank you.

23           MR. BRODEHL:  Kevin Brodehl for defendant,

24   Xelan Prop 1 LLC.

25           MR. SINGER:  And Kevin Singer, the Superior

15   133
                                                              758

UMPQUA BANK vs XELAN PROP 1, LLC, ET AL.
Transcript of Proceedings on 04/10/2019                    Page 21

1   Court receiver.

2          THE COURT:  Good morning.  Welcome back.

3          Where are we, Mr. Singer?

4          MR. SINGER:  Your Honor, we're here for the

5   Court confirmation overbid hearing of the property at

6   4018-4022 19th Street, San Francisco, California.

7          I just want to advise the Court, in preparation

8   for this hearing, we gave notice to all parties.  The

9   realtor posted public notice of sale on various

10  locations on the property.  We published notice of sale

11  three consecutive times in a county-wide newspaper, in

12  the San Francisco Daily Journal.  Our realtor advertised

13  the hearing on the Multiple Listing Service.  Our

14  realtor e-mailed all interested prospective buyers of

15  this hearing.  Our realtor posted a public notice of

16  sale at the San Francisco Public Library.  And our

17  realtor delivered notice of this hearing to a tenant in

18  Unit Number 7.

19         This has been all filed -- this has all been

20  done by declaration and filed with the court, so it's

21  all in the Court's record, and nobody has objected to

22  our service to conduct this Court confirmation overbid

23  hearing.

24         Your Honor, our current buyer, Kenneth Kaplan

25  and Brandon Kaplan -- or our original buyers, are

1S   134/759

1    currently under contract to purchase the property for

2    3,650,000.  We do have an overbidder today, Ting Tsai,

3    who wants to overbid, who has been prequalified and has

4    tendered a 114,000-dollar cashier's check to us to

5    participate today.

6            I just want to check the room at this time to

7    see if there is anybody else in here who wants to

8    participate in this Court confirmation overbid hearing.

9            Seeing that we don't, if I could ask the

10   original buyer and overbidders to come forward at this

11   time and stand in front of their name tags at the

12   counsel table here (indicating).

13           Mr. Kaplan, you're going to be over here

14   (indicating).  You can stand or sit, whatever you

15   prefer.

16           Mr. Tsai, you're going to be over here

17   (indicating).  You can stand or sit, whichever is more

18   comfortable for you.

19           Prior to you taking the bench, Your Honor, I

20   went over the rules today with both parties and gave

21   everybody a chance to answer questions.  But just for

22   your edification, this is an as-is sale with no

23   warranties except for clear title.  If the Court

24   confirms the sale today, they have 20 days to close or

25   their funds will be forfeited.

1          Kenneth Kaplan and Brandon Kaplan are our

2   original buyers and currently have a deposit in escrow

3   of $109,500.  And as I mentioned previously, the

4   overbidder has delivered a 114,000-dollar check to me as

5   a deposit.  And these deposits are nonrefundable if the

6   Court confirms the sale today and they do not close

7   within the 20-day period.

8          The original buyer, Mr. Kaplan, is currently

9   under contract, as I said, to purchase the property for

10  $3,650,000.  So the first overbid today will be

11  3,800,000, and each additional bid will be increased by

12  150,000.

13          Now, the original buyer, Mr. Kaplan, only needs

14  to match a bid to prevail today.  If the overbidder, Mr.

15  Tsai, wins today and does not close the sale within

16  20 days, then Mr. Kaplan will get a chance to purchase

17  the property for his original bid of 3,650,000.  If Mr.

18  Kaplan prevails but does not close the sale within the

19  20 days, Mr. Tsai will get to purchase the property at

20  his highest bid today.

21          I've already asked the parties questions.  I've

22  already answered their questions.  I just want to check

23  to see if you have any questions.

24          THE COURT:  I don't.

25          Does anybody have any further questions in

15   136

UMPQUA BANK vs XELAN PROP 1, LLC, ET AL.
Transcript of Proceedings on 04/10/2019                                   Page 24

1    respect to the procedure that's going to be used or any

2    other questions?  Because we're going to proceed then.

3            Is that right, Mr. Singer?

4            MR. SINGER:  That's right.  We're going to

5    proceed right here.

6            (No response heard.)

7            THE COURT:  I don't hear any responses.  All

8    right.

9            MR. SINGER:  I think we did a good job of

10   vetting all of the questions before you got on the

11   bench.

12           THE COURT:  Good.

13           MR. SINGER:  So we're going to begin the

14   bidding process here.  The first overbid is 3,800,000,

15   and it goes to Mr. Tsai.

16           Are you willing to bid 3,800,000 to purchase

17   this property?

18           MR. TING TSAI:  Yes.

19           MR. SINGER:  Yes.  Okay.  Good.

20           Mr. Kaplan, we just go back to you, see if you

21   want to match that offer and that bid.

22           MR. BRANDON KAPLAN:  I do.

23           MR. SINGER:  Great.  Then we go up to the next

24   bid, which is 3,950,000.

25           Mr. Tsai, do you want to go up to that bid

15  137  762

UMPQUA BANK vs XELAN PROP 1, LLC, ET AL.
Transcript of  Proceedings on 04/10/2019.          Page 25

1  level?

2          MR. TING TSAI:  Yes.

3          MR. SINGER:  Okay.  He does.  So we'll go back

4  to Mr. Kaplan.

5          Do you want to match that bid level at

6  3,950,000?

7          MR. BRANDON KAPLAN:  I do.

8          MR. SINGER:  So then we'll go back to Mr. Tsai.

9          We're at $4,100,000.  Do you want to go to that

10  bid level?

11          MR. TING TSAI:  Yes.

12          MR. SINGER:  We go back to Mr. Kaplan.

13          Do you want to match that offer at 4,100,000?

14          MR. BRANDON KAPLAN:  I do.

15          MR. SINGER:  Okay.  So we go back to Mr. Tsai

16  at 4,250,000.

17          Do you want to go to that bid level?

18          MR. TING TSAI:  Yes, I do.

19          MR. SINGER:  Great.  We'll go back to Mr.

20  Kaplan.

21          Do you want to match that bid at 4,250,000?

22          MR. BRANDON KAPLAN:  I do.

23          MR. SINGER:  So we go back to Mr. Tsai.

24          We're at 4,400,000.  Do you want to go

25  4,400,000?

15   138

763

UMPQUA BANK vs XELAN PROP 1, LLC, ET AL.
Transcript of  Proceedings on 04/10/2019                                    Page 26

```
 1          THE COURT:  I thought we were at 4,250,000.

 2          MR. SINGER:  Oh, I thought I said -- are we at

 3  4,250,000?

 4          THE COURT:  That's what I noted.

 5          MR. SINGER:  My apologies.  I'm just trying to

 6  get them -- my apologies.  4,250,000.

 7          MR. TING TSAI:  Yes, I do.

 8          MR. SINGER:  Good.

 9          Mr. Kaplan, do you want to match at 4,250,000?

10          MR. BRANDON KAPLAN:  I do.

11          MR. SINGER:  Great.  So I knew we were going to

12  get here.  I was just trying to get us here quicker.

13          Mr. Tsai, do you want to go to 4,400,000?

14          MR. TING TSAI:  Yes, I do.

15          MR. SINGER:  Good.  We'll go back to Mr.

16  Kaplan.

17          We're at 4,400,000.

18          MR. BRANDON KAPLAN:  I will match it.

19          MR. SINGER:  Okay.  Mr. Tsai, we're at

20  4,550,000.

21          MR. TING TSAI:  4.5; right?

22          MR. SINGER:  4,550,000.  It's a bargain at that

23  price.  You can't let it go at that price.  You've got

24  to jump in.

25          MR. TING TSAI:  Yes, I do.
```

Exh. 15   p. 139
764

```
 1          MR. SINGER:  Mr. Kaplan, we're back to you at

 2   4,550,000.

 3          MR. BRANDON KAPLAN:  I'll match it.

 4          MR. SINGER:  Mr. Tsai, we're back to you at

 5   4,700,000.

 6          MR. TING TSAI:  No, I'm not going to.

 7          MR. SINGER:  Are you sure?

 8          MR. TING TSAI:  No.

 9          MR. SINGER:  Okay.  So Mr. Kaplan is prevailing

10   at 4,550,000.

11          Mr. Tsai, you have a backup offer at 4,400,000

12   in the event he does not perform on his sale.

13          Your Honor, this concludes our Court

14   confirmation overbid hearing.  We'll prepare an order

15   and we will present it to you because we need to fill in

16   some blanks for you now that we have --

17          THE COURT:  Do you want to see what we've

18   already got?  Is there anything else you need for the

19   record?

20          MR. SINGER:  No.  I just need to fill in these

21   prices.  Offer and backup offer, and then get it to you.

22          THE COURT:  Thank you very much.  Thank you all

23   for coming today.

24          MR. SINGER:  Thank you, Your Honor.  Appreciate

25   it.
```

15 · 140

UMPQUA BANK vs XELAN PROP 1, LLC, ET AL.
Transcript of Proceedings on 04/10/2019                    Page 28

```
 1      THE COURT:  Thank you, everybody.

 2      (Proceedings concluded at 11:53 a.m.)

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

15  141

766

```
 1                    REPORTER'S CERTIFICATION

 2

 3        I, Sheila Pham, a Certified Shorthand Reporter, do

 4   hereby certify:

 5        That the foregoing proceedings were taken before me

 6   at the time and place therein set forth, that the

 7   proceedings were reported stenographically by me and

 8   were thereafter transcribed under my direction and

 9   supervision, and that the foregoing pages contain a

10   full, true and accurate record of all proceedings and

11   testimony to the best of my skill and ability.

12        In witness whereof, I have subscribed my name.

13

14

15   Dated: April 15, 2019

16

17

18        _____

19

20            Sheila Pham
              CSR No. 13293
21

22

23

24

25
```

15    142

767

**UMPQUA BANK vs XELAN PROP 1, LLC, ET AL.**
Transcript of Proceedings on 04/10/2019  Index: $1,834,270.48..advise

| | | | |
|---|---|---|---|
| **$** | 11th  15:13, 17 | 23:11 24:14,16 | 726  14:18 |
| | | | 7:00  5:4 |
| $1,834,270.48 6:5 | 14th  10:9 150,000 23:12 | 3,950,000 24:24 25:6 | |
| | | | **8** |
| $1,869,018.30 5:17 | 19th  21:6 | 3rd  11:25 | 8:24  5:14 15:11 |
| $1.8  5:15 | | **4** | |
| | **2** | | 8th  15:16, 20 |
| $109,500 23:3 | 2  3:4 | 4,100,000 25:13 | |
| | | | **9** |
| $29,000  6:22 7:3 | 20  22:24 23:16,19 | 4,250,000 25:16,21 26:1,3,6,9 | 9th  15:13 |
| $29,700  14:1 | 20-day  23:7 | | **A** |
| $29,747.90 6:6 | 2018  12:6 | 4,400,000 25:24,25 26:13,17 27:11 | a.m.  3:2 15:11 28:2 |
| $3,650,000 23:10 | 2019  3:1 | | accepting 9:5 |
| | 266  9:17 | 4,550,000 26:20,22 27:2,10 | |
| $4,100,000 25:9 | 26th  11:5 14:8 | | accounting 9:1,2 10:1 |
| | 2903  9:11 12:14 | 4,700,000 27:5 | accurate 9:15,18, 19,20 10:9 14:3 |
| **1** | 2905  9:11 | 4.5  26:21 | |
| 1  3:8,19 20:17,24 | 2943(a)(5) 9:16 | 4018-4022 21:6 | action  14:17 |
| 10  3:1 | 29th  11:8 | 46  9:16 | add  8:12 12:12 |
| 10:25  3:2 | 2:32  5:11 | | additional 23:11 |
| 10th  12:1 15:15,17, 18 | 2nd  8:16 | **5** | |
| | **3** | 5  16:1 | advertised 21:12 |
| 114,000-dollar 22:4 23:4 | 3,650,000 22:2 23:17 | 5  14:24 | advise  10:22 21:7 |
| 11:53  3:2 28:2 | 3,800,000 | **7** | |
| | | 7  21:18 | |

15   143

768

UMPQUA BANK vs XELAN PROP 1, LLC, ET AL.
Transcript of Proceedings on 04/10/2019        Index: afternoon..buyer

afternoon
 5:10

agreement
 6:11 7:8
 8:23 11:7,
 12,24
 19:19

agreements
 11:22

ahead  20:14

alternative
 14:20

American  6:2

amount  8:20
 9:18 10:8

apologies
 26:5,6

apparently
 8:3 9:2

appeal  10:2

appearances
 3:9 20:18

appears
 17:19

appellate
 16:5

applied
 15:2,6

apply  14:5
 14:23

approach  4:2

approve  8:2

approves

20:6

April  3:1
 8:16 11:25
 15:13

argue  16:25

arguing
 10:21

arguments
 12:2 16:4

article
 12:19 16:5

articles
 12:3

as-is  22:22

ascertain
 13:25

assignment
 18:22

attached
 12:19
 19:14

attempt
 13:3,7

attorneys'
 6:9

authorized
 12:24

authorizing
 14:23

B

back  5:2,9

11:13,15,
24 20:1
21:2 24:20
25:3,8,12,
15,19,23

27:1,4

backup
 27:11,21

balance  6:4

bank  3:8,13
 5:15 6:22
 7:14 8:24
 9:16 13:2
 20:16,21

bank's  9:4
 10:9 13:7

bargain
 26:22

basically
 11:15 20:6

begin  6:24,
 25 24:13

beginning
 13:24

bench  22:19
 24:11

bid  23:11,
 14,17,20
 24:16,21,
 25:5,10,
 17,21

bidding

24:14

bigger  8:22
 9:8

blanks  9:23
 27:16

borrower
 9:11 15:9

Brandon
 21:25 23:1
 24:22
 25:7,14,22
 26:10,18
 27:3

briefed  11:5
 14:8

Brodehl
 3:18,19,20
 4:6,7 8:9,
 11,14,16
 10:18 11:7
 12:12,13
 13:19
 14:16 16:8
 17:3,12
 18:12
 19:1,9
 20:23

brought
 16:17

burden  9:17

burner  3:12
 20:20

buyer  13:5
 16:17

15   144
769

UMPQUA BANK vs XELAN PROP 1, LLC, ET AL.
Transcript of Proceedings on 04/10/2019          Index: buyers..correct

21:24
22:10
23:8,13

buyers  16:24
18:4
21:14,25
23:2

———————

**c**

Cal-american
15:1  16:1

Cal.app.4th
9:17

calculate
10:10

calculated
10:8

calendar
19:24

California
3:1  9:12
13:22
14:18  21:6

call  16:19
20:13

Calling  3:4

captures
9:20

case  3:7,16
9:16  11:3
15:1,3
16:1,8,9
17:19
20:10,16

cases  12:17

cashier's
22:4

Cathay  9:16

CGC-18-564940
12:20

CGC-18-564941
3:7  20:16

challenged
17:21

chance  13:8
22:21
23:16

change  6:22
7:4,5

changing
8:20

check  22:4,6
23:4,22

circumstances
17:10,15

cited  11:3
15:3  16:1

Civil  9:10,
15  14:18

claim  14:3

clause  11:23

clear  6:21
8:19  22:23

concept
20:10,15

client  8:6
10:7  11:19

close  6:3
8:7  22:24
23:6,15,18

closing  11:9

coauthored
12:20

Code  9:10,
15  14:18

collect  7:17

combined
20:7

comfortable
22:18

comment  14:7
15:25

comments  5:6
10:20
11:6,10,11
12:1

company  5:16
6:1

complete
8:25  9:5
13:21

completely
14:3

complied
14:21

concept
20:10,15

concluded
28:2

concludes
27:13

condition
9:4

conditioned
13:21

conduct
18:18
19:18
21:22

conducting
19:17

confirmation
16:16
21:5,22
22:8  27:14

confirming
19:9

confirms
22:24  23:6

consecutive
21:11

constantly
6:9

contacted
5:7

contract
22:1  23:9

contrary
8:19

correct  4:16
7:25  12:23
20:3

UMPQUA BANK vs XELAN PROP 1, LLC, ET AL.
Transcript of Proceedings on 04/10/2019          Index: cost..essential

cost  18:4

costs  6:10

counsel  3:9
  4:3 7:9,10
  8:4 12:2,
  4,15 16:5
  17:18
  20:18
  22:12

county-wide
  21:11

couple  10:25
  19:20

court  3:6,
  14,16,17,
  20 4:1,5,
  9,13,16,
  18,20,25
  5:17,20,25
  6:5,13
  7:4,15,19,
  24,25 8:2,
  9,12,15
  10:18,24
  11:14,17,
  20 12:11,
  23 13:12,
  13,16,23
  14:10,13,
  15 15:8,
  12,17,20,
  23 16:5,7
  12,16
  17:1,4,9,
  14 18:10,
  13,16,24

19:2,7,11,
  15,25
  20:4,8,11,
  22 21:1,2,
  5,7,20,22
  22 23
  23:6,24
  24:7,12
  26:1,4
  27:13,17,
  22 28:1

Court's  3:25
  6:19 8:4
  21:21

courthouse
  17:22

courtroom
  16:20
  18:20

creditor
  9:17

current
  21:24

_____

D

Daily  21:12

date  11:9

day  5:4
  8:20 11:9

days  22:24
  23:16,19

dealing  6:1

debt  6:21
  10:14

debtor  13:7

decide  16:15

declaration
  21:20

deeds  15:2

defendant
  3:19 16:25
  17:19,25
  20:23

defendant's
  17:18

deficiencies
  11:11

deficiency
  17:1,7,10

delayed
  20:12

delivered
  21:17 23:4

demand  8:18,
  19 9:15,23
  10:3,9,11

deposit
  23:2,5

deposits
  23:5

devalue  18:6

disabuse

13:24

discussed
  7:11

documents
  6:10 7:13,
  18 11:22

drafts  5:3
  12:1

_____

E

e-mail  5:9,
  12 7:7

e-mailed
  21:14

edification
  22:22

encumber
  5:21 6:19

encumbering
  7:13

end  20:7

enforcement
  15:5

EPO  20:12

equitable
  9:13

equity  15:4
  16:10

escrow  23:2

essential
  16:9

disabuse

11:14
  13:11

15   146

771

UMPQUA BANK vs XELAN PROP 1, LLC, ET AL.
Transcript of Proceedings on 04/10/2019          Index: event..Honor

event   7:6
  13:17 14:4
  15:21
  17:16
  19:15
  27:12

eventual
  10:1

exact   5:17

Excuse   7:19
  18:15

exercise
  10:5

expense   18:5

_____  F

fair   16:23,
  24,25

faith   13:2

feel   15:19

fees   6:9
  11:10

figure   9:24

figures
  13:24 14:2

Filbert
  17:23

filed   8:2
  11:4 12
  21:19,20

fill   27:15,
  20

fill-in-the-
blank   10:5

final   6:12
  9:1 10:1
  13:19
  15

fine   11:12

folks   15:21
  18:10

foreclose
  14:18

foreclosure
  14:9,12,
  19,20
  17:13

forfeited
  22:25

forward
  10:23
  16:16,19,
  22 17:24
  22:10

found   5:22
  9:10

Francisco
  3:1 21:6,
  12,16

Friday   5:10

front   22:11

fundamental
  8:18 12:18

funds   22:25

_____  G

gave   21:8
  22:20

general   15:4
  16:10

give   4:2
  13:7

giving   6:15

goal   4:14,
  16

good   3:11,
  14,15,17,
  18,20 4:25
  13:2 17:3
  20:19 21:2
  24:9,12,19
  26:8,15

grant   19:5,
  16

granted
  18:18

grants   20:6

great   4:1
  24:23
  25:19
  26:11

guess   10:6

_____

handing   4:4

happen   3:22
  17:11,15

happened
  3:24 4:17,
  18,19 5:2
  8:1 10:17

hear   13:18
  14:5 24:7

heard   12:15
  18:7 24:6

hearing   4:2
  5:4,13
  7:12 9:25
  10:1 16:16
  18:22
  21:5,8,13,
  15,17,23
  22:8 27:14

highest
  23:20

hold   10:20

Honor   3:11,
  15,18,23
  4:11,15
  8:19,22
  9:8 10:4
  11:19
  12:13,17
  13:20,22
  16:8,14
  17:3,6,12
  18:11,12
  19:6 20:5,
  11,15,19
  21:4,24
  22:19
  27:13,24

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

15   147
772

UMPQUA BANK vs XELAN PROP 1, LLC, ET AL.
Transcript of Proceedings on 04/10/2019   Index: immune..Manasian

**I**

immune  12:16

inches  4:14

including
6:14

increase
18:4

increased
23:11

indicating
22:12,14,
17

injunction
5:20 7:12
8:4

interested
21:14

interrupted
17:16
20:14

interrupting
6:13 7:19

issue  11:5

issues  7:11
10:21
12:3,8
13:18 14:5

**J**

Jeffer  3:12
20:20

job  24:9

Journal
21:12

judge  12:25
18:21

judges  17:22

judgment
15:5 17:11

judicial
14:9,11,
16,19
17:13

jump  26:24

junior  5:23

**K**

Kaplan  3:11,
12,23
4:11,15,
17,19,22
5:2,18,22
6:8 7:2,5,
22,25
10:24,25
11:18
13:9,10,15
14:7,11,14
15:8,10,
15,18,22,
25 17:6
18:11
15,17
19:5,8,13
20:5,19,20
21:24,25

22:13
23:1,8,13,
16,18
24:20,22
25:4,7,12,
14,20,22
26:9,10,
16,18
27:1,3,9

Kenneth
21:24 23:1

Kevin  3:15,
18 20:23,
25

Kihagi  7:7
13:2

kind  4:20,
21

kinds  12:8

knew  13:4
26:11

**L**

law  13:22

lawsuit
11:20

lawsuits
11:21

left  10:5
11:10
13:18 14:5

legally  19:2

lender's
9:14 10:14

level  25:1,
5,10,17

Library
21:16

Listing
21:13

LLC  20:24

LLP  3:12
20:21

loan  6:21
9:12,18

locations
21:10

long  11:4
12:7

lose  18:4

lot  8:17
18:20

**M**

made  9:7
15:9

make  6:14
10:7

Manasian
5:5,8,12
22,11 7:6
8:6 11:13,
15,24
13:11

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

773

UMPQUA BANK vs XELAN PROP 1, LLC, ET AL.
Transcript of Proceedings on 04/10/2019  Index: Mangels..participate

Mangels 3:12
  20:20

March 8:23
  10:9 11:5,
  8

match 23:14
  24:21
  25:5,13,21
  26:9,18
  27:3

math 6:7

matter 3:5
  18:9

mechanics
  19:17

memorialized
  13:12

mentioned
  23:3

million 5:15

minute 20:11

Mitchell
  3:12 20:20

Monday 5:14
  7:7 15:11,
  12,14

money 6:3,16
  7:24 13:6,
  20

month 8:3

months' 9:2

morning
  3:11,14,

15,17,18,
20 5:14
15:11
20:19 21:2

mortgage
13:12

motion 8:2
  12:7
  17:20,21
  18:17,19
  19:5,7,14
  20:6

move 16:19,
  22

moving 3:13
  10:23

multiple
  17:21
  21:13

mystery 14:1

_____

N

necessarily
  7:5

negotiation
  8:17

newspaper
  21:11

nonjudicial
14:20,
nonrefundable
  23:5

North 6:2

noted 26:4

notice 21:8,
  9,10,15,17

noticed
  17:21

number 3:4,7
  6:12 11:8
  20:10,16
  21:18

numbers 14:1

_____

O

objected
  21:21

objections
  8:25

obligation
  9:14 10:12

October 12:6

offer 24:21
  25:13
  27:11,21

office 5:3

opposed
  16:17

opposing 4:3

opposition
  9:7 11:4

order 8:16,
12:6 19:3,
9,11,13,16
20:5,7

27:14

original
21:25
22:10
23:2,8,13,
17

overbid
16:16,21
17:4 18:19
21:5,22
22:3,8
23:10
24:14
27:14

overbidder
16:19 20:6
22:2 23:4,
14

overbidders
22:10

_____

P

p.m. 5:11

papers 4:24
  5:3

Pardon 6:13

part 7:11
  10:14
  12:18
  18:19

parte 17:21

participate
  22:5,8

15   149

774

UMPQUA BANK vs XELAN PROP 1, LLC, ET AL.
Transcript of Proceedings on 04/10/2019                Index: parties..quoted

parties   21:8
  22:20
  23:21

party   3:13

pay   9:18

payment   7:14

payoff   6:4,
  6, 8, 11   7:8
  8:17, 19, 23
  9:5, 15, 23
  10:3, 9, 11
  11:6, 7, 12
  13:20

payoffs
  13:22

penny   14:3

people   18:20

perform   13:6
  27:12

period   23:7

permissible
  14:17

permitted
  18:18

person   12:24

plaintiff
  3:13   16:24
  17:17
  20:21

point   9:7
  10:15
  13:19
  14:25   18:2

portfolio
  17:24

position
  12:10

possession
  7:15

posted   21:9,
  15

prefer   22:15

preliminary
  8:4

preparation
  21:7

prepare
  27:14

prepared   4:1
  5:3

prequalified
  22:3

present
  16:20
  27:15

pretty   4:25
  8:7

prevail
  23:14

prevailing
  27:9

prevails
  23:18

previously
  23:3

price   26:23

prices   27:21

prior   12:25
  22:19

problem   4:25
  8:22   9:8,
  22   12:18
  17:17
  19:19

problems
  8:18   18:8

procedure
  11:8   14:18
  24:1

proceed
  19:22
  24:2, 5

proceedings
  9:25   10:16
  28:2

process   11:2
  18:5   24:14

profits   15:7
  16:2, 10

Prop   3:8, 19
  20:24

proper   10:3

property
  5:21, 24
  20, 21
  7:13, 21
  13:3   16:3
  17:23   19:4
  20:17

21:5, 10
  22:1   23:9,
  17, 19
  24:17

proposed
  8:17   19:13

prospective
  21:14

provide   5:24
  9:15, 18

public   21:9,
  15, 16

published
  21:10

purchase
  7:20   22:1
  23:9, 16, 19
  24:16

put   3:21
  4:13   6:12
  13:1   18:3

_____

Q

question
  17:3

questions
  22:21
  23:21, 22,
  23, 25
  24:2, 10

quicker
  26:12

quoted   13:24

775

UMPQUA BANK vs XELAN PROP 1, LLC, ET AL.
Transcript of Proceedings on 04/10/2019    Index: quoting..secured

quoting  11:8

---

**R**

raised  12:2

read  16:9

ready  4:12
  7:24 13:6
  16:18,21

real  6:6,8

realize
  18:19

realtor
  21:9,12,
  14,15,17

reason  20:11

reasons  5:19
  8:5

receive  5:6,
  13 11:10

received
  5:11,15
  15:10

receiver
  3:16 5:7
  7:15,16
  8:8,24 9:5
  10:13 11:1
  12:9,16,18
  14:23 15:2
  16:3 18:18
  19:3 21:1

receiver's
  8:25 9:6,9

10:15

receivership
  11:2 12:4,
  5,25 15:3,
  4,5,7
  16:2,19,21
  17:22

recollection
  3:25

recommending
  16:22

reconsideratio
  n  12:7

record  3:10
  15:23,24
  20:9 21:21
  27:19

recorded
  5:23

redeem  6:16
  9:12 13:3

redemption
  9:10 10:17
  11:1,5
  12:14,21
  14:8

refresh  3:24

Related  9:14

release  8:25
  9:5 13:21

released
  7:14

relitigate

12:5

relitigating
  11:2

rely  14:25

remember
  12:24

rent  7:17

rents  15:6
  16:2,10

reply  11:4
  14:8 16:1

reported  3:5

reporter  4:1

request  8:1
  18:16,17

requested
  5:6

requesting
  18:13

required
  8:20,24
  9:4

resolve  10:3

respect  24:1

response
  9:23 24:6

responses
  10:25 24:7

rest  9:20

reviewed

11:7

revised  5:3

rights  9:10

Robert  3:11
  20:20

room  22:6

rough  3:25

roughly  5:10

rules  22:20

---

**S**

sale  8:2
  10:23 11:2
  12:5,18
  14:12,16,
  22,23 15:2
  16:23
  17:20,23,
  24 18:7,8
  19:10
  21:9,10,16
  22:22,24
  23:6,15,18
  27:12

sales  11:1
  12:4,16
  14:9 18:5

San  3:1
  21:6,12,16

save  4:3,22

secure  6:20

secured
  10:12,14

15    151

776

UMPQUA BANK vs XELAN PROP 1, LLC, ET AL.
Transcript of Proceedings on 04/10/2019                Index: sell..Ting

| | | | |
|---|---|---|---|
| sell 16:3 | 17 | structured | tells 7:16 |
| 19:4,11 | sitting 13:5 | 19:10 | tenant 21:17 |
| service | 16:18 | stuff 16:11 | tender 9:19 |
| 21:13,22 | sounds 6:18 | submitted | 10:7,11,12 |
| settle | speaks 12:9 | 18:11 | 15:9 |
| 17:19,20 | | 21:19 | tendered |
| 18:1 | speaks 9:11 | suggested | 22:4 |
| settled | specifically | 19:18 | terms 11:6 |
| 11:21 18:2 | 16:2 | suggests | things 10:13 |
| short 6:6,23 | speed 8:1 | 15:5 | 19:20 |
| 7:3 14:2 | stand 22:11, | summarize | thought 8:7 |
| sign 7:8 | 14,17 | 4:23 | 13:4,7 |
| 8:6 11:19 | start 4:11 | summary 4:25 | 26:1,2 |
| Singer 3:15, | state 3:9 | Superior | thoughts |
| 16,17 | 20:18 | 3:16 20:25 | 10:22 18:9 |
| 10:19,20 | states 13:11 | supposed | Thursday |
| 13:18 14:6 | status 9:9 | 6:23 | 5:8,9 |
| 15:8,19 | statute 8:21 | 11:13,14 | thwart 9:9 |
| 16:6,13,14 | 12:14,17 | surprise | 10:16 |
| 17:5,7,17 | 14:24 | 5:18 7:10 | time 4:3 |
| 19:19,23 | 15:4,6 | surprised | 9:22 10:4 |
| 20:3,25 | statutes | 6:3 | 11:4,21 |
| 21:3,4 | 11:3 | | 12:7 16:20 |
| 24:3,4,9, | 14:21,22 | T | 18:6,25 |
| 13,19,23 | statutory | | 22:6,11 |
| 25:3,8,12, | 9:13 10:16 | tab 10:14 | times 16:18 |
| 15,19,23 | step 18:24 | table 20:1 | 21:11 |
| 26:2,5,8, | Stewart 5:16 | 22:12 | Ting 22:2 |
| 11,15,19, | single 18:22 | tags 22:11 | 24:18 |
| 22 27:1,4, | stipulation | talking 22:10 | 25:2,11,18 |
| 7,9,20,24 | 7:8 11:12 | talks 15:1 | 26:7,14, |
| single 18:22 | Street 21:6 | telling | 21,25 |
| sir 8:10 | | 13:13 | 27:6,8 |
| 14:15 | | | |
| sit 22:14, | | | |

15    152

777

UMPQUA BANK vs XELAN PROP 1, LLC, ET AL.
Transcript of Proceedings on 04/10/2019          Index: title..years

| title 5:16 | | warranties | | x |
|---|---|---|---|---|
| 6:1,2 | U | 22:23 | | X |
| 22:23 | | | | |
| today 5:13, | Ulmer 18:21 | Wednesday | | Xelan 3:8,19 |
| 22 7:1,23 | Umpqua 3:8, | 3:1 | | 20:17,24 |
| 9:7 15:12, | 13 5:15 | week 3:21 | | |
| 15,17,18 | 20:16,21 | 4:5 5:15 | | Y |
| 16:15,20 | understanding | 7:7 8:16, | | |
| 22:2,5,20, | 6:15 13:1, | 23 10:7 | | year 17:25 |
| 24 23:6, | 16 | week's 4:1 | | 18:1 |
| 10,14,15, | understood | 7:11 | | years 10:2 |
| 20 27:23 | 13:10,15 | whichever | | 12:20 |
| today's 9:25 | Unit 21:18 | 22:17 | | |
| tomorrow | unknown 8:5 | wins 23:15 | | |
| 5:10 | unsecured | wire 5:15 | | |
| transcript | 9:21 | 15:10 | | |
| 3:25 13:12 | unsolicited | withdraw 7:9 | | |
| trouble 4:23 | 15:10 | withdrawing | | |
| trust 5:23 | updated | 11:18 | | |
| 15:2 | 11:10 | withdrew | | |
| Tsai 22:2, | upheld 17:22 | 11:17 | | |
| 16 23:15, | | work 9:6 | | |
| 19 24:15, | V | 13:22 | | |
| 18,25 | | worked 5:4 | | |
| 25:2,8,11, | versus 3:8 | 17:18 | | |
| 15,18,23 | 16:10 | worth 9:2 | | |
| 26:7,13, | 20:16 | written | | |
| 14,19,21, | vetting | 11:22 | | |
| 25 27:4,6, | 24:10 | wrong 12:23 | | |
| 8,11 | violation | 12:4 | | |
| Tuesday 8:7 | 8:3 | | | |
| Tuner 16:8 | | 16:5 | | |
| | W | | | |
| | Wait 20:11 | | | |

15 - 153

# *Exhibit 16*



Robert B. Kaplan
Direct: (415) 984-9673
rbk@jmbm.com

Two Embarcadero Center, 5th Floor
San Francisco, California 94111-3813
(415) 398-8080    (415) 398-5584 Fax
www.jmbm.com

Ref: 77582-0003

April 15, 2019

**BY U.S. MAIL AND EMAIL**

Paul Manasian, Esq.
1310 65th Street
Emeryville, CA 94608

Kevin R. Brodehl, Esq.
Patton Sullivan Brodehl LLP
6600 Koll Center Parkway, Suite 250
Pleasanton, CA  94566

Re:    Umpqua Bank v. XELAN Prop 1, LLC, San Francisco Superior Court
       Case No. CGC-18-564941

Dear Counsel:

On April 6, 2018, the Order Appointing Receiver; and Preliminary Injunction in Aid of
Receiver ("Receiver Order") was filed in the above-entitled action, a copy of which is enclosed
for your reference.  I direct your attention to the provisions of the Receiver Order entitled
Preliminary Injunction in Aid of Receiver which state as follows which and prohibit XELAN
Prop 1, LLC from "encumbering" the Subject Properties (as that term is defined in the Receiver
Order which includes the real property commonly known as 4018-1022 19th Street, San
Francisco, California ("19th Street Property")):

PRELIMINARY INJUNCTION IN AID OF RECEIVER

IT IS FURTHER ORDERED that the Defendant, and all persons and entities now
in possession of any part of the Subject Properties and not holding under valid
leases, or rental agreements, shall forthwith surrender their possession thereof to
said Receiver, and that all tenants or lessees in possession of any part of the
Subject Properties, and such other persons or entities as may be lawfully in
possession thereof, are hereby directed to attorn as tenants, or lessees to said
Receiver, and until further order of this Court, to pay over to said Receiver all
rents, issues, income profits, revenues, and lease payments of the Subject
Properties now due and unpaid or that may hereafter become due, and all persons
and entities liable for such rents, issues, income, profits, revenues, royalties or
lease payments are hereby enjoined and restrained from paying any rents, issues,
income, profits, revenues, royalties, storage unit rentals or lease payments for the
Subject Properties to the Defendant, its agents, servants or attorneys.

16    154
780

Paul Manasian, Esq.
April 15, 2019
Page 2

IT IS FURTHER ORDERED that the Defendant and its agents, employees and
representatives, and all persons or entities acting under or in concert with the
Defendant, are restrained and enjoined from engaging in or performing, directly
or indirectly, any or all of the following acts:

1.      Demanding, collecting, receiving or in any other way diverting or using
any of the rents, issues, income, profits, revenues, royalties or lease payments
emanating from the Subject Properties;
2.      Interfering with or hindering in any way whatsoever the Receiver in the
performance of the Receiver's duties herein described and in the performance of
any duties incident thereto;
3.      Interfering in any manner with the Subject Properties, including its
possession;
4.      Transferring, conveying, assigning, pledging, deeding, selling, renting,
leasing, encumbering, changing ownership of, vesting of title to, or otherwise
disposing of the Subject Properties; and
5.      Terminating or otherwise affecting any of the utilities which service the
Subject Properties. (Emphasis added.)

The Bank's Motion for Order: (1) Instructing Receiver to Sell Real Property Asset of
Receivership Estate; and (2) Confirming Sale of Real Property [4018-1022 19th Street, San
Francisco, CA] ("19th Street Sale Motion") was granted at the hearing held on April 10, 2019
before Judge Haines, at which Mr. Brodehl appeared. During the course of the hearing, Judge
Haines stated: "Wasn't there an injunction saying that they couldn't encumber the property".

Subsequent to the date of the hearing on the 19th Street Sale Motion, the Bank obtained a
certified copy of a Deed of Trust and Assignment of Rent which was recorded on Friday, April
5, 2019 in the Official Records of the San Francisco County Recorder's Office, a copy of which
is enclosed, which was executed by XELAN Prop 1, LLC as trustor, in favor of Yu Sheng Victor
Liu and Lin Dee Liu, Eric Liu, Xiangu Liu, and Frank Chiou, as beneficiary, in the amount of
$2,700,000 (the "Liu Deed of Trust"). The recording of the Liu Deed of Trust was a violation of
the Preliminary Injunction set forth in the Receiver Order which prohibited XELAN Prop 1, LLC
from encumbering the 19th Street Property.

Demand is hereby made upon XELAN Prop 1, LLC to reconvey the Liu Deed of Trust on
or before 5:00 p.m. on April 16, 2019, and for you to provide me with a recorded copy of such a
reconveyance by that date and time. If XELAN Prop 1, LLC fails to do so, the Bank will take
the appropriate steps necessary to bring XELAN Prop 1, LLC's violation of the Preliminary
Injunction to the Court and will seek an Order requiring the Liu Deed of Trust to be reconveyed.

Time is of the essence with respect to the demand made in this letter.



16    155

Paul Manasian, Esq.
April 15, 2019
Page 3

Very truly yours,

ROBERT B. KAPLAN, P.C. of
Jeffer Mangels Butler & Mitchell LLP

RBK:dgs
cc:    Kevin Singer, Receiver (via email) (w/encl.)
       Rick Marquis (via email) (w/encl.)

782

# *Exhibit 17*



# State of California
## Secretary of State

**L**

STATEMENT OF INFORMATION **129**
(Limited Liability Company)

Filing Fee $20.00. If this is an amendment, see instructions.

**IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

**FILED**
Secretary of State
State of California

**JAN 22 2016**

NF

This Space For Filing Use Only

1. LIMITED LIABILITY COMPANY NAME

NIVO 1 LLC

**File Number and State or Place of Organization**

2. SECRETARY OF STATE FILE NUMBER
200936210116

3. STATE OR PLACE OF ORGANIZATION (If formed outside of California)
CALIFORNIA

**No Change Statement**

4. If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no Statement of Information has been previously filed, this form must be completed in its entirety.

☑ If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed to Item 15.

**Complete Addresses for the Following** (Do not abbreviate the name of the city. Items 5 and 7 cannot be P.O. Boxes.)

5. STREET ADDRESS OF PRINCIPAL OFFICE
1220 N Formosa Ave # 2   CITY West Hollywood   STATE CA   ZIP CODE 90046

6. MAILING ADDRESS OF LLC, IF DIFFERENT THAN ITEM 5

7. STREET ADDRESS OF CALIFORNIA OFFICE
1220 N Formosa Ave #2   CITY West Hollywood   STATE CA   ZIP CODE 90046

**Name and Complete Address of the Chief Executive Officer, If Any**

8. NAME   ADDRESS   CITY   STATE   ZIP CODE

**Name and Complete Address of Any Manager or Managers, or if None Have Been Appointed or Elected, Provide the Name and Address of Each Member** (Attach additional pages, if necessary.)

9. NAME
ANNE KIHAGI   ADDRESS 458 Doheny Drive #1   CITY Los Angeles   STATE CA   ZIP CODE 90064

10. NAME   ADDRESS   CITY   STATE   ZIP CODE

11. NAME   ADDRESS   CITY   STATE   ZIP CODE

**Agent for Service of Process** If the agent is an individual, the agent must reside in California and Item 13 must be completed with a California address, a P.O. Box is not acceptable. If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 13 must be left blank.

12. NAME OF AGENT FOR SERVICE OF PROCESS
LEGALZOOM.COM, INC.  (CA 1C 7341)

13. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL   CITY   STATE CA   ZIP CODE

**Type of Business**

14. DESCRIBE THE TYPE OF BUSINESS OF THE LIMITED LIABILITY COMPANY
REAL ESTATE

15. THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

12/14/2015   ANNE KIHAGI   MANAGER
DATE   TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM   TITLE   SIGNATURE

LLC-12 (REV 01/2014)   APPROVED BY SECRETARY OF STATE

17   157

784

*Exhibit 18*

16-428504

**Secretary of State
Statement of Information
(Limited Liability Company)**

**LLC-12**

**FILED**
Secretary of State
State of California

JUN 20 2016

This Space For Office Use Only

126

21/20/pc

**IMPORTANT — Read Instructions before completing this form.**

Filing Fee - $20.00

Copy Fees - Face Page $1.00 & .50 for each attachment page,
Certification Fee - $5.00

**1.    Limited Liability Company Name**

ZORIALL LLC

| 2.    12-Digit Secretary of State File Number | 3.    State or Place of Organization (only if formed outside of California) |
|---|---|
| 201415310230 | |

**4.    Business Addresses**

| a. Street Address of Principal Office - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 458 Doheny Drive #1889 | West Hollywood | CA | 90048 |
| b. Mailing Address of LLC, if different than Item 4a | City (no abbreviations) | State | Zip Code |
| | | | |
| c. Street Address of California Office, if Item 4a is not in California - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
| | | CA | |

**5.    Manager(s) or Member(s)**    If no managers have been appointed or elected, provide the name and address of each member. At least one name and address must be listed. Attach additional pages, if necessary.

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Anne | | Kihagi | |
| b. Address | City (no abbreviations) | State | Zip Code |
| 458 Doheny Drive #1889 | West Hollywood | CA | 90048 |

**6.    Agent for Service of Process**    Item 6a and 6b: If the agent is an individual, the agent must reside in California and Item 6a and 6b must be completed with the agent's name and California address. Item 6c: If the agent is a California Registered Corporate Agent, a current agent registration certificate must be on file with the California Secretary of State and Item 6c must be completed (leave Item 6a-6b blank).

| a. California Agent's First Name (if agent is not a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| b. Street Address (if agent is not a corporation) - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
| | | CA | |
| c. California Registered Corporate Agent's Name (if agent is a corporation) — Do not complete Item 6a or 6b | | | |
| LegalZoom.com, Inc.         C2967349 | | | |

**7.    Type of Business**

| a. Describe the type of business or services of the Limited Liability Company |
|---|
| Rental |

**8.    Chief Executive Officer, if elected or appointed**

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| b. Address | City (no abbreviations) | State | Zip Code |
| | | | |

**9.    The information contained herein, including any attachments, is true and correct.**

| 06/14/2016 | Cheyenne Moseley | Authorized Representative | [signature] CM |
|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | Title | Signature |

**Return Address (Optional)** (For communication from the Secretary of State related to this document, or if purchasing a copy of the filed document enter the name of a person or company and the mailing address. This information will become public when filed. SEE INSTRUCTIONS BEFORE COMPLETING.)

| Name: | Cheyenne Moseley |
|---|---|
| Company: | LegalZoom.com, Inc. |
| Address: | 101 N. Brand Blvd. 11th Floor |
| City/State/Zip: | Glendale, CA 91203 |

LLC-12 (REV 05/2016)

2016 California Secretary of State
www.sos.ca.gov/business/be

18    158

*Exhibit 19*



**State of California**
Secretary of State

L

STATEMENT OF INFORMATION
(Limited Liability Company)

20

Filing Fee $20.00. If this is an amendment, see instructions.

**IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

FILED
Secretary of State
State of California

JUL 1 0 2015

21/NF/PC/20R
This Space For Filing Use Only  7/15/15

1. LIMITED LIABILITY COMPANY NAME

D. A. Becc - 007, LLC

**File Number and State or Place of Organization**

2. SECRETARY OF STATE FILE NUMBER
200603010110

3. STATE OR PLACE OF ORGANIZATION (if formed outside of California)
CA

**No Change Statement**

4. If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no Statement of Information has been previously filed, this form must be completed in its entirety.

☐ If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed to Item 15.

**Complete Addresses for the Following** (Do not abbreviate the name of the city. Items 5 and 7 cannot be P.O. Boxes.)

| | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 5. STREET ADDRESS OF PRINCIPAL OFFICE | 458 N Doheny Dr #1889 | West Hollywood | CA | 90048 |
| 6. MAILING ADDRESS OF LLC, IF DIFFERENT THAN ITEM 5 | | CITY | STATE | ZIP CODE |
| 7. STREET ADDRESS OF CALIFORNIA OFFICE | 458 N Doheny Dr #1889 | West Hollywood | CA | 90048 |

**Name and Complete Address of the Chief Executive Officer, If Any**

| 8. NAME | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| | | | | |

**Name and Complete Address of Any Manager or Managers, or if None Have Been Appointed or Elected, Provide the Name and Address of Each Member** (Attach additional pages, if necessary.)

| 9. NAME | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| Anne Kihagi | 458 N Doheny Dr #1889 | West Hollywood | CA | 90048 |
| 10. NAME | ADDRESS | CITY | STATE | ZIP CODE |
| 11. NAME | ADDRESS | CITY | STATE | ZIP CODE |

**Agent for Service of Process** If the agent is an individual, the agent must reside in California and Item 13 must be completed with a California address, a P.O. Box is not acceptable. If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 13 must be left blank.

12. NAME OF AGENT FOR SERVICE OF PROCESS
Legalzoom.com, Inc.

(c2967349)

13. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL    CITY    STATE    ZIP CODE
CA

**Type of Business**

14. DESCRIBE THE TYPE OF BUSINESS OF THE LIMITED LIABILITY COMPANY
Real Estate

15. THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| 07/07/2015 | Cheyenne Moseley | Authorized Representative | |
|---|---|---|---|
| DATE | TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | TITLE | SIGNATURE |

LLC-12 (REV 01/2014)                    APPROVED BY SECRETARY OF STATE

19  159

# *Exhibit 20*



This page is part of your document - DO NOT DISCARD

## 20180101957



Pages:
0007

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

01/31/18 AT 08:00AM

| | |
|---|---|
| FEES: | 56.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 206.00 |



LEADSHEET



20180131018004

00014841366



008879500

SEQ:
21

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED



T10



20   100

790

i548853
RECORDING REQUESTED BY
North American Title Company

APN # 5554-009-004 &
 # 5545-007-017

When Recorded Mail to

Lin Dee Liu Services
41368 Danzon Court
Fremont, CA 94539



## DEED OF TRUST AND ASSIGNMENT OF RENT

This Deed of Trust is dated January 29, 2018
**TRUSTOR:**  1263 North Crescent, LLC, a California Limited Liability Company & NIVO I,
LLC, a California Limited Liability Company
Trustor's address is P.O. Box 691889, Los Angeles, CA 90069
**TRUSTEE:** County Records Research
**BENEFICIARY:**  Yu Sheng Victor Liu, a married man, as to 100,000/800,000 interest and
Xiang Liu, a married woman as to 700,000/800,000 interest

Trustor owes Beneficiary the principal sum of $800,000.00.  This debt is evidenced by a
PROMISSORY NOTE dated January 29, 2018 (the "Note").

This Deed of Trust secures to Beneficiary:
(1)    Performance of each agreement and covenant of Trustor incorporated by reference,
contained in the Note or contained in this Deed of Trust;
(2)    The repayment of the debt evidenced by the Note, with interest, and all amounts which
shall become due under the Note, and all extensions, modifications, or renewals of the Note;
(3)    The payment of all sums, with interest, advanced under any provision of this Deed of
Trust.

As security for the performance of Trustor's obligations secured by this Deed of Trust, Trustor
IRREVOCABLY GRANTS, TRANSFERS, AND ASSIGNS to TRUSTEE IN TRUST, with
POWER OF SALE, the following property in the County of Los Angeles, State of California,
(the "Property"), described as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.**

Further Security:  Trustor hereby assigns to Beneficiary, as a further security for the indebtedness
secured hereby, Trustor's interest in all plans, permits, specifications and all third party reports,
studies, testing related to the property.

ACCELERATION ON TRANSFER OR ENCUMBRANCE OF THE PROPERTY:

3

If as to any or all of Trustor's interest in the Property, Trustor sells, transfers, contracts to sell, gives an option to purchase, conveys, leases for a term exceeding 10 years, encumbers, or alienates the Property; or causes or allows the Property to be subject to a junior lien or encumbrance; or if any or all of the title of the Trustor is impaired or divested, whether voluntarily or involuntarily; or if title to the Property be subject to any lien or charge, voluntary or involuntary, contractual or statutory, without the written consent of Beneficiary being first had and obtained; then Beneficiary shall have the right of acceleration, at its option, to declare the Note secured by this Deed of Trust, irrespective of the maturity date expressed therein, and without demand or notice, immediately due and payable. No waiver of this right shall be effective unless it is in writing. Consent by Beneficiary to one such transaction shall not constitute waiver of the right to require such consent in succeeding transactions.

TO PROTECT the security of this Deed of Trust, and with respect to the Property described above, Trustor expressly makes each of all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth as follows:

(1)    GOOD REPAIR:  To keep the Property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon; to keep all buildings, structures and other improvements now or hereafter situated on the above described Property at all times entirely free of dry rot, fungus, rust, decay, termites, beetles, and any other destructive insects or elements; to pay when due all claims for labor performed and materials furnished therefore to comply with all laws affecting the Property or requiring any alterations or improvements to be made thereon; not to commit waste or permit waste thereof; not to commit, suffer or permit any act upon the Property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune, and do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumeration's herein not excluding the general. Either Beneficiary or Trustee, or both, at any time during the continuation of the Deed of Trust, may enter upon and inspect the Property, provided such entry is reasonable as to time and manner.

(2)    HAZARD INSURANCE:  To provide, maintain and deliver to Beneficiary hazard insurance, including, without limitation, insurance against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Beneficiary requires insurance.  Insurance for personal injury claims is required.  All insurance shall be satisfactory to Beneficiary and shall be for an amount at least equal to the amount secured by this Deed of Trust.  Such insurance shall contain a provision for loss payable to Beneficiary and shall contain a standard mortgage clause. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor.  Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice.  Beneficiary shall have the right to hold all policies and renewals.  Beneficiary may make proof of loss if not made promptly by Trustor.  Trustor hereby assigns to Beneficiary the proceeds of any and all insurance policies covering the Property, whether or not that insurance is required by Beneficiary.  Trustor shall pay all insurance premiums required herein including, without limitation, any insurance obtained by Beneficiary due to Trustor's failure to secure insurance. Insurance shall be required regardless of the loan amount as compared to the value of the Property.

(3)    LEGAL PROCEEDINGS:  To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; to pay all costs, expenses and attorney's fees incurred by Beneficiary in any action or proceeding in which Beneficiary is named as a party which affects this Deed of Trust and/or the rights or powers of the Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding instituted by Beneficiary or Trustee to protect or enforce the security of this Deed of Trust or the obligations secured hereby.

(4)    TAXES AND LIENS:  To pay before delinquency all taxes and assessments affecting the Property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on the Property or any part appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

(5)    TRUSTOR'S FAILURE:  Should Trustor fail to make any payments or to do any act as herein provided, then Beneficiary or Trustee, but without obligation to do so and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as

792

*4*

either may deem necessary to protect the security thereof, Beneficiary or Trustee being authorized to enter upon the Property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment or either appears to be prior or superior thereto; and in exercising any such powers, pay necessary expense, employ counsel and pay counsel's reasonable fees.

(6)    ADVANCES:  To pay immediately and without demand all sums, including attorneys' fees, advanced or expended by Beneficiary or Trustee, with interest from the date of expenditure at the rate prescribed in the Note. Should any additional funds be advanced on any note secured by a Trust Deed now of record, or should any change be made in the time or manner of paying such note, or should any other action be taken by the undersigned with respect to such note whereby the security herein provided for shall be impaired in any manner whatsoever, then the Note secured hereby shall, at the option of the Beneficiary, immediately become due and payable. All advances and expenditures incurred by Beneficiary and/or trustee shall be added to the amount due under the Note and shall accrue interest at the rate of interest under the Note.

(7)    CONDEMNATION:  Any award of damages or sums received in settlement in connection with any condemnation for public use of or any injury to the Property or any part thereof from any cause, is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(8)    LEASEHOLD:  If the security for this Deed of Trust is a leasehold estate, Trustor agrees not to amend, change or modify his leasehold interest, or any of the terms thereof, or agree to do so, without the written consent of the Beneficiary being first obtained.  In the event of a violation of this provision, Beneficiary shall have the right, at its option, to declare all sums secured hereby immediately due and payable.

(9)    PAYMENTS:  By accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure to so pay.

Notwithstanding any provision herein or in the Note secured hereby to the contrary, Beneficiary or Trustee shall have the absolute right to direct manner, order and amount in which payments shall be applied upon or allocated among the various items composing Trustor's indebtedness secured hereby.

In the event of default in the payment of any of the moneys to be paid under the terms of the Note secured hereby or in the performance of any of the covenants and obligations of this Deed of Trust, then any funds in the possession of the Beneficiary, or other credits to which the Trustor would otherwise be entitled may, at the option of the Beneficiary, be applied to the payment of any obligation secured hereby in such order as the Beneficiary may, in its sole discretion determine.

(10)    POWER OF TRUSTEE:  At any time or from time to time, without liability therefore and without notice upon written request of Beneficiary and presentation of this Deed and the Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof.  Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect the Property or the title thereto, or purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee.

(11)    RECONVEYANCE:  Upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and the Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder.  The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof.  The grantee in such reconveyance may be described as the "person or persons legally-entitled thereto".  The Trustee may destroy the Note, this Deed of Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance.  Trustor shall pay the Trustee's fee for issuance of a reconveyance which shall be $65.00 or the maximum amount allowed by law, whichever is greater.

(12)    MISCELLANEOUS:  The Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns.  The term Beneficiary shall mean the owner or holder, including pledgees, of the Note secured hereby, whether or not named as Beneficiary herein.  In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.  As used herein, "fixtures" includes but is not limited to carpeting, built-in appliances, draperies and drapery rods, shrubs, water tanks, plumbing, machinery, air conditions, ducts, and the like.

(13)    TRUST:  Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public

20 ('03

793

5

record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

(14)    STATEMENTS: Trustor agrees to pay Beneficiary or his agent, the maximum legal charge for each statement regarding the Trust Deed obligation herein.  A statement includes but is not limited to a Beneficiary Statement, Credit Statement, Verification of Mortgage and any statement evidencing the debt.

(15)    PARTIAL PAYMENT:  Acceptance by Beneficiary of a partial payment on account, after Notice of Default has been recorded, shall not be construed as curing the default nor as a waiver of past or future delinquencies.

(16)    DEFAULT AND FORECLOSURE:  Upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice.  Beneficiary also shall deposit with Trustee this Deed, the Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following the recordation of such Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in such Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which the Property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale.  Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement.  Trustee shall deliver to such purchaser its deed conveying the Property to be sold, but without any covenant or warranty, expressed or implied.  The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof.  Any person including the Trustor, Trustee, or Beneficiary as hereinafter defined may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

(17)    SUBSTITUTION OF TRUSTEE:  Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where the Property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties.

Such instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.  If Notice of Default shall have been recorded, this power of substitution cannot be exercised until after the costs, fees and expenses of the then acting Trustee shall have been paid to such Trustee, who shall endorse receipt thereof upon such instrument of substitution.  The procedure herein provided for substitution of Trustees shall not be exclusive of other provisions for substitution provided by law.

(18)    CC&R'S:  If the security under this Deed of Trust is a condominium or a community apartment or planned development project, Trustor agrees to perform each and every obligation of the owner of such condominium or interest in such project under the declaration of covenants, conditions and restrictions or bylaws or regulations pertaining to such condominium or project.  Upon the request of Beneficiary, Trustor agrees to enforce against other owners in such condominium or project each and every obligation to be performed by them, if the same have not been performed or if valid legal steps have not been taken to enforce such performance within ninety (90) days after such request is made.

(19)    COVENANTS AND REPRESENTATIONS BY TRUSTOR:  Trustor covenants and represents that Trustor is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for matters disclosed in writing to Beneficiary.  Trustor covenants and represents to Beneficiary that Trustor has provided written disclosure to Beneficiary of all bankruptcy petitions which Trustor has filed at any time and that Trustor is not a debtor under any bankruptcy.  In the event that Trustor has filed a petition in bankruptcy or files a petition in bankruptcy at any time prior to the perfection of a secured lien

20 Page 164

*6*

evidenced by this Deed of Trust against the Property, then upon execution of this Deed of Trust Trustor transfers title to the Property to Beneficiary and such transfer shall be deemed a transfer under Bankruptcy Code Section 549.

This undersigned Trustor(s), requests that a copy of any Notice of Default and any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

TRUSTOR(S) *1263 N-Crescent LLC*

By: Anne Kihagi, Manager
1263 North Crescent LLC
a California Limited Liability Co.

By: Anne Kihagi, Manager
NIVO I, LLC
a California Limited Liability Co.

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signs the document to which this certificate is attached and not the truthfulness, accuracy or validity of that document.

---

State of California, County of *Los Angeles*
On *1-20-18* before me, *Marco Pedraja* (Public Notary)
personally appeared *Anne Kihagi*
_____, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to this deed of trust and acknowledged to me that he executed this deed of trust in his authorized capacity, and that by his signature on this deed of trust the person, or the entity upon behalf of which the person acted, executed this Deed of Trust.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary's Signature

MARCO PEDRAJA
Notary Public - California
Los Angeles County
Commission # 2201372
My Comm. Expires Jun 26, 2021

DEED OF TRUST (VERSION 10/14/96) PAGE 5 OF 5

*20* page *165*

## EXHIBIT "A"

### LEGAL DESCRIPTION

Real property in the City of West Hollywood, County of Los Angeles, State of California, described as follows:

PARCEL A:

LOT 3, EXCEPT THE NORTH 29 FEET THEREOF, IN BLOCK "J" OF CRESCENT HEIGHTS TRACT, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 6, PAGE(S) 92 AND 93, OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 5554-009-004

REAL PROPERTY IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

PARCEL B:

LOT 1 OF BROKAW TRACT NO. 2, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2 PAGE 67 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE SOUTHERLY 50 FEET THEREOF.

APN: 5545-007-017

# *Exhibit 21*

This page is part of your document - DO NOT DISCARD



## 20180077721

Pages:
0007

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

01/24/18 AT 08:00AM

| | |
|---|---|
| FEES: | 39.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 114.00 |



**LEADSHEET**



201801240120018

00014813175



D08864751

SEQ:
04

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED

T10

21   167

RECORDING REQUESTED BY
North American Title Company

APN # 4287-011-010

When Recorded Mail to:

Lin Dee Liu Services
41368 Danzon Court
Fremont, CA 94539



## DEED OF TRUST AND ASSIGNMENT OF RENT

This Deed of Trust is dated January 19, 2018
TRUSTOR: D A. BEEC-007, LLC, a California Limited Liability Company
Trustor's address is P.O. Box 691889, Los Angeles, CA 90069
TRUSTEE: County Records Research
BENEFICIARY:   Eric Liu, a married man as to 700,000/1,000,000 interest and Building
Futures Foundation, a Non-Profit California Corporation as to 300,000/1,000,000 interest

Trustor owes Beneficiary the principal sum of $1,000,000.00.   This debt is evidenced by a
PROMISSORY NOTE dated January 19, 2018 (the "Note").

This Deed of Trust secures to Beneficiary:
(1)    Performance of each agreement and covenant of Trustor incorporated by reference,
contained in the Note or contained in this Deed of Trust;
(2)    The repayment of the debt evidenced by the Note, with interest, and all amounts which
shall become due under the Note, and all extensions, modifications, or renewals of the Note;
(3)    The payment of all sums, with interest, advanced under any provision of this Deed of
Trust.

As security for the performance of Trustor's obligations secured by this Deed of Trust, Trustor
IRREVOCABLY GRANTS, TRANSFERS, AND ASSIGNS to TRUSTEE IN TRUST, with
POWER OF SALE, the following property in the City of Santa Monica, State of California, (the
"Property"), described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Further Security:  Trustor hereby assigns to Beneficiary, as a further security for the indebtedness
secured hereby, Trustor's interest in all plans, permits, specifications and all third party reports,
studies, testing related to the property.

ACCELERATION ON TRANSFER OR ENCUMBRANCE OF THE PROPERTY:
If as to any or all of Trustor's interest in the Property, Trustor sells, transfers, contracts to

DEED OF TRUST (VERSION 10/14/96) PAGE 1 OF 5

Exhibit 21 Page 168

sell, gives an option to purchase, conveys, leases for a term exceeding 10 years, encumbers, or alienates the Property; or causes or allows the Property to be subject to a junior lien or encumbrance; or if any or all of the title of the Trustor is impaired or divested, whether voluntarily or involuntarily; or if title to the Property be subject to any lien or charge, voluntary or involuntary, contractual or statutory, without the written consent of Beneficiary being first had and obtained; then Beneficiary shall have the right of acceleration, at its option, to declare the Note secured by this Deed of Trust, irrespective of the maturity date expressed therein, and without demand or notice, immediately due and payable. No waiver of this right shall be effective unless it is in writing. Consent by Beneficiary to one such transaction shall not constitute waiver of the right to require such consent in succeeding transactions.

TO PROTECT the security of this Deed of Trust, and with respect to the Property described above, Trustor expressly makes each of all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth as follows:

(1)    GOOD REPAIR: To keep the Property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon; to keep all buildings, structures and other improvements now or hereafter situated on the above described Property at all times entirely free of dry rot, fungus, rust, decay, termites, beetles, and any other destructive insects or elements; to pay when due all claims for labor performed and materials furnished therefore to comply with all laws affecting the Property or requiring any alterations or improvements to be made thereon; not to commit waste or permit waste thereof; not to commit, suffer or permit any act upon the Property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune, and do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumeration's herein not excluding the general. Either Beneficiary or Trustee, or both, at any time during the continuation of the Deed of Trust, may enter upon and inspect the Property, provided such entry is reasonable as to time and manner.

(2)    HAZARD INSURANCE: To provide, maintain and deliver to Beneficiary hazard insurance, including, without limitation, insurance against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Beneficiary requires insurance. Insurance for personal injury claims is required. All insurance shall be satisfactory to Beneficiary and shall be for an amount at least equal to the amount secured by this Deed of Trust. Such insurance shall contain a provision for loss payable to Beneficiary and shall contain a standard mortgage clause. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice. Beneficiary shall have the right to hold all policies and renewals. Beneficiary may make proof of loss if not made promptly by Trustor. Trustor hereby assigns to Beneficiary the proceeds of any and all insurance policies covering the Property, whether or not that insurance is required by Beneficiary. Trustor shall pay all insurance premiums required herein including, without limitation, any insurance obtained by Beneficiary due to Trustor's failure to secure insurance. Insurance shall be required regardless of the loan amount as compared to the value of the Property.

(3)    LEGAL PROCEEDINGS: To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; to pay all costs, expenses and attorney's fees incurred by Beneficiary in any action or proceeding in which Beneficiary is named as a party which affects this Deed of Trust and/or the rights or powers of the Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding instituted by Beneficiary or Trustee to protect or enforce the security of this Deed of Trust or the obligations secured hereby.

(4)    TAXES AND LIENS: To pay before delinquency all taxes and assessments affecting the Property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on the Property or any part appear to be prior or superior herein; all costs, fees and expenses of this Trust.

(5)    TRUSTOR'S FAILURE: Should Trustor fail to make any payments or to do any act as herein provided, then Beneficiary or Trustee, but without obligation to do so and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security thereof, Beneficiary or Trustee being authorized to enter upon the

21   169

800

Property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment or either appears to be prior or superior thereto; and in exercising any such powers, pay necessary expenses, employ counsel and pay counsel's reasonable fees.

(6)    ADVANCES: To pay immediately and without demand all sums, including attorneys' fees, advanced or expended by Beneficiary or Trustee, with interest from the date of expenditure at the rate prescribed in the Note. Should any additional funds be advanced on any note secured by a Trust Deed now of record, or should any change be made in the time or manner of paying such note, or should any other action be taken by the undersigned with respect to such note whereby the security herein provided for shall be impaired in any manner whatsoever, then the Note secured hereby shall, at the option of the Beneficiary, immediately become due and payable. All advances and expenditures incurred by Beneficiary and/or trustee shall be added to the amount due under the Note and shall accrue interest at the rate of interest under the Note.

(7)    CONDEMNATION: Any award of damages or sums received in settlement in connection with any condemnation for public use or of any injury to the Property or any part thereof from any cause, is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(8)    LEASEHOLD: If the security for this Deed of Trust is a leasehold estate, Trustor agrees not to amend, change or modify his leasehold interest, or any of the terms thereof, or agree to do so, without the written consent of the Beneficiary being first obtained. In the event of a violation of this provision, Beneficiary shall have the right, at its option, to declare all sums secured hereby immediately due and payable.

(9)    PAYMENTS: By accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure to so pay.

Notwithstanding any provision herein or in the Note secured hereby to the contrary, Beneficiary or Trustee shall have the absolute right to direct manner, order and amount in which payments shall be applied upon or allocated among the various items composing Trustor's indebtedness secured hereby,

In the event of default in the payment of any of the moneys to be paid under the terms of the Note secured hereby or in the performance of any of the covenants and obligations of this Deed of Trust, then any funds in the possession of the Beneficiary, or other credits to which the Trustor would otherwise be entitled may, at the option of the Beneficiary, be applied to the payment of any obligation secured hereby in such order as the Beneficiary may, in its sole discretion determine.

(10)    POWER OF TRUSTEE: At any time or from time to time, without liability therefore and without notice upon written request of Beneficiary and presentation of this Deed and the Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect the Property or the title thereto, or purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee.

(11)    RECONVEYANCE: Upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and the Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as the "person or persons legally entitled thereto". The Trustee may destroy the Note, this Deed of Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance. Trustor shall pay the Trustee's fee for issuance of a reconveyance which shall be $65.00 or the maximum amount allowed by law, whichever is greater.

(12)    MISCELLANEOUS: The Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner or holder, including pledgees, of the Note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural. As used herein, "fixtures" includes but is not limited to carpeting, built-in appliances, draperies and drapery rods, shrubs, water tanks, plumbing, machinery, air conditions, ducts, and the like.

(13)    TRUST: Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed

DEED OF TRUST (VERSION 10/14/98) PAGE 3 OF 5

Exhibit 21 Page 170

of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

(14)    STATEMENTS:  Trustor agrees to pay Beneficiary or his agent, the maximum legal charge for each statement regarding the Trust Deed obligation herein.  A statement includes but is not limited to a Beneficiary Statement, Credit Statement, Verification of Mortgage and any statement evidencing the debt.

(15)    PARTIAL PAYMENT:  Acceptance by Beneficiary of a partial payment on account, after Notice of Default has been recorded, shall not be construed as curing the default nor as a waiver of past or future delinquencies.

(16)    DEFAULT AND FORECLOSURE:  Upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice.  Beneficiary also shall deposit with Trustee this Deed, the Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following the recordation of such Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in such Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which the Property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale.  Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement.  Trustee shall deliver to such purchaser its deed conveying the Property to be sold, but without any covenant or warranty, expressed or implied.  The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof.  Any person including the Trustor, Trustee, or Beneficiary as hereinafter defined may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(17)    SUBSTITUTION OF TRUSTEE:  Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where the Property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties.

Such instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.  If Notice of Default shall have been recorded, this power of substitution cannot be exercised until after the costs, fees and expenses of the then acting Trustee shall have been paid to such Trustee, who shall endorse receipt thereof upon such instrument of substitution.  The procedure herein provided for substitution of Trustees shall not be exclusive of other provisions for substitution provided by law.

(18)    CC&R'S:  If the security under this Deed of Trust is a condominium or a community apartment or planned development project, Trustor agrees to perform each and every obligation of the owner of such condominium or interest in such project under the declaration of covenants, conditions and restrictions or bylaws or regulations pertaining to such condominium or project.  Upon the request of Beneficiary, Trustor agrees to enforce against other owners in such condominium or project each and every obligation to be performed by them, if the same have not been performed or if valid legal steps have not been taken to enforce such performance within ninety (90) days after such request is made.

(19)    COVENANTS AND REPRESENTATIONS BY TRUSTOR:  Trustor covenants and represents that Trustor is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for matters disclosed in writing to Beneficiary.  Trustor covenants and represents to Beneficiary that Trustor has provided written disclosure to Beneficiary of all bankruptcy petitions which Trustor has filed at any time and that Trustor is not a debtor under any bankruptcy.  In the event that Trustor has filed a petition in bankruptcy or files a petition in bankruptcy at any time prior to the perfection of a secured lien evidenced by this Deed of Trust against the Property, then upon execution of this Deed of Trust Trustor transfers title

Exhibit 21 page 171

to the Property to Beneficiary and such transfer shall be deemed a transfer under Bankruptcy Code Section 549.

This undersigned Trustor(s), requests that a copy of any Notice of Default and any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

TRUSTOR(S)

By: Anne Kihagi, Manager
D A. BEEC-007, a California Limited Liability Company

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signs the document to which this certificate is attached and not the truthfulness, accuracy or validity of that document.

---

State of California, County of _Los Angeles_
On _01/22/2018_ before me, _Chris Elias, Notary Public_ (Public Notary)
personally appeared _Anne Kihagi_ , who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to this deed of trust and acknowledged to me that he executed this deed of trust in his authorized capacity, and that by his signature on this deed of trust the person, or the entity upon behalf of which the person acted, executed this Deed of Trust.

I certify under PENALTY OF PREJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary's Signature

CHRIS ELIAS
Notary Public – California
Los Angeles County
Commission # 2203157
My Comm. Expires Jan 24, 2021

DEED OF TRUST (VERSION 10/14/96) PAGE 5 OF 5

Exhibit 21 pg. 172

EXHIBIT "A"

**LEGAL DESCRIPTION**

Real property in the City of Santa Monica, County of Los Angeles, State of California, described as follows:

LOT 8, OF VAWTER'S HILL STREET TRACT, IN THE CITY OF SANTA MONICA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 83 PAGE 7 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

APN: 4287-011-010

Page 3

Rev. NAT 8/15/15                    Order No. 95004-1545065-17

21 - 173

804

# *Exhibit 22*




**This page is part of your document - DO NOT DISCARD**



# 20180452320

Pages:
0007

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**05/08/18 AT 12:16PM**

| | |
|---|---|
| FEES: | 42.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 117.00 |





**L E A D S H E E T**



201805083330016

00015217381

009071519

**SEQ:
01**

**DAR - Counter (Upfront Scan)**



**THIS FORM IS NOT TO BE DUPLICATED**

22   174

806

RECORDING REQUESTED BY
Pacific Coast Title Company

APN # 5420-021-019, 5545-007-017
        5530-001-033

When Recorded Mail to:

**Lin Dee Liu Services**
**41368 Danzon Court**
**Fremont, CA 94539**

## DEED OF TRUST

This Deed of Trust is dated May 7, 2018
**TRUSTOR:** D A BEEC-007 LLC, a California Limited Liability Company & NIVO I, LLC, a
California Limited Liability Company
Trustor's address is P.O. Box 691889, Los Angeles, CA 90069
**TRUSTEE:** County Records Research
**BENEFICIARY:** Yu Sheng Victor Liu, a married man, as to 500,000/1,500,000 interest and
Xiang Liu, a married woman as to 1,000,000/1,500,000 interest

Trustor owes Beneficiary the principal sum of **$1,500,000.00.** This debt is evidenced by a
PROMISSORY NOTE dated May 7, 2018 (the "Note").

This Deed of Trust secures to Beneficiary:
(1)      Performance of each agreement and covenant of Trustor incorporated by reference,
contained in the Note or contained in this Deed of Trust;
(2)      The repayment of the debt evidenced by the Note, with interest, and all amounts which
shall become due under the Note, and all extensions, modifications, or renewals of the Note;
(3)      The payment of all sums, with interest, advanced under any provision of this Deed of
Trust.

As security for the performance of Trustor's obligations secured by this Deed of Trust, Trustor
IRREVOCABLY GRANTS, TRANSFERS, AND ASSIGNS to TRUSTEE IN TRUST, with
POWER OF SALE, the following property in the County of Los Angeles, State of California,
(the "Property"), described as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.**

Further Security: Trustor hereby assigns to Beneficiary, as a further security for the indebtedness
secured hereby, Trustor's interest in all plans, permits, specifications and all third party reports,
studies, testing related to the property.

ACCELERATION ON TRANSFER OR ENCUMBRANCE OF THE PROPERTY:

22    175

807

If as to any or all of Trustor's interest in the Property, Trustor sells, transfers, contracts to sell, gives an option to purchase, conveys, leases for a term exceeding 10 years, encumbers, or alienates the Property; or causes or allows the Property to be subject to a junior lien or encumbrance; or if any or all of the title of the Trustor is impaired or divested, whether voluntarily or involuntarily; or if title to the Property be subject to any lien or charge, voluntary or involuntary, contractual or statutory, without the written consent of Beneficiary being first had and obtained; then Beneficiary shall have the right of acceleration, at its option, to declare the Note secured by this Deed of Trust, irrespective of the maturity date expressed therein, and without demand or notice, immediately due and payable.  No waiver of this right shall be effective unless it is in writing. Consent by Beneficiary to one such transaction shall not constitute waiver of the right to require such consent in succeeding transactions.

TO PROTECT the security of this Deed of Trust, and with respect to the Property described above, Trustor expressly makes each of all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth as follows:

(1)      GOOD REPAIR:  To keep the Property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon; to keep all buildings, structures and other improvements now or hereafter situated on the above described Property at all times entirely free of dry rot, fungus, rust, decay, termites, beetles, and any other destructive insects or elements; to pay when due all claims for labor performed and materials furnished therefore to comply with all laws affecting the Property or requiring any alterations or improvements to be made thereon; not to commit waste or permit waste thereof; not to commit, suffer or permit any act upon the Property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune, and do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumeration's herein not excluding the general. Either Beneficiary or Trustee, or both, at any time during the continuation of the Deed of Trust, may enter upon and inspect the Property, provided such entry is reasonable as to time and manner.

(2)      HAZARD INSURANCE:  To provide, maintain and deliver to Beneficiary hazard insurance, including, without limitation, insurance against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Beneficiary requires insurance.  Insurance for personal injury claims is required.  All insurance shall be satisfactory to Beneficiary and shall be for an amount at least equal to the amount secured by this Deed of Trust. Such insurance shall contain a provision for loss payable to Beneficiary and shall contain a standard mortgage clause. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice. Beneficiary shall have the right to hold all policies and renewals. Beneficiary may make proof of loss if not made promptly by Trustor. Trustor hereby assigns to Beneficiary the proceeds of any and all insurance policies covering the Property, whether or not that insurance is required by Beneficiary. Trustor shall pay all insurance premiums required herein including, without limitation, any insurance obtained by Beneficiary due to Trustor's failure to secure insurance. Insurance shall be required regardless of the loan amount as compared to the value of the Property.

(3)      LEGAL PROCEEDINGS:  To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; to pay all costs, expenses and attorney's fees incurred by Beneficiary in any action or proceeding in which Beneficiary is named as a party which affects this Deed of Trust and/or the rights or powers of the Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding instituted by Beneficiary or Trustee to protect or enforce the security of this Deed of Trust or the obligations secured hereby.

(4)      TAXES AND LIENS:  To pay before delinquency all taxes and assessments affecting the Property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on the Property or any part appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

(5)      TRUSTOR'S FAILURE:  Should Trustor fail to make any payments or to do any act as herein provided, then Beneficiary or Trustee, but without obligation to do so and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as

DEED OF TRUST (VERSION 10/14/96) PAGE 2 OF 5

22  176

either may deem necessary to protect the security thereof, Beneficiary or Trustee being authorized to enter upon the Property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment or either appears to be prior or superior thereto; and in exercising any such powers, pay necessary expenses, employ counsel and pay counsel's reasonable fees.

(6)  ADVANCES:  To pay immediately and without demand all sums, including attorneys' fees, advanced or expended by Beneficiary or Trustee, with interest from the date of expenditure at the rate prescribed in the Note. Should any additional funds be advanced on any note secured by a Trust Deed now of record, or should any change be made in the time or manner of paying such note, or should any other action be taken by the undersigned with respect to such note whereby the security herein provided for shall be impaired in any manner whatsoever, then the Note secured hereby shall, at the option of the Beneficiary, immediately become due and payable. All advances and expenditures incurred by Beneficiary and/or trustee shall be added to the amount due under the Note and shall accrue interest at the rate of interest under the Note.

(7)  CONDEMNATION:  Any award of damages or sums received in settlement in connection with any condemnation for public use of or any injury to the Property or any part thereof from any cause, is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(8)  LEASEHOLD:  If the security for this Deed of Trust is a leasehold estate, Trustor agrees not to amend, change or modify his leasehold interest, or any of the terms thereof, or agree to do so, without the written consent of the Beneficiary being first obtained. In the event of a violation of this provision, Beneficiary shall have the right, at its option, to declare all sums secured hereby immediately due and payable.

(9)  PAYMENTS:  By accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure to so pay.

Notwithstanding any provision herein or in the Note secured hereby to the contrary, Beneficiary or Trustee shall have the absolute right to direct manner, order and amount in which payments shall be applied upon or allocated among the various items composing Trustor's indebtedness secured hereby.

In the event of default in the payment of any of the moneys to be paid under the terms of the Note secured hereby or in the performance of any of the covenants and obligations of this Deed of Trust, then any funds in the possession of the Beneficiary, or other credits to which the Trustor would otherwise be entitled may, at the option of the Beneficiary, be applied to the payment of any obligation secured hereby in such order as the Beneficiary may, in its sole discretion determine.

(10)  POWER OF TRUSTEE:  At any time or from time to time, without liability therefore and without notice upon written request of Beneficiary and presentation of this Deed and the Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect the Property or the title thereto, or purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee.

(11)  RECONVEYANCE:  Upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and the Note to Trustee for cancellation and retention upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as the "person or persons legally entitled thereto". The Trustee may destroy the Note, this Deed of Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance. Trustor shall pay the Trustee's fee for issuance of a reconveyance which shall be $65.00 or the maximum amount allowed by law, whichever is greater.

(12)  MISCELLANEOUS:  The Deed applies to, insures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner or holder, including pledgees, of the Note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural. As used herein, "fixtures" includes but is not limited to carpeting, built-in appliances, draperies and drapery rods, shrubs, water tanks, plumbing, machinery, air conditions, ducts, and the like.

(13)  TRUST:  Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public

DEED OF TRUST (VERSION 10/14/96) PAGE 3 OF 5

record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

(14)    STATEMENTS:  Trustor agrees to pay Beneficiary or his agent, the maximum legal charge for each statement regarding the Trust Deed obligation herein.  A statement includes but is not limited to a Beneficiary Statement, Credit Statement, Verification of Mortgage and any statement evidencing the debt.

(15)    PARTIAL PAYMENT:  Acceptance by Beneficiary of a partial payment on account, after Notice of Default has been recorded, shall not be construed as curing the default nor as a waiver of past or future delinquencies.

(16)    DEFAULT AND FORECLOSURE:  Upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice.  Beneficiary also shall deposit with Trustee this Deed, the Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following the recordation of such Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in such Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which the Property, if consisting of several lots or parcels, shall be sole), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale.  Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the Property to be sold, but without any covenant or warranty, expressed or implied.  The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof.  Any person including the Trustor, Trustee, or Beneficiary as hereinafter defined may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

(17)    SUBSTITUTION OF TRUSTEE:  Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where the Property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties.

Such instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.  If Notice of Default shall have been recorded, this power of substitution cannot be exercised until after the costs, fees and expenses of the then acting Trustee shall have been paid to such Trustee, who shall endorse receipt thereof upon such instrument of substitution.  The procedure herein provided for substitution of Trustees shall not be exclusive of other provisions for substitution provided by law.

(18)    CC&R'S:  If the security under this Deed of Trust is a condominium or a community apartment or planned development project, Trustor agrees to perform each and every obligation of the owner of such condominium or interest in such project under the declaration of covenants, conditions and restrictions or bylaws or regulations pertaining to such condominium or project.  Upon the request of Beneficiary, Trustor agrees to enforce against other owners in such condominium or project each and every obligation to be performed by them, if the same have not been performed or if valid legal steps have not been taken to enforce such performance within ninety (90) days after such request is made.

(19)    COVENANTS AND REPRESENTATIONS BY TRUSTOR:  Trustor covenants and represents that Trustor is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for matters disclosed in writing to Beneficiary.  Trustor covenants and represents to Beneficiary that Trustor has provided written disclosure to Beneficiary of all bankruptcy petitions which Trustor has filed at any time and that Trustor is not a debtor under any bankruptcy.  In the event that Trustor has filed a petition in bankruptcy or files a petition in bankruptcy at any time prior to the perfection of a secured lien

22  178

evidenced by this Deed of Trust against the Property, then upon execution of this Deed of Trust Trustor transfers title to the Property to Beneficiary and such transfer shall be deemed a transfer under Bankruptcy Code Section 549.

This undersigned Trustor(s), requests that a copy of any Notice of Default and any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

TRUSTOR(S)

By: Anne Kihagi, (Manager
NIVO-1, LLC
a California Limited Liability Co.

By: Anne Kihagi, (Manager
D A BEEC-007, LLC
a California Limited Liability Co.

A notary public or other officer completing this certificate verifies only the identity of the individual who signs the document to which this certificate is attached and not the truthfulness, accuracy or validity of that document.

State of California, County of Los Angeles
On May 7, 2018 before me, Babak Alihaji (Public Notary)
personally appeared Anne Kihagi
, who proved to me on the basis of satisfactory
evidence to be the person whose name is subscribed to this deed of trust and acknowledged to me that he executed this deed of trust in his authorized capacity, and that by his signature on this deed of trust the person, or the entity upon behalf of which the person acted, executed this Deed of Trust.

I certify under PENALTY OF PREJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary's Signature

BABAK ALIHAJI
Notary Public - California
Los Angeles County
Commission # 2212538
My Comm. Expires Sep 2, 2021

22   179

Escrow No.: 10084527-GLE-CA
Title No.: 10084527-GLT-

# EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT B IN BLOCK 13 OF ELYSIAN HEIGHTS TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 59 PAGE 2 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:

LOT 44 OF HOLLYWOOD VALLEY VIEW TRACT, IN THE CITY OF WEST HOLLYWOOD, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 10 PAGE 192 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2A:

AN EASEMENT FOR DRIVEWAY PURPOSES OVER THE NORTHERLY 4 FEET OF LOT 43 OF SAID TRACT.

PARCEL 3:

LOT 1 OF BROKAW TRACT NO. 2, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2 PAGE 67 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE SOUTHERLY 50 FEET THEREOF.

APN: 5420-021-019, 5545-007-017, 5530-001-033

EXHIBIT A

202  180

# *Exhibit 23*

ASSIGNMENT OF DEED OF TRUST AND

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:
~~Lin Dee Liu~~
~~41368 Danzon Court~~
~~Fremont, CA 94539~~
Attn: ~~Lin Dee Liu~~
~~APN: Lot 036, Block 3617, 69-75 Hill St, SF CA 94110~~

(Space Above For Recorder's Use)

San Francisco Assessor-Recorder
Carmen Chu, Assessor-Recorder
**DOC- 2018-K619494-00**
Check Number 2978
Friday, MAY 25, 2018 15:02:42
Ttl Pd   $101.00   Rcpt # 0005811279
OYY/YY/1-5

## ASSIGNMENT OF DEED OF TRUST AND OTHER LOAN DOCUMENTS

THIS ASSIGNMENT OF DEED OF TRUST AND OTHER LOAN DOCUMENTS (this "**Assignment**") is made as of this 3rd day of May, 2018, by Opus Bank, a California commercial bank ("**Assignor**"), to and in favor of Lin Dee Liu, a married individual; ("**Assignee**").

### RECITALS:

A.   Assignor is the legal and equitable owner and holder of that certain Promissory Note in the original principal amount of $1,210,000.00 dated July 21, 2014 (the "**Note**"), which Note is secured by, among other things, that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing executed by Zoriall LLC, a California limited liability company ("**Borrower**"), as trustor, to T.D. Service Company, a California corporation, as Trustee, for the benefit of Assignor, dated as of July 21, 2014, and recorded on July 25, 2014, as Instrument No. 2014-J914479-00 in the Official Records of San Francisco County, California (the "**Deed of Trust**") regarding the real property as more particularly described on Exhibit A attached hereto and incorporated by this reference.

B.   Assignor has simultaneously herewith executed an allonge to the Note, effectively endorsing the Note to Assignee, and the parties desire that the Deed of Trust and the Guaranty that Anne Kihagi executed in connection with the loan (the "**Guaranty**", and together with the Note and Deed of Trust, the "**Loan Documents**") be assigned to Assignee.

NOW, THEREFOR, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged:

1.   Assignor hereby absolutely, irrevocably and unconditionally sells, assigns, transfers, sets over, conveys and endorses to Assignee, its successors and assigns, and Assignee hereby accepts and assumes, all of Assignor's obligations, right, title and interest in and to the following documents:

    (a)   the Deed of Trust;

    (b)   the Note; and

23   181

(c)     the Guaranty.

2.      This Assignment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

3.      THIS ASSIGNMENT IS MADE WITHOUT RECOURSE OR WARRANTY OF ANY KIND, AND ASSIGNOR MAKES NO REPRESENTATIONS OR WARRANTY, EXPRESS OR IMPLIED, OF ANY KIND OR NATURE WHATSOEVER WITH RESPECT TO THE NOTE, THE OBLIGATIONS EVIDENCED BY THE NOTE, THE DEED OF TRUST OR THE GUARANTY, IF ANY, EXCEPT AS EXPRESSLY PROVIDED UNDER THAT CERTAIN AGREEMENT FOR PURCHASE AND SALE OF LOAN DATED APRIL 25, 2018 BETWEEN ASSIGNOR AND ASSIGNEE.

4.      This Assignment shall be governed by and construed in accordance with the laws of the State of California.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed in its name by duly authorized officers as of the date first above written.

ASSIGNOR

OPUS BANK,
a California commercial bank

By: _____

Name: David McDermott
Title:   First Vice President

**[Signature Pages Continue on Following Page]**

23   182

815

## ACKNOWLEDGEMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                 )
                                    ) §
COUNTY OF ORANGE                    )

On ___MAY 2, 2017___, before me, ___FRANK GILLIAM___ a Notary Public, personally appeared ___DAVID McDERMOTT___ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct

WITNESS my hand and official seal.

_Frank Gillem_

Signature of Notary

FRANK GILLIAM
Commission # 2090003
Notary Public – California
Orange County
My Comm. Expires Dec 6, 2018

(Affix seal here)

23  184

EXHIBIT "A"
DESCRIPTION OF THE LAND

THE LAND REFERRED TO HEREIN IS SITUATED IN SAN FRANCISCO COUNTY, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Beginning at a point on the Southerly line of Hill Street, distant thereon 130 feet Easterly from the Easterly line of Guerrero Street; running thence Easterly along said line of Hill Street, 40 feet; thence at a right angle Southerly 114 feet; thence at a right angle Westerly 40 feet; thence at a right angle Northerly 114 feet to the point of beginning.

Being a portion of Mission Block No. 74.

APN: Lot 036; Block 3617

PROPERTY ADDRESS: 69-75 HILL STREET, SAN FRANCISCO, CALIFORNIA 94110

Exhibit 23 Page 185

817

# EXHIBIT 15

1  David J. Pasternak, CSBN 72201
   Blake C. Alsbrook, CSBN 262603
2  PASTERNAK, PASTERNAK & ALSBROOK
   A Law Corporation
3  1875 Century Park East, Suite 2200
   Los Angeles, California 90067-2523
4  Telephone:  310.553.1500
   Facsimile:  310.553.1540
5  Email:    djp@paslaw.com
   Email:    bca@paslaw.com
6
   Proposed Attorneys for Receiver
7  Kevin Singer

**FILED**

San Francisco County Superior Court

APR 22 2019

CLERK OF THE COURT

BY: _____
Deputy Clerk

8        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9       **COUNTY OF SAN FRANCISCO, CIVIC CENTER COURTHOUSE**

10

11  UMPQUA BANK, a state chartered          Case No. CGC-18-564941
    bank,
12                                          Hon. Charles F. Haines
              Plaintiff,
13                                          **[PROPOSED] ORDER:**
         vs.
14                                          **1.   PROVIDING INSTRUCTIONS RE
    XELAN PROP 1, LLC, a California         DEFENDANT XELAN PROP 1, LLC'S
15  limited liability company; and         VIOLATION OF PRELIMINARY
    Does 1-30, inclusive,                   INJUNCTION;**
16
              Defendants.                   **2.   DETERMINING THAT COURT
17                                          ORDERED SALE OF RECEIVERSHIP
                                            REAL PROPERTY HAS NOT BEEN
18                                          STAYED BECAUSE NO SUPERSEDEAS
                                            BOND HAS BEEN POSTED; AND**
19
                                            **3.   AUTHORIZING RECEIVER TO
20                                          RETAIN COUNSEL**

21                                          DATE:  April 22, 2019
                                            TIME:  9:00 a.m.
22                                          DEPT:  501

23        The Court having considered Receiver Kevin Singer's

24  ("Receiver") *ex parte* application for the issuance of an Order:

25  (1) Providing Instructions Re Defendant Xelan Prop 1, LLC's

26  ("Xelan") Violation of This Court's Preliminary Injunction; (2)

27  Determining That Court Ordered Sale Of Receivership Real Property

28  Has Not Been Stayed Because No Supersedeas Bond Has Been Posted;

PASTERNAK,
PASTERNAK
& ALSBROOK

{00215545.DOCX 78296.0009 }                    1                    CGC-18-564941
     [PROPOSED] ORDER RE DEFENDANT'S VIOLATION OF PRELIMINARY INJUNCTION AND
                INTERFERENCE WITH RECEIVER'S SALE, ETC.

819

1  and (3) Authorizing the Receiver to Retain Counsel; and having

2  received the Declarations of Kevin Singer, Blake C. Alsbrook,

3  Robert B. Kaplan, and all exhibits attached thereto; the attached

4  Memorandum of Points and Authorities; all other pleadings,

5  records, and papers on file in this matter; and such other oral

6  and documentary evidence as the Court may receive at the hearing

7  of this Ex Parte Application; and good cause appearing therefor:

8      **IT IS HEREBY ORDERED** that:

9      1.    All provisions of this Court's April 15, 2019 Order on

10 Motion For Order: (1) Instructing Receiver to Sell Real Property

11 Asset of Receivership Estate; and (2) Confirming Sale of Real

12 Property [4018-4022 19th Street, San Francisco, CA] ("Sale Order")

13 remain in full force and effect, and the Receiver may proceed

14 with the sale of the receivership real property commonly known as

15 4018-4022 19th Street, San Francisco, CA, and legally described as

16 follows:

17      Beginning at a point on the Northerly line of 19th
        Street, distant thereon 83 feet Westerly from the
18      Westerly line of Noe Street; running thence Westerly
        along said line of 19th Street 42 feet; thence Southerly
19      145 feet to the point of beginning, in the City of San
        Francisco, County of San Francisco, State of
20      California.
21
        Being a portion of Mission Block No. 115. ("19th
22      Street").

23      2.    The following lien is hereby transferred from 19th

24 Street and will attach to the net sale proceeds held by the

25 Receiver, the Receiver is authorized to close the sale of 19th

26 Street free and clear of the lien, and any dispute regarding the

27 validity and priority of the lien shall be determined by the

28 Court in this action:

PASTERNAK,
PASTERNAK
& ALSBROOK

{00215545.DOCX 75296.0009 }                2                  CGC-18-564941

[PROPOSED] ORDER RE DEFENDANT'S VIOLATION OF PRELIMINARY INJUNCTION AND
INTERFERENCE WITH RECEIVER'S SALE, ETC.

A Deed of Trust to secure the indebtedness of

Amount:        $2,700,000.00
Trustor:       XELAN PROP 1, LLC, a California
               Limited Liability Company
Trustee:       County Records Research
Beneficiary:   Yu Sheng Victor Liu and Lin Dee
               Liu, husband & wife as to
               700,000/2,700,000 interest, Eric
               Liu, a married man as to
               800,000/2,700,000 interest, Xiang
               Liu, a married woman as to
               500,000/2,700,000 interest and
               Frank Chiou, a married man as to
               700,000/2,700,000 interest
Dated:         4/1/2019
Recorded:      4/5/2019, as Instrument No. 2019-
               K751370-00, Official Records

4.    Any licensed title insurer and the buyer may rely on this Order as authorizing the Receiver to transfer legal title to the Property free and clear of the lien set forth above.

5.    Any individual wishing to effectuate a stay of the proposed sale of 19th Street must first apply to this Court to set the amount of a supersedeas bond pursuant to California Code of Civil Procedure §917.4.  Until such time as the amount of such bond is set and the bond is posted in that amount by the appellant, the Receiver is free to close the sale of 19th Street.

6.    The Receiver is authorized to retain the law firm of Pasternak, Pasternak & Alsbrook, A Law Corporation, to represent and advise him with respect to matters in this action and any appeals in this action.

DATED:  4-22-2019

_____
Charles F. Haines
San Francisco Superior Court Judge

{00215545.DOCX 75296.0009 }                3                    CGC-18-564941

[PROPOSED]  ORDER RE DEFENDANT'S VIOLATION OF PRELIMINARY INJUNCTION AND
INTERFERENCE WITH RECEIVER'S SALE, ETC.

# EXHIBIT 16

FILED

APR 23 2019

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

(×L) ~~CENTRAL~~ District of California
                              (State)

Case number (if known): _____    Chapter 11

☐ Check if this is an
   amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy    04/16

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

1. **Debtor's name**    XELAN Prop 1, LLC

2. **All other names debtor used in the last 8 years**    Same

   Include any assumed names, trade names, and *doing business as* names

3. **Debtor's federal Employer Identification Number (EIN)**    46-288-2425

4. **Debtor's address**

   Principal place of business

   458 Doheny Drive, #1889
   Number      Street

   Los Angeles, CA 90069
   City            State    ZIP Code

   Los Angeles
   County

   Mailing address, if different from principal place of business

   _____
   Number      Street

   _____
   P.O. Box

   _____
   City            State    ZIP Code

   Location of principal assets, if different from principal place of business

   1000 Filbert Street
   Number      Street

   San Francisco, CA 94133
   City            State    ZIP Code

5. **Debtor's website (URL)**    _____

6. **Type of debtor**    ☐ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
   ☐ Partnership (excluding LLP)
   ☑ Other. Specify:  Lender and various other parties

Official Form 201    Voluntary Petition for Non-Individuals Filing for Bankruptcy    page 1

823

Debtor    __Xelan Prop 1, LLC_____    Case number (if known)_____
            Name

7.  **Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☑ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☐ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.naics.com/search/ .
_____

8.  **Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7

☐ Chapter 9

☑ Chapter 11. *Check all that apply:*

   ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,566,050 (amount subject to adjustment on 4/01/19 and every 3 years after that).

   ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

   ☐ A plan is being filed with this petition.

   ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

   ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

   ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

9.  **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☑ No

☐ Yes.  District _____  When _____  Case number _____
                                          MM / DD / YYYY

          District _____  When _____  Case number _____
                                          MM / DD / YYYY

10. **Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☑ No

☐ Yes.  Debtor _____  Relationship _____

          District _____  When _____
                                          MM / DD / YYYY

          Case number, if known _____

Official Form 201                 Voluntary Petition for Non-Individuals Filing for Bankruptcy                 page **2**

824

Debtor    Xelan Prop 1, LLC _____    Case number (if known) _____
Name

**11. Why is the case filed in *this district?***

*Check all that apply:*

☑ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No  Ans

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** *(Check all that apply.)*

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
                                    Number          Street

_____

_____
City                                                State        ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact name _____

Phone _____

---

■ **Statistical and administrative information**

**13. Debtor's estimation of available funds**

*Check one:*

☐ Funds will be available for distribution to unsecured creditors.

☑ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

☑ 1-49
☐ 50-99
☐ 100-199
☐ 200-999

☐ 1,000-5,000
☐ 5,001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☐ More than 100,000

**15. Estimated assets**

☐ $0-$50,000
☐ $50,001-$100,000
☐ $100,001-$500,000
☐ $500,001-$1 million

☑ $1,000,001-$10 million
☐ $10,000,001-$50 million
☐ $50,000,001-$100 million
☐ $100,000,001-$500 million

☐ $500,000,001-$1 billion
☐ $1,000,000,001-$10 billion
☐ $10,000,000,001-$50 billion
☐ More than $50 billion

Official Form 201              Voluntary Petition for Non-Individuals Filing for Bankruptcy              page 3

825

Debtor    <u>Xelan Prop 1 LLC</u>    Case number *(if known)*_____
Name

**16. Estimated liabilities**

☐ $0-$50,000  ☒ $1,000,001-$10 million  ☐ $500,000,001-$1 billion
☐ $50,001-$100,000  ☐ $10,000,001-$50 million  ☐ $1,000,000,001-$10 billion
☐ $100,001-$500,000  ☐ $50,000,001-$100 million  ☐ $10,000,000,001-$50 billion
☐ $500,001-$1 million  ☐ $100,000,001-$500 million  ☐ More than $50 billion

## Request for Relief, Declaration, and Signatures

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to
$500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

☐ The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

☐ I have been authorized to file this petition on behalf of the debtor.

☐ I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  4 / 19 / 19
MM / DD / YY

✗ _Anno Kihagi Manga_    A Kihagi
Signature of authorized representative of debtor    Printed name

Title  Manager

**18. Signature of attorney**  ✗ _____    Date _____
Signature of attorney for debtor    MM / DD / YYYY

Printed name _____

Firm name _____

Number    Street _____

City _____    State ___    ZIP Code ___

Contact phone _____    Email address _____

Bar number _____    State ___

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br>Xelan Prop 1, LLC<br>458 Doheny Drive, #1889<br>Los Angeles, CA 90069<br>(323)244-9178 | FOR COURT USE ONLY |
|---|---|

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - **SELECT DIVISION****

| In re: | CASE NO.: |
|---|---|
| | CHAPTER: 11 |
| | **ATTACHMENT TO VOLUNTARY PETITION FOR NON-INDIVIDUAL FILING FOR BANKRUPTCY UNDER CHAPTER 11**<br>*[If debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11 of the Bankruptcy Code, this form shall be completed and attached to the petition.]* |
| Debtor(s). | |

1. If any of the Debtor's securities are registered under Section 12 of the Securities Exchange Act of 1934, the SEC file number is _____.

2. The following financial data is the latest available information and refers to the debtor's condition on _____.
   a. Total assets                                                    $ 8,000,000_____
   b. Total debts (including debts listed in 2.c., below)          $ 4,400,000_____
   c. Debt securities held by more than 500 holders:

| | | | | Approximate number of holders: |
|---|---|---|---|---|
| [X] secured [ ] unsecured [ ] subordinated | | | $ 4,400,000 | 2 |
| [ ] secured [X] unsecured [ ] subordinated | | | $   600,000 | 3 |
| [ ] secured [ ] unsecured [ ] subordinated | | | $ | |
| [ ] secured [ ] unsecured [ ] subordinated | | | $ | |
| [ ] secured [ ] unsecured [ ] subordinated | | | $ | |

   d. Number of shares of preferred stock  0_____
   e. Number of shares of common stock  0_____
   Comments, if any:

3. Brief description of the Debtor's business:  Real Estate

4. List the names of any persons who directly or indirectly owns, controls, or holds, with power to vote, 5% or more of the voting securities of the Debtor:
   A. Kihagi

---

*December 2015*                                                            **Official Form 201A**

| Fill in this information to identify the case: |
|---|

Debtor name __Xelan Prop 1 LLC__

United States Bankruptcy Court for the: ~~Northern~~ District    CENTRAL (NK)    District of _____ (State)

Case number (if known): _____

☐ Check if this is an amended filing

## Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider,* as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
|---|---|---|---|---|---|---|---|
| 1 | Umpqua Bank PO Box 2216 Spokane1,3, WA 99210 | | Secured loan | | 6,000,000 | 0 | 0 |
| 2 | CCSF Office of the City Attorney 1390 Market Street, 6th Floor San Francisco, CA 94102 | | Judgment | | 5,500,000 | 0 | 5,500,000 |
| 3 | Construction Loan | | Unsecured | | 1,400,000 | | 1,400,000 |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |

Debtor    __Xelan Prop 1, LLC_____    Case number (if known)_____
          Name

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |
| 16 | | | | | | |
| 17 | | | | | | |
| 18 | | | | | | |
| 19 | | | | | | |
| 20 | | | | | | |

829

Debtor _____    Case number (if known) _____
        Name

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |
| 16 | | | | | | |
| 17 | | | | | | |
| 18 | | | | | | |
| 19 | | | | | | |
| 20 | | | | | | |

Official Form 204      Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims      page 2

830

**Master List of Creditors:**

Umpqua Bank
Beverly Tengco
P.O. Box 1580
Roseburg, OR  97470

Lin Dee Liu Services
41368 Danzon Court
Fremont, CA 94539

Construction Loan

Personal Loan for Limited Working Capital

Case 2:19-bk-14626-NB    Doc 17-8    Filed 04/25/19    Entered 04/25/19 14:34:58    Desc
Case 2:19-bk-14626-NB    Doc 1-5    Filed 04/23/19    Entered 04/23/19 10:57:10    Desc
Volume Six of Exhibits    Page 228 of 229
Ntc of Case Deficient 521    Page 1 of 1

| **United States Bankruptcy Court** | | |
|---|---|---|
| **Central District of California** | | |
| In re:<br>XELAN Prop 1, LLC | CHAPTER NO.:  11 | |
| | CASE NO.: 2:19-bk-14626 | |

## NOTICE OF CASE DEFICIENCY
## UNDER 11 U.S.C. § 521(a)(1) AND BANKRUPTCY RULE 1007

**To Debtor and Debtor's Attorney of Record,**

**Pursuant to F.R.B.P. 1007, you must file the following documents within 14 days from the date of the filing of your petition. Your case may be dismissed if you fail to do so.**

### Summary(Form 106Sum or 206Sum)
### Schd A/B(Form106A/B or 206A/B)
### Schedule D (Form 106D or 206D)
### Eq. Sec. Hold. List
### Schd E/F(Form106E/F or 206E/F)
### StmtFinAffairs(Form107 or 207)
### Schedule G (Form 106G or 206G)
### Schedule H (Form 106H or 206H)
### Decl for Non−Indiv (Form 202)

**The Revised Official Bankruptcy Forms are mandatory and are available at www.cacb.uscourts.gov/forms**

According to Bankruptcy Rule 1007(c), within 14 days after you filed the petition, **YOU MUST EITHER:**

(1)    File the required documents. If the document is filed electronically, no hard copy need to be submitted to the court. (See Local Bankruptcy Rule 5005−2(d) and Court Manual, Appendix "F" as to whether a copy must be served on the judge.)

**OR**

(2)    File and serve a motion for an order extending the time to file the required document(s).

**IF YOU DO NOT COMPLY,** in a timely manner with either of the above alternatives, your case may be the subject of an order to show cause to dismiss the case. Motion for extension of time to file schedules and other papers shall comply with Local Bankruptcy Rule 1007−1, and shall be supported by admissible evidence demonstrating cause for the requested extension.

Dated: <u>April 23, 2019</u>

For the Court
**Kathleen J. Campbell**
Clerk of Court

Form def − Rev 01/2018

**1 / SMZ**

# United States Bankruptcy Court
## Central District of California

| | |
|---|---|
| In re:<br>XELAN Prop 1, LLC | CHAPTER NO.: 11 |
| | CASE NO.: 2:19-bk-14626 |

## CASE COMMENCEMENT DEFICIENCY NOTICE

**To Debtor and Debtor's Attorney of Record,**
**YOUR CASE MAY BE DISMISSED IF YOU FAIL TO CURE THE FOLLOWING DEFICIENCIES:**

**A.** You must cure the following within 14 days from filing of your petition:

☑ Corporate Resolution Authorizing Filing of Petition required for Chapter 7 and 11. [Court Manual, section 2.1]
☑ Corporate Ownership Statement as specified by LBR 1007-4
☑ Statement of Related Cases (LBR Form 1015-2) [Information required by LBR 1015-2]
☑ Verification of Master Mailing List of Creditors [LBR 1007-1(a)] (LBR Form F1007-1)

**B.** If you are a Small Business Debtor in a Chapter 11 case, within 7 days after the date of the filing of the petition, you must file the most recent:

1. Balance sheet
2. Statement of operations
3. Cash-flow statement
4. Federal tax return

OR

5. Statement made under penalty of perjury that no balance sheet, statement of operations, or cash-flow statement has been prepared and no Federal tax return has been filed. [11 U.S.C.§1116]

**The Revised Official Bankruptcy Forms are mandatory and are available at www.cacb.uscourts.gov/forms**

For all items above that are not electronically filed, you must file the original and the following number of copies in accordance with Local Bankruptcy Rules 1002-1(c) and 5005-2, and Court Manual, section 2.5(a)(2).

        Chapter 11     Original and 2 Copies. 1 copy marked as "Judge's Copy."

**Please return the original or copy of this form with all required items to the following location:**

       255 E. Temple Street, Room 100, Los Angeles, CA 90012

If you have any questions, please contact the Court's Call Center at the toll free number (855) 460-9641.

Dated: <u>April 23, 2019</u>

                             For the Court
                             **Kathleen J. Campbell**
                             Clerk of Court

(Form ccdn - Rev 01/2018)

                                                    **1 / SMZ**